# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NORTH DAKOTA

|  |  |  |
|---|---|---|
| In re: | § | Chapter 7 |
|  | § | Case No. 24-30167 |
| Pro-Mark Services, Inc., | § |  |
|  | § |  |
| Debtor. | § |  |
|  | § |  |
| ———————————— | § | Adv. No. 24-07014 |
| ERIK A.  AHLGREN, as Chapter 7 | § |  |
| trustee of Bankruptcy Estate of Pro- | § |  |
| Mark Services, Inc., as Administrator of | § |  |
| the Pro-Mark Services, Inc. Employee | § |  |
| Stock Ownership Plan, and as Trustee of | § |  |
| the Pro-Mark Services, Inc. Employee | § |  |
| Stock Ownership Trust, | § |  |
|  | § |  |
| Plaintiff, | § |  |
|  | § |  |
| v. | § |  |
|  | § |  |
| CONNIE BERG, KYLE BERG, CONNIE | § |  |
| BERG REVOCABLE LIVING TRUST, | § |  |
| KYLE R. BERG REVOCABLE LIVING | § |  |
| TRUST, CHAD DUBOIS, MANDY | § |  |
| GRANT, and MIGUEL PAREDES, | § |  |
|  | § |  |
| Defendants. | § |  |

## BERG DEFENDANTS' MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS UNDER
## FEDERAL RULES OF CIVIL PROCEDURE 9(b) AND 12(b)(6)

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................i

TABLE OF AUTHORITIES ......................................................... v

I.    PRELIMINARY STATEMENT .................................................. 1

II.   BASES FOR DISMISSAL ...................................................... 3

III.  FACTUAL BACKGROUND ..................................................... 5

      A.    The Debtor's Business.................................................. 5

      B.    ESOP Transaction...................................................... 6

      C.    Investigation and Bankruptcy ......................................... 7

      D.    The Complaint......................................................... 8

IV.   LEGAL STANDARDS ......................................................... 9

V.    ARGUMENT ................................................................ 10

      A.    The Trustee's breach of fiduciary duty claims fail to state a
            claim under Federal Rules 9(b) and 12(b)(6)........................ 10

            1.    Connie Berg could not breach a fiduciary duty owed to the
                  Debtor because she was the sole shareholder, and if Kyle
                  Berg breached a fiduciary duty, the Debtor (through
                  Connie Berg) consented to or ratified any alleged breach. ........ 11

            2.    The statute of limitations bars any breach of fiduciary
                  duty claim related to the Equity Distribution............................ 14

            3.    The statute of limitations bars any breach of fiduciary
                  claim based on an allegation that the Bergs "caused the
                  Debtor to defraud the United States" before April 22,
                  2018. ................................................................ 15

            4.    The Trustee's claims premised on the Bergs allegedly
                  "causing the Debtor to defraud the United States" are not
                  pled with particularity. .............................................. 16

B.    The Trustee's claims based on alleged misrepresentations and omissions fail to state a claim under Federal Rules 9(b) and 12(b)(6). .................................................................................... 17

    1.    Based on the plain language of the contracts, the alleged misrepresentations were not false. ............................................... 18

        i.    Connie Berg did not breach the Modification Agreement or defraud the Debtor or the ESOP Trust because she did not make a false representation in Section 6(d) of the Modification Agreement. ........................................................................ 18

        ii.    Connie Berg did not defraud the ESOP Trust because she did not make a false representation in Section 5.3(c) of the Initial Loan Agreement. .................. 19

        iii.    Connie Berg did not breach the Purchase Agreement or defraud the Debtor or the ESOP Trust because she did not make a false representation in Section 3.2(g) of the Purchase Agreement. ........................................................................ 20

        iv.    Connie Berg did not defraud the ESOP Trust because she did not make a false representation in Sections 3.3(g)(i) and (iii) of the Purchase Agreement. ........................................................................ 22

        v.    Connie Berg did not defraud the ESOP Trust because she did not make a false representation in Section 3.3(h) of the Purchase Agreement. ...................... 24

    2.    Any purported misrepresentation is not actionable because the Trustee alleges that the Debtor knew, and the ESOP Trustee should have known, of the purportedly misrepresented and omitted information. .................................. 26

i.    Any alleged misrepresentation in Section 5.3(c) of the Initial Loan Agreement is not actionable because the Trustee alleges that Paredes knew the purportedly misrepresented and omitted information. ........................................................................ 27

ii.   Any alleged omission or misrepresentation concerning revenue from fraudulently obtained Set-Aside Contracts is not actionable because the Trustee alleges the Debtor knew the purportedly misrepresented and omitted information. ...................... 28

   a)   The CIM disclosed to the Debtor (and the ESOP Trustee) the facts that the Trustee classifies as "fraud." ............................................... 30

   b)   The Trustee alleges that the Debtor's employees knew of the purported fraud. ............... 31

iii.  Any alleged misrepresentation in the Purchase Agreement is not actionable because the Trustee alleges that the ESOP Trustee should have known the purportedly misrepresented and omitted information. ........................................................................ 34

3.   The fiduciary duty and fraud claims must be dismissed because the Trustee alleges contradictory facts in support of those claims. ................................................................................ 38

4.   Allegations that Connie Berg's misrepresentations in the Purchase Agreement defrauded the ESOP Trust are not pled with particularity. ................................................. 40

5.   The allegations that the Bergs committed securities fraud by employing a scheme to defraud the Debtor and the ESOP Trust are not pled with sufficient particularity. ............ 42

6.   The Debtor cannot recover damages for purported breach of the Purchase Agreement, which limits the available remedy to indemnification. ....................................................... 42

C.   North Dakota does not recognize a tort for "aiding and abetting." ...... 43

D.   The Trustee's ERISA claims fail to state a claim under Federal Rule 12(b)(6). ........................................................................... 44

1. The Bergs could not breach a fiduciary duty owed to the ESOP Trust because they were not fiduciaries for the ESOP Transaction. ...................................................................... 44

2. The statute of limitations bars any claim that the Bergs are liable for Paredes's breach of fiduciary duty. ...................... 48

E. The Trustee's fraudulent transfer claims fail to state a claim under Federal Rules 9(b) and 12(b)(6) ................................... 50

1. The Trustee fails to allege facts that give rise to a plausible inference that the Debtor entered the ESOP Transaction with actual intent to hinder, delay, or defraud unknown, future creditors. ........................................... 50

2. The allegations that the Debtor's transfers and obligations were constructive fraudulent transactions are not pled with particularity. ....................................................... 55

VI. CONCLUSION ............................................................... 57

CERTIFICATE OF SERVICE ........................................................ 58

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aaron v. Medtronic,*
209 F. Supp. 3d 994 (S.D. Ohio 2016)..............................................................39, 40

*Accurate Grading Quality Assur., Inc. v. Thorpe,*
No. 12-cv-1343, 2013 WL 1234836 (S.D.N.Y. Mar. 26, 2013).........................38, 39

*Anderson v. Benson,*
394 N.W.2d 171 (Minn. Ct. App. 1986)...................................................................12

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ......................................................................9, 34, 51, 53, 54

*Battleground Veterinary Hosp., P.C. v. McGeough,*
No. 05 CVS 18918, 2007 WL 3071618 (Sup. Ct. N.C. Oct. 19, 2007)...................12

*In re Bear Stearns,*
763 F. Supp. 2d 423 (S.D.N.Y. 2011).....................................................................46

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)...................................................................................................9

*United States ex rel. Benaissa v. Trinity Health,*
963 F.3d 733 (8th Cir. 2020)...................................................................................10

*Berger v. Sellers,*
996 N.W.2d 329 (N.D. 2023)....................................................................................10

*Blankenship v. Louisville-Jefferson Cnty. Metro Gov't,*
No. 23-cv-235, 2024 WL 1221180 (W.D. Ky. Mar. 21, 2024)................................39

*Brown v. Am. Life Holdings, Inc.,*
190 F.3d 856 (8th Cir. 1999)...................................................................................49

*Cent. Valley Ag. Coop. v. Leonard,*
400 F. Supp. 3d 819 (D. Neb. 2019).......................................................................47

*Comm. of Unsec. Creditors of Specialty Plastic v. Doemling,*
127 B.R. 945 (W.D. Pa. 1991)..................................................................................12

*Constructora Guzman, S.A. v. United States,*
   161 Fed. Cl. 686 (2022) ................................................................................................. 7

*Dahl v. Messmer,*
   719 N.W.2d 341 (N.D. 2006) ....................................................................................... 23

*Delker v MasterCard Int'l, Inc.,*
   21 F.4th 1019 (8th Cir. 2022) ...................................................................................... 44

*DoubleLine Cap. LP v. Odebrecht Fin., Ltd.,*
   323 F. Supp. 3d 393 (S.D.N.Y. 2018) .......................................................................... 23

*In re Drs. Hosp. of Hyde Park, Inc.,*
   474 F.3d 421 (7th Cir. 2007) ....................................................................................... 12

*E.E.E., Inc. v. Hanson,*
   318 N.W.2d 101 (N.D. 1982) ....................................................................................... 43

*Emps. Reinsurance Corp. v. Landmark,*
   547 N.W.2d 527 (N.D. 1996) ....................................................................................... 32

*Erickson v. Erickson,*
   782 N.W.2d 346 (N.D. 2010) ....................................................................................... 33

*Field v. Lew,*
   184 F. Supp. 23 (E.D.N.Y. 1960) ................................................................................. 13

*Flake v. Hoskins,*
   55 F. Supp. 2d 1196 (D. Kan. 1999) ............................................................. 44, 45, 46, 48

*Foreman Elec. Servs. Inc. v. Haliron Power, LLC,*
   No. 4:19-cv-4157, 2022 WL 55015 (W.D. Ark. Jan. 5, 2022) ...................................... 50

*Freeland v. Enodis Corp.,*
   540 F.3d 721 (7th Cir. 2008) ....................................................................................... 54

*Freeman v. Decio,*
   584 F.2d 186 (7th Cir. 1978) ....................................................................................... 10

*Gallagher v. City of Clayton,*
   699 F.3d 1013 (8th Cir. 1012) ....................................................................................... 9

*In re Henry Schein, Inc. Sec. Litig.,*
   No. 18-cv-01428, 2019 WL 8638851 (E.D.N.Y. Sept. 27, 2019) .................................. 23

*Hirsch v. Arthur Andersen & Co.,*
   72 F.3d 1085 (2d Cir. 1995) ......................................................................................... 39

*United States ex rel. Holt v. Medicare Medicaid Advisors, Inc.*,
No. 23-cv-2564, 2024 WL 4179221 (8th Cir. Sept. 13, 2024) .................................. 9

*Household Reinsurance Co. v. Travelers Ins. Co.*,
No. 91 C 1308, 1992 WL 22220 (N.D. Ill. Jan. 31, 1992) ...................................... 12

*Hurt v. Freeland*,
589 N.W.2d 551 (N.D. 1999) .......................................................................... 43, 44

*Jacoby v. Cable News Network, Inc.*,
537 F. Supp. 3d 1303 (M.D. Fla. 2021) ............................................................... 39

*Jensen v. SIPCO, Inc.*,
867 F. Supp. 1384 (N.D. Iowa 1993) .................................................................. 46

*Klamberg v. Roth*,
473 F. Supp. 544 (S.D.N.Y. 1979) ................................................................. 27, 29

*Lockheed Corp. v. Spink*,
517 U.S. 882 (1996) ....................................................................................... 44

*Markwed Excavating, Inc. v. City of Mandan*,
791 N.W.2d 22 (N.D. 2010) ............................................................................ 42

*Martin v. Feilen*,
965 F.2d 660 (8th Cir. 1992) ....................................................................... 45, 48

*McConnico v. Third Nat'l Bank in Nashville*,
499 S.W.2d 874 (Tenn. 1973) ......................................................................... 13

*Miller v. Redwood Toxicology Lab., Inc.*,
688 F.3d 928 (8th Cir. 2012) ............................................................... 17, 29, 47

*Molbert v. Kornkven*,
910 N.W.2d 888 (N.D. 2018) ...................................................... 26, 29, 34, 38

*Myzel v. Fields*,
386 F.2d 718 (8th Cir. 1967) ................................................................ 26, 34, 38

*Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*,
No. 10-cv-1777, 2011 WL 381612 (E.D.N.Y. Feb. 2, 2011) .................................. 38

*Northstar Founders, LLC v. Hayden Cap. USA, LLC*,
855 N.W.2d 615 (N.D. 2014) .......................................................................... 17

*Palaniuk v. Allis-Chalmers Mfg. Co.*,
220 N.W. 638 (N.D. 1928) ............................................................................. 43

*Pappas v. Buck Consultants, Inc.*,
  923 F.2d 531 (7th Cir. 1991) ............................................................... 47

*Pension Ben. Guar. Corp. v. Scherling*,
  905 F.2d 173 (8th Cir. 1990) ............................................................... 49

*Pierce v. Fordham Univ., Inc.*,
  No. 15-cv-4589, 2016 WL 3093994 (S.D.N.Y. June 1, 2016) ................ 38

*Ritchie Cap. Mgmt., LLC v. Stoebner*,
  779 F.3d 857 (8th Cir. 2015) ............................................................... 51

*Ryan v. Ryan*,
  889 F.3d 499 (8th Cir. 2018) ......................................................... 17, 29

*Matter of Safety Int'l, Inc.*,
  775 F.2d 660 (5th Cir. 1985) ............................................................... 13

*Shappirrio v. Goldberg*,
  192 U.S. 232 (1904) ..................................................... 26, 34, 36, 38

*In re Sharp Int'l Corp.*,
  403 F.3d 43 (2d Cir. 2005) ............................................................... 52

*In re Sherman*,
  67 F.3d 1348 (8th Cir. 1995) ......................................................... 51, 55

*Star City Sch. Dist. v. ACI Bldg. Syst., LLC*,
  844 F.3d 1011 (8th Cir. 2017) ....................................................... 10, 41

*Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*,
  781 F.3d 1003 (8th Cir. 2015) ........................................................... 10

*United States ex rel. Strubbe v. Crawford Cnty. Mem. Hosp.*,
  915 F.3d 1158 (8th Cir. 2019) .......................................... 10, 16, 42, 56

*Swenson v. Mahlum*,
  927 N.W.2d 850 (N.D. 2019) ............................................................... 18

*Three Aces Props. LLC v. United Rentals (N. Am.), Inc.*,
  952 N.W.2d 64 (N.D. 2020) ............................................................... 17

*Tibert v. Nodak Mut. Ins. Co.*,
  816 N.W.2d 31 (N.D. 2012) ............................................................... 43

*U.S. Bank Nat. Ass'n v. Verizon Commc'ns, Inc.*,
  761 F.3d 409 (5th Cir. 2014) ............................................................... 53

*Vigeant v. Meek*,
    953 F.3d 1022 (8th Cir. 2020) ................................................................ 16

*Waddell & Reed Fin., Inc. v. Torchmark Corp.*,
    337 F. Supp. 2d 1243 (D. Kan. 2004) ..................................................... 26

*Ward v. Bullis*,
    748 N.W.2d 397 (N.D. 2008) .................................................................. 44

*Warmington v. Bd. of Regents of Univ. of Minn.*,
    998 F.3d 789 (8th Cir. 2021) .................................................................. 34

*White v. Marshall & Ilsley Corp.*,
    No. 10-cv-311, 2011 WL 2471736 (E.D. Wis. June 21, 2011), *aff'd*,
    714 F.3d 980 (7th Cir. 2013) .................................................................. 27

*Zink v. Lombardi*,
    783 F.3d 1089 (8th Cir. 2015) .................................................................. 9

**Statutes**

11 U.S.C. § 108(a) ........................................................................................ 15

29 U.S.C. § 1002(21)(A) ................................................................... 45, 46, 48

29 U.S.C. § 1102(a) ...................................................................................... 45

29 U.S.C. § 1106 ...................................................................................... 27, 49

29 U.S.C. § 1108 ...................................................................................... 27, 49

29 U.S.C. § 1113(2) ...................................................................................... 49

N.D. Cent. Code § 9-03-08 ........................................................................... 17

N.D. Cent. Code. § 9-07-02 ........................................................................... 18

N.D. Cent. Code § 10-04-15 ........................................................................... 17

N.D. Cent. Code § 10-19.1-01.2(7) ................................................................ 33

N.D. Cent. Code § 10-19.1-50(1) .................................................................... 11

N.D. Cent. Code § 10-19.1-60 ........................................................................ 11

N.D. Cent. Code § 10-19.1-95(1) .................................................................... 14

N.D. Cent. Code § 10-19.1-95(4) .................................................................... 14

N.D. Cent. Code § 13-02.1-04(1)(a) ............................................................... 50

N.D. Cent. Code § 13-02.1-04(1)(b) ............................................................... 56

N.D. Cent. Code § 13-02.1-04(2) ................................................................... 52

N.D. Cent. Code § 28-01-16(2) ...................................................................... 15

## Other Authorities

29 C.F.R. § 2509.75-8 ........................................................................... 45, 48

Fed. R. Civ. P. 8(d)(3) ............................................................................. 39

Defendants Connie Berg, Kyle Berg, Connie Berg Revocable Living Trust, and Kyle R. Berg Revocable Living Trust (collectively, "Berg Defendants") file this Memorandum in Support of Motion to Dismiss requesting dismissal of the claims asserted against the Berg Defendants in the amended complaint ("Complaint" or "Compl.") filed by Plaintiff Erik A. Ahlgren ("Trustee") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure ("Federal Rules"), made applicable by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.  In support of the Motion to Dismiss, the Berg Defendants respectfully state as follows:

## I.    PRELIMINARY STATEMENT

The Trustee's scattershot Complaint centers around two events:  (1) an alleged scheme orchestrated by Connie and Kyle Berg (the "Bergs") whereby they purportedly caused Pro-Mark Services, Inc. (the "Debtor") to fraudulently obtain Set-Aside Contracts[1] from the United States, and (2) Connie Berg's sale of all shares of the Debtor's stock to the Debtor's Employee Stock Ownership Plan (the "ESOP"). The underlying premise of the Complaint is a fantastical story that the Bergs spent years building the Debtor into a thriving business by defrauding the federal government while Connie Berg was the Debtor's sole shareholder, and that the Bergs' alleged mis-dealings with the government caused the Debtor's demise **three years and seven months after Connie Berg had ceded ownership and**

---

[1] Capitalized terms used in this Introduction but not otherwise defined shall have the meanings provided in the remainder of the Berg Defendants' Memorandum in Support of Motion to Dismiss or in the Trustee's Complaint.

**control over the Debtor to new ownership**.  As with many stories, the untold

other side is revealing:

- The Trustee altogether fails in any of his filings to mention
  that the Department of Justice conducted a fulsome
  investigation of the Bergs' conduct (with the Bergs' active
  cooperation) and affirmatively chose not to assert **any** civil or
  criminal claims against them.  Stated differently, the
  Trustee's entire case is based on his allegation that the Bergs
  defrauded the U.S. Small Business Administration ("SBA"),
  but the SBA—through the Department of Justice—
  investigated for almost six years and declined to bring
  criminal charges or pursue a civil lawsuit.  Notwithstanding
  the fact that the SBA has closed its investigation, the
  Trustee now charges the Bergs with governmental fraud as a
  predicate to the litany of claims asserted in the Complaint.

- The Trustee bases his story almost entirely on:  (1) a 2022
  search warrant affidavit that was submitted by an FBI
  agent, and (2) a 2023 Non-Prosecution Agreement (to which
  the Bergs were not a party), wherein the Debtor's
  management placed all responsibility for the Debtor's
  problems on the Bergs.  Notably, the Debtor's own records
  would have contained multiple e-mails between Connie Berg
  and the SBA wherein Kyle Berg's active management of the
  Debtor's construction division was disclosed and welcomed by
  the SBA.   Those records would also have shown that in its
  annual re-certification materials submitted to SBA every
  year from 2008 through 2016, the Debtor disclosed Kyle
  Berg's involvement in the Debtor's construction division.  In
  short, rather than defending the Debtor with documentary
  evidence that would absolve the Debtor of any wrongdoing,
  the Debtor's management chose to "roll over" by pointing at
  the Bergs who had exited the company over three years
  earlier.

- The Bergs' financial advisor recommended that the Debtor
  create the ESOP.  When Connie Berg sold the Debtor's
  shares to the ESOP on August 31, 2020 (the "ESOP
  Transaction"), the ESOP was represented by sophisticated
  counsel and financial advisors, all of whom reviewed and
  approved the validity and fairness of the transaction.
  Indeed, the valuation for the Debtor that was used for the
  ESOP Transaction was derived by independent financial

advisors.  All of the professionals agreed that the Debtor was
solvent at that time and was thereafter left more than
sufficiently capitalized with a backlog of existing profitable
contracts.

• The Trustee refuses to lay the blame for the Debtor's collapse
where it belongs:  At the feet of an FBI agent (whose 2022
search warrant affidavit had little basis in fact) and an
ownership and management team that controlled the Debtor
for over three years after Connie Berg sold the company.

## II.    BASES FOR DISMISSAL

The Trustee filed this lawsuit without even asking the Bergs for their side of

this story.  Instead, he chose to throw the kitchen sink into a disjointed Complaint

that asserts 24 separate claims against the Berg Defendants.  The Berg Defendants

dispute each claim, and none can stand as a matter of law.  For the Court's

convenience, a chart listing the Berg Defendants' responses to each count in the

Complaint is attached hereto as Appendix "A" and a chart listing the Berg

Defendants' responses to each alleged misrepresentation and omission is attached

hereto as Appendix "B."

The Trustee's claims for breach of fiduciary duty fail because Connie Berg, as

sole shareholder, could not breach fiduciary duties owed to herself (as the sole

shareholder).  Connie Berg also consented to or ratified any purported breach by

Kyle Berg.  Moreover, the statute of limitations bars any claims arising out of

conduct occurring prior to April 22, 2018 (six years prior to the Petition Date).

The Trustee alleges that, in connection with the ESOP Transaction, the

Bergs failed to disclose and mispresented: (i) purported fraud that the Debtor

committed against the United States; (ii) the associated risk of liability for that

alleged fraud; (iii) that a material portion of the Debtor's revenue was attributable to fraud, and that, as a result, the Debtor's valuation was inflated. These allegations form the basis for the Trustee's claims for breach of fiduciary duty; breach of the ESOP Stock Purchase Agreement (the "Purchase Agreement"), the ESOP Modification Agreement (the "Modification Agreement"), and Initial Seller / ESOP Loan Agreement (the "Initial Loan Agreement"); actual fraud; and securities fraud. The Trustee fails to state a claim against the Berg Defendants for any of those counts because: (1) the purported misrepresentations were not false; (2) any misrepresentation or omission is not actionable because the Debtor knew, and the ESOP Trustee should have known, of the purportedly misrepresented or omitted information; (3) the Trustee's allegations in support of the claims contradict one another; (4) the allegations of fraud are not pled with particularity; and (5) the Trustee's sole remedy for breach of the Purchase Agreement is indemnity.

The Trustee's aiding and abetting claims against Kyle Berg fail because North Dakota does not recognize a tort for aiding and abetting breach of fiduciary duty or actual fraud.

The Trustee fails to state a claim that the Bergs breached fiduciary duties owed to the ESOP Trust under ERISA because the Bergs were not fiduciaries of the ESOP Trust for the ESOP Transaction. Moreover, any ERISA claims against the Bergs premised on Paredes's breach of fiduciary duty are time-barred.

The Trustee also fails to state a claim that the ESOP Transaction can be avoided as an actual fraudulent transfer by failing to sufficiently allege that the

Debtor intended to hinder, delay, or defraud any future creditor by making any of the challenged transfers that arose in connection with the ESOP Transaction. The Trustee likewise has not pled with requisite particularity that the ESOP Transaction was a constructive fraudulent transfer.

As discussed below, all of the Trustee's claims fail as a matter of law, and the Court must dismiss the Trustee's Complaint in its entirety as to the Berg Defendants.

### III.    FACTUAL BACKGROUND

#### A. The Debtor's Business

The Bergs incorporated the Debtor in 2001. Compl. ¶ 26. Initially, Connie Berg owned 51% of the Debtor, and Kyle Berg owned 49%. *Id.* In 2007, Kyle Berg transferred his interests to Connie Berg, making her the Debtor's sole shareholder and director. *Id.* ¶¶ 20, 44. The Debtor had two divisions: retail and construction. *Id.* ¶ 26. The construction division performed government contracts. *Id.*

The Debtor employed approximately 30 people, including Connie Berg, Kyle Berg, Chad DuBois ("DuBois"), and Mandy Grant ("Grant"). *Id.* ¶¶ 20, 23-24, 125. Connie Berg served as president. *Id.* ¶ 20. Kyle Berg was first employed as vice president and later as consultant. *Id.* In both roles, Kyle Berg focused on government construction contracts. *Id.* ¶ 62.

Beginning in 2008, the Debtor pursued work under programs administered by the SBA that award federal contracts to qualifying businesses. One program was the 8(a) Program, which awards "federal contracting dollars to small businesses owned and controlled by socially and economically disadvantaged individuals." *Id.*

¶¶ 27-28.  Another program was the Women Owned Small Business Program ("WOSB Program"), which awards "federal contracting dollars to women-owned small businesses."  *Id.* ¶¶ 27, 35.  Businesses enrolled in the 8(a) and WOSB Programs may "bid for Set-Aside Contracts specially 'set aside' only for" 8(a) and WOSB Program participants.  *Id.* ¶¶ 28, 35.  The SBA accepted the Debtor into the 8(a) Program in May 2008 and WOSB Program in 2015.  *Id.* ¶¶ 45, 48.  On May 23, 2017, the Debtor's 8(a) Program eligibility expired, rendering it ineligible for contracts set-aside for firms in the 8(a) Program.  *Id.* ¶¶ 29, 45.  The Debtor also bid on and was awarded Set-Aside Contracts for "small businesses."  *Id.* ¶¶ 49, 56.

### B.  ESOP Transaction

In 2019, at the suggestion of the Bergs' financial advisor, the Debtor created the ESOP.  *Id.* ¶¶ 95-96.  To fund the ESOP, Connie Berg sold her equity interests in the Debtor to the ESOP Trust.  *Id.* ¶¶ 105, 128.  The Debtor's employees became beneficiaries of the ESOP Trust and would, over time, acquire shares of the Debtor.  *Id.* ¶ 105.  As a result of the formation of the ESOP and its ownership of equity interests in the Debtor, the Debtor was no longer a woman-owned business and lost its status under the WOSB Program and related eligibility for those Set-Aside Contracts.  *Id.* ¶¶ 105, 128.

On August 31, 2020, the ESOP Transaction closed, by which Connie Berg sold her equity interests in the Debtor to the ESOP Trust for cash and promissory notes.  *Id.* ¶¶ 125-26.  Prior to the Petition Date, Connie Berg had been paid $18,556,843.  *Id.* ¶¶ 128, 213.  Following the ESOP Transaction, a new Board of

Directors was established, and DuBois and Grant managed the Debtor's business. *Id.* ¶ 213.

### C. Investigation and Bankruptcy

"In September 2018 . . . the federal government [had begun] secretly investigating whether the Debtor had fraudulently enrolled in the 8(a) and WOSB Programs" during the time Connie Berg owned the company. *Id.* ¶ 218. The investigation became public in March 2022, more than two years after the ESOP Transaction was consummated. *Id.* ¶ 239. As a result of the government investigation, "the Debtor lost its ability to secure bonding for its construction projects," which led the Debtor to "default[] on several of its existing government contracts."[2] *Id.* ¶¶ 242-43. Those defaults, which began after the investigation became public in March 2022, "impaired the Debtor's ability to obtain new government contracts." *Id.* ¶ 243.

On April 22, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"), which is pending before this Court as case number 24-30167 (the "Bankruptcy Case").

---

[2] The Debtor defaulted because federal law requires prime contractors to furnish surety bonds for federal construction contracts. *See Constructora Guzman, S.A. v. United States*, 161 Fed. Cl. 686, 689 (2022). The Complaint is silent as to what efforts, if any, the Debtor's management undertook to obtain alternative sources of surety bonds. Instead, the Complaint simply makes the conclusory allegation that the Debtor "lost its ability to secure bonding." Compl. ¶ 242.

### D. The Complaint

On August 26, 2024, the Trustee filed the above-captioned adversary proceeding against the Berg Defendants, DuBois, Grant, and Paredes.  With respect to the Berg Defendants, the Trustee's allegations fall into three categories: state law claims, ERISA claims, and fraudulent transfer claims.

The Trustee's state law claims allege that: the Bergs breached fiduciary duties owed to the Debtor (Counts 1 and 2, *id.* ¶¶ 250-60); Connie Berg made misrepresentations and omissions in the Purchase Agreement, Modification Agreement, and Initial Loan Agreement (Counts 6-7, i*d.* ¶¶ 276-93); Connie Berg fraudulently induced the Debtor and ESOP Trustee to enter the ESOP Transaction (Counts 8 and 25, *id.* ¶¶ 294-305, 463-69); Connie Berg committed securities fraud by making misrepresentations in connection with the ESOP Transaction (Count 28, *id.* ¶¶ 482-93); and Kyle Berg aided and abetted Connie Berg's breaches of fiduciary duty and actual fraud (Counts 3 and 26, *id.* ¶¶ 261-65, 470-74).

The Trustee's ERISA claims allege that the Bergs breached fiduciary duties owed to the ESOP Trust by allowing it to enter the ESOP Transaction and by failing to monitor Paredes (Count 22, *id.* ¶¶ 432-41).  The Trustee also alleges that the Bergs are liable for Paredes's breach of fiduciary duty as co-fiduciaries and non-fiduciaries (Counts 23-24, *id.* ¶¶ 442-62).

Finally, the Trustee's fraudulent transfer claims allege that each component of the ESOP Transaction—an equity distribution to Connie Berg ( "Equity Distribution"), a $335,000 contribution to the ESOP Trust ("2019 Contribution"), a $200,000 contribution to the ESOP Trust ("2020 Contribution"), a loan from the

Debtor to the ESOP Trust ("Company Note"), a debt instrument from the Debtor payable to Connie Berg ("Redemption Note"), a second debt instrument from the Debtor payable to Connie Berg ("Seller Note"), and each payment made to Connie Berg on account of the foregoing debt instruments—is avoidable as an actual and constructive fraudulent transfer under Section 544(b)(1) of the Bankruptcy Code and North Dakota's version of the Uniform Voidable Transactions Act ("UVTA") (Counts 9-20, i*d.* ¶¶ 306-410).

## IV.   LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" A*shcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 1012) (quoting *Iqbal*, 556 U.S. at 678).  While the Court must "assume all facts in the complaint to be true," "'[l]egal conclusions' and 'threadbare recitations of the elements of a cause of action supported by mere conclusory statements' are not entitled to a presumption of truth when considering the sufficiency of a complaint."  *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

The "heightened pleading standard" of Federal Rule 9(b) applies to claims that allege fraud.  *United States ex rel. Holt v. Medicare Medicaid Advisors, Inc.*,

No. 23-cv-2564, 2024 WL 4179221, at *3 (8th Cir. Sept. 13, 2024). "Rule 9(b) requires plaintiffs to state with particularity the circumstances constituting fraud." *United States ex rel. Benaissa v. Trinity Health*, 963 F.3d 733, 739 (8th Cir. 2020). Pleading with particularity means the complaint must "specify the time, place, and content of the defendant's false representations." *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015). The complaint must also specify "the identity of the person making the misrepresentation and what was obtained or given up thereby." *Star City Sch. Dist. v. ACI Bldg. Syst., LLC*, 844 F.3d 1011, 1016 (8th Cir. 2017) (citation omitted). "[A] plaintiff cannot meet this burden with conclusory and generalized allegations." *United States ex rel. Strubbe v. Crawford Cnty. Mem. Hosp.*, 915 F.3d 1158, 1163 (8th Cir. 2019).

## V.    ARGUMENT

### A. The Trustee's breach of fiduciary duty claims fail to state a claim under Federal Rules 9(b) and 12(b)(6).

"To establish a breach of fiduciary duty claim, the plaintiff must prove: 1) a fiduciary relationship between the plaintiff and defendant; 2) a duty by the defendant to the plaintiff arising from that relationship; 3) the defendant's breach of that duty; and 4) damage to the plaintiff proximately caused by that breach of duty."[3] *Berger v. Sellers*, 996 N.W.2d 329, 343 (N.D. 2023). In North Dakota,

---

[3] North Dakota courts have not addressed whether damages is a required element of a breach of fiduciary duty claim asserted against corporate officers and directors. Courts in other jurisdictions are split on the question. *See Freeman v. Decio*, 584 F.2d 186, 188 (7th Cir. 1978) (discussing the split).

directors, officers, and any "individual exercising the principal functions of an office" owe a duty to the corporation to act "in good faith, in a manner the director [or officer] reasonably believes to be in the best interests of the corporation, and with the care an ordinarily prudent person in a like position would exercise under similar circumstances." N.D. Cent. Code §§ 10-19.1-50(1), 10-19.1-60.

The Trustee alleges that a fiduciary relationship existed between the Debtor and Connie Berg because she was the sole director and an officer (the president) of the Debtor. Compl. ¶ 251. The Trustee also alleges a fiduciary relationship existed between the Debtor and Kyle Berg because he "exercised actual control over the Debtor." *Id.* ¶ 256.

In Counts 1 and 2, the Trustee alleges that the Bergs breached fiduciary duties owed to the Debtor by: (1) causing the Debtor to defraud the United States before the ESOP Transaction; (2) failing—while negotiating the ESOP Transaction—to disclose to the Debtor that a material amount of the Debtor's revenue was attributable to fraudulently obtained Set-Aside Contracts;[4] and (3) causing the Debtor to enter a self-dealing transaction with Connie Berg—the ESOP Transaction. *Id.* ¶¶ 252, 258. The Trustee fails to state any viable claim for breach of fiduciary duty under North Dakota law.

1. **Connie Berg could not breach a fiduciary duty owed to the Debtor because she was the sole shareholder, and if Kyle Berg breached a fiduciary duty, the Debtor (through Connie Berg) consented to or ratified any alleged breach.**

---

[4] This theory is addressed below, *see infra* Section V.B.3.ii.

**The Trustee failed to state a claim for breach of fiduciary duty against Connie Berg.** "[A] 100% shareholder does not owe a fiduciary duty to the wholly owned corporation." *Household Reinsurance Co. v. Travelers Ins. Co.*, No. 91 C 1308, 1992 WL 22220, at *3 (N.D. Ill. Jan. 31, 1992); *see also Anderson v. Benson*, 394 N.W.2d 171, 175 (Minn. Ct. App. 1986) (holding "[i]f an officer of the company owns all the stock[,] he may use the corporate assets as he sees fit" (cleaned up)). The sole owner of a business, cannot "defraud[] himself or breach[] a fiduciary duty to himself." *In re Drs. Hosp. of Hyde Park, Inc.*, 474 F.3d 421, 428 (7th Cir. 2007); *see also Comm. of Unsec. Creditors of Specialty Plastic v. Doemling*, 127 B.R. 945, 952 (W.D. Pa. 1991) (where defendant was sole shareholder, "[t]his factor significantly changes our analysis simply because there were not other shareholders to whom Domeling owed a duty of disclosure and loyalty"); *Battleground Veterinary Hosp., P.C. v. McGeough*, No. 05 CVS 18918, 2007 WL 3071618, at *17 (Sup. Ct. N.C. Oct. 19, 2007) ("[T]o hold that Mark McGeough breached a fiduciary duty would mean only that he breached a duty to himself. Because this conclusion is a non sequitur, the Court declines to adopt it.").

Connie Berg was the Debtor's sole shareholder. Compl. ¶ 123. She did not owe a fiduciary duty to the Debtor and cannot breach a fiduciary duty owed to herself. As a result, the Trustee's claim against Connie Berg for breach of fiduciary duty must be dismissed.

**The Trustee also failed to state a claim for breach of fiduciary duty against Kyle Berg.** A company's sole shareholder can consent to or ratify

another's breach of fiduciary duty to the company, thereby absolving the breach.

*See Matter of Safety Int'l, Inc.*, 775 F.2d 660, 662 (5th Cir. 1985) ("[E]ven when the

transaction is detrimental to the corporation, no cause of action will lie if all of the

shareholders have ratified the transaction."); *Field v. Lew*, 184 F. Supp. 23, 27

(E.D.N.Y. 1960) ("[T]he general rule of liability does not apply when the officer's

acts have been ratified by all the shareholders of the corporation.  In that case, the

unauthorized acts of the individual become the authorized acts of the corporation,

the corporation loses its right of action against the officer."); *McConnico v. Third

Nat'l Bank in Nashville*, 499 S.W.2d 874, 886 (Tenn. 1973) (where sole shareholder

"ratified his own actions," corporation could not assert claim for breach of fiduciary

duty against shareholder).

As demonstrated by the Trustee's allegations in the Complaint, Connie Berg,

as sole shareholder, consented to or ratified any breach of fiduciary duty by Kyle

Berg:

- "The Bergs installed Connie as the Debtor's 100% owner, sole director, and president in name only so the Debtor could fraudulently obtain preferential access to Set-Aside Contracts.  Her involvement in the business was nothing more than a pretext to facilitate the Bergs' fraudulent scheme."  Compl. ¶ 52.

- "Connie Berg knew, but never disclosed Kyle Berg's control over the Debtor to SBA.  Instead, she, working with and at the direction of Kyle Berg, repeatedly misrepresented to SBA that she ran or supervised all aspects of the Debtor's business operations."[5]  *Id.* ¶ 65.

---

[5] While it is not mentioned in the Complaint, Connie Berg exchanged emails with the SBA wherein (i) Connie Berg disclosed that Kyle Berg managed the Debtor's construction business, and (ii) the SBA welcomed Kyle Berg's involvement with the Debtor.

**BERG DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS UNDER
FEDERAL RULES OF CIVIL PROCEDURE 9(b) AND 12(b)(6)**          **Page 13**

- "Between approximately May 2020 and August 2020, the Bergs and Paredes negotiated the terms of the ESOP transaction."[6] *Id.* ¶ 119.

- "[T]he Bergs and Paredes preliminarily agreed that Connie Berg would sell 100% of her shares in the Debtor for an aggregate price of about $31 million, with some of her shares to be purchased by the ESOP Trust and some of her shares to be redeemed by the Debtor in conjunction with the purchase. The Bergs knew that the Debtor's valuation was substantially inflated due to their government contract fraud." *Id.* ¶ 121.

- Connie Berg "conspir[ed] with Kyle Berg [and] other entities controlled by Kyle Berg to defraud the federal government, including Razor, Fed Serve, MDM, OK2, and the Tunheim entities." *Id.* ¶¶ 252, 258

- Kyle Berg "personally participat[ed] in the ESOP transaction with Connie Berg to enrich themselves." *Id.* ¶ 258.

Even assuming Kyle Berg both owed and subsequently breached a fiduciary duty owed to the Debtor, the Trustee's allegations show that the Debtor, through its sole shareholder, consented to or ratified any purported breach. The Trustee fails to state a claim for breach of fiduciary duty. The Court must dismiss Counts 1 and 2.

### 2. The statute of limitations bars any breach of fiduciary duty claim related to the Equity Distribution.

North Dakota has a two-year statute of limitations for claims that a corporate distribution was made in violation of fiduciary duties. N.D. Cent. Code § 10-19.1-95(1), (4). The Trustee alleges that the Bergs violated their fiduciary duties by causing the Debtor to make the Equity Distribution, a distribution of "accumulated gross income, less expenses" owed to Connie Berg as sole shareholder. Compl.

---

[6] During these negotiations, Stout Risius Ross, LLC ("Stout")—the financial advisor retained by Paredes—and Lazear Capital Securities ("Lazear")—the financial advisor retained by the Debtor—advised the ESOP Trust and Debtor, respectively, as to the ESOP Transaction. Compl. ¶¶ 115, 169.

¶¶ 122-23, 252, 258.  The Equity Distribution occurred on August 27, 2020—more than two years before the Petition Date.  *See* 11 U.S.C. § 108(a).  Compl. ¶¶ 123.  The breach of fiduciary duty claims related to the Equity Distribution, therefore, are time-barred and must be dismissed.

> **3.  The statute of limitations bars any breach of fiduciary claim based on an allegation that the Bergs "caused the Debtor to defraud the United States" before April 22, 2018.**

In North Dakota, the statute of limitations for a corporate officer or director's breach of fiduciary duty is six years.  *See* N.D. CENT. CODE § 28-01-16(2).  The Petition Date was April 22, 2024.  Compl. ¶ 5.  The following chart outlines the Trustee's fiduciary duty claims that are based on conduct that occurred six years before the Petition Date.  *See* 11 U.S.C. § 108(a) (extension of statute of limitations only applies if the statute "has not expired before the date of the filing of the petition").

| Alleged Conduct | Statute of Limitations Expired |
|---|---|
| The Bergs caused the Debtor to defraud the United States by making false representations in the Debtor's initial application to the 8(a) Program on **December 6, 2007,** and in each annual recertification from **2010 to 2016**. Compl. ¶¶ 45-47. | The alleged conduct giving rise to the breach of fiduciary duty claims occurred before April 22, 2018, and is time-barred. |
| The Bergs caused the Debtor to defraud the United States by making false representations in the Debtor's self-certifications to the WOSB Program "**[f]rom 2015 through 2020**." *Id.* ¶ 48. | Any fiduciary duty claims premised on false certifications to the WOSB Program made before April 22, 2018 are time-barred. |
| The Bergs caused the Debtor to defraud the United States by applying for 8(a), WOSB, and small-business Set-Aside Contracts to which it as not entitled | Any fiduciary duty claim premised on false representations in applications for Set-Aside Contracts made before April 22, 2018 are time-barred. |

| "**[f]rom 2009 through 2020**." *Id.* ¶¶ 56, 228. | |

The Court must dismiss any fiduciary duty claims based on allegedly fraudulent conduct that occurred before April 22, 2018, because each of those claims is time-barred.

**4. The Trustee's claims premised on the Bergs allegedly "causing the Debtor to defraud the United States" are not pled with particularity.**

"Rule 9(b) applies to a breach of fiduciary duty claim when the alleged breach is the commission of fraud." *Vigeant v. Meek*, 953 F.3d 1022, 1027 (8th Cir. 2020).

The Trustee does not identify a single Set-Aside Contract that the Debtor obtained by false statement or omission. Instead, the Trustee vaguely refers to "thousands of Set-Aside Contracts . . . totaling millions of dollars," Compl. ¶¶ 49, 54, 56, "numerous Set-Aside Contracts, generating millions of dollars," *id.* ¶ 68, and "various Set-Aside Contracts generating millions of dollars in revenues and profits," *id.* ¶¶ 76, 87, 95. The Trustee also does not identify (i) when Kyle Berg allegedly failed to disclose revenue from affiliated entities in applications for small-business Set-Aside Contracts, (ii) what Set-Aside Contracts the Debtor obtained, or (iii) why combining the affiliates' revenues with the Debtor's revenue would have rendered the Debtor ineligible for small-business Set-Aside Contracts. *Id.* ¶¶ 73-74, 82-83, 88, 92-93, 98. The Trustee's allegations are the very definition of "conclusory and generalized allegations." *Ex rel. Strubbe*, 915 F.3d at 1163.

Federal Rule 9(b) requires particularity. The Trustee has failed to plead in accordance with Rule 9(b), and the Court must dismiss the breach of fiduciary duty claims.

## B. The Trustee's claims based on alleged misrepresentations and omissions fail to state a claim under Federal Rules 9(b) and 12(b)(6).

The Trustee's claims for breach of fiduciary duty (Counts 1 and 2), breach of contract (Counts 6 and 7),[7] actual fraud (Counts 8 and 25),[8] and securities fraud (Count 28)[9] are based on alleged misrepresentations and omissions.[10] None of the purported misrepresentations or omissions is actionable.

---

[7] The elements of a breach of contract claim are: "(1) the existence of a contract; (2) breach of the contract; and (3) damages which flow from the breach." *Three Aces Props. LLC v. United Rentals (N. Am.), Inc.*, 952 N.W.2d 64, 69 (N.D. 2020).

[8] The elements of an actual fraud claim are: (1) a contract between the parties; (2) a misrepresentation of facts, suppression of facts, misleading another, or a promise without intent to perform; (3) reliance on the false or misleading representation; (4) intent to deceive or induce the plaintiff to enter into the contract; and (5) the misrepresentation proximately caused actual damages. *See Northstar Founders, LLC v. Hayden Cap. USA, LLC*, 855 N.W.2d 615, 626 (N.D. 2014); *see also* N.D. CENT. CODE § 9-03-08 (defining actual fraud).

[9] The elements of a securities fraud claim are: (1) employing a device, scheme, or artifice to defraud; or (2) making an untrue statement of material fact or omitting to state a material fact necessary to make the statements made, in the light of the circumstances in which they were made, not misleading; or (3) engaging in any act, practice, or course of business which operates or would operate as a fraud or deception upon purchasers or the public; and (4) in connection with the offer, sale or purchase of any security. *See* N.D. CENT. CODE § 10-04-15.

[10] The Court may consider the Purchase Agreement, Modification Agreement, and Initial Loan Agreement, all of which are attached as exhibits to the Declaration of Connie Berg ("Berg Decl."), because the contents of those documents are "alleged in [the] complaint" and there is no question as to their authenticity. *Ryan v. Ryan*, 889 F.3d 499, 505 (8th Cir. 2018); *see also Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) ("[C]ourts additionally consider 'matters incorporated by reference or integral to the claim.'" (citation omitted)). Compl. ¶¶ 144, 146, 148, 150, 152, 154, 156, 158, 160, 277, 285, 287.

**BERG DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS UNDER
FEDERAL RULES OF CIVIL PROCEDURE 9(b) AND 12(b)(6)**                    **Page 17**

1. **Based on the plain language of the contracts, the alleged misrepresentations were not false.[11]**

    i. **Connie Berg did not breach the Modification Agreement or defraud the Debtor or the ESOP Trust because she did not make a false representation in Section 6(d) of the Modification Agreement.**

The Complaint includes claims for (1) breach of the Modification Agreement, (2) actual fraud, and (3) securities fraud; each claim is based on allegedly false or omitted information in the Modification Agreement's Section 6(d). Compl. ¶¶ 283-305, 464-65, 482-93. That section states:

> The Lender [Connie Berg] warrants and represents to the [ESOP] Trust and the [Debtor] that, as of time of the delivery to the [Debtor] of the Lender's Initial Seller/ESOP Loan Document . . . <u>no default or defaults have occurred with respect to</u> the Initial Seller/ESOP Note [or] the Initial Seller / ESOP <u>Loan Agreement</u> . . . .

Berg Decl., Ex. 4, at 3 (emphasis added). The Trustee alleges that Connie Berg's representation was false because there was a default under the Initial Loan Agreement's Section 5.3(c). Compl. ¶¶ 285-89. Section 5.3(c) states:

> The execution, delivery, and performance of this Agreement by the Seller [Connie Berg] does not and will not . . . violate any law, regulation, judgment, or order applicable to the Seller [Connie Berg].

Berg Decl., Ex. 3, at 3.

The Initial Loan Agreement, however, defines "Event of Default" as **_only_** "[t]he failure of the Trust to pay when due any principal, interest, or other amounts

---

[11] Where contractual "language is clear and explicit and does not involve an absurdity," the plain language of the contract governs, and interpretation of the contract is a question of law. *Swenson v. Mahlum*, 927 N.W.2d 850, 856 (N.D. 2019) (citing N.D. CENT. CODE § 9-07-02).

due and payable under the Initial Seller/ESOP Note." *Id.* at 4. Allegedly false statements are not an "Event of Default." When the Modification Agreement was executed, there was no failure to pay, and the Trustee does not plead otherwise. Moreover, Connie Berg's representation in Section 5.3(c) was not false. *See infra* Section V.B.1.ii. Based purely on the face of the Complaint's allegations, Connie Berg did not breach the Modification Agreement, and she did not defraud the Debtor or the ESOP Trust.

The Court must dismiss the claims based on Section 6(d) of the Modification Agreement in Counts 7, 8, 25, and 28.

> **ii.   Connie Berg did not defraud the ESOP Trust because she did not make a false representation in Section 5.3(c) of the Initial Loan Agreement.**

The Trustee alleges that Connie Berg committed actual fraud and securities fraud against the ESOP Trust by making a false statement in Section 5.3(c) of the Initial Loan Agreement. Compl. ¶¶ 465, 487. Again, that section states:

> The execution, delivery, and performance of this Agreement by the Seller does not and will not . . . violate any law, regulation, judgment, or order applicable to the Seller.

Berg Decl., Ex. 3, at 3. The Trustee alleges that this was false because "Connie Berg's execution, delivery, and performance of the Initial Seller/ESOP Loan Agreement breached her fiduciary duties under state law and ERISA." Compl. ¶ 300.

As stated, Connie Berg did not breach a fiduciary duty owed to the Debtor under state law, *see supra* Section V.A.; *infra* Section V.B.2.ii, or a fiduciary duty owed to the ESOP Trust under ERISA, *see infra* Section V.D. Because there was no

breach of fiduciary duty, there was no misrepresentation.  The Court must dismiss

the claims based on Section 5.3(c) in Counts 25 and 28.

> ### iii.   Connie Berg did not breach the Purchase Agreement or defraud the Debtor or the ESOP Trust because she did not make a false representation in Section 3.2(g) of the Purchase Agreement.

The Trustee contends that Connie Berg breached the Purchase Agreement,

and that she committed actual fraud and securities fraud against the Debtor and

the ESOP Trust, because she made a false representation in Section 3.2(g) of the

Purchase Agreement.  Section 3.2(g) of the Purchase Agreement is a representation

made by Connie Berg regarding the existence of claims, litigation, and similar

matters relating to the ESOP Transaction as of the date of the Purchase

Agreement:

> There is no claim, legal action, suit, arbitration, governmental
> investigation or other legal or administrative proceeding . . .
> relating to this Agreement or the transactions contemplated by
> this Agreement, and the Seller does not know of any reason for,
> nor have any reason to be aware of, any basis for the same.

Berg Decl., Ex. 2, at 14.

The Trustee alleges that Section 3.2(g) was false "because Connie Berg knew

that a material amount of the Debtor's revenue was attributable to fraudulently

obtained Set-Aside Contracts and the ESOP valuation was, therefore, inflated,"

and, therefore, Connie Berg knew of a "basis" for "breach of fiduciary duty claims,

ERISA claims, investigations by the FBI, DOJ, and Department of Labor, and

related claims and legal proceedings."  Compl. ¶¶ 145, 277-78.  The Trustee admits

that Connie Berg did not know of the government investigation when she executed

the Purchase Agreement.[12]  *Id.* ¶ 220 ("The government's investigation became
public in March 2022.").  For the Trustee's fraud and breach of contract claims
based on Section 3.2(g) to survive dismissal, therefore, the Court must determine
that  a reasonable inference can be drawn that:  (i) Connie knew that a claim or
investigation against the Debtor would be asserted months or years after the
consummation of the ESOP Transaction, and (ii) any such claim or investigation
would somehow "relate" "to [the] Agreement or the transactions contemplated by
[the] Agreement."

Two of the proceedings listed by the Trustee—the government's investigation
and the Trustee's fiduciary duty claims based on the Bergs' purported fraud against
the United States—cannot possibly "relat[e]" to the Purchase Agreement.  *Id.*
¶¶ 218, 252, 258.  Indeed, the Trustee alleges that the government's investigation
concerned purported fraud against the United States and began years before the
ESOP Transaction was even contemplated.  *Id.* ¶ 218.  The Trustee does not even
attempt to bridge the gap in logic that would be required to allege that these
fiduciary duty claims and the government's investigation "relat[e]" to the Purchase
Agreement.  Connie Berg's representation in Section 3.2(g) was simply not false.

The Trustee stretches the plain language of Section 3.2(g) of the Purchase
Agreement with his circular misreading of the section.  That representation, which

_____

[12] "Knowledge' is a defined term in the Purchase Agreement and is defined as "actual
knowledge of the Seller, Kyle Berg, Chad DuBois or the knowledge the Seller could have obtained
upon making reasonable inquiry with certain other employees of the Company with operational or
financial responsibilities."  Berg Decl. Ex. 2, at 7.

**BERG DEFENDANTS' MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS UNDER**
**FEDERAL RULES OF CIVIL PROCEDURE 9(b) AND 12(b)(6)**          **Page 21**

is a common seller representation in purchase agreements, is intended to require

the "Seller" to disclose the existence (or not) of claims or litigation (whether

pending, threatened or potential) that may impact the parties' ability to

consummate the ESOP Transaction.  Importantly, Section 3.2(g) is **not** a

representation as to claims or litigation (whether pending, threatened or potential)

or associated liability which may be asserted against, or could affect, the Debtor.

**All** such representations regarding the Debtor, its business, its assets, its liabilities

or potential claims or litigation against the Debtor are set forth in Section 3.3 of the

Purchase Agreement (which is explicitly titled "Representations and Warranties

Regarding the Company").  To accept the Trustee's distorted application of Section

3.2(g) would effectively vitiate all of the representations that Connie Berg made

**about** the Debtor in Section 3.3.[13]

The Court must dismiss the claims based on Section 3.2(g) of the Purchase

Agreement set forth in Counts 6, 8, 25, and 28.

> **iv.   Connie Berg did not defraud the ESOP Trust because she did not make a false representation in Sections 3.3(g)(i) and (iii) of the Purchase Agreement.**

The Trustee alleges that Connie Berg's representations in Section 3.3(g)(i)

and (iii) were false because Connie Berg knew (but did not disclose to the ESOP

---

[13] Section 3.3 includes, for example, representations about the Debtor's organizational structure, capitalization, and assets.  Berg Decl., Ex. 2 at 14-15.  Most notably, Section 3.3(j) concerns litigation against the Debtor, stating that "[n]either the Seller nor the directors and officers nor the employees . . . of the Company have any reason to believe that any such . . . proceeding . . . may be brought or threatened against the Company."  *Id.* at 18-19

Trustee) that the Debtor's past revenue included fraudulently obtained Set-Aside Contracts. *Id.* ¶¶ 147, 151.

- Purchase Agreement § 3.3(g)(i): "The reviewed financial statements of the Company . . . and internally-prepared balance sheet and income statement . . . (B) present fairly the financial position of the Company of such date and the results of operations of the Company for such period in all material respects; (C) contain no untrue statements of material fact, do not omit any material fact necessary to make such Financial Statements not misleading . . . ." Berg Decl., Ex. 2, at 15.

- Purchase Agreement § 3.3(g)(iii): "The financial projections . . . are reasonable and complete, and (1) reflect the Company's best efforts to accurately and correctly project the future operations of the Company; and (2) to the Seller's Knowledge there are no material adjustments that should be made to such financial projections to make the financial projections reasonable and complete." *Id.* at 16.

The Trustee does not allege that the financial statements were ***inaccurate***. "[A]ccurately reported income that is obtained from an unlawful source may not be actionable only on the grounds that the unlawful source is not disclosed." *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 442 (S.D.N.Y. 2018); *see also In re Henry Schein, Inc. Sec. Litig.*, No. 18-cv-01428, 2019 WL 8638851, at *16 (E.D.N.Y. Sept. 27, 2019) (accurate historical financial data not rendered misleading by failure to "simultaneously disclose some wrongdoing that may have contributed to the company's financial performance"). The Trustee has not pled a single fact to support that the Debtor's financials were inaccurate.

Representations based on projections are not fraudulent. "[P]redictions of future earnings or profits fall within the class of statements whose truth or falsity cannot be precisely determined and which are not, therefore, actionable as misrepresentations of fact." *Dahl v. Messmer*, 719 N.W.2d 341, 345 (N.D. 2006).

The Trustee admits that the Debtor graduated from the 8(a) Program in 2017 and, therefore, was not even eligible for 8(a) Set-Aside Contracts at the time of the ESOP Transaction.  Compl. ¶¶ 29, 45.  The Trustee further admits that after the ESOP Transaction, the Debtor was not eligible for WOSB Set-Aside Contracts (because the Debtor would no longer be woman-owned—it would be owned by employees).  *Id.* ¶¶ 105-06, 127.  Based on the Trustee's own allegations, the Debtor's financial projections could not and would not have included anticipated revenue from future 8(a) and WOSB Set-Aside Contracts—and the Trustee does not plead otherwise.  Any fraud claim based on the alleged misrepresentation in Section 3.3(g)(iii) must fail.  The Court must dismiss any claim based on Sections 3.3(g)(i) or (iii) in Claims 25 and 28.

> **v.  Connie Berg did not defraud the ESOP Trust because she did not make a false representation in Section 3.3(h) of the Purchase Agreement.**

The Trustee alleges that Section 3.3(h) contains a false representation because Connie Berg knew (but failed to disclose to the ESOP Trustee) that the Debtor was not eligible for 8(a) and WOSB Programs and for 8(a), WOSB, or small-business Set-Aside Contracts.  *Id.* ¶ 153.  Section 3.3(h) states:

> The Company has complied in all respects with the eligibility and other requirements of any License or Permit.

Berg Decl., Ex. 2, at 17-18.

The Debtor's eligibility under the 8(a) and WOSB Programs for Set-Aside Contracts was not a "License or Permit" as defined in the Purchase Agreement.  In Disclosure Schedule 3.3(h), the Purchase Agreement disclosed "all Licenses and

Permits required to conduct [the Debtor's] business." *Id.* at 17, 49.  Disclosure

Schedule 3.3(h) stated that there were "none." *Id.* at 49.  Connie Berg did not

represent that the Debtor's eligibility for 8(a) and WOSB Programs and the Debtor's

Set-Aside Contracts were a "License or Permit."  Therefore, Connie Berg did not

falsely represent that the Debtor had complied with requirements of the 8(a) and

WOSB Programs or Set-Aside Contracts.

The Purchase Agreement's definition of "Licenses and Permits" confirms that

conclusion:

> [L]icenses, permits, certifications, franchises, authorizations,
> registrations, approvals, and certificates of occupancy (or their
> equivalent) issued or granted to the Company with respect to its
> business by the government of the United States . . . .

*Id.* at 7.

The Debtor's 8(a) certification was not a "License or Permit" when the

Purchase Agreement was executed.  The Debtor graduated from the 8(a) Program in

2017, years before the Purchase Agreement was contemplated, let alone executed in

August 2020.  Compl. ¶¶ 29, 45.

The Debtor's WOSB status was not a "License or Permit."  The Debtor self-

certified its eligibility for the WOSB Program, so the certification was not "issued or

granted" by the United States.  *Id.* ¶ 40.

The Debtor's small business status was also not a "License or Permit"

because the United States did not certify the Debtor as an eligible "small business"

for associated Set-Aside Contracts.  *Id.* ¶ 43.  Nor were Set-Aside Contracts a

"License or Permit" under the plain language of the Purchase Agreement.

Assuming the Debtor was not eligible for 8(a) and WOSB Programs and for 8(a), WOSB, or small-business Set-Aside Contracts, Connie Berg did not falsely represent that the Debtor had complied with the "requirements of any License or Permit" because none was a "License or Permit." The Court must dismiss the claims based on Section 3.3(h) in Counts 25 and 28.

**2. Any purported misrepresentation is not actionable because the Trustee alleges that the Debtor knew, and the ESOP Trustee should have known, of the purportedly misrepresented and omitted information.**

A fraud claim fails as a matter of law "[w]hen the means of knowledge are open and at hand . . . and no effort is made to prevent the party from using them, and especially where the purchaser undertakes examination for himself." *Shappirrio v. Goldberg*, 192 U.S. 232, 241-42 (1904); *see also Molbert v. Kornkven*, 910 N.W.2d 888, 894 (N.D. 2018) (shareholders' fraud claim against another shareholder failed as matter of law because they had access to all material information); *Myzel v. Fields*, 386 F.2d 718, 736 (8th Cir. 1967) (claim "based upon nondisclosed facts equally known or available to both parties" fails to state securities fraud claim). The same is true for a claim for breach of fiduciary duty based on an alleged failure to disclose. *See Molbert*, 910 N.W.2d at 895 (no breach of fiduciary duty where plaintiffs knew or had the opportunity to learn all material facts to a transaction); *Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 337 F. Supp. 2d 1243, 1252 (D. Kan. 2004) ("A director [of a parent corporation] does not have a fiduciary duty to disclose information where the complaining party [a subsidiary] already knows such information.").

"[O]nce the facts are disclosed, a failure to articulate adverse inferences from or pejorative descriptions of those facts is not materially deceptive: a reasonable person would not be deceived by their nondisclosure, since he would be able to draw whatever inferences and append whatever characterizations he believed appropriate." *Klamberg v. Roth*, 473 F. Supp. 544, 552 (S.D.N.Y. 1979); *see also White v. Marshall & Ilsley Corp.*, No. 10-cv-311, 2011 WL 2471736, at *11 (E.D. Wis. June 21, 2011) (corporation's failure to "use[] the [plaintiff's] same descriptive language" not a violation of duty to disclose where corporation "disclosed the facts underlying [plaintiff's] claim"), *aff'd*, 714 F.3d 980 (7th Cir. 2013).

### i. Any alleged misrepresentation in Section 5.3(c) of the Initial Loan Agreement is not actionable because the Trustee alleges that Paredes knew the purportedly misrepresented and omitted information.

The Trustee alleges that Section 5.3(c) of the Initial Loan Agreement contains a materially false representation because "Connie Berg's execution, delivery, and performance of the Initial Seller/ESOP Loan Agreement . . . was a prohibited transaction under [ERISA]." Compl. ¶ 300. Section 5.3(c) states:

> The execution, delivery, and performance of this Agreement by the Seller [Connie Berg] does not and will not . . . violate any law, regulation, judgment, or order applicable to the Seller [Connie Berg].

Berg Decl., Ex. 3, at 3. ERISA defines a "prohibited transaction" as a transaction between an ESOP trust and a party in interest (including certain shareholders, officers, and directors and their relatives), unless the transaction involved the ESOP trust purchasing the company's stock from a party in interest for adequate consideration. 29 U.S.C. §§ 1106, 1108(e).

If Section 5.3(c) contained a misrepresentation, it is not actionable because the Trustee alleges that Paredes should have known, had he reviewed the information available to him, that the ESOP Transaction was a prohibited transaction under ERISA.  As alleged in the Complaint:  (1) Connie Berg sold her shares of the Debtor to the ESOP Trust;  (2) Connie Berg was an officer and director of the Debtor, making her a "party in interest"; and (3) the ESOP Trust "paid substantially more than adequate consideration for the Debtor's capital stock"—the elements of a prohibited transaction under ERISA.  Compl. ¶¶ 20, 128, 178; Berg Decl. Ex. 2, at 37-39.

Any alleged misrepresentation in Section 5.3(c) is not actionable as a matter of law based upon the Trustee's own allegations in the Complaint.  As such, the Court must dismiss the claims based on Section 5.3(c) of the Initial Loan Agreement in Counts 25 and 28.

> **ii.   Any alleged omission or misrepresentation concerning revenue from fraudulently obtained Set-Aside Contracts is not actionable because the Trustee alleges the Debtor knew the purportedly misrepresented and omitted information.**

The Trustee alleges that the Bergs breached their fiduciary duty owed to the Debtor by "concealing and failing to disclose in connection with the ESOP transaction that a material amount of the Debtor's revenue was attributable to fraudulently obtained Set-Aside Contracts."  Compl. ¶¶ 252, 258.  As discussed above, *see supra* Section V.B.1.iii,  the Trustee also alleges that Section 3.2(g) of the Purchase Agreement contains a materially false representation "because Connie Berg knew that a material amount of the Debtor's revenue was attributable to

fraudulently obtained Set-Aside Contracts and the ESOP valuation was, therefore, inflated." *Id.* ¶ 145.

The Trustee, however, as explained below, also alleges that ***the Debtor knew***:  (1) a material amount of the Debtor's revenue was attributable to Set-Aside Contracts obtained based on the 8(a) and WOSB Programs and as a small business, and (2) the Debtor was not eligible for the 8(a) or WOSB Programs and was not a small business.  In other words, the Trustee admits that the Debtor knew the underlying facts, but claims that the Bergs' failure to expressly describe the Debtor's conduct as "fraud" renders Bergs' omission fraudulent.  Where the facts are disclosed, the failure to articulate "pejorative descriptions of those facts" is not fraud.  *Klamberg*, 473 F. Supp. at 552; *see also Molbert*, 910 N.W.2d at 894-95 (dismissing fraud and breach of fiduciary duty claims where plaintiffs knew or had access to the allegedly misrepresented or omitted facts).  Thus, the Trustee cannot state a claim that the Bergs breached a fiduciary duty owed to the Debtor (if they owed that duty) or defrauded the Debtor by failing to expressly describe the Debtor's actions—which the Debtor knew about—as "fraud."

The Debtor's knowledge, as alleged by the Trustee, came from:  (1) the Confidential Information Memorandum ("CIM")[14] prepared by the Debtor's

---

[14] The Court may consider the CIM, attached as an exhibit to the Berg Declaration because the document's contents are "alleged in [the] complaint" and there is no question as to its authenticity.  *Ryan*, 889 F.3d at 505; *see also Miller*, 688 F.3d at 931 n.3. Compl. ¶ 169.

**BERG DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS UNDER
FEDERAL RULES OF CIVIL PROCEDURE 9(b) AND 12(b)(6)**                    **Page 29**

independent financial advisor, and (2) the Debtor's employees' knowledge, which is
imputed to the Debtor.

> **a) The CIM disclosed to the Debtor (and the ESOP
> Trustee) the facts that the Trustee classifies as
> "fraud."**

The CIM prepared by the Debtor's independent financial advisor informed
the Debtor that:  (1) a material amount of the Debtor's revenue was attributable to
Set-Aside Contracts that the Debtor obtained under the WOSB Program and as a
small business, and (2) the Debtor would not be eligible for the WOSB Program and
could lose its small-business eligibility after the ESOP Transaction.  Compl. ¶ 169.

The CIM disclosed:

- "In the early years, being a WBE (Women's Business Enterprise)
  business was important in securing contracts; in 2019 the firm
  estimated that less than 5% of their revenue was due to its WBE
  designation."  Berg Decl., Ex. 5 at 12.

- Listed under "Threats":  "Loss of the WBE status," and "Outgrowing the
  Small Business Designation."  *Id.* at 25.

- Listed under "Weaknesses":  "Reliance upon Small Business Set Asides
  that they may outgrow."  *Id.*

The CIM also gave notice of other facts that the Trustee now claims as fraud:

- "Historically, Connie's role at [the Debtor] has been de minimis."  *Id.* at
  12.

- Kyle Berg is "involved with all significant operating decisions and
  represents the [Debtor] in major negotiations and large bids."  *Id.*

- The Leadership Organization Chart.  *Id.* at 11.

## Leadership Org Chart



- "[R]elationships are managed at multiple levels, from senior-level attention by Kyle Berg and Chad DuBois, to the individual Project Managers and job-site Superintendents."  *Id.* at 18.

- "[The Debtor] initially focused on retail apparel and promotional items," but "[i]n a dramatic 'pivot' in 2007, Connie and Kyle Berg had the foresight and courage to utilize Kyle's background and experience in construction and contracting and shifted Pro-Mark's focus to competing for federal construction projects."  *Id.* at 10.

- "[The Debtor] establishe[d] an SBA-approved Mentor-Protégé Agreement (MPA) with Razor Consulting."  *Id.*

- "[T]he [Debtor] has listed five Joint-Venture [contracts] where they are working in conjunction with selected JV partners (typically a WBE, 8(a), or SDVOSB).  On these contracts, the revenues are not reflected on Pro-Mark's books, only the profit is recorded, on a pro-rata basis based on ownership in the JV (typically 49%), as earned."  *Id.* at 31.

### b) The Trustee alleges that the Debtor's employees knew of the purported fraud.

The Trustee alleges that the Debtor's employees knew that:  (1) a material amount of the Debtor's revenue was attributable to Set-Aside Contracts that the Debtor obtained under the 8(a) and WOSB Programs and as a small business, and

**BERG DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS UNDER
FEDERAL RULES OF CIVIL PROCEDURE 9(b) AND 12(b)(6)**                    **Page 31**

(2) the Debtor was not eligible for the 8(a) or WOSB Program and was not a small

business. *See Emps. Reinsurance Corp. v. Landmark*, 547 N.W.2d 527, 535 (N.D.

1996) (knowledge of "agents of a corporation is imputed to the corporation").

The Trustee alleges that the Debtor's employees knew:

- "[I]t was general knowledge within the company" that "the Bergs had been applying for government contracts on the basis of the Debtor being woman owned/controlled." Compl. ¶ 188.

- DuBois and Grant "knew that the Debtor was enrolled in the WOSB Program, had been enrolled in the 8(a) Program, designated itself as a small business, and had applied for and received Set-Aside Contracts on those bases." *Id.* ¶¶ 183, 204.

- "DuBois knew that a material amount of the Debtor's revenue was attributable to fraudulently obtained Set-Aside Contracts." *Id.* ¶ 195.

- "The Debtor's employees, including senior employees and construction project managers, openly recognized that Kyle Berg—not Connie Berg—controlled the Debtor. They considered him to be their immediate or ultimate supervisor, and they looked to him for direction and answers about issues that arose during their employment. The Debtor's employees never sought guidance from Connie Berg regarding the Debtor's construction business." *Id.* ¶ 63.

- "In the rare instances when [Connie Berg] communicated with the Debtor's employees, she used a personal Hotmail email address. By Contrast, Kyle Berg sent thousands of emails from his Debtor-sponsored email address to the Debtor's employees . . .  concerning the Debtors' strategic and day-to-day construction work, and he received thousands of e-mails from those individuals . . .  regarding the Debtor's business at that same e-mail address." *Id.* ¶ 64.

- "[M]eeting the Debtor's employees" would have led Paredes to "discover[] that Connie Berg did not actually operate or control the Debtor, that Kyle Berg ran the Debtor's day-to-day communications . . . ." *Id.* ¶ 177.

- "[Dubois and Grant] knew that the Debtor did not actually qualify for the WOSB and 8(a) Programs." *Id.* ¶¶ 184, 204.

- The Debtor's employees "routinely" "perform[ed] necessary office work and bid for government contracts" on OK2's behalf. *Id.* ¶ 97.

- One of the Debtor's employees recognized that "the Debtor 'basically does all the work for Razor when it comes to the construction side' of the business" and that "he spent at least 25 hours per week on Razor projects, while Razor employees 'spend 0' hours per week on construction projects." *Id.* ¶ 72.

- "[M]eeting the Debtor's employees" would have led Paredes to "discover[] that . . . the Debtor had substantial affiliations with numerous entities controlled by Kyle Berg, rendering it ineligible for the Set-Aside Contracts *Id.* ¶ 177.

- Dubois and Grant "knew that the Debtor . . . was not a small business due to its various affiliations." *Id.* ¶¶ 184, 204.

The Trustee argues that the knowledge of DuBois and Grant (but not other employees) "is not imputed to the Debtor because each of them committed a fraud on the Debtor and/or consented to the commission of a fraud on the Debtor." *Id.* ¶¶ 302, 489. *See also* N.D. CENT. CODE § 10-19.1-01.2(7) (exception to imputation of agent's knowledge to corporation only "in the case of a fraud *on the corporation*"). The Trustee does not—and could not—plead that DuBois or Grant defrauded the Debtor under North Dakota law because the Trustee does not identify a contract between them. *See Erickson v. Erickson*, 782 N.W.2d 346, 348-49 (N.D. 2010) (to state fraud claim, plaintiff must identify a contract between the parties).

The Trustee also fails to allege facts supporting the second exception. He does not explain how, when, or by what actions DuBois and Grant consented to any purported fraud on the Debtor, falling short of the Rule 9(b) pleading standard. The Trustee's statement that DuBois and Grant's knowledge "is not imputed to the Debtor" because they each committed or consented to the commission of the fraud

on the Debtor is exactly the "formulaic recitation" of a statutory provision that is

"conclusory and not entitled to be assumed true." *Iqbal*, 556 U.S. at 681 (citation

omitted). The Trustee's allegation is also a legal conclusion that the Court need not

accept. *See Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th

Cir. 2021) (when deciding motion to dismiss, Court "not bound to accept as true a

legal conclusion couched as a factual allegation" (quoting *Iqbal*, 556 U.S. 678)).

Any claim based upon an omission by the Bergs during negotiations and any

misrepresentation in Section 3.2(g) fails because the Trustee alleges that the Debtor

knew the purportedly misrepresented or omitted information. *See Myzel*, 386 F.2d

at 736 (fraud); *Molbert*, 910 N.W.2d at 895 (fiduciary duty). The Court must

dismiss such claims in Counts 1 and 2, as well as in Counts 8 and 28.

### iii. Any alleged misrepresentation in the Purchase Agreement is not actionable because the Trustee alleges that the ESOP Trustee should have known the purportedly misrepresented and omitted information.

The Trustee alleges that misrepresentations and omissions in the Purchase

Agreement fraudulently induced the ESOP Trust to enter the ESOP Transaction.

The Trustee also alleges that Paredes should have known, had he conducted

standard due diligence, that the representations were false and based on omitted

information. Based upon the Trustee's own allegations, any such misstatement or

omission is not actionable. *See Shappirio*, 192 U.S. at 241-42; *Molbert*, 910 N.W.2d

at 894-95.

First, the Trustee challenges the following representations as "false because

Connie Berg knew that a material amount of the Debtor's revenue was attributable

to fraudulently obtained Set-Aside Contracts and the ESOP valuation was, therefore, inflated."  Compl. ¶¶ 145, 147, 151, 155.

- Purchase Agreement § 3.2(g):  "There is no claim, legal action, suit, arbitration, governmental investigation or other legal or administrative proceeding . . . relating to this Agreement or the transactions contemplated by this Agreement, and the Seller does not know of any reason for, nor have any reason to be aware of, any basis for the same." Berg Decl., Ex. 2, at 14.

- Purchase Agreement § 3.3(g)(i):  "The reviewed financial statements of the Company . . . and internally-prepared balance sheet and income statement . . . (B) present fairly the financial position of the Company of such date and the results of operations of the Company for such period in all material respects; (C) contain no untrue statements of material fact, do not omit any material fact necessary to make such Financial Statements not misleading . . . ."  *Id.* at 15.

- Purchase Agreement § 3.3(g)(iii):  "The financial projections . . . are reasonable and complete, and (1) reflect the Company's best efforts to accurately and correctly project the future operations of the Company; and (2) to the Seller's Knowledge there are no material adjustments that should be made to such financial projections to make the financial projections reasonable and complete."  *Id.* at 16.

- Purchase Agreement § 3.3(j):  "Neither the Seller nor the directors and officers nor the employees with responsibility for litigation matters of the Company have any reason to believe that any such action, suit, proceeding, hearing, or investigation may be brought or threatened against the Company."  *Id.* at 18-19.

Yet, the Trustee also alleges that Paredes, as ESOP Trustee, should have known that a material amount of the Debtor's revenue was attributable to fraudulently obtained Set-Aside Contracts and that the ESOP valuation was inflated:

- "A material amount of the Debtor's historical revenue was attributable to Set-Aside Contracts that the Debtor received via the 8(a) and WOSB Programs, and as a small business.  For example, on information and belief, about 26.5% of the Debtor's total revenue in the 4-year period before the ESOP transaction derived from the 8(a) and WOSB Programs.  Additionally, the Debtor's entire business revolved around federal contracting.  Thus, Paredes had every reason to investigate and

vet, and should have investigated and vetted, the Debtor's Set-Aside Contracts and its eligibility for SBA's contracting programs." Compl. ¶ 166.

- "Had Paredes conducted basic, industry standard due diligence and retained appropriate advisors, he would have discovered . . . that the $31,559,000 valuation was grossly over-inflated, and that the ESOP Plan and ESOP Trust paid substantially more than adequate consideration for the Debtor's capital stock." *Id.* ¶ 178.

Any misrepresentation in Sections 3.2(g), 3.3(g)(i), 3.3(g)(iii), and 3.3(j), therefore, is not actionable because "the means of knowledge [were] open and at hand." *Shappirrio*, 192 U.S. at 241-42.

Second, the Trustee challenges the following representations as "false because Connie Berg allegedly failed to disclose that the Debtor faced substantial liability to the federal government for, without limitation, its actions in defrauding SBA, the 8(a) Program, and the WOSB Program." Compl. ¶ 149.

- Purchase Agreement § 3.3(g)(ii): "[T]he Company does not have any material liabilities or obligations." Berg Decl., Ex. 2 at 16.

- Purchase Agreement § 3.3(g)(v)(M): "The Company has not incurred any debt, liability, or obligation of any nature, whether accrued, absolute, contingent, or otherwise, and whether due or to become due, that is not included in the interim Financials." *Id.* at 17.

The Trustee also alleges, however, that Paredes should have known that the Debtor faced substantial liability to the federal government for the purported fraud:

> Had Paredes conducted basic, industry standard due diligence and retained appropriate advisors, he would have discovered that the Debtor defrauded SBA over many years and had substantial undisclosed liabilities.

Compl. ¶ 178. Any misrepresentation or omission in Sections 3.3(g)(ii) and (v) is not actionable because "the means of knowledge [were] open and at hand." *Shappirrio*,

192 U.S. at 241-42.  Indeed, the Trustee alleges "basic" and "industry standard" due diligence would have uncovered the Bergs' purported fraud.  Compl. ¶ 178.

Third, the Trustee challenges the following representations as "false because Connie Berg knew that the Debtor did not qualify for the 8(a) and WOSB Programs, was not a small business, and was not eligible for associated Set-Aside Contracts." *Id.* ¶¶ 153, 157, 159.

- Purchase Agreement § 3.3(h):  "The Company has complied in all respects with the eligibility and other requirements of any License or Permit."  Berg Decl., Ex. 2, at 17-18.

- Purchase Agreement § 3.3(m):  "[T]he Company is in compliance with all applicable Laws."  *Id.* at 19.

- Purchase Agreement § 3.3(o):  "The Disclosure Schedule lists each Material Contract currently in effect as of Closing . . . .  With respect to each Material Contract: (A) the Material Contract is legal, valid, binding, enforceable, and in full force and effect against the Company; (B) the Material Contract will continue to be legal, valid, binding, enforceable, and in full force and effect on identical terms following the consummation of the transactions contemplated by this Agreement; (C) the Company is not, nor, to the Seller's Knowledge, any other party is in breach or default under any of the Material Contracts, and to Seller's Knowledge no event has occurred which, with notice or lapse of time, would constitute a material breach or default, or permit termination, modification, or acceleration under a Material Contract. . . ."  *Id.* at 20.

But the Trustee also alleges that Paredes should have known that the Debtor was not eligible for the Set-Aside Contracts:

> With just basic diligence. . . Paredes would have discovered that Connie Berg did not actually operate or control the debtor, that Kyle Berg ran the Debtor's day-to-day operations, and that the Debtor had substantial affiliations with numerous entities controlled by Kyle Berg, rendering it ineligible for the Set-Aside Contracts.

Compl. ¶ 177.  As a result, any misrepresentation in Sections 3.3(h), (m), or (o) is not actionable because "the means of knowledge [were] open and at hand." *Shappirrio*, 192 U.S. at 241-42.  Again, the Trustee alleges "basic due diligence" would have identified the Bergs' purportedly fraudulent scheme.  Compl. ¶ 165.

The Trustee alleges that Paredes "reasonably should already [have been] aware of" the information that allegedly rendered the representations false and that Connie Berg allegedly failed to disclose.  Any misstatement or omission in the Purchase Agreement is not actionable because Paredes had access to the purportedly misrepresented and omitted information, and mere basic, industry standard due diligence would have identified the Bergs' purported fraud.  *See Molbert*, 910 N.W.2d at 894-95; *Myzel*, 386 F.2d at 736.  The Court must dismiss the claims based on representations in the Purchase Agreement in Counts 25 and 28.

### 3. The fiduciary duty and fraud claims must be dismissed because the Trustee alleges contradictory facts in support of those claims.

"It is well established that, where a plaintiff's 'own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss.'"  *Pierce v. Fordham Univ., Inc.*, No. 15-cv-4589, 2016 WL 3093994, at *2 n.1 (S.D.N.Y. June 1, 2016) (quoting *Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*, No. 10-cv-1777, 2011 WL 381612, at *6 (E.D.N.Y. Feb. 2, 2011)), *aff'd*, 692 F. App'x 644 (2d Cir. 2017); *see also Accurate Grading Quality Assur., Inc. v. Thorpe*, No. 12-cv-1343, 2013 WL 1234836, at *8 (S.D.N.Y. Mar. 26, 2013) ("A court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that

would render a claim incoherent, or that are contradicted . . . by statements in the complaint itself."). While a plaintiff may plead inconsistent claims, a plaintiff may not allege inconsistent facts. *See* FED. R. CIV. P. 8(d)(3) (permitting inconsistent claims); *Blankenship v. Louisville-Jefferson Cnty. Metro Gov't*, No. 23-cv-235, 2024 WL 1221180, at *6 n.3 (W.D. Ky. Mar. 21, 2024) (prohibiting inconsistent factual allegations); *Thorpe*, 2013 WL 1234836, at *8 (same).

Applying this rule, courts routinely dismiss claims premised on factual allegations that contradict other allegations. *See, e.g.*, *Jacoby v. Cable News Network, Inc.*, 537 F. Supp. 3d 1303, 1313 (M.D. Fla. 2021) (dismissing Count II because "[t]he Court cannot accept as true Plaintiff's Count I that this statement is false, while also accepting as true Plaintiff's allegation in Count II that this same statement is true"); *Aaron v. Medtronic*, 209 F. Supp. 3d 994, 1015-16 (S.D. Ohio 2016) (dismissing fraud claims where plaintiffs alleged defendant's agent "simultaneously had and did not have knowledge of the true facts"); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095-96 (2d Cir. 1995) (upholding dismissal where allegations supporting claim were "contradicted . . . by more specific allegations").

The Trustee alleges facts to support his fiduciary duty and fraud claims that contradict other facts in the Complaint. For example, the Trustee alleges that the Bergs breached fiduciary duties and defrauded the Debtor by omitting and misrepresenting facts because "the Debtor reasonably relied on Connie Berg's representations." Compl. ¶ 303. The Trustee simultaneously alleges that the

Debtor knew the purportedly misrepresented and omitted information.  *See supra*

Section V.B.2.ii; Compl. ¶¶ 63-64, 72, 97, 177, 183-84, 188, 195, 204.

The Trustee alleges that the Bergs defrauded the ESOP Trust by omitting

and misrepresenting material facts because Paredes "reasonably relied on Connie

Berg's representations."  Compl. ¶ 467.  The Trustee also alleges that Paredes

should have known of the purportedly misrepresented and omitted information

through "basic" or "industry standard" due diligence.  *See supra* Section V.B.2.i, iii;

Compl. ¶¶ 166, 177-78.  The Trustee's contradictory factual allegations in support of

the fiduciary duty and fraud claims defeat those claims.  *See Aaron*, 209 F. Supp. 3d

at 1015 (complaint pled inconsistent facts where it alleged person was "justified in

relying on . . . Defendants' concealment of information and misrepresentations" but

also knew such information was false).  The Trustee's factual allegations are

inconsistent and contradictory, and the Court must dismiss the claims in Counts 1,

2, 8, 25, and 28.

### 4. Allegations that Connie Berg's misrepresentations in the Purchase Agreement defrauded the ESOP Trust are not pled with particularity.

The Trustee alleges that several statements in the Purchase Agreement

fraudulently induced the ESOP Trustee to enter the ESOP Transaction because

Connie Berg did not disclose that the Debtor had fraudulently obtained Set-Aside

Contracts.  Compl. ¶¶ 153, 157, 159.  The Trustee alleges that representations in

Section 3.3(h) fraudulently induced the ESOP Trust because each Set-Aside

Contract was a "License or Permit," and by fraudulently obtaining each Set-Aside

Contract, the Debtor had not "complied in all respects with the eligibility and other requirements of any License or Permit."  Berg Decl., Ex. 2, at 17-18.

The Trustee further alleges that representations in Section 3.3(m) fraudulently induced the ESOP Trust because the Debtor had fraudulently obtained Set-Aside Contracts and, therefore, was not "in compliance with all applicable Laws."  *Id.* at 19.

Finally, the Trustee also alleges that representations in Section 3.3(o) fraudulently induced the ESOP Trust because "[m]any of the 'Material Contracts' were Set-Aside Contracts," each Set-Aside Contract was fraudulently obtained, and therefore "[m]any of the 'Material Contracts'" were not "legal, valid, binding, enforceable, and in full force and effect."  *Id.* at 20.

The Trustee's allegations of fraud are not pled with particularity, as required by Rule 9(b).  The Trustee does not identify a single Set-Aside Contract that the Debtor fraudulently obtained.  *See Star City Sch. Dist.*, 844 F.3d at 1016 (Rule 9(b) requires plaintiff to allege with particularity "what was obtained" by fraud).  The Trustee fails to allege that the representations about Licenses or Permits, compliance with applicable laws, and Material Contracts fraudulently induced the ESOP Trust because he does not identify what was obtained by the purported fraud. The Trustee also fails to allege what "applicable laws" the Debtor violated.

The Court must dismiss the claims based on alleged fraud in Counts 25 and 28.

**5. The allegations that the Bergs committed securities fraud by employing a scheme to defraud the Debtor and the ESOP Trust are not pled with sufficient particularity.**

The Trustee alleges that Connie Berg and Kyle Berg committed securities fraud against the Debtor and the ESOP Trust because they "employed a scheme to defraud the ESOP Trust, ESOP Plan, and the Debtor in order to enrich themselves." Compl. ¶ 488. If the alleged "scheme" was making the alleged false representations and omissions, this claim fails because none of the purported misrepresentations or omissions is actionable, as explained above.[15] Otherwise, if the Trustee asserts an independent theory for securities fraud, the Trustee fails to plead that claim with particularity. The absence of a single factual allegation concerning the purported "scheme" makes it the type of "conclusory and generalized allegation[]" that is insufficient to state a claim for fraud. *Ex rel. Strubbe*, 915 F.3d at 1163. The Court must dismiss the claim based on this alleged fraud in Count 28.

**6. The Debtor cannot recover damages for purported breach of the Purchase Agreement, which limits the available remedy to indemnification.**

North Dakota "recognizes a major public policy of freedom to contract." *Markwed Excavating, Inc. v. City of Mandan*, 791 N.W.2d 22, 28 (N.D. 2010) (cleaned up). "Normally, parties to a contract are allowed to write the terms of the

---

[15] In support of the securities fraud claim, the Trustee lists purported omissions. Compl. ¶ 486. These purported omissions are the same ones that the Trustee alleges rendered the statements in the Purchase Agreement false or misleading for the actual fraud and breach of fiduciary duty claims. *Id.* ¶¶ 145, 147, 149, 151, 153, 155, 157, 159, 161, 252, 298-99, 465. Similarly, in support of the securities fraud claim, the Trustee repeats the alleged misrepresentations in the Purchase Agreement. *Id.* ¶¶ 252, 258, 298-99, 465. As explained above, these alleged misrepresentations and omissions are not actionable. *See supra* Section V.B.2.

contract themselves." *E.E.E., Inc. v. Hanson*, 318 N.W.2d 101, 104 (N.D. 1982).
Where the parties "fix[] the remedy available to the buyer" the plaintiff has "no
remedy other than thus provided." *Palaniuk v. Allis-Chalmers Mfg. Co.*, 220 N.W.
638, 640 (N.D. 1928).

The Parties to the Purchase Agreement agreed that the only remedy
available for breach of the Purchase Agreement would be indemnity: "From and
after the Closing, the Parties shall indemnify each other as provided in this Article
6." Berg Decl., Ex. 2 at 31. "Except for claims for fraud, the provisions of this
Article 6 shall be the sole and exclusive remedy for breaches of representations,
warranties, and covenants contained in this Agreement . . . ." *Id.* at 33.

Because the Parties agreed to indemnity as the exclusive remedy for any
breach, the Trustee's claim seeking damages for breach of Section 3.2(g) of the
Purchase Agreement is barred. The Court must dismiss Count 6.

### C. North Dakota does not recognize a tort for "aiding and abetting."

The Trustee asserts aiding and abetting claims against Kyle Berg. Compl.
¶¶ 261-65 (Count 3), 470-74 (Count 26). The Trustee fails to state a claim for
"aiding and abetting" because North Dakota does not recognize it as an independent
tort.[16] The Court must dismiss Count 3 and Count 26.

---

[16] Instead, by statute, North Dakota has provided that "tortfeasors who act in concert are
jointly liable for all damages attributable to their combined percentage of fault." *Tibert v. Nodak
Mut. Ins. Co.*, 816 N.W.2d 31, 39 (N.D. 2012). But that provision "does not create an independent
basis of liability, rather it deals with the allocation of damages among those already at fault." *Hurt
v. Freeland*, 589 N.W.2d 551, 557 (N.D. 1999). To interpret that statute, the North Dakota Supreme
Court looks to "other jurisdictions" to determine the meaning of "in concert," further showing that

### D. The Trustee's ERISA claims fail to state a claim under Federal Rule 12(b)(6).

#### 1. The Bergs could not breach a fiduciary duty owed to the ESOP Trust because they were not fiduciaries for the ESOP Transaction.

In Count 22, the Trustee alleges that the Bergs breached fiduciary duties owed to the ESOP Trust under ERISA "by allowing the ESOP transaction to close." *Id.* ¶ 439.

The elements of a breach of fiduciary duty claim under ERISA are: "1) defendant was a fiduciary of the plan, 2) defendant was acting in that capacity, and 3) defendant breached a fiduciary duty." *Delker v MasterCard Int'l, Inc.*, 21 F.4th 1019, 1025 (8th Cir. 2022) (citation and quotation marks omitted)).

Under ERISA, "[f]iduciary duty is not an all-or-nothing concept." *Flake v. Hoskins*, 55 F. Supp. 2d 1196, 1218 (D. Kan. 1999). Instead, a person is a fiduciary "only when fulfilling certain defined functions." *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) (citation and quotation marks omitted). ERISA provides three "defined functions":

> [A] person is a fiduciary with respect to a plan to the extent:
>
> > (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,
> >
> > (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys

---

North Dakota recognizes no independent tort for aiding and abetting, or an analogous tort for concerted action. *Id.*; *Ward v. Bullis*, 748 N.W.2d 397, 407 (N.D. 2008).

> or other property of such plan, or has any authority or
> responsibility to do so, or
>
> (iii) he has discretionary authority or discretionary
> responsibility in the administration of such plan.[17]

29 U.S.C. § 1002(21)(A).  For each allegedly wrongful activity, a plaintiff must
establish that the defendant fulfilled a statutorily defined function for that activity.
*See Flake*, 55 F. Supp. 2d at 1218 ("[D]efendants have fiduciary duties only over
those activities for which they are responsible."); *see also Martin v. Feilen*, 965 F.2d
660, 669 (8th Cir. 1992) (determining whether defendants were fiduciaries "for each
of the Transactions subject to ERISA").

The Trustee fails to plead facts that demonstrate the Bergs were fiduciaries
"to the extent of" the ESOP Transaction.  Instead, the Trustee fails to allege facts
establishing any fiduciary duty with respect to the ESOP Transaction.  The Trustee
alleges that the Bergs were fiduciaries because they controlled the Debtor, which
was the ESOP Trust's plan administrator.  Compl. ¶¶ 437-38.  The Bergs were not
fiduciaries "to the extent of" the ESOP Transaction based solely on control of the
Debtor because control of the plan administrator, by itself, is insufficient to create a
fiduciary duty.  *See* 29 C.F.R. § 2509.75-8 (members of the board of directors,
officers, shareholders, or employees of named fiduciary are not fiduciaries "with
respect to the plan solely by reason of holding such office or employment if [they]

---

[17] In addition, a person named in plan documents as a fiduciary and given "authority to
control and manage the operation of the plan" is a "named fiduciary."  29 U.S.C. § 1102(a); *Martin v.
Feilen*, 965 F.2d 660, 668 (8th Cir. 1992).  The Trustee does not allege that Connie Berg or Kyle Berg
was a named fiduciary.

perform[] none of the functions described in [§ 1002(21)(A)].”); *Jensen v. SIPCO, Inc.*, 867 F. Supp. 1384, 1395 (N.D. Iowa 1993), *aff'd,* 38 F.3d 945 (8th Cir. 1994) (directors, officers, and shareholders of ERISA sponsor may be fiduciaries of the plan only where they perform the functions listed in Section 1002(21)(A)).

The Trustee also alleges a fiduciary duty arose because the Bergs exercised “authority and/or control over the management of the ESOP Plan and ESOP Trust and over the management and disposition of the ESOP Plan's and ESOP Trust's assets.” Compl. ¶¶ 437-38. Because the ERISA plan documents grant another person exclusive power to conduct the transaction (Paredes), the Bergs cannot be fiduciaries “to the extent” of the ESOP Transaction. *See In re Bear Stearns*, 763 F. Supp. 2d 423, 567 (S.D.N.Y. 2011) (where text of ERISA plan “expressly and exclusively gives the Plan Participants the authority to order their accounts divested of Bear Stearns stock or diversified,” Investment Committee could not breach fiduciary duty by failing to divest or diversify because Investment Committee “did not have the authority, discretion, or duty to divest or diversify”); *Flake*, 55 F. Supp. 2d at 1219 (where ERISA “plan gave defendants the power to ‘administer’ or ‘manage’ the trust” but gave ESOP trustee exclusive authority to sell ESOP shares, defendants were not fiduciaries with respect to “disposition of ESOP assets”).

The ESOP Trust Agreement gave the ESOP Trustee (1) sole power and discretion to execute the ESOP Transaction; (2) power and discretion to purchase the Debtor's stock and borrow funds or incur debt to purchase the Debtor's stock;

and (3) power to determine the price of the Debtor's stock for those transactions. Berg Decl., Ex. 1 at 1-4, 8.[18]  Executing that authority, Paredes, as trustee, signed the ESOP Transaction documents for the ESOP Plan.  Compl. ¶¶ 120, 124; Berg Decl., Ex. 3 at 9.  The Bergs had no discretionary authority, control, or responsibility for the ESOP Trust's agreement to the ESOP Transaction; those powers lay solely with Paredes.  As such, the Bergs were not fiduciaries "to the extent of" the ESOP Transaction.

The Trustee claims that fiduciary duties were created because the Bergs proposed the ESOP Transaction and its structure.  Compl. ¶¶ 437-38.  The Trustee does not allege that Paredes was required to accept any proposals or that the Bergs were "the ultimate decision maker" with respect to the ESOP Transaction.  *Cent. Valley Ag. Coop. v. Leonard*, 400 F. Supp. 3d 819, 835 (D. Neb. 2019) (cleaned up), *aff'd*, 986 F.3d 1082 (8th Cir. 2021); *see also Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 535 (7th Cir. 1991) (defendant did not become fiduciary by "giv[ing] advice to plan trustees and invit[ing] reliance on that advice").  According to the Trustee, Connie Berg "had little or no role in the transaction."  Compl. ¶¶ 120, 170.  The Bergs were not fiduciaries "to the extent of" the ESOP Transaction based on their mere proposal of the ESOP Transaction and its structure.

---

[18] The Court may consider the ESOP Trust Agreement, attached as an exhibit to the Berg Declaration because the document is integral to the Trustee's ERISA fiduciary duty claim, and there is no question as to its authenticity.  *See Miller*, 688 F.3d at 931 n.3.  Compl. ¶¶ 109, 437-39.

Finally, the Trustee alleges the Bergs owed fiduciary duties because they appointed Paredes as ESOP Trustee. *Id.* ¶¶ 437-38. Authority to appoint Paredes made them fiduciaries ***only*** "to the extent of" the appointment and removal power. *See Martin*, 965 F.2d at 669-70; *Flake*, 55 F. Supp. 2d at 1219 ("[T]hat the plan gave defendants the power to remove the trustee does not establish that they had authority over the disposition of ESOP assets."); 29 C.F.R. § 2509.75-8 (where ERISA fiduciary's board of directors has authority and discretion to select trustee, directors are fiduciaries only with respect to selection and retention of trustee).

The Trustee has not pled (nor could he) that the Bergs had discretionary authority to manage the ESOP Plan or its assets (29 U.S.C. § 1002(21)(A)(i)), rendered investment advice for compensation (*id.* § 1002(21)(A)(ii)), or had any discretionary authority to administer the ESOP Plan (*id.* § 1002(21)(A)(iii)) for the ESOP Transaction. The Trustee's ERISA fiduciary duty claim in Count 22 is based on the Bergs "allowing the ESOP transaction to close." Compl. ¶ 439. As outlined above, there is no fiduciary duty owed under ERISA that supports the Trustee's claim. The Court must dismiss the ERISA fiduciary duty claim in Count 22, which is based solely on the Bergs allowing the ESOP Trust to enter the ESOP Transaction.

### 2. The statute of limitations bars any claim that the Bergs are liable for Paredes's breach of fiduciary duty.

The Trustee alleges that the Bergs are liable to the ESOP Trust because Paredes breached a fiduciary duty owed to the ESOP Trust by allowing it to enter

the ESOP Transaction, which was a "prohibited transaction" under ERISA.[19]  *Id.*
¶¶ 425, 444, 458.  The Trustee alleges that the Bergs are liable under three
theories:  (1) the Bergs breached a fiduciary duty owed to the ESOP Trust to
monitor Paredes, *id.* ¶ 439 (Count 22); (2) the Bergs are liable as Paredes's co-
fiduciaries, *id.* ¶ 448 (Count 23); and (3) the Bergs are liable as non-fiduciaries for
participating in the ESOP Transaction, *id.* ¶ 460 (Count 24).

The statute of limitations for an ERISA claim brought by a fiduciary is three
years after "the plaintiff had actual knowledge of the breach or violation."  29 U.S.C.
§ 1113(2); *see also Pension Ben. Guar. Corp. v. Scherling*, 905 F.2d 173, 175 (8th Cir.
1990).  Where the purported violation is a prohibited transaction, "knowledge of the
transaction would be actual knowledge of the breach."  *Brown v. Am. Life Holdings,
Inc.*, 190 F.3d 856, 859 (8th Cir. 1999).  Accordingly, a plan administrator's ERISA
claim for a prohibited transaction is time-barred if asserted more than three years
after the plan administrator knew of the transaction.

Here, the Trustee alleges that the Debtor, as the plan administrator, had
actual knowledge of the alleged ERISA violation—the prohibited transaction—when
the ESOP Transaction closed on August 31, 2020 (at the very latest).  The three-
year statute of limitations expired on August 31, 2023, more than six months *before*

---

[19] ERISA defines a "prohibited transaction" as a transaction between an ESOP Trust and a
party in interest (including certain shareholders, officers, and directors and their relatives), unless
the transaction involved the ESOP Trust purchasing the company's stock from a party in interest for
adequate consideration.  29 U.S.C. §§ 1106, 1108(e).

the Petition Date.  The Trustee's claims that the Bergs are liable for Paredes's breach of fiduciary duty are therefore time-barred.

### E. The Trustee's fraudulent transfer claims fail to state a claim under Federal Rules 9(b) and 12(b)(6).

Utilizing Section 544(b)(1) of the Bankruptcy Code, the Trustee employs Sections 13-02.1-04(1)(a)–(b) of North Dakota's UVTA in an effort to avoid alleged fraudulent transfers and obligations incurred to the Berg Defendants.  Rule 9(b)'s heightened particularity standard applies to fraudulent transfer claims under the UVTA.  *See Foreman Elec. Servs. Inc. v. Haliron Power, LLC*, No. 4:19-cv-4157, 2022 WL 55015, at *5 (W.D. Ark. Jan. 5, 2022) ("[B]ased upon Eighth Circuit precedent, Rule 9(b) applies to the UVTA.").

In Counts 9 through 20, the Trustee alleges that each component of the ESOP Transaction—the Equity Distribution, 2019 and 2020 Contributions, Redemption Note, Seller Note, and Company Note—is avoidable under the North Dakota UVTA.  Compl. ¶¶ 306-419.

### 1. The Trustee fails to allege facts that give rise to a plausible inference that the Debtor entered the ESOP Transaction with actual intent to hinder, delay, or defraud unknown, future creditors.

Under North Dakota's version of the UVTA, a transfer or obligation is avoidable by a creditor whose claim arose after the transfer or obligation was made if it was made "with actual intent to hinder, delay, or defraud any creditor of the debtor."  N.D. Cent. Code § 13-02.1-04(1)(a).  "Because proof of actual intent to hinder, delay, or defraud creditors may rarely be established by direct evidence, courts infer fraudulent intent from the circumstances surrounding the transfer."

*Ritchie Cap. Mgmt., LLC v. Stoebner*, 779 F.3d 857, 861 (8th Cir. 2015) (quoting *In re Sherman*, 67 F.3d 1348, 1353 (8th Cir. 1995)).  In making that inference, however, the Court must "draw on its experience and common sense."  *Iqbal*, 556 U.S. at 663-64.

As an initial matter, the Trustee does not allege that the challenged transfers were made, or obligations were incurred, with the actual intent to hinder, delay, or defraud creditors that held claims as of the time of the transfers and obligations because no such creditors exist.  Instead, the Trustee asserts that the purportedly "defrauded" creditors were future creditors whose claims arose years later when the company experienced distress under new ownership and management.

The Complaint's allegations simply do not give rise to a plausible inference that the Debtor intended to defraud any unknown, future creditors.  The Trustee alleges that in August 2020, the Debtor intended to defraud creditors with whom the Debtor had no business dealings and to whom the Debtor did not incur any debt until 2024, just before the Petition Date.  The Trustee admits that the reason the Debtor filed Chapter 7 was because it was unable to get bonding and "failed to respond to information requests from SBA"—not because of the ESOP Transaction, which closed more than three years before the Petition Date.  Compl. ¶¶ 233, 237, 243, 246.  The Trustee asks the Court to suspend disbelief and conclude that the Debtor foretold that it would incur debt to unknown creditors and become insolvent more than three years in the future and decided, in August 2020, that it would

defraud those creditors by facilitating Connie Berg's sale of the company to its employees. These allegations simply do not pass the straight-face test.

To determine whether a transfer was made with fraudulent intent, courts may consider "badges of fraud," which are "circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005) (citation omitted). The "badges of fraud" are:

a. The transfer or obligation was to an insider;

b. The debtor retained possession or control of the property transferred after the transfer;

c. The transfer or obligation was disclosed or concealed;

d. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

e. The transfer was of substantially all the debtor's assets;

f. The debtor absconded;

g. The debtor removed or concealed assets;

h. The value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

i. The debtor was insolvent or become insolvent shortly after the transfer was made or the obligation was incurred;

j. The transfer occurred shortly before or shortly after a substantial debt was incurred; and

k. The debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.

N.D. CENT. CODE § 13-02.1-04(2).

The Trustee alleges that a limited number of the badges of fraud exist, including that transfers: (i) were made to an insider; (ii) were concealed; (iii) were made shortly before substantial debt incurrence; and (iv) left the Debtor insolvent. An examination of the Trustee's "badges of fraud" reveal that his allegations of actual fraud defy common sense. *See Iqbal*, 556 U.S. at 663-64.

Two of the Trustee's badges of fraud (insider status and transfers shortly before significant debt is incurred) are present in nearly all ESOP transactions. The Trustee alleges that the transfers and obligations were actually fraudulent because they involved insiders of the Debtor—Connie Berg or the ESOP Trust[20]— and "the Debtor incurred substantial debt immediately after the transfer." Compl. ¶¶ 309, 327, 337, 347, 357, 366. By definition, an ESOP transaction involves insiders and the incurrence of debt: "the existing shareholders sell their equity in the company to an ESOP trust in exchange for cash, notes, or a combination of both." *Id.* ¶ 105. In cases, as here, where all of the shares of a company are purchased by a newly-formed ESOP, it is invariably true that the company and the ESOP must incur debt. It is impossible for an ESOP to purchase all of the shares of a company ***without debt***, and the incurrence of debt as part of the transaction does not support an intent to defraud creditors. *See U.S. Bank Nat. Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 435 (5th Cir. 2014) (transfer to an insider shortly

---

[20] Several transfers and obligations identified in the Complaint were made or incurred to Connie Berg, namely the Equity Distribution, Redemption Note, and Seller Note. Compl. ¶¶ 307, 355, 364. Others were made to the ESOP Trust, namely the 2019 Contribution, 2020 Contribution, and Company Note. *Id.* ¶¶ 325, 335, 345.

**BERG DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS UNDER
FEDERAL RULES OF CIVIL PROCEDURE 9(b) AND 12(b)(6)**         **Page 53**

before substantial debt was incurred "could not support a finding of intent in a spin-off [transaction] since they are a feature of every spin-off transaction that involves debt" (cleaned up)).

The Trustee's basis for the "concealed" badge of fraud completely misses the mark. Courts look to whether the ***transfer itself was concealed from creditors.*** *Cf. Freeland v. Enodis Corp.*, 540 F.3d 721, 734-35 (7th Cir. 2008) (actual fraudulent transfer where, among other badges, transfers "were concealed from creditors" by the debtor).  Here, the Trustee does not even plead that the Debtor concealed the transfer from anybody, let alone creditors.  Indeed, everyone involved with the ESOP Transaction, including the lender who loaned money to the Debtor to facilitate the transaction, was fully aware of all of the challenged transfers and obligations.  Ignoring that key uncontroverted fact, the Trustee misleads the Court by asserting that "the Bergs concealed material information regarding the Debtor's assets, liabilities, and enterprise value."  Compl. ¶¶ 309, 327, 337, 347, 357, 366. The Bergs did not conceal information.  *See supra* Section IV.B.2.ii.  But even if they had, it is irrelevant to whether the challenged transfers and obligations themselves were concealed, which is the fact relevant to an actual fraudulent transfer analysis.

Finally, the Trustee alleges that the transfers and obligations were actually fraudulent because "the transfer left the Debtor insolvent, unable to pay its debts when due, and/or with unreasonably small capital."  Compl. ¶¶ 309, 327, 337, 347, 357.  This "[t]hreadbare recital[] of the elements of a cause of action" fails to state a claim even under the more generous standard for non-fraud claims.  *Iqbal*, 556 U.S.

at 678.  Even if the Trustee's pleading passed muster, it is non-sensical.  The ESOP transaction closed in August 2020, and the Debtor sought bankruptcy protection three years, seven months, and twenty-four days later.

After critically analyzing the Trustee's allegations and wiping away those that cannot stand as a matter of law, the Trustee is left with a single, conclusory alleged badge of fraud, which the Berg Defendants dispute:  the transfers and obligations were not for reasonably equivalent value.  Compl. ¶¶ 309, 327, 337, 347, 357.  But that single disputed factor does not support an inference of actual fraudulent intent, especially in light of the independent analyses performed by Stout and Lazear.  *Id.* ¶¶ 115, 169.  *See Brown v. Third Nat'l Bank (In re Sherman)*, 67 F.3d 1348, 1354 (8th Cir. 1995).  The alleged lack of reasonably equivalent value alone does not support an inference that the Debtor made the transfers and incurred the obligations with an actual intent to defraud future creditors.

Under North Dakota law, the Trustee fails to state a claim for an actual fraudulent transfer or obligation.  Because the Trustee fails to state a claim under the North Dakota UVTA, the Trustee also fails to state a claim based on actual fraud under Section 544(b).  The Court must dismiss Counts 9, 11, 12, 13, 14, and 15.

### 2. The allegations that the Debtor's transfers and obligations were constructive fraudulent transactions are not pled with particularity.

Under North Dakota law, a transfer or obligation incurred by a debtor is avoidable if it was made:  (1) "[w]ithout receiving reasonably equivalent value in exchange for the transfer or obligation," and (2) while "the debtor was engaged or

was about to engage in a business or transaction for which the remaining assets of

the debtor were unreasonably small in relation to the business or transaction or the

debtor intended to incur, or believed or reasonably should have believed that the

debtor would incur, debts beyond the debtor's ability to pay as they became due."

N.D. CENT. CODE § 13-02.1-04(1)(b).

The Trustee does not meet Rule 9(b)'s pleading standard.  The Trustee recites

the elements, vaguely alleges that each transfer and obligation "depleted the Debtor

of cash," repeats the dollar amount of each transfer and obligation, and claims the

existence of "substantial undisclosed criminal and civil liability."  Compl. ¶¶ 318,

375, 385, 395, 405.  Such recitations and vague assertions are not sufficient.  *See Ex

rel. Strubbe*, 915 F.3d at 1163.  The Trustee does not allege what the Debtor's

remaining assets were, much less why they were unreasonably small in relation to

the cost of the ESOP Transaction, the cash left with the Debtor following the

transaction, and the Debtor's backlog of profitable contracts.  The Complaint is

bereft of factual allegations that the Debtor intended, believed, or should have

believed that it would incur debts beyond its ability to pay as they became due.

Further, the Trustee does not allege why this undisclosed liability would render the

Debtor unable to pay debts as they became due.  To the contrary, the Debtor

continued profitably in business for more than three years after the ESOP

Transaction closed, and the Trustee alleges the Debtor's financial troubles were

attributable to the Non-Prosecution Agreement and the SBA's 2023 determination

that the Debtor was not a small business, not the ESOP Transaction. Compl. ¶¶ 3, 5.

The Trustee fails to state a claim under North Dakota law and under Section 544(b) of the Bankruptcy Code based on constructive fraud. The Court must dismiss Counts 10, 16, 17, 18, 29, and 20.

## VI. CONCLUSION

For the foregoing reasons, the Berg Defendants respectfully request that the Court grant their motion to dismiss the claims asserted against them in the Complaint.

Dated: November 22, 2024

<div style="margin-left:50%">

*/s/ Stephen M. Pezanosky*

Stephen M. Pezanosky (*admitted pro hac vice*)
Stephen.Pezanosky@haynesboone.com
Aimee M. Furness (*admitted pro hac vice*)
Aimee.Furness@haynesboone.com
Jordan E. Chavez (*admitted pro hac vice*)
Jordan.Chavez@haynesboone.com
Brenna H. Scully (*admitted pro hac vice*)
Brenna.Scully@haynesboone.com
**HAYNES AND BOONE LLP**
2801 N. Harwood St., Suite 2300
Dallas, Texas 75201
Telephone: (214) 651-5000
Facsimile: (214) 651-5940

*Attorneys for Defendants Connie Berg, Kyle Berg, Connie Berg Revocable Living Trust, Kyle R. Berg Revocable Living Trust*

</div>

**BERG DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE 9(b) AND 12(b)(6)** **Page 57**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on the 22 day of November 2024, the above

document was served on all counsel of record via CM/ECF, including the Trustee

and his counsel.

<div align="right">

<u>/s/ Aimee M. Furness</u>
Aimee M. Furness

</div>

## Appendix A

| Count | Cause of Action | Must be dismissed because |
|---|---|---|
| 1, 2 | The Bergs breached fiduciary duties to the Debtor | • Connie Berg was the sole shareholder<br>• Claims based on conduct prior to April 22, 2018 are time-barred<br>• Claims based on the Equity Distribution are time-barred<br>• Alleged fraud against the U.S. not pleaded with particularity |
| 1, 2, 6, 7, 8, 25, 28 | The Bergs' omissions and misrepresentations constituted breach of fiduciary duty, breach of contract, actual fraud, and securities fraud | • Not false<br>• The Debtor knew, and the ESOP Trustee should have known, of the allegedly misrepresented and omitted information<br>• Not pleaded with particularity<br>• Alleged facts are contradictory<br>• Indemnity is sole remedy for breach of Purchase Agreement |
| 3, 26 | Kyle Berg aided and abetted Connie Berg's alleged breach of fiduciary duty and actual fraud | No cause of action in North Dakota |
| 9, 11, 12, 13, 14, 15 | ESOP Transaction was actually fraudulent transfer | Insufficient allegations of actual fraudulent intent |
| 10, 16, 17, 18, 19, 20 | ESOP Transaction was constructively fraudulent transfer | Not pleaded with particularity |
| 22, 23, 24 | The Bergs breached fiduciary duties to the ESOP Trust under ERISA | • The Bergs were not fiduciaries of the ESOP Trust for the ESOP Transaction<br>• Claims based on Paredes's breach of fiduciary duty are time-barred |

**Appendix B**

**Misrepresentations and Omissions Alleged in the Breach of Fiduciary Duty (Counts 1 and 2), Breach of Contract (Counts 6 and 7), Actual Fraud (Counts 8 and 25), and Securities Fraud Claims (Count 28)**

| Count | Alleged misrepresentation or omission | Must be dismissed because: | | | | |
|---|---|---|---|---|---|---|
| | | Not false | The Debtor knew, and the ESOP Trustee should have known, of the allegedly misrepresented and omitted information | Not pleaded with particularity | Alleged facts are contradictory | Indemnity is sole remedy for breach |
| 1, 2 | Failure to disclose to the Debtor that the Debtor had defraud the U.S. | | X | | X | |
| 7, 8, 25, 28 | Modification Agreement § 6(d) | X | | | | |
| 25, 28 | Initial Loan Agreement § 5.3(c) | X | X | | X | |
| 6, 8, 25, 28 | Purchase Agreement § 3.2(g) | X | X | | X | X |
| 8, 28 | Purchase Agreement § 3.3(g)(i) | X | X | | X | |
| 8, 28 | Purchase Agreement § 3.3(g)(ii) | | X | | X | |
| 8, 28 | Purchase Agreement § 3.3(g)(iii) | X | X | | X | |
| 8, 28 | Purchase Agreement § 3.3(g)(v) | | X | | X | |
| 8, 28 | Purchase Agreement § 3.3(h) | X | X | X | X | |
| 8, 28 | Purchase Agreement § 3.3(j) | | X | | X | |
| 8, 28 | Purchase Agreement § 3.3(m) | | X | X | X | |
| 8, 28 | Purchase Agreement § 3.3(o) | | X | X | X | |
| 28 | Scheme to defraud | | | X | | |