# EXHIBIT 1

# P<small>RO</small>-M<small>ARK</small> S<small>ERVICES</small>, I<small>NC</small>. E<small>MPLOYEE</small> S<small>TOCK</small> O<small>WNERSHIP</small> T<small>RUST</small>

(As Initially Effective)

TABLE OF CONTENTS

Article 1 Name ................................................................................................................................... 1

Article 2 Management and Control of Trust Fund Assets ................................................................ 1
    2.1      The Trust Fund ........................................................................................................ 1
    2.2      Trust Fund Administration ..................................................................................... 1
    2.3      Investment of Trust Assets ..................................................................................... 1
    2.4      Purchases and Sales of Company Stock. ................................................................ 3
    2.5      Voting Company Stock ........................................................................................... 3
    2.6      Valuation of Company Stock .................................................................................. 4
    2.7      Trust Fund Powers .................................................................................................. 4
    2.8      Borrowing to Purchase Company Stock ................................................................. 6
    2.9      Exercise of Duties. .................................................................................................. 7
    2.10    Independent Fiduciary. ........................................................................................... 8

Article 3 No Reversion to the Company. ......................................................................................... 8
    3.1      No Reversion to the Company ............................................................................... 8
    3.2      Denial of Tax Qualification ................................................................................... 8
    3.3      Mistake of Law ....................................................................................................... 8
    3.4      Mistake of Fact ....................................................................................................... 8
    3.5      Residual Assets ....................................................................................................... 8

Article 4 Change of Trustee ............................................................................................................. 9
    4.1      Resignation ............................................................................................................. 9
    4.2      Removal of Trustee ................................................................................................ 9
    4.3      Duties of Resigning or Removed Trustee and of Successor Trustee ..................... 9
    4.4      Changes in Organization of Trustee ....................................................................... 9

Article 5 General ............................................................................................................................. 9
    5.1      Qualification of the Plan and Trust ........................................................................ 9
    5.2      Benefit Payments .................................................................................................... 9
    5.3      Missing Persons ..................................................................................................... 10
    5.4      Trustee's Action Conclusive .................................................................................. 10
    5.5      Disagreement as to Acts ........................................................................................ 10
    5.6      Reliance by Trustee ................................................................................................ 10
    5.7      Benefits May Not Be Assigned or Alienated ........................................................ 10
    5.8      Indemnification ....................................................................................................... 10
    5.9      Evidence ................................................................................................................. 11
    5.10    Waiver of Notice .................................................................................................... 11
    5.11    Counterparts ........................................................................................................... 11
    5.12    Governing Laws ..................................................................................................... 11
    5.13    Successors .............................................................................................................. 12
    5.14    Successor Company ............................................................................................... 12
    5.15    Compensation and Expenses .................................................................................. 12
    5.16    Limit of Responsibility .......................................................................................... 12
    5.17    Gender and Number ............................................................................................... 12
    5.18    Text to Control ....................................................................................................... 12
    5.19    Construction of Powers .......................................................................................... 12
    5.20    Right of the Company to Inspect Trust Fund Records .......................................... 12
    5.21    Application of Rules .............................................................................................. 12

  5.22 Action by the Company or any other Employer ............................................................... 13
  5.23 Parties to the Trust Agreement ........................................................................................ 13
  5.24 Severability ...................................................................................................................... 13
  5.25 Statutory References ....................................................................................................... 13
  5.26 Defined Terms ................................................................................................................. 13

Article 6 Amendment and Termination ................................................................................................ 13
  6.1 Amendment ...................................................................................................................... 13
  6.2 Termination ...................................................................................................................... 13

**PRO-MARK SERVICES, INC. EMPLOYEE STOCK OWNERSHIP TRUST**
(As Initially Effective)

This Pro-Mark Services, Inc. Employee Stock Ownership Trust Agreement (the "Trust Agreement") is made effective as of the 26th day of December, 2019 by and between Pro-Mark Services, Inc., a North Dakota corporation (the "Company") and Kyle Berg, an individual resident of North Dakota (the "Trustee").

R E C I T A L S:

The Company has established an employee stock ownership plan, known as the Pro-Mark Services, Inc. Employee Stock Ownership Plan (the "Plan") effective as of January 1, 2019. The Plan is designed to invest primarily in stock of the Company ("Company Stock") and is intended to meet the requirements of Sections 401(a) and 4975(e)(7) of the Internal Revenue Code of 1986, as amended (the "Code"), and Section 407(d)(6) of the Employee Retirement Income Security Act of 1974 ("ERISA").

Therefore, in consideration of the purposes of the Plan and of the mutual covenants contained in this Agreement, it is agreed that the Trustee hereby accepts appointment as Trustee, effective as of the day and year first above written.

The Company and the Trustee further agree that the Trust will be administered as set forth in this Trust Agreement.

Article 1
Name

This Trust Agreement and the Trust evidenced by this Trust Agreement shall be known as the "Pro-Mark Services, Inc. Employee Stock Ownership Trust."

Article 2
Management and Control of Trust Fund Assets

2.1     The Trust Fund.  The term "Trust Fund" means all property of every kind held by the Trustee from time to time pursuant to this Trust Agreement.

2.2     Trust Fund Administration.  All contributions made under the Plan will be held, managed, and controlled by the Trustee acting under this Trust Agreement, which forms a part of the Plan.  To the extent provided in this Trust Agreement, the Trustee shall be subject to the direction of the Plan Administrator; provided, however, that if a Committee is appointed and acting under the Plan, then the powers, rights, and duties of the Plan Administrator under this Trust Agreement are delegated to the Committee.  The Company shall provide the Trustee with a list of individuals who, from time to time, have authority to act on behalf of the Company, the Plan Administrator, and the Committee, if any, in connection with this Trust Agreement or the Plan.  The Company shall, upon the Trustee's request, provide the Trustee with a specimen signature of each such individual.  The Trustee may rely on the latest information from the Company without further inquiry or verification and on any instrument signed by such delegate as to any action or absence of action of the Company.

2.3     Investment of Trust Assets.

(a)     Except as otherwise set forth in this Trust Agreement, the assets held by the Trust shall be invested by the Trustee primarily in Company Stock.  Any contributions made under the Plan in cash, and other assets of the Trust Fund, may be used to purchase shares of Company Stock from the Company or from any shareholder of the Company.  Company Stock shall be purchased by the Trustee only at

prices that do not exceed the fair market value of the shares purchased, as determined by the Trustee (in its sole discretion) based upon a valuation by an independent appraiser selected by the Trustee who meets the requirements of Section 401(a)(28) of the Code.  Notwithstanding the foregoing, the Trustee may also invest assets of the Trust Fund in assets other than Company Stock.

(b) Except as provided in subsection (c) below, all assets of the Trust Fund and the income thereon shall be held, invested and administered as a single fund for the purpose of providing benefits under the Plan as it applies to the Company and any other Employer and their Employees.  If for any purpose it becomes necessary as of any date to determine the portion of the Trust Fund allocable to any particular group of employees or former employees of the Company and any other Employer, such portion of the Trust Fund shall be determined by the Trustee based upon the written directions of the Plan Administrator.  In making such determination, the Trustee shall take into consideration such factors as it considers appropriate and may obtain the advice and assistance of any actuary or other agent who maintains records pertaining to Participant Account balances selected by the Trustee for this purpose.  Any such determination shall be conclusive upon the Company and any other Employer, employee  and former employee of the Company, and all other persons.

(c) From time to time, the Plan Administrator may cause the Trustee to establish one or more investment funds (the "Investment Funds") for the purpose of reflecting the separate investment and reinvestment of the Trust Fund.  Based upon the written direction of the Plan Administrator, the Trustee shall be responsible for allocating the assets of the Trust Fund among the Investment Funds.  The Trustee shall have responsibility for the investment of an Investment Fund unless an investment manager has been appointed with respect to that Investment Fund in accordance with subsection (d) below or unless the Investment Fund is invested in a deposit account, deposit administration fund or group annuity contract established with a legal reserve life insurance company.  All income, losses, appreciation, and depreciation attributable to the assets of an Investment Fund shall be credited to only that Investment Fund.

(d) The Plan Administrator may from time to time appoint one or more professional investment advisers other than the Trustee as an "investment manager" of the assets of the Trust Fund that are not invested in Company Stock or any Investment Fund maintained as a part of the Trust Fund.  Any such appointment shall be made by written notice to the investment manager and the Trustee and shall specify the portion of the Trust Fund to be managed by the investment manager and the powers, rights and duties of the Trustee hereunder that are allocated to the investment manager with respect to such portion of the Trust Fund. Upon such notice to the Trustee of the appointment of an investment manager, the investment manager shall be authorized to direct the Trustee regarding the investment and reinvestment of the assets of the portion of the Trust Fund subject to management by the investment manager and the Trustee shall receive, hold and transfer assets purchased or sold by the investment manager in accordance with its directions.  The appointment of an investment manager shall continue in effect until the Trustee receives written notice to the contrary from the Plan Administrator or the investment manager.  An investment manager may resign at any time upon thirty days' prior written notice to the Plan Administrator and the Trustee.  The Plan Administrator may remove an investment manager at any time upon prior written notice to the investment manager and the Trustee.  Except as otherwise provided in this Trust Agreement with respect to Company Stock, an investment manager shall have complete investment responsibility for the assets of the Trust Fund with respect to which it has been appointed as investment manager and, except as otherwise provided by law, the Trustee shall have no obligation as to the investment of such assets during the period they are subject to management by an investment manager. Each investment manager appointed to manage a portion of the Trust Fund shall be a registered investment adviser under the Investment Advisers Act of 1940, a bank (as defined in said Act), or a legal reserve life insurance company qualified to manage the assets of a plan under the laws of more than one state.  In addition, each investment manager shall be required to acknowledge to the Plan Administrator and the Trustee in writing that it accepts such appointment and that it is a fiduciary with respect to the Plan and Trust.

(e) If an investment manager of any Investment Fund is appointed by the Plan Administrator, then the Plan Administrator may, with the Trustee's consent, also designate a national banking association or a state bank to be employed by the Trustee as "custodian" of the assets from time to time forming part of that Investment Fund. In such event, the Trustee shall enter into an appropriate custodial agreement with the bank naming the bank as custodian of the Investment Fund and delegating the Trustee's powers with respect to the management of the Investment Fund to the custodian. Upon such an appointment the Trustee shall transfer the assets of the Investment Fund to the custodian and the custodian shall have responsibility for the holding and administration of the assets of the Investment Fund, as agent of the Trustee, until its employment as custodian is terminated, at which time the custodian shall return all assets of the Investment Fund to the Trustee. Notwithstanding the foregoing, if the Plan Administrator designated a legal reserve life insurance company as the investment manager of any Investment Fund, then the Plan Administrator may also designate the insurance company as custodian of the Investment Fund. In such event, the Trustee shall execute an appropriate agreement reflecting the investment of the assets of that Investment Fund by the insurance company and the insurance company shall for purposes of this Trust Agreement be deemed to be the custodian of the assets of the Investment Fund for which the insurance company is designated as investment manager. Each custodian shall maintain the records and accounts and shall submit to the appropriate persons the periodic reports otherwise required of the Trustee with respect to the portion of the Trust Fund held by the custodian.

2.4 <u>Purchases and Sales of Company Stock</u>. Except as set forth herein, the Trustee may purchase or sell shares of Company Stock to and from any person, including the Company, at a price not more than (in the case of a purchase of Company Stock) or not less than (in the case of a sale of Company Stock) the fair market value of the shares of Company Stock purchased or sold, as determined pursuant to Section 2.6. Notwithstanding the foregoing, the Trustee shall not under any circumstances purchase or sell any shares of Company Stock in a transaction that would violate ERISA or would be a "prohibited transaction" within the meaning of the Code or ERISA.

2.5 <u>Voting Company Stock</u>. Except as otherwise provided below, the Trustee shall vote, in its discretion, the shares of Company Stock held in the Trust Fund with respect to all matters. Notwithstanding the foregoing, each Participant will be entitled to direct the Trustee as to how to vote the shares of Company Stock allocated to his or her Company Stock Account with respect to any proposed merger or consolidation, recapitalization, reclassification, liquidation, dissolution, sale of substantially all assets of a trade or business, or similar transactions specified in regulations interpreting Section 409(e)(3) of the Code. During a period consistent with the notice requirements of applicable corporate law and the Company's bylaws, before each annual or special shareholders' meeting of the Company in which a matter of the type described above is to be voted on by Participant direction, the Trustee shall furnish to each Participant a copy of the proxy solicitation material, together with a form requesting confidential instructions on how such shares allocated to such Participant's Company Stock Account (including fractional shares to 1/1000th of a share) are to be voted. Upon timely receipt of such instructions, except as set forth below, the Trustee shall vote the shares of Company Stock as instructed. The instructions received by the Trustee from Participants shall be held by the Trustee in strict confidence and shall not be divulged or released to any person, including officers or Employees of the Company. Any designee of the Trustee who assists in the solicitation or tabulation of the directions or instructions of Participants and any record-keeper, auditor or other person providing services to the Plan to whom the Trustee releases such directions or instructions as necessary for the operation of the Plan, shall certify that he or she will maintain the confidentiality of all such directions and instructions. Except as otherwise provided below, the Trustee shall vote, in its discretion, the shares of Company Stock that are not allocated to any Participant's Company Stock Account, and the shares of allocated Company Stock with respect to which no direction is received from the Participants to whose Accounts the shares are allocated. Notwithstanding any other provision of this Section 2.5 to the contrary, the Trustee is a fiduciary of the Plan and, to the extent required by ERISA, has an obligation to vote Company Stock in the best interests of the Participants and their Beneficiaries.

  2.6 <u>Valuation of Company Stock</u>.  In accordance with Section 401(a)(28) of the Code, the Trustee shall determine (in its sole discretion) the fair market value of the shares of Company Stock held by the Trust based upon a valuation by an independent appraiser selected by the Trustee (in its sole discretion) who meets the requirements of Section 401(a)(28) of the Code as of the end of each Plan Year, as of the date of any transaction pursuant to which the Trust shall sell or purchase Company Stock to or from a "disqualified person" or "party in interest" (as such terms are defined in the Code and ERISA), or at such other times as may be directed by the Plan Administrator.

  2.7 <u>Trust Fund Powers</u>.  Subject to the provisions of Sections 2.3, 2.4, 2.5, 2.6, 2.9, 2.10, and Article 3, the Trustee shall have the following powers, rights, and duties with respect to the Trust Fund, in addition to those provided elsewhere in this Trust Agreement or by law:

  (a) To receive and hold all contributions paid to the Trustee under the Plan.

  (b) To have the exclusive authority to invest and reinvest the Trust Fund in property of any kind, real or personal, including debt or equity instruments of the Company.

  (c) To apply for and procure from an insurance company, to be selected by Company or the Plan Administrator, as an investment in the Trust Fund such annuity, life insurance policy or guaranteed income contract (group or individual, including one on the life of any Participant); to exercise, at any time or from time to time, whatever rights and privileges may be granted thereunder; to collect, receive, and settle for the proceeds of all such annuity or other policies or contracts as and when entitled to do so under the provisions thereof.

  (d) When directed by an investment manager managing certain assets of the Trust Fund pursuant to Section (t), the Trustee shall acquire, retain, or dispose of such assets as the investment manager directs.

  (e) To manage, operate, sell, contract to sell, grant options with respect to, convey, exchange, partition, transfer, abandon, improve, repair, insure, lease for any term (although commencing in the future or extending beyond the term of this Trust), and otherwise deal with all property of the Trust Fund, real or personal, in the manner, for the considerations, and on the terms and conditions as the Trustee shall decide.

  (f) To borrow money from anyone as the Trustee considers desirable to carry out the purpose of this Trust Agreement and, for that purpose, to mortgage or pledge all or any part of the Trust Fund other than shares of Company Stock.  Shares of Company Stock may be pledged only on the terms provided in Section 2.8(d).

  (g) To retain in cash any portion of the Trust Fund (pending investment, reinvestment, or payment of benefits) and to deposit cash in any depositary (including the banking department of the bank, if any, acting as Trustee or an affiliate of that bank), without liability for interest, or to deposit cash in savings accounts or time certificates of deposit bearing a reasonable rate of interest in the banking department of the bank acting as Trustee (or an affiliate of that bank) or in money market funds or money market mutual funds established, maintained, or managed by the Trustee (or an affiliate of the Trustee), including any money market mutual fund for which the Trustee or an affiliate of the Trustee serves as investment adviser.

  (h) At such times as specified by the Plan Administrator:  (i) to make payments from the Trust Fund to such persons, in such manner, at such times and in such forms as directed, without inquiring as to whether a recipient is entitled thereto (and the Trustee shall not be liable for any such payment made in good faith) and (ii) to transfer a Participant's Accounts in accordance with the provisions of the Plan for his benefit to any other trust or other funding entity that forms a part of another

profit sharing, pension or stock bonus plan that meets the requirements of a "qualified plan" under Section 401(a) of the Code, or to an individual retirement account described in Section 408(a) of the Code, an individual retirement annuity described in Section 408(b) of the Code, an annuity plan described in Section 403(a) of the Code, an annuity contract described in Section 403(b) of the Code, or an eligible deferred compensation plan under Section 457(b) of the Code that is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state that agrees to separately account for amounts transferred into such plan from the Plan (and the Trustee shall not be liable for any such transfer made in good faith).

(i) When directed by the Plan Administrator, to assume the Company's obligation when a put option is exercised in accordance with the terms of the Plan.

(j) To begin, maintain, or defend any litigation necessary in connection with the investment, reinvestment, and administration of the Trust and, with the consent of the Plan Administrator, to waive, modify, reduce, compromise, release, contest, arbitrate, settle or extend the time of payment of any claim or demand of any nature in favor of or against the Trustee or all or any part of the Trust Fund.

(k) To have all rights of an individual owner, including the power to give proxies to vote stocks, to join in or oppose (alone or jointly with others) voting trusts, mergers, consolidations, foreclosures, reorganizations, recapitalizations, or liquidations, and to exercise or sell stock subscription or conversion rights.

(l) To hold securities or other property in the name of the Trustee or its nominee, or in any other form as it determines best, with or without disclosing the Trust relationship, provided the records of the Trustee shall indicate the actual ownership of the securities or other property, including, without limitation, to participate in and use the Federal Book-Entry Account System, a service provided by the Federal Reserve Bank for its member banks for deposit of Treasury securities.

(m) To deposit securities with a "clearing corporation", as defined in Article 8 of the North Dakota Uniform Commercial Code. The certificates representing securities, including those in bearer form, may be held in bulk form with, and may be merged into, certificates of the same class of the same issuer that constitute assets of other accounts or owners, without certification as to the ownership attached. Utilization of a book-entry system may be made for the transfer or pledge of securities held by the Trustee or by a clearing corporation. However, at all times the Trustee shall maintain a separate and distinct record of the securities owned by the Trust Fund.

(n) To retain any funds or property subject to any dispute, without liability for the payment of interest, or to decline to make payment or delivery of the funds or property, until final adjudication is made by a court of competent jurisdiction.

(o) To report to the Plan Administrator as of the last day of each Plan Year, any Valuation Date, or any other time as may be required under the Plan, the number of shares of Company Stock held by the Trust and the net worth of the Trust Fund (that is, the fair market value of all property held in the Trust Fund, reduced by any liabilities other than liabilities to Participants in the Plan and their beneficiaries, as determined by the Trustee).

(p) To maintain records reflecting all receipts and payments under this Trust Agreement and such other records as the Plan Administrator may specify, which records may be audited from time to time by the Plan Administrator or anyone named by the Plan Administrator.

(q) To furnish to the Plan Administrator an annual written account, and accounts for any other periods as may be required under the Plan, showing the net worth of the Trust Fund at the end of the period, all investments, receipts, disbursements, and other transactions made or entered into by the

Trustee during the accounting period, and any other information that the Trustee may possess that the Plan Administrator requires in order to comply with Section 103 of ERISA. All accounts of the Trustee shall be kept on a cash basis. If during the term of this Trust Agreement, the Department of Labor issues regulations under ERISA regarding the valuation of securities or other assets for purposes of the reports required by ERISA, the Trustee shall use those valuation methods for purposes of the accounts described by this subsection.

(r)   To furnish the Company, any other Employer, or the Plan Administrator with such information in the Trustee's possession as it may need for tax or other purposes.

(s)   To pay any estate, inheritance, income, withholding, or other tax, charge, or assessment attributable to any benefit that, in the Trustee's opinion, it shall or may be required to pay out of the benefit; and to require, before making any payment, a release or other document from any taxing authority, and indemnity from the intended payee, as the Trustee shall deem necessary for its protection.

(t)   To employ agents, experts, counsel and other persons, including, without limitation, an independent appraiser to determine the fair market value of the Company Stock from time to time, to delegate discretionary powers to such persons and to reasonably rely upon information and advice furnished by such persons; provided, each such delegation and the acceptance thereof by such agents, experts, counsel and other persons shall be in writing; and provided further the Trustee may not delegate its responsibilities as to the management or control of the assets of the Trust Fund.

(u)   To invest part of the assets of the Trust Fund in any collective investment trust that then provides for the pooling of the assets of plans described in Section 401(a) of the Code and that is exempt from tax under Section 501(a) of the Code (or any comparable provisions of any future legislation that amend, supplement, or supersede those Sections), and that is then maintained by the bank acting as Trustee under this Trust Agreement or an affiliate of that bank (whether or not the collective investment trust provides for the pooling of assets of other tax-exempt trusts). However, the collective investment trust must be exempt from tax under the Code or under regulations or rulings issued by the Internal Revenue Service. The provisions of the document governing the collective investment trust, as it may be amended from time to time, shall govern any investment in that trust and are hereby made a part of this Trust Agreement.

(v)   To assume, until advised to the contrary, that the Trust evidenced by this Trust Agreement is qualified under Section 401(a) of the Code and is entitled to tax exemption under Section 501(a) of the Code.

(w)   To perform any and all other acts in its judgment necessary or appropriate for the proper and advantageous management, investment, and distribution of the Trust Fund.

2.8   **Borrowing to Purchase Company Stock**.  Subject to the provisions of Section 2.9, the Trustee shall have the power to borrow funds or incur indebtedness by issuing notes for the purpose of purchasing Company Stock or for the purpose of repaying all or any portion of any outstanding indebtedness incurred by the Trustee to purchase Company Stock, subject to the following conditions:

(a)   The notes must be for a specific term.

(b)   The rate of interest payable on the notes may be fixed or variable, but the rate must not exceed a reasonable rate of interest taking into account all relevant factors, including the amount and duration of the loan, the security for and any guarantee of the loan, and the creditworthiness of the Plan and of any guarantor of the loan.

(c) Within a reasonable time after receipt of the loan proceeds or issuance of notes, the Trustee shall use the consideration to purchase Company Stock or to repay all or any portion of the loan or of any prior outstanding loan that has been used to acquire Company Stock.

(d) The only assets of the Plan that may be pledged as collateral for the loan are shares of Company Stock that were acquired either with the loan proceeds or with the proceeds of any prior loan, to the extent that the prior loan is repaid with the loan proceeds. Any shares of Company Stock that are pledged as collateral for a loan shall be released from the pledge and allocated to the accounts of the Participants in the manner provided for in Section 6 of the Plan.

(e) The loan agreement shall provide that no person entitled to payment under the agreement shall have any right to assets of the Plan other than: (i) collateral given for the loan, in accordance with subparagraph (d) above; (ii) contributions made by the Company to the Plan to enable the Trustee to meet its obligations under the loan agreement (other than contributions of Company Stock); and (iii) earnings attributable to the shares of Company Stock pledged as collateral to secure the loan and earnings attributable to the contributions made by the Company to the Plan to enable the Trustee to meet its obligations under the loan agreement (other than contributions of Company Stock).

(f) Except as provided in subparagraph (e) above, the loan and the notes must be without recourse against the Plan.

(g) The payments made by the Trustee during any Plan Year on all outstanding indebtedness incurred by the Trustee for the purpose of acquiring shares of Company Stock shall not exceed an amount equal to the sum of (i) all contributions made by the Company to the Plan for the purpose of enabling the Trustee to meet its obligations under the loan agreement, plus (ii) all earnings on those contributions and all earnings on the shares of Company Stock pledged as collateral to secure the loans in accordance with subparagraph (d) above during or prior to the applicable Plan Year, less (iii) all prior payments made on the loans.

(h) The loan agreement must provide that the value of the Plan assets to be transferred in satisfaction of the loan in the case of a default shall not exceed the amount of the default. If the lender is a "disqualified person" (as that term is defined in Section 4975(e) of the Code) or is a "party in interest" to the Plan (as that term is defined in Section 3(14) of ERISA), the loan agreement must provide for a transfer of Plan assets upon a default only upon and to the extent of the failure of the Plan to meet the payment schedule set forth in the loan agreement.

(i) Except as provided in Section 11 of the Plan, Company Stock acquired with the proceeds of a loan or issuance of notes shall not be subject to a put, call, or other option and shall not be subject to a buy-sell or similar arrangement, either while the Company Stock is held in the Trust Fund or after it is distributed to or on account of any Participants.

2.9  Exercise of Duties. Subject to the provisions of Article 3, the Trustee shall discharge its duties under this Trust Agreement solely in the interest of the Plan participants and their beneficiaries and:

(a) for the exclusive purpose of:

(i) providing benefits to Plan participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the Trust; and

(b) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an

enterprise of like character and with like aims, and in accordance with the documents governing the Plan and, to the extent applicable, in accordance with the documents governing the Plan and the instructions of the Plan Administrator or an investment manager unless in the good faith judgment of the Trustee, the documents and the instructions of the Plan Administrator or an investment manager are not consistent with the provisions of ERISA.

2.10    Independent Fiduciary. Notwithstanding any other provision of this Trust Agreement, any entity or individual that is unrelated to any party to the Plan or Trust may be appointed from time to time by the Plan Administrator as an "Independent Fiduciary" to serve in such capacity and for such purposes as the Plan Administrator determines to be in the best interest of the Plan and Trust.  The Independent Fiduciary shall be granted such power, authority, and discretion as may be necessary or appropriate for it to carry out its duties and responsibilities, including, but not limited to, any and all powers and discretion granted the Plan Administrator and the Trustee under the Plan and Trust, including the authority to direct the Plan Administrator and the Trustee to take such actions as the Independent Fiduciary determines to be appropriate.  The Plan Administrator shall notify, in writing, the Trustee of the appointment of an Independent Fiduciary and shall specify the powers, rights, and duties of the Trustee that are allocated to the Independent Fiduciary.  The Trustee may rely upon the authenticity, truth and accuracy of, and will be fully protected in acting upon, any notice, direction, certification, other writing or oral instructions of the Independent Fiduciary that is received by the Trustee and believed by it to be genuine and to be sent by the Independent Fiduciary.

Article 3
No Reversion to the Company.

3.1    No Reversion to the Company.  Except as provided below in this Article 3, no part of the corpus or income of the Trust Fund shall revert to the Company or be used for, or diverted to, purposes other than for the exclusive benefit of Participants and their beneficiaries.

3.2    Denial of Tax Qualification.  If any contribution under the Plan is conditioned on initial qualification of the Plan under Sections 401(a) and 4975(e)(7) of the Code and if the Plan does not so qualify, then upon written request of the Company, the Trustee shall return to the Company the amount of the contribution and any earnings attributable to the contribution within one calendar year after the date initial qualification of the Plan is denied.

3.3    Mistake of Law.  If a contribution is conditioned upon the deductibility of the contribution under Section 404 of the Code and if the deduction is disallowed, then upon the written request of the Company, the Trustee shall return to the Company within one year after the date the deduction is disallowed the excess of (i) the amount contributed over (ii) the amount that would have been contributed had there not occurred a mistake in determining the deduction, reduced by losses attributable to the excess (and limited so as not to reduce the balance of the individual account of any Participant or beneficiary from what it would have been if the excess had not been contributed).

3.4    Mistake of Fact.  If a contribution or any portion thereof is made by the Company by a mistake of fact, then upon written request of the Company, the Trustee shall return to the Company within one year after the date of the contribution the excess of (i) the amount contributed over (ii) the amount that would have been contributed had there not occurred a mistake of fact, reduced by losses attributable to the excess (and limited so as not to reduce the balance of the individual account of any Participant or beneficiary from what it would have been if the excess had not been contributed).

3.5    Residual Assets.  If after all liabilities of the Plan to Participants and their beneficiaries have been satisfied any residual assets remain, those assets shall be used for the benefit of the Participants.

Article 4
Change of Trustee

4.1    Resignation.  Any Trustee may resign at any time by giving at least 30 days' advance written notice to the Company.

4.2    Removal of Trustee.  The Company may remove any Trustee by giving at least thirty (30) days' advance written notice to the Trustee (unless such notice is waived by the Trustee being removed), subject to providing the removed Trustee with satisfactory written evidence of the appointment of a successor Trustee and of the successor Trustee's acceptance of the trusteeship.

4.3    Duties of Resigning or Removed Trustee and of Successor Trustee.  If a Trustee resigns or is removed, it shall promptly transfer and deliver the assets of the Trust Fund to the successor Trustee, after reserving a reasonable amount to provide for its fees and expenses and any sums chargeable against the Trust Fund for which it may be liable.  Each successor Trustee shall succeed to the title to the Trust Fund vested in its predecessor without the signing or filing of any further instrument, but any resigning or removed Trustee shall sign all documents and perform all acts necessary to vest title of record in any successor Trustee.  Each successor shall have all the powers, rights, and duties conferred by this Trust Agreement as if originally named Trustee.  No successor Trustee shall be personally liable for any act or failure to act of a predecessor Trustee.

4.4    Changes in Organization of Trustee.  If any Trustee shall be converted into, merged or consolidated with, or shall sell or transfer substantially all of its assets and business to a corporation formed under the laws of the United States of America or any of its political subdivisions, that corporation shall become the Trustee of the Trust with the same effect as though specifically so named.

Article 5
General

5.1    Qualification of the Plan and Trust.  The Plan and the Trust taken together are intended to qualify under Sections 401(a) and 4975(e)(7) of the Code and Section 407(d)(6) of ERISA as a qualified employee stock ownership plan and a stock bonus plan, and the Trust is intended to qualify for tax exemption under Section 501(a) of the Code.  Unless and until advised to the contrary, the Trustee and all other persons dealing with the Trustee shall be entitled to assume that the Plan and the Trust are so qualified and tax exempt.

5.2    Benefit Payments.  The Plan Administrator may direct the Trustee as respects the distribution of benefits payable under the Plan or, in lieu thereof, the Plan Administrator may assume the responsibility for distributing such benefits by advance written notice filed with the Trustee.  If the Plan Administrator such responsibility it shall open a commercial banking account in any insured banking institution, including a bank acting as Trustee, provided that such account shall be established in the name of the Trust Fund and shall be maintained as a part of the Trust Fund for the exclusive purpose of making benefit payments in accordance with the Plan.  The Plan Administrator shall be authorized to sign, manually or by facsimile signature, any and all checks, drafts and orders, including orders for direction in informal or formal letter form, against any funds in such checking account.  Such banking institution is authorized to honor any and all drafts, checks and orders so signed if the signatures thereon resemble the signatures duly filed with such banking institution, including those drawn to the individual order of the Plan Administrator, without further inquiry with respect to its authority or use of the checks, drafts or orders, or the proceeds thereof, or to determine whether such checks, drafts or orders are in accordance with the Plan.  The Trustee shall make such deposits from the assets of the Trust Fund to any such checking account as are directed in writing from time to time by the Plan Administrator.  The Trustee shall have no duty to question the propriety of any direction or accounting of funds retained in or disbursed by or on behalf of the Plan Administrator solely for the use of the persons entitled thereto in

accordance with the terms of the Plan, but until so disbursed these funds shall be held in trust for the purpose of making benefit payments.

5.3     Missing Persons.  If any payment from the Trust Fund is not claimed by the person entitled thereto, the Trustee shall notify the Plan Administrator of that fact.  Except as required under the Code, ERISA or the regulations promulgated thereunder, none of the Plan Administrator, the Company, any other Employer, the Trustee, the Company's Board of Directors, or the Committee, in any, shall have any obligation to search for or ascertain the whereabouts of any payee of benefits of the Trust Fund.

5.4     Trustee's Action Conclusive.  Except as otherwise provided by law, the Trustee's exercise or non-exercise of its powers and discretions in good faith shall be conclusive on all persons.  No one shall be obliged to see to the application of any money paid or property delivered to the Trustee.  The certificate of the Trustee that it is acting according to this Trust Agreement will fully protect all persons dealing with the Trustee.

5.5     Disagreement as to Acts.  If there is a disagreement between the Trustee and anyone as to any act or transaction reported in any accounting, the Trustee shall have the right to have accounts settled by a court of competent jurisdiction.

5.6     Reliance by Trustee.  The Trustee may rely upon the authenticity, truth and accuracy of, and will be fully protected in acting upon:

(a)     Any notice, direction, certification, approval or other writing of the Company or any other Employer, if evidenced by an instrument signed in the name of the Company or such other Employer by any duly authorized officer thereof.

(b)     Any notice, direction, certification, approval or other writing of the Plan Administrator, if evidenced by an instrument signed in the name of the Plan Administrator.

(c)     Any copy of a resolution of the Board of Directors of the Company or any other Employer, if certified by the secretary or an assistant secretary of the Company or such other Employer.

(d)     Any notice, direction, certification, other writing or oral instructions of any investment manager appointed by the Plan Administrator that is received by the Trustee and believed by it to be genuine and to be sent by such investment manager.

5.7     Benefits May Not Be Assigned or Alienated.  The interests of Plan participants and of their beneficiaries under this Trust Agreement may not be voluntarily or involuntarily assigned or alienated.  However, the provisions of this Section 5.7 shall not apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a Participant pursuant to a "qualified domestic relations order," as that term is defined in Section 414(p) of the Code.

5.8     Indemnification.

(a)     For purposes of this Trust Agreement, the term "Indemnitees" shall mean the Trustee and its officers, directors, employees and agents.  Subject to the applicable provisions of ERISA, the Company and any subsidiaries (collectively, the "Indemnitors") shall jointly and severally release, indemnify and hold harmless the Indemnitees for any loss, cost, expense, or other damage, including (but not limited to) attorney's fees, suffered by any of the Indemnitees resulting from, or incurred with respect to, any legal proceedings, actions, suits, arbitrations and investigations related in any way to the performance of services by any one or more of the Indemnitees pursuant to this Agreement and the Trust (the "Right of Indemnification").  The Right of Indemnification provided for in this Section 5.8 shall extend to: (a) any action taken or not taken in good faith by any of the Indemnitees; and (b) all reasonable

costs and expenses incurred by the Indemnitees in enforcing the Right of Indemnification, including, but not limited to, reasonable attorneys' fees and court costs. However, the Right of Indemnification shall not apply to the extent that any loss, cost, expense, or damage with respect to which any of the Indemnitees shall seek indemnification is held by a court of competent jurisdiction, in a final judgment from which no appeal can be taken, to have resulted either from the negligence, willful misconduct or failure to comply with the requirements of part 4 of Title I of ERISA by one or more of the Indemnitees.

(b) If one or more of the Indemnitees receives notice of any legal proceeding with respect to which indemnification may be sought against the Indemnitors pursuant to Section 5.8 (a "Proceeding"), an Indemnitee shall notify the Company of the Proceeding in writing within thirty (30) days of the commencement of the Proceeding. However, the failure to so notify the Company shall not relieve the Indemnitors from their Right of Indemnification obligations, except to the extent that the failure to so notify the Company shall actually have prejudiced the defense of any Proceeding. The Company will be entitled to assume the defense of the Proceeding with counsel reasonably satisfactory to the Indemnitees or to otherwise participate in the Proceeding. If the Company elects to assume the defense of the Proceeding, it then shall pay all costs of defense.

(c) The Indemnitors shall reimburse the Indemnitees for all reasonable costs that they incur in connection with any Proceeding, including (but not limited to) costs of investigation, of testifying in any hearing, of responding to discovery proceedings, and of consulting with the Indemnitors or the attorneys for the Indemnitors. The Indemnitees shall have the right to employ their own counsel in any Proceeding, and the fees and expenses of the Indemnitees' counsel shall be paid by the Indemnitors as they are incurred, if any one or more of the following conditions are satisfied: (i) the employment by the Indemnitees of their own counsel shall be authorized by the Company; (ii) the Indemnitees are advised by their counsel that there may be one or more legal defenses available to them that are different from or additional to defenses available to the Company (in which case the Company shall not have the right to assume the defense of the Proceeding on behalf of the Indemnitees); (iii) the Company fails to assume the defense of the Proceeding and to employ counsel satisfactory to the Indemnitees within fourteen (14) days after being notified of the commencement of the Proceeding; or (iv) the Indemnitees shall be informed by their counsel that a conflict exists with the counsel selected by the Company.

(d) The Trustee and the Company may execute a letter agreement further delineating the indemnification of the Trustee by the Company, provided that the letter agreement is consistent with and does not violate ERISA.

(e) The indemnification rights of this Section 5.8 shall survive the termination of this Trust Agreement and of the Trust.

5.9   <u>Evidence</u>.  Evidence required of anyone under this Trust Agreement may be by certificate, affidavit, document, or other instrument that the person acting in reliance thereon considers pertinent and reliable and that is signed, made, or presented by the proper party.

5.10   <u>Waiver of Notice</u>.  Any notice required under this Trust Agreement may be waived by the person entitled to the notice.

5.11   <u>Counterparts</u>.  This Trust Agreement may be signed in any number of counterparts, each of which shall be deemed an original, and no other counterpart need be produced.

5.12   <u>Governing Laws</u>.  This Trust Agreement shall be construed and administered according to the laws of the State of North Dakota to the extent that those laws are not preempted by the laws of the United States of America.

5.13    Successors.  The provisions of this Trust Agreement shall be binding upon the Plan Administrator, the Company, the Trustee, the Committee, if any, any other "Named Fiduciaries" (as such term is defined in the Plan and ERISA), and their successors and on all persons entitled to benefits under the Plan and their respective heirs and legal representatives.

5.14    Successor Company.  If a successor to the Company or any other Employer or a purchaser of all or substantially all of either of the Company's or such other Employer's assets elects to continue the Plan, the successor or purchaser shall be substituted for the Company or such other Employer under this Trust Agreement.

5.15    Compensation and Expenses.  The Trustee shall be entitled to reasonable compensation for its services under this Trustee Agreement, as agreed to between the Company and the Trustee in writing, from time to time.  The Trustee is authorized to pay from the Trust Fund all of the Trustee's expenses, taxes, and charges (including fees of persons employed by it in accordance with Section 2.7(t)) incurred in connection with the administration of the Trust, and with the collection, management, investment, protection, and distribution of the Trust Fund, except to the extent that such fees and expenses are paid directly by the Employers.  The Trustee is authorized to pay from the Trust Fund all of the expenses incurred by the Company or Plan Administrator in connection with the operation and administration of the Plan and all of the fees and expenses of an investment manager acting pursuant to Section 2.3(d), except to the extent that such fees and expenses are paid directly by the Employers.

5.16    Limit of Responsibility.  The Company shall deliver to the Trustee a certified or signed copy of the Plan and of any amendments to the Plan; and the rights, powers, and duties of the Trustee shall be governed by the terms of this Trust Agreement and the provisions of the Plan.  To the extent permitted by law, the Trustee, the Company and each other Employer and the Plan Administrator shall be responsible only for  its own acts or omissions and neither the Plan Administrator nor the Trustee shall be required to collect any contribution from the Company or any other Employer or any other person or to verify that it is in the proper amount.

5.17    Gender and Number.  In this Trust Agreement, where the context admits, words in the masculine gender include the feminine and neuter genders, words in the singular include the plural, and words in the plural include the singular.

5.18    Text to Control.  The article and section headings and numbers in this Trust Agreement are included solely for convenience of reference.  If there shall be any conflict between the headings and numbers and the text of this Trust Agreement, the text shall control.

5.19    Construction of Powers.  No enumeration of special powers of the Trustee by any of the provisions of this Trust Agreement shall be construed to limit any grant of general powers to the Trustee contained in, conferred by, or reasonably to be implied from any other of the provisions of this Trust Agreement.  All the powers and authority conferred upon the Trustee by this Trust Agreement may be exercised in the manner provided for in this Trust Agreement without application to any court for leave or confirmation.

5.20    Right of the Company to Inspect Trust Fund Records.  The Company may at its own expense, and at any time or from time to time, cause an examination of the books and records of the Trust Fund to be made by attorneys, accountants, auditors, or other agents of the Company that the Company shall select for that purpose, and it may cause a report of the examination to be made to the Board of Directors of the Company.

5.21    Application of Rules.  In operating and administering the Trust Fund, the Trustee shall apply all rules of procedure and regulations adopted by it in a uniform and nondiscriminatory manner.

5.22    Action by the Company or any other Employer.  Any action with respect to this Trust required or permitted to be taken by the Company or any other Employer shall be by resolution of its Board of Directors or other governing body or by a person or persons authorized by resolution of that governing body.

5.23    Parties to the Trust Agreement.  An Employer permitted by the Company to have its Employees participate in the Plan shall become a party to this Trust Agreement by: (a) filing with the Company and the Trustee a certified copy of an action by its governing body to that effect; and (b) filing with the Trustee a certified copy of a resolution of the Board of Directors of the Company consenting to such action.

5.24    Severability.  If any provision of this Trust Agreement is held to be illegal or invalid, such illegality or invalidity shall not affect the remaining provisions of this Trust Agreement, and they shall be construed and enforced as if such illegal or invalid provisions had never been inserted therein.

5.25    Statutory References.  Any references in this Trust Agreement to a section of the Code or of ERISA shall include any comparable section or sections of any future legislation that amends, supplements or supersedes said section.

5.26    Defined Terms.  Capitalized terms used in this Trust Agreement and not otherwise defined shall have the meaning given to such terms in the Plan.

## Article 6
## Amendment and Termination

6.1    Amendment.  Subject to the provisions of Article 3, the Company reserves the right to amend this Trust Agreement.  However, no amendment shall change the rights, duties, and liabilities of the Trustee under this Trust Agreement without its consent.

6.2    Termination.  If the Plan is terminated, all of the provisions of the Trust evidenced by this Trust Agreement nevertheless shall continue in effect until the Trust Fund has been distributed by the Trustee.  If after all liabilities of the Plan to participants in the Plan and their beneficiaries have been satisfied any residual assets remain, those assets shall be used for the benefit of the Participants.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the Company has caused this Trust Agreement to be signed by its duly authorized officer, and the Trustee has signed this Trust Agreement, to be effective as of the day and year first above written.

**COMPANY:**

Pro-Mark Services, Inc.

By: _____
Name: _____Chad DuBois_____
Its: _____Vice-President_____

**TRUSTEE:**

_____
Kyle Berg