# EXHIBIT 3

Case 24-07014    Doc 51-3    Filed 11/22/24    Entered 11/22/24 10:10:03    Desc Exhibit 3    Page 1 of 10

INITIAL SELLER/ESOP LOAN AGREEMENT

This Initial Seller/ESOP Loan Agreement (the "Agreement") is made and entered into as of August 31, 2020 by and between the Pro-Mark Services, Inc. Employee Stock Ownership Trust (the "Trust"), which forms a part of the Pro-Mark Services, Inc. Associates Employee Stock Ownership Plan (the "ESOP") and Connie Berg (the "Seller").

RECITALS

A. Miguel Paredes, not in his individual capacity, but solely in its capacity as transactional trustee of the Trust (the "Trustee") has determined that it is in the best interests of the participants and beneficiaries of the ESOP to cause the Trust to purchase 62,317 shares of the common stock (the "Shares") of Pro-Mark Services, Inc. (the "Company") from the Seller.

B. The Seller has agreed to sell 62,317 of the Shares to the Trust in exchange for cash in the amount of Nine Million Three Hundred Fourteen Thousand Two Hundred Forty-Six and 00/100 Dollars ($9,314,246) and a promissory note in the aggregate principal amount of Ten Million Nine Hundred Eighty-Five Thousand Seven Hundred Fifty-Four and 00/100 Dollars ($10,985,754) to be executed by the Trustee on behalf of the Trust in favor of the Seller dated as of the date hereof (referred to collectively herein as the "Initial Seller/ESOP Note").

C. The indebtedness evidenced by the Initial Seller/ESOP Note (the "Initial Seller/ESOP Loan") is intended to be an "exempt loan," as described in Section 4975(d)(3) of the Internal Revenue Code of 1986, as amended (the "Code"), Section 54.4975-7(b) of the Treasury Department Regulations, Section 408(b)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and Section 2550.408b-3 of the Department of Labor Regulations (the "Exempt Loan Rules").

AGREEMENT

The parties hereto, intending to be legally bound, hereby agree as follows:

Article 1
CERTAIN DEFINITIONS

For purposes of this Agreement, the following words and phrases shall have the following meanings:

1.1 "Initial Seller/ESOP Loan Documents" shall mean, collectively, this Agreement, the Initial Seller/ESOP Note, and the Initial Seller/ESOP Stock Pledge Agreement.

1.2 "Initial Seller/ESOP Stock Pledge Agreement" shall mean the agreement between the Trust and the Seller dated as of even date herewith pursuant to which the Trustee has agreed on behalf of the Trust to pledge the Shares to the Seller to secure the obligations of the Trust under this Agreement.

Article 2
PAYMENT OF ESOP LOAN

2.1 Payment Terms For Initial Seller/ESOP Loan. The Initial Seller/ESOP Loan shall be repaid in accordance with the repayment terms set forth in the Initial Seller/ESOP Note. Because the Initial Seller/ESOP Loan is intended to be an "exempt loan" within the meaning of the Exempt Loan Rules, repayment by the Trust of the principal amount of the Initial Seller/ESOP Loan and payment by

the Trust of interest on the Initial Seller/ESOP Loan shall be made only from contributions made by the Company to the Trust to enable the Trustee to repay the Initial Seller/ESOP Loan, earnings attributable to the investment of those contributions, any dividends, earnings or distributions on the Shares held in the Trust and proceeds from the sale of any Shares held by the Trust which are pledged to the Seller pursuant to the Initial Seller/ESOP Stock Pledge Agreement. Furthermore, the Seller shall have no recourse to any other assets of the Trust for repayment of the Initial Seller/ESOP Loan.

2.2     Prepayment.  The Trustee may prepay all or any portion of the principal amount of the Initial Seller/ESOP Loan at any time without penalty or premium.  Prepayments will be applied first to accrued and unpaid interest and then to the principal portion of installments due in the order of maturity. If the Trust received an amount from the Company for any tax year that exceeds the amounts required by Section 6.2(b) hereof, then the Trust shall promptly make a prepayment towards the principal amount of the Initial Seller/ESOP Loan.

2.3     Event Protection.  If prior to the full repayment of the Initial Seller/ESOP Note there is a (i) sale, merger, or disposition of substantially all of the assets of the Company, or any other similar transaction, or (ii) termination of the ESOP, any pledged shares held in the ESOP's suspense account will not be applied to the repayment of the outstanding balance of the Initial Company/ESOP Note.

Article 3
CONDITIONS PRECEDENT

The obligation of the Seller to make the Initial Seller/ESOP Loans shall be subject to the following conditions precedent, each of which shall be met on the date hereof:

3.1     Closing Deliveries of the Trust.  The Trust shall deliver to the Seller the following:

(a)     This Agreement duly executed by the Trustee on behalf of the Trust;

(b)     The Initial Seller/ESOP Note duly executed by the Trustee on behalf of the Trust;

(c)     The Initial Seller/ESOP Stock Pledge Agreement duly executed by the Trustee on behalf of the Trust; and

(d)     A certificate representing the Shares to be pledged pursuant to the Initial ESOP Stock Pledge Agreement, together with stock powers duly endorsed by the Trustee on behalf of the Trust in blank, which certificate shall be held by the Seller.

3.2     Accuracy of Representations and Warranties; No Event of Default. The representations and warranties contained in this Agreement shall be true in all material respects as of the date hereof and no Event of Default and no condition, event or act which, with the giving of notice or the lapse of time, or both, would constitute an Event of Default, shall have occurred and be continuing or shall exist.

Article 4
REPRESENTATIONS AND WARRANTIES OF THE TRUST

4.1     On behalf of the Trust, the Trustee hereby represents and warrants to the Seller as follows:

(a)     Authority.  On behalf of the Trust, the Trustee has the right, power, and legal capacity to enter into the Initial ESOP Loan Documents and to consummate the transaction contemplated thereunder.

The signing, delivery, and performance of the Initial Seller/ESOP Loan Documents by the Trustee have been duly and properly authorized, and each of the Initial Seller/ESOP Loan Documents is valid and binding upon the Trust in accordance with its terms, except as limited by ERISA, or by bankruptcy, insolvency, reorganization, or other laws affecting the enforcement of creditors' rights generally, and subject to the availability of equitable remedies.

(b)     <u>No Conflicts</u>.  The execution, delivery, and performance of the Initial Seller/ESOP Loan Documents by the Trustee on behalf of the Trust, and the consummation of the transactions contemplated by the Initial ESOP Loan Documents, do not and will not:  (a) require the consent or approval of, or the filing of any documents with, any person or governmental authority; (b) constitute or result in the material breach of any provision of, or constitute a default under, the ESOP plan documents or any agreement known to the Trustee or to which the Trust is a party or by which it or its assets may be bound; or (c) violate any law, regulation, judgment, or order binding upon the Trust or give rise to any liability to the Trust under Title I of ERISA or Section 4975 of the Code.

(c)     <u>Terms of Initial Seller/ESOP Loan</u>.  The terms, conditions, and interest rate of the Initial ESOP Loan are at least as favorable to the ESOP as the terms of a comparable loan resulting from arm's-length negotiations between independent parties.

(d)     <u>Setoff</u>.  The rights of the Seller with respect to the Initial Seller/ESOP Loan remains subject to the rights of the Trust to adjustments and to setoff against such obligations in accordance with the terms of the Stock Purchase Agreement by and among the Company, the Trust and the Seller. Specifically, the Trust's obligations to make payments to the Seller hereunder shall be subject to adjustment under Section 2.5 of the Stock Purchase Agreement and the Trust's rights under the indemnification provisions of Article VI of the Stock Purchase Agreement.

<u>Article 5</u>
<u>REPRESENTATIONS AND WARRANTIES OF THE SELLER</u>

The Seller hereby represent and warrant to the Trustee and to the Trust as follows:

5.1     <u>Organization of ESOP</u>.  The ESOP has been properly established in accordance with all applicable laws, regulations, and rulings, and the ESOP is an "employee stock ownership plan" within the meaning of Section 4975(e)(7) of the Code.

5.2     <u>Authority</u>.  The Seller has all required power and authority to enter into, deliver, and perform its obligations under this Agreement.  The signing, delivery, and performance of this Agreement have been duly authorized by all necessary action on the part of the Seller.   This Agreement has been duly signed and delivered by the Seller, and the obligations of the Seller under this Agreement are valid, legally binding, and enforceable against the Seller in accordance with the terms of this Agreement, except as they may be limited by bankruptcy, insolvency, reorganization, or other laws affecting the enforcement of creditors' rights generally.

5.3     <u>No Conflicts</u>.  The execution, delivery, and performance of this Agreement by the Seller does not and will not:  (a) require the consent or approval of, or the filing of any documents with, any person or governmental authority; (b) conflict with any agreement to which the Seller are a party or by which they are bound; or (c) violate any law, regulation, judgment, or order applicable to the Seller.

Article 6
COVENANTS OF THE TRUST AND THE SELLER

6.1     Use of Proceeds. The Trustee and the Trust hereby covenant and agree to use the proceeds of the Initial ESOP Loan for the sole purpose of purchasing the Shares.

6.2     The Seller hereby covenants and agrees as follows:

(a)     Maintenance of ESOP. Subject to the right of the Company to amend or terminate the ESOP plan documents in accordance with the terms of the ESOP plan documents, the Seller will take all reasonable actions within his power to preserve the existence of the ESOP and the Trust and maintain their tax-qualified status under Sections 401(a) and 501(a), respectively, of the Code. The Seller shall take all reasonable action within his power to ensure that the Company shall administer the ESOP in compliance with (a) the Code and ERISA, as applicable to the ESOP and this Agreement, and (b) all other laws and regulations applicable to the ESOP and the Trust. Without limiting the foregoing, the Seller understands that the Company will apply to the Internal Revenue Service for a favorable letter of determination regarding the status of the ESOP as a qualified plan under Section 401(a) of the Code and regarding the status of the Trust as a tax-exempt trust under Section 501(a) of the Code in a timely manner and will adopt any amendments to the ESOP plan documents that are required by the Internal Revenue Service in order to maintain its favorable determination with respect to the ESOP within the time prescribed by law for obtaining an effective date for the amendments retroactive to the date of adoption of the ESOP.

(b)     Contributions to the Trust. For as long as the Initial Seller/ESOP Note is outstanding, the Seller shall take all reasonable actions within their power to ensure that the Company will make contributions and dividend payments to the Trust in amounts which are sufficient, together with other amounts available for that purpose, to enable the Trustee to pay all interest and principal due on the Initial Seller/ESOP Note when due.

Article 7
DEFAULT

7.1     Event of Default. The failure of the Trust to pay when due any principal, interest, or other amounts due and payable under the Initial Seller/ESOP Note shall be an "Event of Default," provided that the Company has made contributions and/or dividends to the Trust in accordance with Section 6.2 hereof.

7.2     Remedies. Except as set forth below, upon the occurrence of an Event of Default, the Seller shall be entitled to exercise all rights and remedies available to a creditor to recover from the Trust dividends and distributions paid to it by the Company and held by the Trustee and cash contributions made by the Company to the Trust to enable the Trust to meet its obligations under this Agreement and under the ESOP Note (provided that the dividends and contributions have not been so applied by the Trust) and to exercise the Seller's remedies as set forth in the Initial Seller/ESOP Stock Pledge Agreement; provided, however that, if an Event of Default has occurred and be continuing, the Trust shall forfeit (in favor of the Seller) its right to receive dividends and distributions payable in respect to the Shares or contributions made to the Trust (i) only to the extent such dividends and distributions do not exceed the "amount of default" as that term is defined in Treasury Regulation 54.4975-7(b)(6) and Department of Labor Regulation §2550.408b-3(f) and (ii) if, at the time of such Event of Default, the holder of the ESOP Note is a "disqualified person" (as that term is used in Treasury Regulation 54.4975-7(b)(6)) or a "party in interest" (as that term is used in Department of Labor Regulation §2550.408b-3(f)), then any forfeiture (in favor of the Seller) the dividends and distributions payable in respect to the Shares

4

and the contributions to the Trust shall occur from time to time only upon and to the extent of the failure of the Trust to meet the payment schedule of the Initial Seller/ESOP Loan. Notwithstanding the foregoing, in no event shall there be an acceleration of payments not yet due and payable under this Agreement or under the Initial Seller/ESOP Note, and the Seller shall not be entitled to recover, as a result of an Event of Default, assets with a value in excess of the amount in default and assets of the Trust shall be transferred to the Seller after an Event of Default only to the extent of the failure of the Trust to meet the payment schedule set forth in the Initial Seller/ESOP Note. For purposes of this Section 7.2, the dollar amount of a default shall be equal to the difference between (a) the aggregate amount of principal and accrued interest which was due and payable on the ESOP Note as of the date of the Event of Default, and (b) the aggregate amount paid to the Seller by the Trust at the time of the Event of Default.

Article 8
MISCELLANEOUS

8.1    Notices.    All notices, requests, demands and other communications provided for hereunder shall be in writing and directed to each applicable party at the address set forth hereafter or at such other address as to which such party may inform the other parties in writing in compliance with the terms of this Section:

| | |
|---|---|
| To the Trust: | Pro-Mark Services, Inc. Employee Stock Ownership Trust<br>100 N. Barranca St., Suite 870<br>West Covina, CA 91791<br>Attn: Miguel Paredes<br>Email: mparedes@fiduciaryservices.com |
| with a copy to: | Benesch, Friedlander, Coplan & Aronoff LLP<br>200 Public Square, Suite 2300<br>Cleveland, OH 44114<br>Attn: Shaylor Steele<br>Email: ssteele@beneschlaw.com |
| To the Seller: | Connie Berg<br>3275 Oak Ridge Loop E.<br>West Fargo, ND 58078<br>Email: berg_connie@hotmail.com |
| with a copy to: | Levenfeld Pearlstein, LLC<br>2 N. LaSalle, Suite 1300<br>Chicago, Illinois 60602<br>Attn: David Solomon, Esq.<br>Email:dsolomon@lplegal.com |

Notices shall be deemed properly delivered and received when (i) if personally delivered, upon receipt thereof, (ii) if sent by other electronic transmission, including e-mail, upon the time transmitted to the addresses provided above, (iii) if deposited in the United states mail, postage prepaid, registered or certified mail, on or before two (2) Business Days after its delivery by mail, (iv) if sent by a commercial overnight courier for delivery on the next Business Day, on the first Business Day after deposit with such courier for delivery on the next Business Day, on the first Business Day after deposit with such courier service or (v) if sent by registered or certified mail, five (5) days after deposit thereof in the U.S. mail.

8.2     Expenses.  The Seller shall be responsible for his own fees and expenses as well as all fees and expenses incurred by the Trustee and the Trust in connection with this transaction.

8.3     Governing Law.  Except to the extent preempted by the Code or ERISA, this Agreement shall be construed, interpreted, and enforced in accordance with, and governed by, the laws of the State of North Dakota, without regard to the conflict of law principles of such state.

8.4     Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of the successors and assigns of the parties.  Without limiting the foregoing, this Agreement shall be binding upon the Trustee and its successors and assigns.  Nothing in this Agreement, express or implied, is intended to confer upon any party other than the parties hereto or their respective heirs and legal representative, successors and assigns any rights, remedies, obligations or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

8.5     Waivers.  Any party may, by written notice to another party:  (a)  extend the time for the performance of any of the obligations or other actions of the other party under this Agreement;  (b)  waive any inaccuracies in the representations or warranties of any other party contained in this Agreement or in any document delivered pursuant to this Agreement;  (c)  waive compliance with any of the conditions or covenants of any other party contained in this Agreement; or  (d)  waive or modify performance of any of the obligations of any other party under this Agreement.  Except as provided in the preceding sentence, no action taken pursuant to this Agreement including, without limitation, any investigation by or on behalf of any party, shall be deemed to constitute a waiver by the party taking the action of compliance with any representations, warranties, covenants, or agreements contained in this Agreement.  The waiver by any party of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach or as a waiver on behalf of any other party.

8.6     Entire Agreement.  This Agreement, the Initial Seller/ESOP Note and the Initial Seller/ESOP Stock Pledge Agreement constitute the full and entire understanding and agreement between the parties with regard to the subjects hereof and thereof.

8.7     Survival of Representations, Warranties and Agreements.  All representations, warranties and agreements of the Trust and the Seller herein shall survive until the final payment under the Initial Seller/ESOP Note.

8.8     Amendments.  This Agreement shall not be modified, altered or amended except in writing signed by both the Trustee (or its successor or any other person authorized to act on behalf of the Trust) and the Seller.

8.9     Headings.  The headings in this Agreement are for reference purposes only and shall not be deemed a part of this Agreement.

8.10    Severability.  If any provision of this Agreement shall be determined by any court to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any we be affected or impaired thereby.

8.11    Incorporation of Recitals.  The above recitals are hereby incorporated by reference into this Agreement as if set forth in full in the body hereof and each party represents and warrants that, as to it, said recitals are true and accurate.

8.12    CONSENT TO JURISDICTION.  THE PARTIES AGREE THAT JURISDICTION AND VENUE IN ANY ACTION BROUGHT BY ANY PARTY PURSUANT TO THIS AGREEMENT

SHALL PROPERLY (BUT NOT EXCLUSIVELY) LIE IN ANY FEDERAL OR STATE COURT LOCATED IN STATE OF NORTH DAKOTA.  BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY IRREVOCABLY SUBMITS TO THE JURISDICTION OF SUCH COURTS FOR ITSELF AND IN RESPECT OF ITS PROPERTY WITH RESPECT TO SUCH ACTION.  THE PARTIES IRREVOCABLY AGREE THAT VENUE WOULD BE PROPER IN SUCH COURT, AND HEREBY WAIVE ANY OBJECTION THAT SUCH COURT IS AN IMPROPER OR INCONVENIENT FORUM FOR THE RESOLUTION OF SUCH ACTION.  THE PARTIES FURTHER AGREE THAT THE MAILING BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, OF ANY PROCESS REQUIRED BY ANY SUCH COURT SHALL CONSTITUTE VALID AND LAWFUL SERVICE OF PROCESS AGAINST THEM, WITHOUT NECESSITY FOR SERVICE BY ANY OTHER MEANS PROVIDED BY STATUTE OR RULE OF COURT.

8.1 _Counterparts/Signatures_.  This Agreement may be signed in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.  This Agreement may be executed as an original in ink, by facsimile signature (e.g., a signature reproduction by physical or electronic stamp) or any electronic signature complying with the U.S. Federal ESIGN Act of 2000.  Any counterparty containing a qualifying signature transmitted electronically (e.g., via e-mail or telecopier machine) shall be accepted as an original and shall have the same force and effect as an original.

8.2 _Action as Trustee_.  The Trustee has signed and delivered this Agreement, not in his individual capacity, but solely in his capacity as the transactional trustee acting on behalf of the Trust.  The performance of this Agreement by the Trustee and all duties, obligations, and liabilities of the Trustee under this Agreement will be undertaken by the Trustee only in his capacity as a transactional trustee acting on behalf of the Trust.  The Trustee does not undertake any individual liability or obligation by virtue of the signing and delivery of this Agreement or by reason of the representations, warranties and covenants contained in this Agreement.

.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the parties have signed this Agreement as of the day and year first written above.

SELLER

*[signature: Connie Berg]*

Connie Berg

TRUST

**PRO-MARK SERVICES, INC. EMPLOYEE STOCK OWNERSHIP TRUST**

By:_____

Miguel Paredes, not in his individual capacity, but solely in his capacity as transactional trustee of the Pro-Mark Services, Inc. Employee Stock Ownership Trust

*[Signature Page - Initial Seller/ESOP Loan Agreement]*

IN WITNESS WHEREOF, the parties have signed this Agreement as of the day and year first written above.

**SELLER**

_____
Connie Berg

**TRUST**

**PRO-MARK SERVICES, INC. EMPLOYEE STOCK OWNERSHIP TRUST**

By: _____
Miguel Paredes, not in his individual capacity, but solely in his capacity as transactional trustee of the Pro-Mark Services, Inc. Employee Stock Ownership Trust

*[Signature Page - Initial Seller/ESOP Loan Agreement]*