# EXHIBIT 4

<u>SELLER NOTE EXCHANGE AND ESOP LOAN MODIFICATION AGREEMENT</u>

THIS SELLER NOTE EXCHANGE AND ESOP LOAN MODIFICATION AGREEMENT (this "<u>Agreement</u>") is made as of the 31st day of August 2020, by and among Pro-Mark Services, Inc., a North Dakota corporation (the "<u>Company</u>"), the Pro-Mark Services, Inc. Employee Stock Ownership Trust (the "<u>Trust</u>") and Connie Berg (the "<u>Lender</u>").

RECITALS

WHEREAS, the Company, the Lender and the Trust were parties to a transaction (the "<u>ESOP Transaction</u>") completed on August 31, 2020 in which the Lender sold all of the issued and outstanding shares of Common Stock of the Company owned by the Lender (referred to herein as the "<u>ESOP Shares</u>") to the Trust for the benefit of the Company's eligible employees;

WHEREAS, the terms and conditions of the ESOP Transaction are set forth in a Redemption and ESOP Stock Purchase Agreement dated August 31, 2020 among the Trust, the Lender and the Company (the "<u>Stock Purchase Agreement</u>");

WHEREAS, to finance the purchase of a portion of the ESOP Shares in connection with the ESOP Transaction, the Company made a loan to the Trust in the amount of $8,479,246 (the "<u>Initial Company/ESOP Loan</u>") pursuant to the terms of that certain Initial Company ESOP Loan Agreement dated as of August 31, 2020 by and between the Company and the Trust (the "<u>Initial Company/ESOP Loan Agreement</u>"), which Initial Company/ESOP Loan was evidenced by that that certain promissory note in the original principal amount of $8,479,246 executed by the Trust in favor of the Company as of August 31, 2020 (the "<u>Initial Company/ESOP Note</u>") and was secured by a pledge by the Trust to the Company of the portion of the ESOP Shares purchased with the Initial Company/ESOP Loan in accordance with the terms of the Initial Company/ESOP Stock Pledge Agreement (the "<u>Initial Company/ESOP Pledge Agreement</u>", and collectively with the Initial Company/ESOP Note and the Initial Company/ESOP Loan Agreement referred to herein as the "<u>Initial Company/ESOP Loan Documents</u>");

WHEREAS, the Trust paid an additional portion of the price for the purchase of the ESOP Shares in the ESOP Transaction in the form of a promissory note issued to the Lender by the Trust in the amount of $10,985,754 (the "<u>Initial Seller/ESOP Note</u>") pursuant to the terms of that certain Initial Seller/ESOP Loan Agreement dated as of August 31 2020 by and between the Seller and the Trust (the "<u>Initial Seller/ESOP Loan Agreement</u>"), the obligations under which (referred to herein as the "<u>Initial Seller/ESOP Loan</u>") were secured by a pledge by the Trust of the number of ESOP Shares purchased from the Lender with the Initial Seller/ESOP Note certain of the ESOP Shares in accordance with the terms of that certain Initial Seller/ESOP Stock Pledge Agreement dated as of August 31, 2020 by and among the Lender and the Trust (the "<u>Initial Seller/ESOP Pledge Agreement</u>", and collectively with the Initial Seller/ESOP Note and the Initial Seller/ESOP Loan Agreement referred to herein as the "<u>Initial Seller/ESOP Loan Document</u>");

WHEREAS, the parties hereto desire to restructure the Initial Company/ESOP Loan in accordance with the terms of this Agreement; and

WHEREAS, the parties hereto desire to modify the Initial Seller/ESOP Loan in accordance with the terms of this Agreement by shortening the maturity date, altering the interest rate, substituting a new obligor and adding events of default, and the parties hereto intend that such modification of the Initial Seller/ESOP Loan represents a modification of the terms of an installment obligation and not a disposition or satisfaction of an installment obligation within the meaning of Section 453B(a) of the Internal Revenue Code (the "<u>Code</u>").

NOW THEREFORE, in consideration of financial accommodations made or to be made by and among the parties hereto and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties hereto agree as follows:

1. <u>Acknowledgment of Recitals</u>.  The above recitals are true and correct and are incorporated herein by reference.

2. <u>Assignment of Initial Seller/ESOP Loan Documents by Lender to Company/Issuance of Amended and Restated Note.</u>

(a) The Lender hereby assigns and transfers all of their rights, title, interests, powers, claims, remedies benefits and options under the Initial Seller/ESOP Loan Documents to the Company and the Company hereby accepts the assignment of the Initial Seller/ESOP Loan Documents from the Lender (the "<u>Initial Seller/ESOP Loan Assignment</u>").  The Lender and the Company agree that they shall execute and deliver all other and further agreements, assignments, conveyances, deeds and other instruments necessary or desirable to consummate the Initial Seller/ESOP Loan Assignment and to vest in the Company full right, privileges, and interest in and to the Initial Seller/ESOP Loan Documents.

(b) In consideration of the Initial Seller/ESOP Loan Assignment, the Company shall issue to the Lender a promissory note in the form attached hereto as <u>Exhibit A</u> (the "<u>Amended and Restated Seller Note</u>") to evidence the Company's obligations with respect to indebtedness previously represented by the Initial Seller/ESOP Loan which has been assumed by the Company pursuant to the terms of this Agreement, with an initial principal amount equal to the amount due on the date hereof to the Lender on the current Initial Seller/ESOP Note, subject to the condition that, immediately prior to the issuance by the Company of the Amended and Restated Seller Note, the Lender shall have delivered to the Company the original Initial Seller/ESOP Note, duly endorsed as may be reasonably requested by the Company.  By acceptance of the Amended and Restated Seller Note, the Lender agrees to accept the payment terms set forth in the Amended and Restated Seller Note in lieu of and in amendment of any and all payment terms set forth in the Initial Seller/ESOP Note.

3. <u>Modification of the Initial Company/ESOP Loan and the Initial Seller/ESOP Loan</u>. In connection with the Lender's assignment of the Initial Seller/ESOP Loan Documents to the Company as set forth in Section 1(a) above, the Trust and the Company hereby agree to consolidate the Initial Company/ESOP Loan and the Initial Seller/ESOP Loan (the rights under which have been assigned to the Company) (referred to herein as the "<u>ESOP Loan Modification</u>" or "<u>Assumption Agreement</u>") to enable the Company and Trust to administer a single "exempt loan" for the purpose of Section 4975(d)(3) of the Code, Treasury Regulations Section 54.4975-7(b), Section 408(b)(3) of the Employee Retirement Income Security Act of 1974, as amended ("<u>ERISA</u>"), and Department of Labor Regulations Section 2550.408b-3 (collectively, the "<u>Exempt Loan Rules</u>").  In order to facilitate the ESOP Loan Modification, the Trust and the Company agree to execute that certain Amended and Restated ESOP Loan Agreement in the form attached hereto as Exhibit B (the "<u>Amended and Restated ESOP Loan Agreement</u>"), the Trust and the Company agree to execute that certain Amended and Restated ESOP Stock Pledge Agreement in the form attached hereto as Exhibit C (the "<u>Amended and Restated ESOP Stock Pledge Agreement</u>"), and the Trust agrees to execute that certain Amended and Restated ESOP Promissory Note in favor of the Company in the original principal amount of $19,465,000 as Exhibit D (the "<u>Amended and Restated ESOP Note</u>" and collectively with the Amended and Restated ESOP Loan Agreement and the Amended and Restated ESOP Stock Pledge Agreement referred to herein as the "<u>Amended and Restated ESOP Loan Documents</u>"), which

contain terms which are no less favorable to the Trust or the Company as the Initial Seller/ESOP Loan Documents and which comply with the Exempt Loan Rules.

4. <u>Contributions to Repay Amended and Restated ESOP Note</u>.  The Company agrees to contribute all amounts to the Trust, together with the dividends paid on any ESOP Shares, which are necessary, together with other amounts that are available for that purpose, to timely repay all principal and interest payments due on under the Amended and Restated ESOP Note.

5. <u>Company's Warranties</u>.  The Company warrants and represents to the Trust and each Lender that: (a) the Company has the requisite corporate power and authority to enter into, deliver and perform this Agreement and to consummate the transactions contemplated herein; and (b) the Agreement has been duly authorized by all necessary corporate action of the Company, has been duly executed and delivered by a duly authorized officer of the Company on behalf of the Company and is the valid and binding agreement of the Company, enforceable against the Company in accordance with its terms, except as the enforceability thereof may be limited by the ERISA or any applicable bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance or other laws affecting the enforcement of creditors' rights generally now or hereafter in effect, and subject to the availability of equitable remedies.

6. <u>Lender's Warranties</u>.  The Lender warrants and represents to the Trust and the Company that, as of time of the delivery to the Company of the Lender's Initial Seller/ESOP Loan Documents, (a) the Initial Seller/ESOP Note, the Initial Seller/ESOP Loan Agreement, and the Initial Seller/ESOP Pledge Agreement are in full force and effect in accordance with the terms and conditions thereof; (b) there are no set-offs or defenses to the Lender's Initial Seller/ESOP Note; (c) no modifications, extensions, or renewals have been granted or made changing the terms of the Initial Seller/ESOP Note, the Initial Seller/ESOP Loan Agreement, or the Initial Seller/ESOP Pledge Agreement; and (d) no default or defaults have occurred with respect to the Initial Seller/ESOP Note, the Initial Seller/ESOP Loan Agreement, or the Initial Seller/ESOP Pledge Agreement.

7. <u>Trust Warranties</u>.  On behalf of the Trust, Miguel Paredes, not in his individual capacity but solely in his capacity as transactional trustee of the Trust (the "<u>Trustee</u>") warrants and represents to the Company and each Lender that it has the right, power, and legal capacity to enter into this Agreement and to consummate the transactions contemplated herein, and the Trust is a duly created and validly existing trust under the laws of the State of North Dakota; that the signing, delivery, and performance of this Agreement by the Trustee has been duly and properly authorized, and is valid and binding upon the Trust in accordance with its terms, except as limited by ERISA, or by bankruptcy, insolvency, reorganization, or other laws affecting the enforcement of creditors' rights generally, and subject to the availability of equitable remedies; and that the Trustee is a national banking association validly organized and existing and in good standing under the laws of the United States and has full corporate power and authority to enter into and perform its obligations as trustee under the trust agreement between the Company and the Trustee, this Agreement, and all other documents executed in connection herewith.

8. <u>Indemnification</u>.  The Company hereby indemnifies the Trust and the Lender and agrees to hold each harmless from and against any loss or liability, including reasonable attorneys' fees, in the event that any of the representations and warranties of the Company set forth in this Agreement should prove to have been false or untrue as of the date hereof.  The Lender hereby indemnifies the Company and the Trust and agrees to hold each harmless from and against any loss or liability, including reasonable attorneys' fees, in the event that any of the representations and warranties of the Lender set forth in this Agreement should prove to have been false or untrue as of the date hereof.  The Trust hereby indemnifies the Company and the Lender and agrees to hold each harmless from and against any loss or liability,

including reasonable attorneys' fees, in the event that any of the representations and warranties of the Trust set forth in this Agreement should prove to have been false or untrue as of the date hereof.

9. <u>Benefit; Governing Law</u>. This Agreement shall inure to the benefit of and shall bind the parties hereto and their respective heirs, executors, administrators, personal representatives, successors and assigns, and shall be governed by the laws of the State of North Dakota, other than the conflicts and choice of law provisions.

10. <u>Survival of Representations, Warranties and Agreements</u>. All representations, warranties and agreements of the Lender, the Trust, and the Company herein shall survive until the final payment under the Amended and Restated ESOP Note.

11. <u>Notice</u>. All notices pursuant to this Agreement shall be in writing and given as set forth in the Stock Purchase Agreement.

1.1 <u>Counterparts/Electronic Signatures</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which shall constitute one Agreement. This Agreement may be executed as an original in ink, by facsimile signature (e.g., a signature reproduction by physical or electronic stamp) or any electronic signature complying with the U.S. Federal ESIGN Act of 2000. Any counterpart containing a qualifying signature transmitted electronically (e.g., via e-mail or telecopier machine) shall be accepted as an original and shall have the same force and effect as an original.

12. <u>Severability</u>. In the event that any provision of this Agreement is determined to be illegal, invalid, void or of no effect, the remaining portion of this Agreement that is not illegal, invalid, void or of no effect will continue as the complete agreement between the parties hereto and will be in full force and effect.

13. <u>Section Headings, Gender and Person</u>. The section headings in this Agreement have been inserted for convenience of reference only, and will in no way modify or restrict any of the terms or provisions hereof. The use of the masculine or any other pronoun herein when referring to any party has been for convenience only, and will be deemed to refer to the particular party intended regardless of the actual gender of such party. Any reference to a "person" will include an individual, firm, corporation, partnership, trust, government or political subdivision or agency, association, unincorporated organization, or any other entity. The use of the word "including" herein means "including without limitation".

14. <u>Actions as Trustee</u>. The Trustee has signed and delivered this Agreement, not in his individual capacity, but solely in his capacity as the transactional trustee acting on behalf of the Trust. The performance of this Agreement by the Trustee and all duties, obligations, and liabilities of the Trustee under this Agreement will be undertaken by the Trustee only in his capacity as a transactional trustee acting on behalf of the Trust. The Trustee does not undertake any individual liability or obligation by virtue of the signing and delivery of this Agreement or by reason of the representations, warranties and covenants contained in this Agreement.

[*Signature page to follow*]

4

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first written above.

**TRUST:**

**PRO-MARK SERVICES, INC.
EMPLOYEE STOCK OWNERSHIP TRUST**

By: _____/s/_____
Miguel Paredes, not in his individual capacity, but solely in his capacity as transactional trustee of the Pro-Mark Services, Inc. Employee Stock Ownership Trust

**COMPANY:**

**PRO-MARK SERVICES, INC.**

By: _____
Name: Connie Berg
Title: President


**LENDER:**

_____
Connie Berg

*[Signature Page – Seller Note Exchange and ESOP Loan Modification Agreement]*

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first written above.

**TRUST:**

**PRO-MARK SERVICES, INC.
EMPLOYEE STOCK OWNERSHIP TRUST**

By: _____
    Miguel Paredes, not in his individual capacity, but solely in his capacity as transactional trustee of the Pro-Mark Services, Inc. Employee Stock Ownership Trust

**COMPANY:**

**PRO-MARK SERVICES, INC.**

By: *[signature: Connie Berg]*
Name: Connie Berg
Title: President

**LENDER:**

*[signature: Connie Berg]*
Connie Berg

*[Signature Page – Seller Note Exchange and ESOP Loan Modification Agreement]*