IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Pro-Mark Services, Inc. | ) | Case No. 24-30167 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| Erik A. Ahlgren, as Chapter 7 Trustee of | ) | |
| Bankruptcy Estate of Pro-Mark Services, | ) | |
| Inc., and as Administrator of the Pro-Mark | ) | Adv. Case No. 24-07014 |
| Services, Inc. Employee Stock Ownership | ) | |
| Plan, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Connie Berg, Kyle Berg, Connie Berg | ) | |
| Revocable Living Trust, Kyle R. Berg | ) | |
| Revocable Living Trust, Chad DuBois, | ) | |
| Mandy Grant, and Miguel Paredes, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION TO DISMISS CLAIMS AGAINST CHAD DUBOIS

Maurice B. VerStandig, Esq.
The Dakota Bankruptcy Firm
1630 1st Avenue N
Suite B PMB 24
Fargo, North Dakota 58102-4246
mac@dakotabankruptcy.com
*Counsel for Chad DuBois*

*Table of Contents*

I.  Introduction .................................................................................................. 1

II.  Standards ..................................................................................................... 4

    a.  Rule 12(b)(6) ........................................................................................ 4

    b.  Rule 12(b)(7) ........................................................................................ 5

III.  Allegations Pertinent to Mr. DuBois ......................................................... 6

IV.  Argument: Dismissal is Appropriate .......................................................... 9

    a.  The Trustee Lacks Standing to Pursue Claims on Behalf of the ESOP ............... 9

        i.  The ESOP's Allegations are Beyond the Scope of Section 704 ............... 9

        ii.  Acting as ESOP Trustee (But Not Administrator) Would Deprive the Trustee of His Requisite Disinterestedness ......................... 13

    b.  Count 4 Should be Dismissed ............................................................. 15

        i.  The Complaint Does Not Allege Breach of a Fiduciary Duty Owed to the Debtor ........................................................................ 15

        ii.  The Complaint Does Not Sufficiently Allege the Existence of Cognizable Resulting Damages to the Debtor or the Debtor's Estate ........................................................................................... 16

        iii.  The Trustee Has Failed to Join Two Indispensable Parties ................... 17

    c.  Count 27 Should be Dismissed ........................................................... 19

        i.  Mr. DuBois is Not Alleged to be in Contractual Privity with the ESOP ......................................................................................... 19

        ii.  The Complaint Does Not—and Cannot—Allege Reasonable Reliance .......................................................................................... 20

    d.  Count 28 Should be Dismissed ........................................................... 22

V.  Conclusion ................................................................................................ 25

*Table of Authorities*

**Cases**

*25th St. Grp. Apartments #1, LLC v. Bremer Bank, Nat'l Ass'n*,
  2022 U.S. Dist. LEXIS 125090 (D.N.D. July 14, 2022) ........................................................ 16

*Abels v. Farmers Commodities Corp.*,
  259 F.3d 910 (8th Cir. 2001) ................................................................................................. 23

*Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*,
  949 F.3d 417 (8th Cir. 2020) ................................................................................................. 21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................... 5, 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................... 5, 17

*BJC Health Sys. v. Columbia Cas. Co.*,
  478 F.3d 908 (8th Cir. 2007) ................................................................................................. 23

*BNSF Ry. Co. v. Seats, Inc.*,
  900 F.3d 545 (8th Cir. 2018) ................................................................................................... 5

*Borsheim Builders Supply, Inc. v. Merrick Bank Corp.*,
  387 F. Supp. 3d 957 (D.N.D. 2019) ...................................................................................... 23

*Burlington N. and Sante Fe Ry. Co. v. Burlington Res. Oil and Gas Co.*,
  590 N.W.2d 433 (N.D. 1999) ................................................................................................ 24

*Caplin v. Marine Midland Grace Tr. Co.*,
  406 U.S. 416 (1972) ..................................................................................................... 9, 10, 11

*Commercial Prop. Invs. v. Quality Inns Int'l Inc.*,
  61 F.3d 639 (8th Cir. 1995) ................................................................................................... 23

*Cox v. Mortgage Elec. Registration Sys., Inc.*,
  685 F.3d 663 (8th Cir. 2012) ................................................................................................. 21

*Dewey v. Lutz*,
  462 N.W.2d 435 (N.D. 1990) ................................................................................................ 19

*Du Bois v. Bd. of Regents of the Univ. of Minn.*,
  987 F.3d 1199 (8th Cir. 2021) ................................................................................................. 5

*Dvorak v. American Family Mut. Ins. Co.*,
  508 N.W.2d 329 (N.D. 1993) ................................................................................................ 21

iii

*EEE Minerals, LLC v. North Dakota*,
   318 F.R.D. 118 (D.N.D. 2016) ................................................. 5

*Erickson v. Brown*,
   747 N.W.2d 34 (N.D. 2008) ................................................. 20

*Finstad v. Gord (In re Finstad)*,
   2019 Bankr. LEXIS 4017 (Bankr. D.N.D. Oct. 21, 2019) ......................... 4

*Hellman v. Thiele*,
   413 N.W.2d 321 (N.D. 1987) ................................................. 19

*In re Brooks*,
   227 B.R. 891 (Bankr. W.D. Mo. 1998) ....................................... 14

*In re Mid-States Express, Inc.*,
   433 B.R. 688 (Bankr. N.D. Ill. 2010) ....................................... 12

*In re Ozark Restaurant Equip. Co.*,
   816 F.2d 1222 (8th Cir. 1987) .............................................. 11

*In re Rahe*,
   178 B.R. 801 (Bankr. D. Neb. 1995) ......................................... 14

*In re Rare Coin Galleries, Inc.*,
   862 F.2d 896 (1st Cir. 1988) ............................................... 11

*Kern v. Jeppesen Sanderson, Inc.*,
   867 F. Supp. 525 (S.D. Tex. 1994) ......................................... 18

*Lindholm v. Shaft*,
   2002 U.S. Dist. LEXIS 17781 (D.N.D. Aug. 26, 2002) ......................... 21

*Livinggood v. Balsdon*,
   709 N.W.2d 723 (N.D. 2006) ................................................. 16

*McDougall v. AgCountry Farm Credit Servs. (In re McDougall)*,
   2017 Bankr. LEXIS 1905 (Bankr. D.N.D. July 10, 2017) ....................... 21

*Meyer v. Maus*,
   626 N.W.2d 281 (N.D. 2001) ................................................. 16

*Mick v. Raines*,
   883 F.3d 1075 (8th Cir. 2018) .............................................. 5

iv

*Nagel v. Sykes Realty, Inc.*,
  400 F. Supp. 2d 1198 (D.N.D. 2005) ...................................................................... 19

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Cargill, Inc.*,
  61 F.4th 615 (8th Cir. 2023) .................................................................................... 5

*Northstar Founders, LLC v. Hayden Capital USA, LLC*,
  855 N.W.2d 614 (N.D. 2014) .................................................................................. 21

*OmegaGenesis Corp. v. Mayo Found. For Med. Educ. & Research*,
  851 F.3d 800 (8th Cir. 2017) .................................................................................. 21

*Ostlund Chemical Co. v. Norwest Bank*,
  417 N.W.2d 833 (N.D. 1988) .................................................................................. 19

*Ryan v. Ryan*,
  889 F.3d 499 (8th Cir. 2018) .................................................................................... 4

*Schertz-Cibolo-Universal City v. Wright (In re Educators Group Health Trust)*,
  25 F.3d 1281 (5th Cir. 1994) .................................................................................. 11

*Tanke v. Domier (In re Estate of Littlejohn)*,
  698 N.W.2d 923 (N.D. 2005) .................................................................................. 24

*Think3 Litig. Tr. v. Zuccarello (In re Think3, Inc.)*,
  529 B.R. 147 (Bankr. W.D. Tex. 2015) .................................................................. 11

*United States ex rel. Costner v. URS Consultants, Inc.*,
  317 F.3d 883 (8th Cir. 2003) .................................................................................. 23

*Vendsel v. Vendsel (In re Estate of Vendsel)*,
  891 N.W.2d 750 (N.D. 2017) ............................................................................ 16, 17

*Whyham v. Piper Aircraft Corp.*,
  96 F.R.D. 557 (M.D. Pa. 1982) .............................................................................. 18

**Statutes**
11 U.S.C. § 101 ........................................................................................................ 14

11 U.S.C. § 327 ........................................................................................................ 14

11 U.S.C. § 701 ........................................................................................................ 14

11 U.S.C. § 704 .............................................................................................. 12, 13, 14

N.D.C.C. § 1-01-06 .................................................................................................. 20

N.D.C.C. § 9-03-08 ................................................................................................ 19

N.D.C.C. § 10-04-17 .............................................................................................. 23

Pub. L. No. 109-8, 119 Stat. 23 (2005) ................................................................. 13

**Other Authorities**
Dep't of Labor, Advisory Council Report, Report of the Working Group on Orphan
   Plans (Nov. 8, 2002) ....................................................................................... 13

**Rules**
Federal Rule of Bankruptcy Procedure 7012 ................................................... 1, 4, 5

Federal Rule of Civil Procedure 9 .......................................................................... 23

Federal Rule of Civil Procedure 12 ........................................................... 1, 4, 5, 18

Federal Rule of Civil Procedure 19 ........................................................................ 18

**Treatises**
4 Collier on Bankruptcy 541.10 .............................................................................. 11

5C Wright & Miller, Federal Practice and Procedure § 1359 (3d ed. 2004) ................................. 5

**Regulations**
Termination of Abandoned Individual Account Plans, 71 Fed. Reg. 20,820 (Apr. 21, 2006) ..... 12

Comes now Chad DuBois ("Mr. DuBois"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7012(b) and Federal Rule of Civil Procedure 12(b), and moves to dismiss the Amended Complaint (the "Complaint," as found at DE #11) filed by Erik A. Ahlgren, as Chapter 7 Trustee of the Bankruptcy Estate of Pro-Mark Services, Inc. and as Administrator of the Pro-Mark Services, Inc. Employee Stock Ownership Plan ("Mr. Ahlgren" or the "Trustee" or the "Plaintiff," with the debtor being known as "Pro-Mark" or the "Debtor" and the employee stock ownership plan being known as the "ESOP"), and in support thereof states as follows:

## I.    Introduction

Connie Berg ("Ms. Berg") allegedly made tens of millions of dollars by selling her wholly-owned company to an ESOP shortly before men and women in ominous windbreakers paid the office a visit. Kyle Berg ("Mr. Berg") allegedly masterminded the entity's illicit operations and well-timed sale. And Miguel Paredes ("Mr. Paredes"), backed by a team of professional advisors, allegedly failed to detect this sham despite (i) being given a document that openly shed light on the scheme; and (ii) being a fiduciary who could have quite easily uncovered these alarming issues if only he actually did his job. The actions—and inactions—of Ms. Berg, Mr. Berg, and Mr. Paredes allegedly caused each of them to be enriched. And it is accordingly little wonder that there is now litigation pending to determine their respective liability, *vel non*.

More wonderous, however, is where Mr. DuBois—and, for that matter, Mandy Grant ("Ms. Grant")—fit into this case. Weighing in at just over 100 pages, the Complaint is quite clear that no one in their right mind should have relied on a legalese-rich document executed by Mr. DuBois as part of a complex ESOP transaction to which he was not actually a party. Yet, with a nod to

1

colloquial guilt by association, Mr. DuBois now finds himself defending a federal lawsuit for a sum of money that is more than half the gross domestic product of the Polynesian island of Tuvalu.

Mr. Ahlgren's claims against Ms. and Mr. Berg may well have merit. Similarly, the theories of recovery against Mr. Paredes might be well founded. And, being cognizant that she is represented by separate counsel, Mr. DuBois expresses no position on the claims against Ms. Grant. But the claims against Mr. DuBois appear uniformly ill-founded from a both factual and legal perspective, representing little more than a naked effort to overextend a dragnet of liability to ensnarl a man whose most significant economic tie to the events alleged in the Complaint was losing his job when Pro-Mark sought bankruptcy protection.

The three causes of action against Mr. DuBois merit dismissal for various reasons. First, and dispositive of two such claims, Mr. Ahlgren lacks standing to bring claims on behalf of an ESOP where the litigation will not yield any benefit to the chapter 7 estate he is charged with administering. Supreme Court precedent tracing to 1972 prohibits those tasked with liquidating bankruptcy estates from pursuing claims on behalf of any individuals or entities aside from the subject estates. And, equally problematically, it appears that by assuming the helm of such litigation *sub judice*, Mr. Ahlgren may have compromised the very disinterestedness that is elemental to his work as a chapter 7 trustee.

Second, the claims elementally fail for the simply reason that a plain reading of the Complaint shows Mr. DuBois did not proximately cause—and, indeed, apparently could not have proximately caused—any damages to be incurred by any party in interest. The pleading is abundantly clear that the alleged misrepresentations of Mr. Berg and Ms. Berg, coupled with the alleged malpractice of Mr. Paredes, caused the at-issue losses to be sustained. Somewhere along the way, Mr. DuBois executed a document replete with boilerplate, but no actual reliance

2

thereupon—much less material reliance thereupon—is alleged, for the simple reason that no such reliance can be alleged. Suggesting more than $30 million in losses to have been occasioned by this singular document would be to necessarily suggest that the alleged misrepresentations of Mr. and Ms. Berg, over myriad years, were not what invited the rise and fall of a house of small business cards. Similarly, suggesting those losses to have been occasioned by this document would be to directly undermine the theory that Mr. Paredes, a professional fiduciary, could have realized he was gawking at a Potemkin village if only he either (i) read a document he had been given; or (ii) performed the barest portions of the job he was expressly hired to carry out.

Third, the Complaint—time and again—conflates Ms. Berg and the Debtor. The transaction at the core of this case was a sale of the Debtor's equity from Ms. Berg to the ESOP. The Debtor, while obviously central to that transaction, was neither a buyer nor seller. Whether the equity sold for $1 or $36.5 million would not impact the Debtor's balance sheet or quarterly profits. Yet the Complaint somehow endeavors to posit that Pro-Mark has suffered monetary damages as a result of this sale (or, at minimum, has standing to bring tort-centric claims for which the suffering of monetary damages is elemental). This conflation is only exacerbated in connection with a securities fraud claim where the pleading seems to miss that Mr. DuBois may well have been an officer and agent of the Debtor but he was not, by the Plaintiff's very theory of the case, anything more than a fleeting acquaintance of Ms. Berg.

Fourth, the Plaintiff endeavors to make out a claim for breach of fiduciary duty, tethered partially—if not outright tangentially—to business events of seemingly no relation to the rest of the occurrences underlying the Complaint. Yet, in so doing, Mr. Ahlgren fails to join two indispensable parties. The Plaintiff surmises four corporate officers equally failed to respond to a

governmental inquiry and thereby occasioned ill-defined economic losses for the Debtor, but has declined to bring two of those four officers into this case.

Fifth, and perhaps most simply, the Plaintiff has also sued Mr. DuBois for fraud despite failing to allege contractual privity between Mr. DuBois and the ESOP on behalf of which the claim is brought. North Dakota law conditions claims for fraud on contractual privity, expressly shirking the common law cause of action in favor of a codified claim. And such a theory of relief is accordingly facially inapplicable where, as here, Mr. DuBois and the ESOP are not contractual counterparties.

Both individually and cumulatively, these issues militate in favor of dismissing this case as against Mr. DuBois. There may well be a meaningful adversary proceeding here, as against other co-defendants. But as matters concern Mr. DuBois, it is difficult to see this case as more than an overreach through which a man who lost his job is being sued for not doing more to stop the loss of his job.

## II.   Standards

### a.   Rule 12(b)(6)

Familiarly, Federal Rule of Civil Procedure 12(b)(6)—made applicable by Federal Rule of Bankruptcy Procedure 7012—permits the defense of "failure to state a claim upon which relief can be granted" to be asserted through a preliminary motion. Fed. R. Civ. P. 12(b)(6). In assessing such a motion, "the Court assumes all facts alleged in the complaint are true and makes reasonable inferences in favor of the nonmoving party." *Finstad v. Gord (In re Finstad)*, 2019 Bankr. LEXIS 4017, at \*7 (Bankr. D.N.D. Oct. 21, 2019) (citing *Ryan v. Ryan*, 889 F.3d 499, 505 (8th Cir. 2018)).

However, while the allegations of a pleading are presumed true for purposes of a Rule 12(b)(6) motion, "[t]he complaint 'must show the plaintiff is entitled to relief, by alleging

4

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"
*Du Bois v. Bd. of Regents of the Univ. of Minn.*, 987 F.3d 1199, 1202 (8th Cir. 2021) (quoting
*BNSF Ry. Co. v. Seats, Inc.*, 900 F.3d 545, 546 (8th Cir. 2018)). And, in turn, "[a] claim has facial
plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged." *Du Bois*, 987 F.3d at 1202 (citing
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

As observed by the Supreme Court, "[t]hreadbare recitals of the elements of a cause of
action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). *See also Nat'l Union Fire Ins. Co. of
Pittsburgh v. Cargill, Inc.*, 61 F.4th 615, 620 (8th Cir. 2023) ("Threadbare recitals . . . supported
by mere conclusory statements are not sufficient to survive a motion to dismiss.") (quoting *Mick
v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018)).

### b.  Rule 12(b)(7)

Federal Rule of Civil Procedure 12(b)(7)—made applicable by Federal Rule of Bankruptcy
Procedure 7012—permits a party to seek dismissal where a litigant has failed ". . . to join a party
under Rule 19." Fed. R. Civ. P. 12(b)(7). The governing standard is markedly similar to that of the
preceding subsection: "In analyzing a Rule 12(b)(7) motion, courts are to accept as true all the
well-pleaded factual allegations and draw all reasonable inferences in favor of the non-moving
party." *EEE Minerals, LLC v. North Dakota*, 318 F.R.D. 118, 123-24 (D.N.D. 2016) (citing 5C
Wright & Miller, Federal Practice and Procedure § 1359 (3d ed. 2004)).

While a motion under Rule 12(b)(7) does allow a party to rely on documents and
contentions extraneous to the pleadings in a given case, *id.*, such is largely immaterial *sub judice*
insofar as Mr. DuBois topically relies only on the Complaint and the exhibits thereto.

5

### III.     Allegations Pertinent to Mr. DuBois

Accepting the contentions of the Complaint as true for the sole and limited purpose of this Motion, the Plaintiff pertinently alleges in connection with the claims against Mr. DuBois:

1.      Mr. and Ms. Berg are the former owners of the Debtor who, in 2020, sold their interest therein to an ESOP, receiving more than $25 million in cash. Complaint, DE #11, at ¶ 1.

2.      The ESOP transaction was premised upon a litany of falsities and would not have been consummated had (i) Mr. and Ms. Berg been candid or (ii) Mr. Paredes, an independent fiduciary hired to perform due diligence, actually carried out his job. *Id.* at ¶ 2.

3.      After the Debtor was compelled to seek bankruptcy relief, Mr. Ahlgren appointed himself trustee of the ESOP trust and, in such capacity (together with other capacities) brings this suit. *Id.* at ¶¶ 8-9.

4.      Mr. DuBois is a former officer of the Debtor who held various positions during his time with the company. *Id.* at ¶ 23.

5.      The Debtor participated in various government programs aimed at advantaging small businesses and entities owned and operated by women, with such participation commencing in either 2007 or 2008. *Id.* at ¶¶ 27, 29, 45.

6.      The Debtor was not actually eligible to participate in these programs because Ms. Berg did not actually operate Pro-Mark, *id., passim*, or play a meaningful role in the business, *id.* at ¶ 63.

7.      It is "[t]he Bergs" who "perpetrated the government contract fraud to enrich themselves." *Id.* at ¶ 54.

8.      The Debtor had roughly $38 million in revenue over a four year span, attributable to programs for which it was not properly eligible; "[b]ut for the Bergs' fraud, the Debtor would

not have been eligible for such contracts and would not have received this revenue and net income." *Id.* at ¶ 100.

9.      "The Bergs' fraudulent conduct inflated the Debtor's revenue and profits, for the sole benefit of the Bergs." *Id.* at ¶ 101.

10.      After committing this fraud to enrich themselves, *id., passim*, Mr. and Ms. Berg elected to enter into an ESOP transaction to sell the Debtor to its employees, *id., passim*, with Mr. Paredes taking over as the ESOP trustee for purposes of consummating the transaction, *id.* at ¶ 111.

11.      As ESOP trustee, Mr. Paredes was responsible for performing due diligence on the Debtor and using that due diligence to negotiate on behalf of the ESOP. *Id.* at ¶ 113.

12.      The ESOP transaction was negotiated between Mr. and Ms. Berg on one side and Mr. Paredes on the other side. *Id.* at ¶ 119.

13.      Ms. Berg signed in multiple capacities at closing, when undertaking the ESOP transaction, and received total consideration of just over $31.5 million. *Id.* at ¶¶ 125, 132, 138.

14.      As part of the ESOP transaction, Ms. Berg expressly covenanted that she was not aware of any basis for any claims to be brought against the Debtor, while making numerous additional false representations. *Id.* at ¶¶ 142-161.

15.      Had Ms. Berg been honest, the transaction never would have closed and the ESOP trust never would have occasioned monetary losses. *Id.* at ¶ 162.

16.      Similarly, if Mr. Paredes had performed the job he was hired to undertake, the transaction never would have closed and enormous losses by the ESOP never would have been incurred. *Id.* at ¶¶ 164-179.

17.      All Mr. Paredes needed to do, to discover the problems with the Debtor being in violation of myriad laws, was read a confidential memorandum of which he was given a copy. *Id.* at ¶ 169.

18.      Had Mr. Paredes performed "basic due diligence," he would "have discovered the Bergs' fraud." *Id.* at p. 35, § N.

19.      Mr. DuBois is alleged to have known the Debtor was not eligible for the programs in which it participated, but Mr. DuBois did not speak up to stop the ESOP sale and executed an inaccurate disclosure document as part of the transaction. *Id.* at ¶¶ 189-199.

20.      The Debtor's offices were raided by the Federal Bureau of Investigation, pursuant to a grand jury subpoena, in March 2022. *Id.* at ¶¶ 221-222.

21.      The Debtor subsequently entered into a non-prosecution agreement with the federal government, pursuant to which Pro-Mark acknowledged fraudulently enrolling in contracting programs for which the entity was not eligible. *Id.* at ¶¶ 224, 226.

22.      Mr. DuBois is neither named nor seemingly identified in the non-prosecution agreement. *Id.* at Exhibit D.

23.      After having its offices raided pursuant to an investigation into, *inter alia*, whether or not the Debtor misrepresented its status as a small business, Pro-Mark did not vociferously oppose a "size protest" from Greenstone Construction, Inc., challenging whether or not Pro-Mark qualified as a small business in connection with an Air Force contract. *Id.* at ¶¶ 230-234.

24.      As a result of not fully responding to the "size protest," the Debtor lost the small business classification that both the federal government and Mr. Ahlgren maintain to have been fraudulently obtained in the first place. *Id.* at ¶ 238.

25.      In April 2024, the Debtor petitioned for bankruptcy relief. *Id.* at ¶ 248.

### IV.    Argument: Dismissal is Appropriate

#### a.  The Trustee Lacks Standing to Pursue Claims on Behalf of the ESOP

As a threshold matter, Mr. Ahlgren lacks standing to pursue claims—against Mr. DuBois or anyone else—in Mr. Ahlgren's capacity as trustee of the ESOP. Mr. Ahlgren is a chapter 7 bankruptcy trustee, charged with liquidating the Debtor's estate and disbursing the proceeds thereof to creditors; pursuing claims against third parties, on behalf of a third party and for the sole economic benefit of a third party, is little more than an expensive and time-consuming frolic beyond the purview of Mr. Ahlgren's statutory charge and outside the scope of his well-defined duties. The Plaintiff's efforts to pursue litigation claims, in any capacity other than that of chapter 7 trustee, ought not be countenanced.

#### i.  The ESOP's Allegations are Beyond the Scope of Section 704

The notion of a bankruptcy fiduciary overstepping her or his bounds to pursue litigation is neither novel nor unprecedented. More than fifty years ago, the Supreme Court addressed this very issue when presented with a bankruptcy trustee seeking to pursue litigation on behalf of the holders of debentures issued pre-petition by a Chapter X debtor. *Caplin v. Marine Midland Grace Tr. Co.*, 406 U.S. 416 (1972). The high court found then—in a holding that has been relied upon in the context of the current iteration of Title 11 of the United States Code (the "Bankruptcy Code")—that such efforts are facially improper.

In *Caplan*, the debtor issued slightly over $8 million in debentures, covenanting that the entity would stay within the boundaries of a strict asset-liability ratio until the obligations were fully repaid with interest. *Id.* at 417. Marine Midland Grace Trust Company ("MMGTC") was the trustee under these debentures, charged with ensuring the debtor's compliance. *Id.* Predictably (or there would not be a resulting published opinion), the debtor defaulted on these covenants—quite badly—and ended up in federal insolvency proceedings. *Id.* at 418.

9

The bankruptcy trustee in *Caplan* undertook an investigation and concluded that MMGTC "had either willfully or negligently failed to fulfill its obligations under the indenture." *Id.* at 419. He then brought suit against MMGTC, on behalf of the debenture holders, "to recover the principal amount of the outstanding debentures as damages for [MMGTC's] alleged bad-faith failure to compel compliance with the terms of the indenture by [the debtor]." *Id.* at 420.

After highlighting—somewhat amusingly—an apparent disagreement between Judge Augustus Hand and Judge Learned Hand, *id.* at 421, the Supreme Court proceeded to find a trustee in bankruptcy lacks "standing to sue an indenture trustee on behalf of debenture holders," *id.* at 434. Core to this holding was a recognition that while the Bankruptcy Act furnished a trustee with the "right, and indeed impose[d] the duty, to investigate fraud and misconduct and to report to the judge the potential causes of action 'available to the estate,'" *id.* at 428, "there is nothing in the section that enables him to collect money not owed to the estate," *id.*

Stated otherwise, though a bankruptcy trustee may be obligated to perform certain investigations of third parties, the duty to investigate causes of action ought not be conflated with standing to then pursue those causes of action if they are not assets of a bankruptcy estate. A trustee's duty, quite plainly, is to marshal the assets of an estate and liquidate those assets for the benefit of creditors; pursuing tangential litigation, for the sole monetary benefit of persons other than creditors of a debtor's estate, is simply beyond the scope of a trustee's permissible activities.

*Caplan* did, of course, arise under the Bankruptcy Act, which has now been replaced by the modern Bankruptcy Code. Yet *Caplan* remains good law. As recently as 2015, the United States Bankruptcy Court for the Western District of Texas has expressly relied on *Caplan* in holding, *inter alia*, ". . . property of the bankruptcy estate does not include claims for damages caused to individual creditors or stockholders of the debtor." *Think3 Litig. Tr. v. Zuccarello (In re*

10

*Think3, Inc.)*, 529 B.R. 147, 187 (Bankr. W.D. Tex. 2015) (citing *Caplin*, 406 U.S. at 433; *Schertz-Cibolo-Universal City v. Wright (In re Educators Group Health Trust)*, 25 F.3d 1281, 1284-85 (5th Cir. 1994)).

The Fifth Circuit has been similarly reliant on *Caplan* in noting, *inter alia*, "[i]f . . . a cause of action belongs solely to the estate's creditors, then the trustee has no standing to bring the cause of action." *In re Educators Grp. Health Tr.*, 25 F.3d at 1284 (citing *Caplan*, 406 U.S. at 416). The First Circuit has done similarly. *See, e.g.*, *In re Rare Coin Galleries, Inc*., 862 F.2d 896, 900 (1st Cir. 1988) ("The trustee, however, has no power to assert any claim on behalf of the creditors when the cause of action belongs solely to them.") (citing *Caplan*, 406 U.S. 416; *In re Ozark Restaurant Equip. Co*., 816 F.2d 1222, 1229-30 (8th Cir. 1987); 4 Collier on Bankruptcy 541.10[8], at 541-70)).

Yet it is the Eighth Circuit's holding in *Ozark Restaurant Equip. Co.* that is perhaps most relevant, not merely because this Honorable Court sits within the Eighth Circuit but, too, because that case expressly addresses the survival of *Caplan* when the Bankruptcy Act faded into the prose of the Bankruptcy Code: "As originally proposed by the House, Section 544 was to contain a subsection (c), which was intended to overrule Caplin. It is extremely noteworthy, however, that this provision was deleted before promulgation of the final version of Section 544." *In re Ozark Rest. Equip. Co.*, 816 F.2d at 1227-28 (8th Cir. 1987). As a result of this intentional omission, ". . . *no* trustee, whether a reorganization trustee as in *Caplin* or a liquidation trustee as in the present case, has power under Section 544 of the Code to assert general causes of action, such as the alter ego claim, on behalf of the bankrupt estate's creditors." *Id.* at 1228 (emphasis in original).

The plain language of the Bankruptcy Code reinforces this reality. Section 704 sets forth the duties of a chapter 7 trustee and, as noted by Mr. Ahlgren, does provide that a trustee shall:

11

if, at the time of the commencement of the case, the debtor (or any entity designated by the debtor) served as the administrator (as defined in section 3 of the Employee Retirement Income Security Act of 1974) of an employee benefit plan, continue to perform the obligations **required** of the administrator. . .

11 U.S.C. § 704(a)(11) (emphasis added).

Key to Section 704(a)(11), however, is the word "required." This provision directs a chapter 7 trustee to do what is *required* of an ESOP administrator and nothing more. The language is solely intended to ensure ESOPs not be "orphaned" where administrators enter chapter 7 and cease being attentive to the ERISA rights of plan participants:

> Section 704(a)(11) came at the [United States Department of Labor's] behest after years of struggling with the problems created by "orphan plans," plans that are abandoned by the employers that established them. The Department found that participants in orphan plans are "effectively denied access to their benefits and are otherwise unable to exercise their rights guaranteed under ERISA. At the same time, benefits in such plans are at risk of being significantly diminished by ongoing administrative expenses, rather than being distributed to participants and beneficiaries." The Department attempted to remedy this problem through a series of initiatives designed to quickly identify orphan plans and designate a fiduciary to be responsible for the assets of the plan. Frequently the fiduciary that the Department was seeking for an orphan plan was either the plan sponsor or the administrator that the plan sponsor had designated to administer the plan. Regardless of who the Department found or appointed as the fiduciary, the goal was to have that person "manage, terminate, and distribute the assets of the plan."

> The Department buttressed its initiatives by backing legislation that would require the bankruptcy trustee to fulfill the role of administrator in cases where the plan sponsor was in bankruptcy. The Department recognized plans were at high risk of becoming abandoned when the plan sponsor filed for bankruptcy, if not before. As a consequence, the language currently found in section 704(a)(11) was introduced as part of the Bankruptcy Reform Act of 2001. S. 220, 107th Cong. (1st Sess. 2001). The proposed law sought to have the plan sponsor continue "his fiduciary responsibilities by terminating the company's retirement plan or plans" through the chapter 7 trustee. The proposal ultimately became law as section 446(b)(2) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. . .

*In re Mid-States Express, Inc*., 433 B.R. 688, 692-93 (Bankr. N.D. Ill. 2010) (quoting and citing

Termination of Abandoned Individual Account Plans, 71 Fed. Reg. 20,820 (Apr. 21, 2006); Dep't

of Labor, Advisory Council Report, Report of the Working Group on Orphan Plans (Nov. 8, 2002); citing Pub. L. No. 109-8, 119 Stat. 23 (2005)).

The *Mid-States Express* Court, as noted above, undertook an extensive review of the history of Section 704(a)(11) and the purpose thereof. The conclusion, consistent with the plain language of the provision, is that a chapter 7 trustee is to do what *must* be done to ensure a plan not be orphaned, which often means winding up the plan and furnishing documents to plan holders.

Yet nothing suggests this duty—expressly confined to what is "required" be done—is discretionarily expandable to cover the bringing of litigation claims on behalf of an ESOP plan. Indeed, as noted by the *Mid-States Express* Court, bankruptcy courts do not even have jurisdiction to handle matters related to the wind up on an ESOP plan. So it necessarily comes as a mighty stretch to surmise that Section 704(a)(11) can be liberally expanded to not merely enlarge the jurisdiction of a bankruptcy court but, too, *de facto* overrule *Caplan*—a case that continues to be relied upon post-BAPCPA—and afford a trustee standing to pursue an affirmative litigation claim that is not an asset of a debtor's estate.[1]

### ii. Acting as ESOP Trustee (But Not Administrator) Would Deprive the Trustee of His Requisite Disinterestedness

There is, too, a pragmatic reason Mr. Ahlgren cannot pursue litigation claims on behalf of the ESOP, whilst serving as the chapter 7 trustee herein: doing so would cause Mr. Ahlgren to cease to be disinterested and, *ipso facto*, disqualify him from continuing to serve as chapter 7 trustee. In crossing the thin line from doing what is "required" to be done to administer an orphan

---

[1] For the avoidance of ambiguity, Mr. DuBois does *not* challenge this Honorable Court's jurisdiction to hear the instant case and does *not* suggest this case is properly filed elsewhere. The jurisdictional holding of *Mid-States Express* is shared solely to highlight the very limited scope of Section 704(a)(11). Given that Mr. Ahlgren brings other claims, in his capacity as a bankruptcy trustee (and not as administrator or trustee of the ESOP), Mr. DuBois does not dispute that there would exist either supplemental or pendent jurisdiction to entertain related claims. Mr. DuBois simply asserts that Mr. Ahlgren lacks standing to bring those related claims in the first instance.

ESOP, to affirmatively advocating on behalf of an ESOP that is a debtor's equity holder, a trustee necessarily ceases to possess the qualities requisite of an estate fiduciary. This is not a peril unique to Mr. Ahlgren or one idiosyncratic to this case; this problem would necessarily manifest in any case where a chapter 7 trustee endeavored to also pursue litigation on behalf of an ESOP that is a debtor's equity holder.

The Bankruptcy Code requires a trustee appointed to helm a chapter 7 estate be a "disinterested person." 11 U.S.C. § 701(a)(1). *See also In re Brooks*, 227 B.R. 891, 894 (Bankr. W.D. Mo. 1998). The professionals engaged by a trustee must, too, be disinterested, 11 U.S.C. § 327(a), and "[t]his disinterestedness must be maintained throughout the course of the case to preserve impartiality in the administration of the bankruptcy estate," *In re Rahe*, 178 B.R. 801, 802 (Bankr. D. Neb. 1995).

Yet the definition of "disinterested person" expressly excludes any person who is "an equity holder, or an insider" of the debtor. 11 U.S.C. § 101(14). And, in this case, as in almost any other where there exists an ESOP, the ESOP trustee stands as an equity holder of the debtor.

Lest this reasoning seem facially antithetical to Section 704(a)(11), which expressly directs a chapter 7 trustee to administer an ESOP and tend to mandatory obligations associated therewith, some nuance is of particular import: Section 704(a)(11) directs a chapter 7 trustee to "perform the obligations of the **administrator**." 11 U.S.C. § 704(a)(11) (emphasis added). There is a difference between an ESOP administrator and an ESOP trustee, with one serving to, titularly, administer the ESOP in a ministerial capacity, and with the other serving as a substantive fiduciary acting in a non-ministerial capacity on behalf of the ESOP.

As the Complaint itself acknowledges, it is the ESOP trust that engaged in the transaction underlying the various ESOP-centric causes of action brought by Mr. Ahlgren. Complaint, DE

14

#11, at ¶ 105. The employees are the beneficiaries of the ESOP trust. *Id.* And it is from the ESOP trust that the employees were to acquire their shares in the Debtor over time. *Id.* As trustee of the ESOP trust, Mr. Ahlgren is now controlling the trust that is the Debtor's largest equity holder. And, in so doing, Mr. Ahlgren ceases to be a "disinterested person" within the definitional ambit of Section 101(14).

To be sure, this is not an attack on Mr. Ahlgren (who is an exemplary bankruptcy trustee, excellent lawyer, and individual of the highest character). This is, rather, the simple observation of a legal reality that renders it statutorily impossible for a chapter 7 trustee to step into the shoes of an ESOP trustee while remaining at the held of a chapter 7 estate. It is one thing for a chapter 7 trustee to tend to the ministerial functions of being an ESOP administrator, winding up an ESOP and sending documents to employees (and to ESOP trustees); it is altogether another thing for a chapter 7 trustee to appoint himself an ESOP trustee and then go about pursuing litigation on behalf of the ESOP trust.[2]

**b. Count 4 Should be Dismissed**

**i. The Complaint Does Not Allege Breach of a Fiduciary Duty Owed to the Debtor**

Count 4 of the Complaint—the first of the three causes of action brought against Mr. DuBois—is maintained by Mr. Ahlgren in his capacity as chapter 7 trustee, and not in his capacity as ESOP trustee. While this reality certainly obviates any concerns about standing on Count 4, the reality also serves to highlight the fundamental, incurable tension that underlies Count 4: the Debtor suffered no damages as a result of the ESOP transaction, with the purchase and sale of

---

[2] This Honorable Court did enter an order permitting Mr. Ahlgren to serve as ESOP trustee. DE #132 in the Main Case. However, as noted therein, the order followed entry of a stipulation between Mr. Ahlgren and Mr. DuBois whereby Mr. DuBois preserved his right to object to Mr. Ahlgren assuming this role. *Id.*

interests being between former and current equity holders and not having any impact upon the Debtor's balance sheet. In the absence of damages, there cannot be a breach of fiduciary duty.

Perhaps mindful of this core issue, Mr. Ahlgren additionally asserts a breach of duty in connection with an apparent failure of Mr. DuBois to respond to inquiries concerning a size protest. But, as extrapolated upon *infra*, this portion of the cause of action is equally untenable—albeit curable in nature—for the simple reason that Mr. Ahlgren has failed to join two indispensable parties to this claim for relief. The Complaint posits two executives, in addition to those already named as defendants, were similarly at fault in the putative failure to sufficiently respond to a size protest. Yet, inexplicably, those individuals have not been made parties hereto.

### ii. The Complaint Does Not Sufficiently Allege the Existence of Cognizable Resulting Damages to the Debtor or the Debtor's Estate

Count 4 is five paragraphs long (albeit with the first paragraph incorporating 265 preceding paragraphs). The latter four paragraphs track the elements of a claim for breach of fiduciary duty, first alleging the existence of a duty, then positing a violation thereof, and then alleging the existence of resulting damages. Tellingly, however, that final paragraph alleges damages only in the threadbare fashion expressly forbade by the *Iqbal* and *Twombly* Courts.

Under North Dakota law, a claim for breach of fiduciary duty has four elements: (1) the existence of a fiduciary relationship; (2) a resulting duty; (3) a breach thereof; and (4) the subject breach being the proximate causation of damages to the plaintiff(s). *Meyer v. Maus*, 626 N.W.2d 281, 286 (N.D. 2001). *See also 25th St. Grp. Apartments #1, LLC v. Bremer Bank, Nat'l Ass'n*, 2022 U.S. Dist. LEXIS 125090, at *41-42 (D.N.D. July 14, 2022).

As observed by the North Dakota Supreme Court: in bringing such a claim, "[m]erely stating damages exist is not enough." *Vendsel v. Vendsel (In re Estate of Vendsel)*, 891 N.W.2d 750, 756 (N.D. 2017) (citing *Livinggood v. Balsdon*, 709 N.W.2d 723 (N.D. 2006)).

Yet such is precisely what Mr. Ahlgren has done here. The allegation of damages, in Count 4, reads, *en toto*, "[a]s a direct and proximate cause of DuBois' breaches of fiduciary duties, the Debtor has suffered damages in an amount to be determined at trial." Complaint, DE #11, at ¶ 270.

This is not a mere violation of the pleading rigors of Rule 8, as expounded upon by Supreme Court precedent. This threadbare recital of the final element of a claim for breach of fiduciary duty, in direct violation of the *Vendsel* Court's warning, is a byproduct of the Debtor having not possibly occasioned any damages in connection with a sale of the entity's equity from one party to another. Sure, the buyer (the ESOP trust) may have suffered damages. But damages incurred by the purchaser of an entity are not damages incurred by the entity itself. If someone overpays for stock in the Walt Disney Company because an unscrupulous stockbroker misrepresents the bid-ask spread, the buyer will occasion a monetary loss but the company itself will not. And the same rationale certainly holds true for Pro-Mark.

### iii. The Trustee Has Failed to Join Two Indispensable Parties

As noted above, Mr. Ahlgren does allege an additional theory of a fiduciary duty being breached, insofar as he asserts a duty to respond to inquiries in connection with a size protest. On that narrow front, it is at least theoretically plausible that damages could have been suffered by the Debtor (as opposed the Debtor's equity holder). Yet Mr. Ahlgren still does not actually allege those damages in a manner that complies with *Iqbal*, *Twombly*, and *Vendsel*. And, perhaps more importantly, Mr. Ahlgren has failed to join two indispensable parties in connection with this claim.

The Complaint alleges, *inter alia*, that "[h]ad the Debtor and its officers and directors— including Mandy Grant, Chad DuBois, Jack Carroll, and Mark Kragnes—fully responded to SBA's information requests, it would have prevailed in the size protest." Complaint, DE #11, at ¶

17

236.[3] Yet, inexplicably, while Mr. Ahlgren has caused Mr. DuBois and Ms. Grant to be summoned herein, he has not joined Messrs. Carroll and Kragnes in this litigation.

Under the Federal Rules of Civil Procedure, a party must be joined in litigation if "in that person's absence, the court cannot accord complete relief among existing parties. . ." Fed. R. Civ. P. 19. While numerous cases stand for the proposition that an alleged joint tortfeasor is not always an indispensable party, case law firmly holds that a party must be joined where failing to do so would subject a defendant to the potential for inconsistent rulings or multiple findings of liability by way of subsequent actions for indemnity and/or contribution. *Whyham v. Piper Aircraft Corp.*, 96 F.R.D. 557, 561 (M.D. Pa. 1982); *Kern v. Jeppesen Sanderson, Inc.*, 867 F. Supp. 525, 537 (S.D. Tex. 1994).

Here, Mr. Ahlgren alleges four executives failed to sufficiently respond to a size protest. Despite the Complaint being more than 100 pages, the Plaintiff does not actually allege which of the four executives would have the primary duty to respond, or if all four—or any combination thereof—would have been so obligated under a corporate flowchart. Rather, Mr. Ahlgren simply alleges that all four executives failed to respond, thereby causing the Debtor to incur economic damages.

Absent some greater detail of pleading, it is not possible to surmise if Mr. DuBois might later face a contribution or indemnification claim from Mr. Carroll and/or Mr. Kragnes. Nor is it

---

[3] Being mindful of the standard that governs a motion under Rule 12(b)(6), Mr. DuBois does not presently challenge the soundness of this assertion. Suffice it to posit, however, that what is being alleged here is that executives of a company under federal investigation for misrepresenting itself as a "small business" failed, during the height of that investigation, to fully respond to a civil size protest in which the company was, once more, accused of not actually being a "small business." Given that much of the Plaintiff's case is premised upon the notion that Pro-Mark was not actually a "small business," there is at least some quotient of chutzpah in his also suggesting the Debtor's executives ought to have drawn a temporal line in the sand and done more to defend the entity's apparently-newfound status as a "small business."

18

possible to surmise if Ms. Grant might later face such a claim. And, to the extent there is liability amongst all four individuals (which, to be sure, Mr. DuBois emphatically denies), judicial economy well dictates that such be allocated in this case and future resources—in this Honorable Court or any other tribunal—not be wasted rehashing the very issues of law and fact that Mr. Ahlgren has raised in this case.

### c.  Count 27 Should be Dismissed

#### i.  Mr. DuBois is Not Alleged to be in Contractual Privity with the ESOP

Count 27 of the Complaint asserts that Mr. DuBois is liable for actual fraud, expressly relying on the provisions of Section 9-03-08 of the North Dakota Century Code. Complaint, DE #11, at ¶ 480. Problematically, however, this very specific statutory tort requires the parties to be in contractual privity, and Mr. Ahlgren was not in privity with the ESOP trust.

North Dakota's codified prohibition on civil fraud is applicable only to contractual counterparties. *See, e.g.*, *Nagel v. Sykes Realty, Inc*., 400 F. Supp. 2d 1198, 1202 (D.N.D. 2005) ("Technically, fraud under Section 9-03-08 of the North Dakota Century Code applies only when there is a contract between the parties, whereas deceit under Section 9-10-02 of the North Dakota Century Code applies when there is no contract between the parties.") (citing *Dewey v. Lutz*, 462 N.W.2d 435, 439 (N.D. 1990) (citing *Hellman v. Thiele*, 413 N.W.2d 321, 326 (N.D. 1987); *Ostlund Chemical Co. v. Norwest Bank*, 417 N.W.2d 833, 835-36 (N.D. 1988))).

Here, the fraudulent conduct alleged of Mr. DuBois concerns his execution of a "Statement of Representation," and his failure to make certain disclosures therein (and otherwise). Complaint, DE #11, at ¶¶ 190-199. Yet nowhere is it alleged that Mr. DuBois was in actual contractual privity with the ESOP trust. To the contrary, while it is alleged he signed one trust document, the Complaint expressly acknowledges such execution was ". . . on behalf of the Debtor." *Id.* at ¶ 108.

19

To be sure, North Dakota does appear to diverge from other states in requiring contractual privity as a condition precedent to making a claim for fraud. And, equally, North Dakota is somewhat (albeit not entirely) unique in codifying civil claims for fraud to the express exclusion of common law assertions of fraud. *See, e.g.*, *Erickson v. Brown*, 747 N.W.2d 34, 53 (N.D. 2008) ("'In this state there is no common law in any case in which the law is declared by the code.' Because the Legislature has spoken through the Code, actions for fraud and deceit are controlled by the statutory distinctions between the claims.") (quoting N.D.C.C. § 1-01-06). But such is nonetheless the legal scheme that necessarily governs the claims herein. And under that legal scheme, Mr. Ahlgren cannot make out a claim for fraud without plausibly alleging Mr. DuBois is in contractual privity with the ESOP trust.

### ii. The Complaint Does Not—and Cannot—Allege Reasonable Reliance

Even if Mr. DuBois were in contractual privity with the ESOP trust, there is a larger reason the claim for fraud is not colorable on the face of the Complaint: Mr. Ahlgren has alleged facts that make it impossible, as a matter of fact and law alike, for anyone to have reasonably relied on the representations of Mr. DuBois and, as such, for any damages to have been proximately suffered thereby. The Complaint is very clear that Mr. Berg and Ms. Berg are the parties who, time and again, made false statements for their own pecuniary benefit (with it never being alleged that Mr. DuBois realized any monetary gain whatsoever). The Complaint is equally clear that Mr. Paredes was in possession of information revealing the Debtor's small business contracts to be the byproduct of misrepresentations and, with the barest exercise of the reasonable diligence he was hired to perform, would have discovered the myriad issues relied upon by Mr. Ahlgren. And it is thusly impossible for Mr. DuBois to bear any liability herein.

Axiomatically, "[p]arties alleging fraud must plead reliance with 'sufficient particularity to state a plausible claim of justifiable reliance.' Conclusory allegations that a plaintiff detrimentally relied on defendants' representations are not sufficient factual matter to state a claim of relief plausible on its face." *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 423 (8th Cir. 2020) (quoting *OmegaGenesis Corp. v. Mayo Found. For Med. Educ. & Research*, 851 F.3d 800, 805 (8th Cir. 2017); citing *Cox v. Mortgage Elec. Registration Sys., Inc.*, 685 F.3d 663, 673 (8th Cir. 2012)).

Lest the codification of claims for fraud appear to alter the core rigor that a litigant show reliance, the precedent of this Honorable Court is topically clear: "A tort action for fraud requires . . . reliance on the false or misleading representation[.]" *McDougall v. AgCountry Farm Credit Servs. (In re McDougall)*, 2017 Bankr. LEXIS 1905, at *30 n.20 (Bankr. D.N.D. July 10, 2017) (quoting *Northstar Founders, LLC v. Hayden Capital USA, LLC*, 855 N.W.2d 614 (N.D. 2014)). *See also Lindholm v. Shaft*, 2002 U.S. Dist. LEXIS 17781, at *10 (D.N.D. Aug. 26, 2002) (" . . . a key element in proving fraud or deceit is reliance by the complaining party upon the false or misleading representations.") (citing *Dvorak v. American Family Mut. Ins. Co.*, 508 N.W.2d 329, 332 (N.D. 1993)).

The Complaint never alleges that Mr. Paredes (or anyone else) actually relied on what appears to have been a pro forma document executed by Mr. DuBois. Rather, Mr. Ahlgren is quite clear that (i) numerous people detrimentally relied on the falsities of Mr. and Ms. Berg; and (ii) Mr. Paredes ought not have relied on anything said or done by anyone, insofar as he was in possession of a document showing the Debtor's operations to be a fraud and he was legally charged with performing due diligence that would have readily revealed the Debtor's operations to be a fraud.

It necessarily follows that if Mr. Paredes is not alleged to have relied on Mr. DuBois'
execution of a document containing legal boilerplate, and Mr. Paredes could not have reasonably
relied on that document in any event, then Mr. Paredes (and, by the extension, the ESOP trust)
could not have incurred any damages as a proximate result of that document. And this comes as
little surprise in the context of this case: Mr. Ahlgren is quite clear in alleging Mr. and Ms. Berg
profited—enormously—off the making of false statements while Mr. Paredes profited—much less
enormously—off failing to review documents and perform due diligence. Nowhere is it alleged
Mr. DuBois made so much as a penny off of any of the alleged bad acts (aside, inferentially, from
continuing to collect a paycheck). And it logically follows that a person with no financial
motivation to do anything more than execute boilerplate would not, in turn, be a proper or legally
appropriate target for recovery in an ensuing lawsuit premised upon the putatively ill-gotten spoils
of other people's false representations.

### d.  Count 28 Should be Dismissed

The third, and final, claim against Mr. DuBois is for violation of the North Dakota statutory
prohibition on securities fraud. Yet this cause of action does, too, ultimately fail for the simple
reason that the Complaint does not set forth allegations establishing that Mr. DuBois materially
aided the commission of a securities fraud or that he did so in relation to Ms. Berg. Absent Mr.
Ahlgren setting forth both such contentions in a manner that satisfies the rigors of *Iqbal* and

22

*Twombly*, together with the heightened rigors of Rule 9,[4] this claim cannot proceed as against Mr. DuBois.

Section 10-04-17 of the North Dakota Century Code sets forth the civil remedies for securities fraud under the state's blue sky laws. The statutory provision is not a model of succinctness or exemplar of clarity. At core, though, the language creates liability for (i) anyone who fraudulently sells a security; (ii) the directors, officers, and agents of anyone who sells a security; (iii) persons in control of, or otherwise supervising or serving as an officer, director, or managing partner of anyone who is individually liable; (iv) employees of liable persons, where the employees materially aid the fraud; and (v) broker-dealers and investments advisors who materially aid a fraud. N.D.C.C. § 10-04-17(1, 6).

Going through the five disjunctive categories set forth above, there is no contention that Mr. DuBois himself sold a security—he was not an owner of the Debtor prior to consummation of the at-issue ESOP transaction. Similarly, there is no allegation that Mr. DuBois functioned as a broker-dealer or investment advisor. So the first and fifth grounds for imposition of liability are easily passed over.

Vis a vis the second potential theory of liability, Mr. Ahlgren is not suggesting—and the Complaint does not so much as infer—that the Debtor sold any securities to the ESOP trust. The

---

[4] Federal Rule of Civil Procedure 9 familiarly requires "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). *See, e.g. Borsheim Builders Supply, Inc. v. Merrick Bank Corp.*, 387 F. Supp. 3d 957, 963 (D.N.D. 2019) ("Therefore, the party must typically identify the 'who, what, where, when, and how' of the alleged fraud." "This requirement is designed to enable defendants to respond 'specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct.'" "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule.) (quoting *United States ex rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883, 888 (8th Cir. 2003); *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001); *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (quoting *Commercial Prop. Invs. v. Quality Inns Int'l Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)).

allegation, rather, is that Ms. Berg, the former 100% owner of the Debtor, sold securities to the ESOP trust. And this matters a great deal because while Mr. DuBois was no doubt an officer of the Debtor, he is not alleged to have been an officer or director of Ms. Berg (nor do natural persons tend to have officers or directors).

Of course, the statutory scheme also permits liability to be imposed on the agents of persons selling securities. Yet a holistic reading of the Complaint reveals that there is no colorable allegation of Mr. DuBois being Ms. Berg's agent. Mr. Ahlgren's whole theory of the case is precisely that Mr. DuBois did *not* have dealings with Ms. Berg, saving and excepting two e-mails. And the Complaint most certainly does not set forth that there existed a contractual relationship between Ms. Berg and Mr. DuBois, which would be a condition precedent to the establishment of agency under North Dakota law. *See, e.g. Tanke v. Domier (In re Estate of Littlejohn)*, 698 N.W.2d 923 (N.D. 2005) ("An agency relationship involves both a contractual and a fiduciary relationship, and the interpretation of an agent's authority is governed by the rules for construing contracts, except to the extent the fiduciary relationship requires a different rule.") (citing *Burlington N. and Sante Fe Ry. Co. v. Burlington Res. Oil and Gas Co.*, 590 N.W.2d 433 (N.D. 1999)). It accordingly follows that the Complaint does not plead facts that would render Mr. DuBois liable on a theory of his being Ms. Berg's agent.

Similarly, in connection with the third prong, the Complaint does not suggest Mr. DuBois to have been a persons in control of Ms. Berg or otherwise supervising Ms. Berg or exercising dominion over Ms. Berg. Again, very much to the contrary, the gravamen of the Complaint is that Mr. DuBois did *not* have dealings with Ms. Berg. And, as noted *supra*, it is Ms. Berg—not the Debtor—that is alleged to have sold the subject securities.

24

The fourth criterion similarly fails for the comparable reason that Mr. Ahlgren does not allege Mr. DuBois to have been an employee of Ms. Berg. No doubt, Mr. DuBois is alleged to have been an employee of the Debtor. But, again, it is not the Debtor that sold securities to the ESOP—it is Ms. Berg.

Just as with the fraud claim discussed above, it appears the Complaint is conflating an entity with the equity holders of that company. Yet, absent some variety of veil piercing (which is not amongst the 28 causes of action in the Complaint), the Debtor and Ms. Berg are independent persons. And there is no better reminder of this than the reality that if the Debtor had received the $31.5 million paid and pledged in the ESOP transaction, this case would assuredly not be pending.

## V.      Conclusion

WHEREFORE, Mr. DuBois respectfully prays this Honorable Court (i) dismiss this adversary proceeding, as against Mr. DuBois; and (ii) afford such other and further relief as may be just and proper.

Respectfully Submitted,

Dated: November 22, 2024        By:     /s/ Maurice B. VerStandig
                                        Maurice B. VerStandig, Esq.
                                        The Dakota Bankruptcy Firm
                                        1630 1st Avenue N
                                        Suite B PMB 24
                                        Fargo, North Dakota 58102-4246
                                        Phone: (701) 394-3215
                                        mac@dakotabankruptcy.com
                                        *Counsel for Mr. DuBois*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of November, 2024, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig