IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Pro-Mark Services, Inc. | ) | Case No. 24-30167 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| Erik A. Ahlgren, as Chapter 7 Trustee of | ) | |
| Bankruptcy Estate of Pro-Mark Services, | ) | Adv. Case No. 24-07014 |
| Inc., and as Administrator of the Pro-Mark | ) | |
| Services, Inc. Employee Stock Ownership | ) | |
| Plan, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Connie Berg, Kyle Berg, Connie Berg | ) | |
| Revocable Living Trust, Kyle R. Berg | ) | |
| Revocable Living Trust, Chad DuBois, | ) | |
| Mandy Grant, and Miguel Paredes, | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION
TO MOTION TO DISMISS BY DEFENDANT CHAD DUBOIS**

Maurice B. VerStandig, Esq.
The Dakota Bankruptcy Firm
1630 1st Avenue N
Suite B PMB 24
Fargo, North Dakota 58102-4246
mac@dakotabankruptcy.com
*Counsel for Chad DuBois*

*Table of Contents*

I. Introduction ................................................................................................................. 1

II. Argument: A Chapter 7 Trustee Cannot Pursue Contested Litigation on
Behalf of an ESOP *and* a Debtor's Estate ........................................................... 2

    a. The Plaintiff's Two Roles are in Direct Conflict .................................... 2

    b. Eighth Circuit Case Law Supports Case-by-Case Analysis on the
       Question of Professional Conflicts ........................................................ 4

    c. The Word "Required" Cannot be Read Out of Section 704(a)(11) ....... 9

III. The Failure to Plead Damages in Count 4 Ties to the Impermissible
Pleading of Alternative Facts ............................................................................. 11

IV. Contractual Privity is a Condition Precedent to Fraud ..................................... 12

V. Guilt by Association Does Not Give Rise to a Claim for Securities Fraud ..... 14

VI. Conclusion ........................................................................................................ 15

*Table of Authorities*

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................... 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................... 11

*In re BH & P, Inc.*,
949 F.2d 1300 (3d Cir. 1991) ....................................................................................... 6

*Dewey v. Lutz*,
462 N.W.2d 435 (N.D. 1990) ............................................................................... 12, 13

*Dye v. Brown (In re AFI Holding, Inc.)*,
355 B.R. 139 (B.A.P. 9th Cir. 2006) ......................................................................... 7, 8

*Hellman v. Thiele*,
413 N.W.2d 321 (N.D. 1987) ..................................................................................... 13

*In re AFI Holding, Inc.*,
530 F.3d 832 (9th Cir. 2008) ........................................................................................ 7

*King v. Skolness (In re King)*,
624 B.R. 259 (Bankr. N.D. Ga. 2020) ........................................................................ 14

*Livinggood v. Balsdon*,
709 N.W.2d 723 (N.D. 2006) ..................................................................................... 11

*Nagel v. Sykes Realty, Inc.*,
400 F. Supp. 2d 1198 (D.N.D. 2005) .......................................................................... 13

*Ostlund Chemical Co. v. Norwest Bank*,
417 N.W.2d 833 (N.D. 1988) ..................................................................................... 13

*Ritchie Special Credit Invs., Ltd. v. United States Tr.*,
620 F.3d 847 (8th Cir. 2010) ............................................................................... 5, 6, 7

*United States v. Gotti*,
771 F. Supp. 535 (E.D.N.Y. 1991) ............................................................................. 11

*United States v. Pulsifer*,
39 F.4th 1018 (8th Cir. 2022) ............................................................................................. 9

*Vendsel v. Vendsel (In re Estate of Vendsel)*,
891 N.W.2d 750 (N.D. 2017) ........................................................................................... 11

**Statutes**

11 U.S.C. § 324 ........................................................................................................................... 7

11 U.S.C. § 704 ........................................................................................................................... 9

29 U.S.C. § 1104 ....................................................................................................................... 10

N.D. Cent. Code § 9-03-08 ........................................................................................................ 13

N.D. Cent. Code § 9-10-02 ........................................................................................................ 13

N.D. Cent. Code § 10-04-17 ...................................................................................................... 14

**Rules**

Federal Rule of Bankruptcy Procedure 2009 .............................................................................. 5

Federal Rule of Bankruptcy Procedure 7068 .............................................................................. 2

Federal Rule of Civil Procedure 8 ............................................................................................ 11

Federal Rule of Civil Procedure 68 ............................................................................................ 2

Local Rule 7007-1(A) ................................................................................................................. 1

Comes now Chad DuBois ("Mr. DuBois"), by and through undersigned counsel, pursuant to Local Rule 7007-1(A), and submits this reply to the Plaintiff's Response in Opposition to Motion to Dismiss by Defendant Chad DuBois (the "Response," as found at DE #69, with the underlying motion being known as the "Motion to Dismiss," as found at DE #55, and the plaintiff being known as the "Plaintiff" or "Mr. Ahlgren"):

## I. Introduction

The Response beneficially narrows the issues—insofar as Mr. Ahlgren's suit against Mr. DuBois is concerned—to four discreet questions: (i) Does Mr. Ahlgren have standing to assert claims on behalf of an employee stock ownership plan, either as administrator or trustee, while simultaneously asserting claims on behalf of the bankruptcy estate of Pro-Mark Services, Inc. (the "Debtor," with the estate being known as the "Estate")? (ii) Has Mr. Ahlgren sufficiently pleaded damages so as to properly state a claim for breach of fiduciary duty, as against Mr. DuBois? (iii) May a non-party to a contract be sued for fraud under North Dakota law? And (iv) has North Dakota, in the unique context of securities fraud, codified a cause of action for guilt by association?

Each of the four inquiries ought to be answered in the negative. While the Plaintiff may well have a basis for pursuing claims against one or more other defendants herein, Mr. DuBois stands out as being too proximately remote from the core allegations and as playing too attenuated a role in the underlying factual construct. Alongside Mandy Grant ("Ms. Grant"), who is represented by separate counsel and accordingly not openly advocated for herein, Mr. DuBois bears the distinction of being the defendant without any alleged pecuniary interest in the sale transaction underlying this suit.

What the Plaintiff alleges, in the most distilled form, is that Mr. DuBois committed one or more torts by showing up to work. And while such claims of liability-by-virtue-of-employment

1

Document Page 6 of 20

are no doubt familiar in various differentiated civil litigation contexts (albeit often in contexts where the alleged harms involve maiming and/or death), the claims ring as particularly problematic where, as here, the only party with standing to sue is the estate of the very employer to whose jobsite Mr. DuBois showed up on a daily basis.

As extrapolated upon *infra*, and with gratitude to this Honorable Court for allowing that "*infra*" to be comprised of additional pages, DE #81, it is respectfully urged the Motion be granted, notwithstanding the arguments set forth in the Response.

## II. Argument: A Chapter 7 Trustee Cannot Pursue Contested Litigation on Behalf of an ESOP *and* a Debtor's Estate

### a. The Plaintiff's Two Roles are in Direct Conflict

The Response urges that (i) because Title 11 of the United States Code (the "Bankruptcy Code") allows a chapter 7 trustee to serve as an ERISA plan administrator; (ii) because Mr. Ahlgren has elected to do just that here; and (iii) because Mr. Ahlgren used his ensuing powers as plan administrator to appoint himself ESOP trustee, it necessarily follows that the instant litigation is permissible. In so doing, Mr. Ahlgren further urges that "disinterestedness" is to be measured not by one's professional affiliations and obligations but, rather, solely in the prism of personal financial interests. These contentions are errant for reasons exemplified by the facts of this case.

A pragmatic, and not particularly far-fetched, hypothetical underlies the tension manifest here—which, based on a review of authorities cited in the Response, does not appear to have been extant in any cases relied upon by Mr. Alhgren: Mr. DuBois could transmit to Mr. Ahlgren an offer of judgment, pursuant to Federal Rule of Bankruptcy Procedure 7068 and Federal Rule of Civil Procedure 68, wherein Mr. DuBois offers to suffer a judgment in the sum of $1,000.00 as and for resolution of the Plaintiff's claims herein.

2

Mr. DuBois truly and genuinely does not believe he has any liability, on any claim, in this proceeding, and it would accordingly benefit him to establish a mechanism through which forward-looking costs may be recovered. Equally, Mr. DuBois will no doubt incur attorneys' fees well in excess of $1,000.00 as this matter progresses, so it would financially benefit him to instead simply pay those monies over to Mr. Ahlgren and be rid of this matter. This is, in reality, a very plausible (albeit currently solely hypothetical) construct; making such an offer of judgment, in an intentionally-paltry sum, would almost appear the financially responsible action in this case.

The problem created by this hypothetical is not that Mr. DuBois values this case so cheaply. Nor is the problem even that an offer of judgment could give rise to an administrative claim against a bankruptcy estate and a judgment against an employee stock ownership plan (the "ESOP"). Those are each familiar gripes that predominate myriad civil actions; in fact, rare is the defendant who genuinely believes—and acknowledges—a claim against herself or himself to be meritorious.

The problem, rather, is that Mr. Ahlgren cannot accept such an offer of judgment, or any other settlement-centric entreaty, without placing his two fiduciary charges in direct conflict. If the $1,000.00 is to be accepted, some portion would need to inure to the benefit of the Debtor's Estate and some portion would need to inure to the benefit of the ESOP. The same would be true even if different digits comprised the hypothetical number.

Variations on this hypothetical become even more problematic. If an offer of judgment actually broke down the distribution and proposed the payment of an exceedingly generous sum to one party, and a nominal pittance to the other party, Mr. Ahlgren would be compelled to contemplate bartering the good of one against the good of another. Such may be an even more pronounced difficulty if Mr. Ahlgren's internal (and properly confidential) assessment is that the Debtor's claims are superior to those of the ESOP, or vice versa.

3

In a non-bankruptcy context, situations such as this, while ordinarily navigable, raise plentiful issues where two parties share counsel. Few are the civil litigation attorneys who have not, at one juncture or another, become submerged in ethical treatises upon receiving a settlement offer that pits one client's interests against those of another client. But at least in those contexts the client retains decision-making authority, the client can obtain new counsel, and a fundamental distinction exists between the client and the attorney. Here, Mr. Ahlgren *is* both of the clients.

This is why bankruptcy trustees are charged with administering debtors' estates and tending to no other discretionary functions posing a potential conflict. Yes, the role is one replete with ministerial obligations, but the role is equally one carefully designed—and refined through decades of case law—to ensure a trustee is never placed in a position of weighing the interests of an estate against the interests of another person or entity to whom the trustee owes a duty.

To be sure, if anyone could manage this innately conflicted task, it would be Mr. Ahlgren, whose professionalism, judgment, and integrity are of the highest caliber. Yet such is an analysis that ought never be undertaken, whether in this case where Mr. Ahlgren stands at the helm or in another case where a more ethically-pliable individual stands at the helm. The Bankruptcy Code is designed to avoid even the appearance of conflicted peril on the part of trustees serving under chapter 7 (as with chapters 11, 12 and 13). And the integrity of that design collapses if even the slightest ideosyncratic analysis need be undertaken when a chapter 7 trustees brings an adversary proceeding not merely on behalf of an estate but, too, on behalf of a third party entity.

### b. Eighth Circuit Case Law Supports Case-by-Case Analysis on the Question of Professional Conflicts

As exemplified by the foregoing discussion of how the dual roles assumed by Mr. Ahlgren could quickly work mischief upon his fiduciary charges herein, part of what distinguishes this case from much of the case law cited in the Response is that Mr. Ahlgren is brining litigation as *both* a

4

chapter 7 trustee and an ESOP trustee. In fact, each count of the amended complaint (the "Complaint," as found at DE #11) takes care to distinguish the role(s) therein assumed by Mr. Ahlgren. Complaint, DE #11, at pp. 54-97. Sometimes he is a bankruptcy trustee, sometimes he is an ESOP administrator and trustee, and sometimes he is both. This results in a tension that renders the Plaintiff fundamentally not disinterested.

Mr. Ahlgren relies on the Eighth Circuit's holding in *Ritchie Special Credit Invs., Ltd. v. United States Tr.* for the proposition that disinterestedness analysis "generally" applies "only to personal interests of the trustee." Response, DE #69, at § I(B), p. 15 (quoting *Ritchie Special Credit Invs., Ltd. v. United States Tr.*, 620 F.3d 847, 853 (8th Cir. 2010)). Yet *Ritchie* in inapposite, being a case where a federal court appointed an individual to act as receiver of an entity believed to be a Ponzi scheme, before that same receiver elected to place the company in chapter 11 and was then also appointed chapter 11 trustee in the ensuing case. *Id.* at 850-52. These events caused a creditor to assert that the trustee in *Ritchie* ". . . as receiver, is predisposed towards forfeiture and that forfeiture would remove assets from PGW, thereby harming the company." *Id.* at 853.[1]

The Eighth Circuit saw no merit in this contention, noting that a receivership order merely directing a receiver to "coordinate" with the United States Attorney's office, with an eye toward potential forfeiture and restitution proceedings, does not create any duty at odds with that of a chapter 11 trustee. *Id.* at 854. And while the Eighth Circuit, in performing accompanying analysis, did mention that assessments of disinterestedness are "generally" confined to personal obligations, *id.* at 853, the court also expressly hedged on the question, holding, *inter alia*, "[e]ven if the

---

[1] *Ritchie* also contains some analysis of a trustee serving in such capacity in multiple jointly administered cases, but such is less a focus of the Eighth Circuit's attention insofar, as the court itself notes, the potentials for conflict in that circumstance are well addressed by Federal Rule of Bankruptcy Procedure 2009(d). *Ritchie*, 620 F.3d at 854.

5

definition of disinterested were read to include representative as well as personal interests, we nonetheless conclude that Kelley qualifies as disinterested," *id.* at 854.

Importantly, the finding that the receiver/trustee in *Ritchie* was disinterested regardless of non-personal ties does tend to render dicta the comments about solely personal interests informing the analysis. But so, too, does the use of the word "generally" create a construct where no objective rule may be derived therefrom; if anything, such a hedge is a passive recognition that there will be circumstances where analysis ought not be limited to the reach of one's personal interests.

Moreover, even that hedged observation in *Ritchie* is pegged to case law that does not support the Plaintiff's position herein. The Eighth Circuit therein cites to *In re BH& P Inc.*, a Third Circuit case from 1991 in which an entity and its two principals all ended up in chapter 7, with a single trustee being appointed in each of the three cases. *BH & P*., 949 F.2d 1300, 1303 (3d Cir. 1991). The trustee, in turn, "elected to administer the three estates as though they were a single entity," *id.* at 1303, essentially performing a rogue substantive consolidation of sorts.

The trustee in *BH & P* ended up in a fraught position, having to file proofs of claim on behalf of certain estates against others, as well as non-dischargeability complaints against the individual debtors. *Id.* at 1304. And when the trustee thereafter sought interim compensation, a secured creditor objected "on the ground that the trustee and the professionals representing him were guilty of a conflict of interest." *Id.*

In *BH &P*, the court ultimately affirmed the bankruptcy court's order disqualifying the trustee from serving in the individual debtors' cases. *Id.* at 1313-14. The bankruptcy court recognized there might be "competing interests," *id.* at 1313, between the estates, and that basis was sufficient for the Third Circuit to affirm the trustee's disqualification.

6

The *Ritchie* Court also relies upon *Dye v. Brown (In re AFI Holding, Inc.)*, a 2006 case from the Ninth Circuit Bankruptcy Appellate Panel, in discussing the applicability of non-personal interests as part of disinterestedness analysis. *Ritchie*, 620 F.3d at 853-54.[2] There, a chapter 7 trustee was removed under Section 324, *Dye v. Brown (In re AFI Holding, Inc.)*, 355 B.R. 139, 142 (B.A.P. 9th Cir. 2006), in a case involving allegations of Ponzi-esque activities, *id.* at 143.

The former controller of the debtor in *Dye* was a former client of the trustee in *Dye*. *Id.* The former controller's domestic partner was, too, a former client of the trustee, with the representation having included matters relating to the debtor's pre-petition financial affairs. *Id*. at 144. As part of this representation, the trustee's law firm actually received monies from the future-debtor as part of a settlement agreement negotiated by the trustee. *Id.* at 153. There were also suggestions of the trustee having formerly associated with her at-issue clients in a social atmosphere. *Id.* The trustee did not fully disclose these ties in her declaration of disinterestedness. *Id.* at 145. Various investors then moved to remove the trustee, *id.*, with the motion being granted both in light of an absence of disinterestedness and upon recognition of the trustee's initial failure of disclosure, *id.* at 146.

The BAP in *Dye* noted the close relationship between conflicts of interests and a lack of disinterestedness, *id*. at 149, citing to Ninth Circuit case law standing for the relatively benign proposition that conflicts of interest based on prior representation may give rise to the disqualification of a trustee, *id.* at 154 (citing *Chugach Electric Asso. v. United States*, 370 F.2d 441, 442-43 (9th Cir. 1966)). The BAP also noted the failure of a trustee to disclose material connections to a debtor is "a relevant factor for the bankruptcy court's consideration of 'cause' for

---

[2] The *Ritchie* Court cites to *In re AFI Holding, Inc*., 530 F.3d 832, 848 (9th Cir. 2008), which is a Ninth Circuit case (not a BAP case). Upon review, however, the Ninth Circuit case is a relatively short opinion that merely adopts the BAP holding below, and the quotation used by the *Ritchie* Court is contained in the BAP opinion, not the Ninth Circuit opinion.

7

a panel trustee's removal." *Dye*, 355 B.R. at 155. And the BAP accordingly affirmed the trustee's removal. *Id.*

To be sure, *Dye* is a strange case, with strange facts, involving a seemingly-egregious non-disclosure on the part of a panel trustee. But the holding is nonetheless of some import: while the case does include fleeting allegations of a social connection between a trustee, a debtor's former controller, and that former controller's domestic partner, the rationale for finding an absence of disinterestedness is almost solely pegged to the trustee's work as an attorney. It is not the periodic casual social encounters that ultimately doomed the trustee in *Dye*; it is, rather, that she represented persons who had material dealings with the debtor. And it was thusly her representative ties—not her personal connections—that led to a finding she lacked the requisite disinterestedness.

It necessarily follows that the Eighth Circuit's holding in *Ritchie*, already topically suspect because the comments on non-personal connections appear to be dicta, is seemingly well hedged by the use of the word "generally." The case does not establish a bright line rule that a trustee's other fiduciary charges are to be disregarded for purposes of disinterestedness analysis, or even that a trustee's former professional representation should be disregarded for the same purposes. The case, rather, stands for the relatively innocuous proposition that analysis should be conducted in light of the unique facts of each case.

As noted above, the facts of this case are relatively *sui generis* and present problems that are destined to manifest repeatedly. The circumstances are also largely different from those of a trustee who failed to disclose material connections to a debtor or a trustee who decided to unilaterally substantively consolidate multiple estates; no one is questioning Mr. Ahlgren's professionalism or integrity. The facts are also largely dissimilar from those of *Ritchie* itself, where

8

the alleged conflict was one of a trustee also being a receiver for the same debtor; the ESOP and the Debtor in this case are assuredly not the same entities.

The problem here is one tethered to the eccentricities of not merely representing two separate plaintiffs in the same case but, indeed, *being* two separate plaintiffs in the same case. Count 28 of the Complaint is brought by Mr. Ahlgren as both trustee of the Debtor's Estate and as trustee of the ESOP. Complaint, DE #11, at p. 97. Most defendants are also confronting a litany of other counts, some of which come from the trustee of the ESOP and some of which come from the trustee of the Debtor's Estate. Those plaintiffs' interests will, by necessity of the litigation process, be pitted against one another as this case proceeds—whether in the prism of considering settlement offers, in the prism of trying to allocate claimed damages, or otherwise.

And lest the foregoing hypothetical seem too remote, one additional consideration bears notation: if the claims against Mr. DuBois are not dismissed, he will assuredly be filing a counterclaim against the Debtor for indemnity and contribution as to the claims being maintained by the ESOP. After all, since no one is accusing Mr. DuBois of personally profiting so much as a penny off the at-issue transactions, and since everyone seems to acknowledge Mr. DuBois' execution of a boilerplate-rich document was done within the scope of his employment, he would certainly have a resulting claim against his former employer.

c. **The Word "Required" Cannot be Read Out of Section 704(a)(11)**

As final note on the standing issue: The Response does an excellent job urging that courts cannot add words to statutes. Response, DE #69, at § I(A), p. 14. But so, too, may courts not remove words from statutes without creating surplusage. *See United States v. Pulsifer*, 39 F.4th 1018, 1021 (8th Cir. 2022). Section 704 of the Bankruptcy Code directs trustees to "continue to perform the obligations *required* of the administrator" of an ESOP. 11 U.S.C. § 704(a)(11)

9

(emphasis added). The statute does not say "continue to perform the obligations of the administrator," even though such would be more concise and easier to read. The statute, rather, clarifies and limits the obligation by indicating the rigor is only to do what is "required."

The Response ably sets forth case law suggesting an ESOP administrator is required to pursue litigation. But that is not actually what the Employee Retirement Income Security Act ("ERISA") dictates. The statute, rather, provides that an ERISA fiduciary shall:

> . . . discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and. . .
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. . .

29 U.S.C. § 1104(a)(1).

The Response acknowledges both that someone else could be appointed trustee of the ESOP for purposes of pursuing these claims and, too, that such an appointment will be all-but-compulsory if the Plaintiff succeeds on claims against Mr. DuBois or settles with Mr. DuBois. Response, DE #29, at § I(B), pp. 16-18 (including n.3-4).

It would certainly seem the "prudent man" standard would have been well satisfied by appointing someone else trustee of the ESOP from the outset. And doing so would have been consistent with the Bankruptcy Code's mandate that a trustee take only those actions "required" of an administrator, without transmuting the compulsory verbiage of "required" into the discretionary verbiage of "may." Just as words ought not be read into statutes, words must also not be deleted from statutes, and "required" has a very plain meaning that most certainly does not give rise to one appointing himself trustee of an ESOP for purposes of pursuing tangential litigation claims.

10

**III. The Failure to Plead Damages in Count 4 Ties to the Impermissible Pleading of Alternative Facts**

In his Motion to Dismiss, Mr. DuBois observed the pleading of damages, in the Count 4 claim for breach of fiduciary duty, to run afoul of the rigors of Federal Rule of Civil Procedure 8, as elaborated upon by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The Motion to Dismiss also observed the threadbare pleading to be contra to the North Dakota Supreme Court's mandate, of claims for breach of fiduciary duty, that "[m]erely stating damages exist is not enough." *Vendsel v. Vendsel (In re Estate of Vendsel)*, 891 N.W.2d 750, 756 (N.D. 2017) (citing *Livinggood v. Balsdon*, 709 N.W.2d 723 (N.D. 2006)).

In his Response, Mr. Ahlgren generally lays out all the portions of the Complaint where some financial detriment is alleged. Response, DE #69, at § II, pp. 18-19. Yet in so doing, the Plaintiff only brings into sharper relief the problematic construct of pleading alternative facts as opposed to pleading alternative *theories*. Miguel Paredes ("Mr. Paredes") has adeptly briefed this issue. *See* Memorandum in Support of Motion to Dismiss by Miguel Paredes, DE #30-1, at § II(B), pp. 4-9; Reply in Support of Motion to Dismiss by Miguel Paredes, DE #61, at § I, pp. 1-5. Mr. DuBois adopts the topical arguments of Mr. Paredes.

As noted by the United States District Court for the Eastern District of New York, in consideration of the permissible contours of alternative pleading:

> There is a significant difference between pleading alternative theories of law based upon given facts and pleading alternative statements of fact to support a given principle of law. . . Pleading in the alternative is an expedient which, like many expedients, can be carried too far.

*United States v. Gotti*, 771 F. Supp. 535, 540 (E.D.N.Y. 1991).

Here, the Plaintiff is contending a large sum of damages were sustained because of the alleged fraud of Connie Berg ("Ms. Berg") and Kyle Berg ("Mr. Berg"). The Plaintiff is also

11

contending a large sum of damages were sustained because of the alleged malpractice of Mr. Paredes. And the Plaintiff does, too, seem to be contending a large sum of damages were sustained because Mr. DuBois signed a boilerplate-rich document that may or may not have ever even been reasonably relief upon by anyone thereafter.

The incongruity of these theories is what directly informs the absence of sufficient allegations of damages in Count 4 (and other counts). The use of patently-forbade threadbare language to allege damages is not an exercise in concise pleading hidden in the throes of a 101-page document. It is, rather, emblematic of the reality that a good faith reading of the Complaint leaves a reader with no idea of what putative damages were allegedly caused by Mr. DuBois.

To be sure, damages need not be pleaded with the particularity demanded by Rule 9. Nor do they need to be pleaded in an even loquacious manner. But they do need to be pleaded with greater precision that a simplistic, elemental recitation that "[a]s a direct and proximate cause of DuBois' breaches of fiduciary duties, the Debtor has suffered damages in an amount to be determined at trial." Complaint, DE #11, at ¶ 270.

### IV.   Contractual Privity is a Condition Precedent to Fraud

In urging Mr. DuBois may be sued for fraud, even though he is not in contractual privity with the ESOP, the Plaintiff suggests North Dakota's statutory scheme to say something other than what the pertinent plain language reveals. Specifically, Mr. Ahlgren urges that one need not actually be a party to a contract to be sued for fraud but, rather, may be sued if he merely "participated in the contract." Response, DE #69, at § III(A), p. 20 (quoting *Dewey v. Lutz*, 462 N.W.2d 435, 439-40 (N.D. 1990)). Such is not so.

The Century Code is express that "[a]ctual fraud" is found in the commission of certain enumerated acts, "by a party to the contract, or with the party's connivance. . ." N.D. Cent. Code

12

§ 9-03-08. As noted in the Motion to Dismiss, this rigor, juxtaposed to the comparable claim for deceit (which does not require contractual privity), gives rise to a legal system in which ". . . fraud under Section 9-03-08 of the North Dakota Century Code applies only when there is a contract between the parties, whereas deceit under Section 9-10-02 of the North Dakota Century Code applies when there is no contract between the parties." *Nagel v. Sykes Realty, Inc.*, 400 F. Supp. 2d 1198, 1202 (D.N.D. 2005) (citing *Dewey*, 462 N.W.2d at 439 (citing *Hellman v. Thiele*, 413 N.W.2d 321, 326 (N.D. 1987); *Ostlund Chemical Co. v. Norwest Bank*, 417 N.W.2d 833, 835-36 (N.D. 1988))).

The Plaintiff suggests a different standard, relying on *Dewey* for the proposition that mere "participation" in the formation of a contract is sufficient to give rise to a claim for fraud. Response, DE #69, at § III(A), p. 20. Yet that is not nearly what *Dewey* provides. In fact, as noted above, the very quote from the United States District Court for the District of North Dakota in *Nagel*, relied upon by Mr. DuBois, is actually taken from *Dewey*.

In *Dewey*, one of the parties negotiated the subject contract, paid the earnest money deposit required thereunder, and executed a guarantee (which, no doubt, is a form of a contract). *Dewey*, 462 N.W.2d at 440. The other party being sued literally signed the contract. *Id.* So the two defendants were, under just about any construct, parties to the at-issue contract.

Yet even then—even when one party signed the contract and another party was an express guarantor—the Supreme Court of North Dakota still hedged, noting a jury verdict returned below had provided alternative liability on a theory of deceit. *Id.* ("Moreover, even if Marvin and Richter were not parties to the contract, there is substantial evidence to support the jury's alternative findings of deceit.").

13

### V.    Guilt by Association Does Not Give Rise to a Claim for Securities Fraud

Finally, in the context of Count 28 of the Complaint, the Plaintiff urges Mr. DuBois may be sued for securities fraud because he was an associate of Mr. Berg who, in turn, was an associate of Ms. Berg who, in turn, committed securities fraud and, *ergo*, Mr. DuBois is jointly and severally liable. This is an exceedingly strained—and facially problematic—reading of the relevant law.

As a starting point, the Response, in refutation to Mr. DuBois' notation that he is not an "agent" of Ms. Berg and thusly cannot be liable under N.D.C.C. § 10-04-17(1), insists "Plaintiff is ***not*** asserting a claim against Mr. DuBois under Section 10-04-17(1)." Response, DE #69, at § IV, p. 26 (emphasis in original). While this is reassuring, such is also far from clear on the face of the Complaint. *See* Complaint, DE #11, at ¶ 492 ("Pursuant to N.D. Cent. Code § 10-04-17(1) and (6)(b), Kyle Berg, Chad DuBois, and Mandy Grant are jointly and severally liable with and to the same effect as Connie Berg. . .").

It seems the Plaintiff is resting his theory of securities fraud, as against Mr. DuBois, on prophylactic language that permits such a claim to be brought against "[a]n individual who is an employee of or associated with a person liable under this section. . ." N.D. Cent. Code § 10-04-17(6). Since Mr. DuBois was assuredly not an employee of Ms. Berg in her individual capacity, this argument rests solely upon the idea that he was "associated with" Ms. Berg.

To be sure, and keenly endeavoring to avoid hyperbole, this argument is literally one of guilt by association. Not surprisingly, it is one that is also unsupported by precedent, which has greatly refined—and limited—the reach of vicarious liability in the prism of an analogous statutory scheme. *See King v. Skolness (In re King)*, 624 B.R. 259, 296 (Bankr. N.D. Ga. 2020) (interpreting Minnesota's comparable securities fraud statute). But such is also a level of nuance that need not be engaged, as the allegations in this case reveal the fallacy of Count 28 as against Mr. DuBois.

14

The whole gravamen of the Plaintiff's case against Mr. DuBois is that he was *not* an associate of Ms. Berg. Mr. Ahlgren alleges, quite extensively, that Ms. Berg had just about nothing to do with the Debtor's affairs. So while being an employee of the Debtor would no doubt make Mr. DuBois "affiliated with" the Debtor (and, indeed, "an employee of" the Debtor, which also satisfies the statutory criteria), such does not nearly make him an "affiliate of" Ms. Berg.

The Plaintiff endeavors to end-run this problem by noting that Mr. Berg was affiliated with Ms. Berg (which, no doubt, is true—regardless of the Complaint's veracity, spouses would seem almost necessarily affiliated with one another). And, since Mr. DuBois was affiliated with Mr. Berg, and Mr. Berg was affiliated with Ms. Berg, *voila*, Mr. DuBois is an affiliate of Ms. Berg. Response, DE #69, at § IV, p. 24.

This is, of course, one degree too far removed. The statutory scheme does not speak to "affiliates of affiliates." The code, rather, provides for liability to extend to persons who are "affiliated with" a fraudster and who materially aid a fraud through that affiliation (i.e., something more precise than mere guilt by association). Yet such is not alleged of Mr. DuBois here.

### VI. Conclusion

WHEREFORE, Mr. DuBois respectfully prays this Honorable Court (i) dismiss this adversary proceeding, as against Mr. DuBois; and (ii) afford such other and further relief as may be just and proper.

*[Signature Block and Certificate of Service on Following Page]*

15

|  |  |  |
|---|---|---|
|  |  | Respectfully Submitted, |
| Dated: February 7, 2025 | By: | /s/ Maurice B. VerStandig |
|  |  | Maurice B. VerStandig, Esq. |
|  |  | The Dakota Bankruptcy Firm |
|  |  | 1630 1st Avenue N |
|  |  | Suite B PMB 24 |
|  |  | Fargo, North Dakota 58102-4246 |
|  |  | Phone: (701) 394-3215 |
|  |  | mac@dakotabankruptcy.com |
|  |  | *Counsel for Mr. DuBois* |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of February, 2025, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

16