## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NORTH DAKOTA

|  |  |  |
|---|---|---|
| In re: | § § § | Chapter 7 Case No. 24-30167 |
| Pro-Mark Services, Inc., | § § | |
| Debtor. | § § | |
| | § § | Adv. No. 24-07014 |
| ERIK A. AHLGREN, as Chapter 7 trustee of Bankruptcy Estate of Pro-Mark Services, Inc., as Administrator of the Pro-Mark Services, Inc. Employee Stock Ownership Plan, and as Trustee of the Pro-Mark Services, Inc. Employee Stock Ownership Trust, | § § § § § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| CONNIE BERG, KYLE BERG, CONNIE BERG REVOCABLE LIVING TRUST, KYLE R. BERG REVOCABLE LIVING TRUST, CHAD DUBOIS, MANDY GRANT, and MIGUEL PAREDES, | § § § § § § | |
| Defendants. | § § | |

## BERG DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Defendants Connie Berg, Kyle Berg, Connie Berg Revocable Living Trust, and Kyle R. Berg Revocable Living Trust (collectively, "Berg Defendants") file this Reply in Support of Motion to Dismiss[1] and respectfully state as follows:[2]

## I.    COUNTS 1 AND 2:  THE TRUSTEE'S BREACH OF FIDUCIARY DUTY CLAIMS FAIL TO STATE A CLAIM UNDER FEDERAL RULES 9(B) AND 12(B)(6).

### A.  The Bergs could not breach a fiduciary duty owed to the Debtor.

#### 1.  North Dakota courts would likely hold that a sole shareholder does not owe a fiduciary duty to the corporation.

Numerous jurisdictions have held that the sole shareholder of a corporation does not owe a fiduciary duty to the corporation because the ultimate beneficiary of such a duty would be that same sole shareholder, and the Trustee does not cite a single jurisdiction that has rejected that approach.  *See* Motion at 12; Response at 13-15.  The North Dakota Supreme Court has recognized that "[t]he ultimate control of a corporation is in its shareholders."  *Airvator v. Turtle Mountain Mfg.* 329 N.W.2d 596, 603 (N.D. 1983).  Connie Berg, exercising *Airvator*'s "ultimate control," could not have breached a fiduciary duty to the corporation.

The sole shareholder rule's two exceptions do not apply in this case.  First, the Trustee has not alleged that the Debtor had any creditors when the ESOP

---

[1] On November 22, the Berg Defendants filed their Motion to Dismiss (Dkt. 50, 54) (the "Motion") against all of the claims asserted against the Berg Defendants in the amended complaint ("Complaint" or "Compl.") filed by Plaintiff Erik A. Ahlgren ("Trustee").  Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.  On January 10, 2025, the Trustee filed his Response to the Motion (the "Response") (Dkt. 67).

[2] For the Court's convenience, a chart listing the Berg Defendants' responses to each count in the Complaint is attached hereto as Appendix "A."

Transaction closed; therefore, the exception for harm on the corporation's creditors does not apply. *See* Response at 15-16. Second, the insolvency exception does not apply because the Trustee alleges that the Debtor was not insolvent until more than two-and-a-half years after the Bergs relinquished control over the Debtor. Compl. ¶¶ 5, 212-13.

The fiduciary duty claims in Count 1 based on Connie Berg's conduct when she was the Debtor's sole shareholder must be dismissed.

> **2. North Dakota courts would likely hold that a sole shareholder can ratify any purported breach of fiduciary duty by an officer of the corporation.**

Numerous jurisdictions have also held that the sole shareholder of a corporation can ratify an officer's breach of fiduciary duty, and the Trustee does not cite a single jurisdiction that has rejected that approach. *See* Motion at 12-13; Response at 16-17. The Trustee's extreme argument baselessly equates ratification of a breach of fiduciary duty with the company's "business purpose." Response at 17. The Trustee's contention is nonsense—shareholders can ratify a director's breach of the duty of loyalty, even if they cannot prospectively eliminate the director's liability for future acts. *See* N.D. Cent. Code § 10-19.1-51(2)(b). Based on the Trustee's own allegations, Connie Berg plainly ratified any purported breach by Kyle Berg.

For the same reason, the claim that the Bergs breached a fiduciary duty to the Debtor by causing it to enter into the Modification Agreement immediately after the closing of her sale of her equity interests in the Debtor fails because that conduct was clearly ratified by the Debtor's sole shareholder at the time, the ESOP

**BERG DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**          Page 3

Trust. Paredes, on behalf of the ESOP Trust in his capacity as the ESOP Trustee, signed and agreed to the Modification Agreement himself. Compl. ¶ 136; Response at 12-13.

The fiduciary duty claims in Counts 1 and 2 must be dismissed because any purported breach was ratified by the Debtor's sole shareholder.

**B. The fiduciary duty claims based on the Equity Distribution are barred by the statute of limitations.**

The Trustee concedes that the Equity Distribution breach of fiduciary duty claim asserted against Connie Berg in her capacity as ***director*** is barred by the statute of limitations. Response at 18. The Trustee attempts to salvage that claim by restating it as a breach of fiduciary duty by the Bergs in their capacity <u>as officers</u>, but that reformed claim likewise fails. *Id.* The Trustee did not even plead that the Berg's authorized the Equity Distribution as officers. *See* Compl. ¶ 123. ("Connie Berg, in her capacities as the Debtor's sole <u>shareholder</u> and sole <u>director</u>" authorized the Equity Distribution). The Trustee's failure to plead that the Berg's breached a duty as officers certainly makes sense because officers have no legal ability to authorize equity distributions; only directors have that authority. *See, e.g.*, N.D. Cent. Code §§ 10-19.1-92 (board of directors may authorize a distribution); 10-19.1-53 (officers' duties do not include authorizing distributions). The Bergs simply did not and could not authorize the Equity Distribution ***as officers***. The breach of fiduciary duty claims in Counts 1 and 2 based on the Equity Distribution must be dismissed.

**C. The Trustee concedes that the statute of limitations bars any claim for breach of fiduciary duty based on conduct that occurred prior to April 22, 2018.**

The Trustee concedes that the statute of limitations bars any breach of fiduciary duty claim based on an allegation that the Bergs "caused the Debtor to defraud the United States" before April 22, 2018. Response at 20 n.6. Accordingly, the breach of fiduciary duty claims in Counts 1 and 2 based on conduct that occurred before April 22, 2018[3] must be dismissed.

**D. The Trustee fails to plead with particularity that the Bergs breached a fiduciary duty to the Debtor by causing the Debtor to defraud the United States after April 22, 2018.**

The Trustee does not identify any specific 8(a), WOSB, or small-business Set-Aside Contract that the Debtor applied for or was awarded after April 22, 2018, based on alleged fraud. The Trustee's allegations that **every** WOSB self-certification and **every** Set-Aside Contract was fraudulent are simply not sufficient to meet the pleading requirements of Rule 9(b). *See U.S. ex rel. Dunn v. N. Mem'l Health Care*, 739 F.3d 417, 420 (8th Cir. 2014) (holding that relators failed to plead falsity with particularity by alleging that "every claim submitted from 1996 until the present is false"). The Trustee "must provide some representative examples of the allegedly fraudulent conduct," "specifying the time, place, and content of their

---

[3] *See* Response at 19 (Connie Berg made the following false representations to the government: "(i) when the Debtor applied for the 8(a) program in 2008; (ii) each year when the Debtor annually recertified for the 8(a) program until its graduation in 2017; (iii) every time the Debtor applied for an 8(a) set-aside contract"; (v) each year from 2015 to 2018 when the Debtor enrolled in the WOSB program; (v) every time the Debtor applied for a WOSB Set-Aside Contract prior to April 22, 2018; and (vi) every time the Debtor applied for a small-business Set-Aside Contract prior to April 22, 2018); *see also* Compl. ¶¶ 44-53.

**BERG DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**          Page 5

acts and the identity of the actors." *Id.* (citations omitted).  The Trustee's failure "to identify even one example of an actual false" statement renders his allegations insufficient to state a claim for fraud.  *Id.*[4]

The Court must dismiss the claims for breach of fiduciary duty claims in Counts 1 and 2 based on the Bergs allegedly causing the Debtor to defraud the United States.

**E.  The Debtor knew the source of its revenue.  Therefore, breach of fiduciary duty claims based on an alleged omission about such revenue fail as a matter of law.[5]**

The Trustee agrees that if the Debtor knew the source of its own revenue (allegedly fraudulently obtained Set-Aside Contracts), then those breach of fiduciary duty claims must fail.  Response at 30-33.  The Trustee's allegations, taken as true, show that the Debtor knew that information.

**DuBois and Grant.**  The Trustee alleges that DuBois and Grant knew that a material amount of the Debtor's revenue was attributable to fraudulently obtained Set-Aside Contracts.  *Id.* at 31-32; Compl. ¶¶ 183-89, 195, 203-210.  The

---

[4] The Trustee's vague allegation that the Debtor was performing 8(a) Set-Aside Contracts as of August 31, 2020, is based on an incorrect reading of the Non-Prosecution Agreement.  In the Complaint, the Trustee alleges that the $949,000 penalty the Debtor agreed to pay "represented the Debtor's 8(a) and WOSB profits *after* the ESOP transaction closed on August 31, 2020."  Compl. ¶ 227.  But the Non-Prosecution Agreement stated that the "criminal monetary penalty of $949,000 . . . represents profits the Company realized from the relevant set-aside contracts that were illegally awarded **during the period prior to 2020**."  Compl. Ex. D. at 3 ¶2 (Dkt. 11-1, p. 104) (alteration added).

[5] For the Court's convenience, a chart listing the Berg Defendants' responses to each misrepresentation and omission alleged by the Trustee on behalf of the Debtor is attached hereto as Appendix "B.'"

**BERG DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**          Page 6

Trustee attempts to escape those admissions by using the imputed knowledge rule. The Trustee's application of the rule misses the mark.

- **First,** it is not DuBois' and Grant's knowledge that the Bergs allegedly defrauded the Debtor that is imputed to the Debtor. Instead, it is their knowledge that the Debtor allegedly defrauded the United States and that a material amount of the Debtor's revenue was attributable to such alleged fraud that is imputed to the Debtor. Motion at 31-34.

- **Second,** the knowledge of a corporate agent who defrauds a third party for the corporation's benefit is imputed to the corporation. *See Am. Bank Center v. Wiest*, 793 N.W.2d 172, 179-80 (N.D. 2010). The alleged fraud here is against the United States—not "fraud on the corporation." DuBois and Grant's knowledge—as well as the Debtor's other employees—is imputed to the Debtor because it concerns an alleged fraud of a third party ***on behalf of the Debtor***.

- **Third,** the Trustee's assertion that Grant consented to the Bergs' alleged fraud on the Debtor cannot stand because the Trustee concedes that Grant did not assent to or approve of that alleged fraud. Response at 31-32. Instead, the Trustee merely alleges that Grant failed to take affirmative action in response to the Bergs' alleged fraud on the Debtor. The Trustee cites no caselaw and provides no explanation as to how Grant could consent to the alleged fraud by doing nothing at all. Grant's knowledge is imputed to the Debtor because the Trustee does not allege

**BERG DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**      Page 7

facts supporting his conclusory statement that Grant somehow consented
to the Bergs' alleged fraud.

**The CIM.** The Trustee misconstrues the Bergs' position on the CIM. The
CIM fully disclosed to the Debtor all of the material facts. The Bergs do not argue
that Lazear Capital's knowledge should be imputed to the Debtor. Rather, the CIM,
which Lazear Capital prepared and gave to the Debtor, ***fully disclosed*** the
information that the Trustee now alleges was misrepresented or omitted.

The breach of fiduciary duty claims in Counts 1 and 2 based on the purported
misrepresentation and omission must be dismissed.

## II.  COUNT 6:  THE TRUSTEE'S CLAIM FOR BREACH OF PURCHASE AGREEMENT SECTION 3.2(G) FAILS BECAUSE THE SOLE REMEDY FOR THE BREACH IS INDEMNIFICATION.

Article 6 explicitly addresses the Debtor's remedies against Connie Berg for
breach of the Purchase Agreement:  "[T]he Parties"—defined in the Purchase
Agreement as the Debtor, Connie Berg, and the ESOP Trust—"shall indemnify each
other as provided in this Article 6."  Berg. Decl. Ex. 2 at 1, 31.  "Except for claims for
fraud, the provisions of this Article 6 ***shall be the sole and exclusive remedy for
breaches of representations, warranties, and covenants contained in this
Agreement*** . . . ."  *Id.* at 33.  Article 6 specifically spells out indemnity rights
provided to Connie Berg and the ESOP Trust under the Purchase Agreement, but
the Debtor was explicitly and intentionally not given <u>any</u> rights to indemnity.  The

Purchase Agreement unambiguously eliminated any available remedy to the Debtor for alleged misrepresentations by Connie Berg in the Purchase Agreement.[6]

Contrary to the Trustee's contention, North Dakota courts uphold such contractual limitations on remedies. *See, e.g.*, *Palaniuk v. Allis-Chalmers Mfg. Co.*, 220 N.W. 638, 640 (N.D. 1928) (holding that where the parties "fix[] the remedy available to the buyer" the plaintiff has "no remedy other than thus provided"). Inasmuch as the "Parties" agreed that the indemnification provisions in the Purchase Agreement provided the exclusive remedy for any breach of a representation, the Trustee's claim in Count 6 seeking damages for a misrepresentation in Section 3.2(g) of the Purchase Agreement is barred. The Court must dismiss Count 6.

## III.  COUNTS 9–20:  THE TRUSTEE'S FRAUDULENT TRANSFER CLAIMS FAIL TO STATE A CLAIM UNDER FEDERAL RULES 9(B) AND 12(B)(6).

### A.  Counts 9-20:  The Trustee fails to allege with particularity that the ESOP Transaction left the Debtor insolvent, unable to pay its debts when due, or with unreasonably small capital.[7]

---

[6] In the Response, the Trustee conceded that Section 3.2(g) did not contain a representation about "claims against the Debtor." Response at 23. The Trustee also considerably narrowed his claims based on an alleged misrepresentation in Section 3.2(g) to the following allegations: Purchase Agreement Section 3.2(g) contains a misrepresentation because (1) the ESOP Transaction was an ERISA "prohibited transaction," and (2) because the ESOP Transaction was an ERISA "prohibited transaction," Connie Berg breached her ERISA fiduciary duties to the ESOP Trust. Response at 22-23. In so doing, the Trustee has waived any claim in Counts 6, 8, 25, and 28 based on any other misrepresentation or omission in Purchase Agreement Section 3.2(g), and those claims must be dismissed.

[7] The Trustee's claims for actual fraudulent transfer (Counts 9, 11-15) and constructive fraudulent transfer (Counts 10, 16-20) all rely on his allegations that the ESOP Transaction left the Debtor insolvent, unable to pay its debts when due, or with unreasonably small capital. Accordingly, the Bergs' arguments in this section apply to all of those claims.

The Trustee's allegation that the ESOP Transaction resulted in the Debtor "los[ing] millions of dollars . . . and incur[ing] millions of dollars in loans and undisclosed liabilities" does not support the bare conclusory statement that the ESOP Transaction "render[ed the Debtor] balance sheet insolvent."  Response at 45. "Balance sheet insolvency" was not pled, which would have required alleged measurement of both liabilities *and* assets.  Yet, the Complaint altogether fails to address the size of the Debtor's assets at any relevant point in time.  To the contrary, the Trustee admits that the Debtor continued to operate profitably while paying its debts for years after the ESOP Transaction closed and "did not file for bankruptcy until several years later."  *Id.* at 46.  *See In re Joy Recovery Tech. Corp.*, 286 B.R. 54, 76 (Bankr. N.D. Ill. 2002) ("[C]ourts will not find that a company had unreasonably low capital if the company survives for an extended period after the subject transaction . . . .").[8]

Finally, the Trustee assumes that the Bergs were fortune-tellers.  The Trustee asserts that the Bergs should have predicted, in August 2020, that more than three years later, the Debtor's new management would fail to defend the Debtor against the DOJ's investigation, enter into the Non-Prosecution Agreement, fail to respond to an SBA information request, fail to obtain alternative bonding for its construction projects, and ultimately file for bankruptcy.  Compl. ¶¶ 239-40, 241-

---

[8] *See also Moody v. Sec. Pac. Bus. Credit, Inc.*, 127 B.R. 958, 983 (W.D. Pa. 1991) (no unreasonably low capital where debtor had positive cash flow for five months after transaction); *MFS/Sun Life Trust–High v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913, 944 (S.D.N.Y. 1995) (same where company was viable for eight months after LBO); *In re Ohio Corrugating Co.*, 91 B.R. 430, 440 (Bankr. N.D. Ohio 1988) (same where creditors were paid for ten months).

**BERG DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**          Page 10

42, 248-49; Response at 44.  According to the Trustee, the Bergs should have foreseen all of those future actions by the Debtor's management and somehow taken them into consideration when agreeing to the terms of the ESOP Transaction.  This argument defies common sense and is irrelevant under the pleading rules.  Nowhere in the Complaint does the Trustee explain how these speculative future events rendered the Debtor insolvent almost three years earlier when the ESOP Transaction was consummated.  Nor does he provide any analysis of the worth of the business at the time of the ESOP Transaction.

The Trustee's fraudulent transfer claims must be dismissed in their entirety.

## B. Counts 9, 11-15:  The Trustee does not allege with particularity that the Debtor actually intended to hinder, delay, or defraud future creditors.

As for the actual fraudulent transfer claims, the Trustee has failed to allege facts supporting a reasonable inference of actual intent to defraud the Debtor's future creditors.  Two of the badges of fraud alleged by the Trustee—the transfers were to insiders and made shortly before substantial debt was incurred—are present in every ESOP.  *See* Motion at 53-54.  Under the Trustee's view, every ESOP transaction would support an inference of actual fraudulent intent by the company's former owners.  As already explained, *see supra*, Section III.A., the ESOP Transaction did not leave the Debtor insolvent, unable to pay its debts as they came due, or with unreasonably little capital.  The Trustee does not even respond to the Bergs' argument that the ESOP Transaction was not concealed from the Debtor's creditors, thereby conceding that alleged badge was not present.  *See* Motion at 54; Response at 43-48.

**BERG DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**        Page 11

The Trustee's allegations are not pled with particularity and do not support a reasonable inference of actual fraudulent intent.  The Trustee's actual fraudulent transfer claims in Counts 9, 11-15 must be dismissed.

## IV.   COUNTS 22-24:  THE TRUSTEE'S ERISA CLAIMS FAIL TO STATE A CLAIM UNDER FEDERAL RULES 9(B) AND 12(B)(6).

### A. Count 22:  The Trustee concedes that the Bergs did not owe the ESOP Trust any fiduciary duty "to the extent of" the ESOP Transaction.

The Bergs argued in the Motion that they did not owe any fiduciary duties "to the extent of" the ESOP Transaction and, therefore, did not breach a fiduciary duty "by allowing the ESOP transaction to close."  Motion at 44-48; *see also* Compl. ¶ 439. The Trustee altogether failed to address this argument, thereby conceding the point.  *See Rivera v. Bank of Am., N.A.*, 993 F.3d 1046, 1051 (8th Cir. 2021) (argument not raised in opposition to motion to dismiss is waived); *Hewitt v. City of Minneapolis*, No. 12-cv-2132, 2013 WL 718189, at *5 n.6 (D. Minn. Feb. 27, 2013) ("Plaintiff waived any arguments in opposition to Defendants' motion to dismiss by failing to respond.").

The ERISA claim in Count 22 based on the Bergs' purported breach of fiduciary duty by causing the ESOP Trust to enter into the ESOP Transaction must be dismissed.

### B. Counts 22-24:  The Trustee's ERISA claims based on the ESOP Transaction being an ERISA "prohibited transaction" are barred by the statute of limitations.

The Trustee concedes that the statute of limitations would bar the ERISA claims premised on the ESOP Transaction being a "prohibited transaction" were the

**BERG DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**      Page 12

Debtor the named plaintiff.[9]  Response at 42.  Contrary to the Trustee's argument, there is no bankruptcy-specific exception to the statute of limitations merely because the Trustee (standing in the shoes of the Debtor) is required to "continue to perform the obligations of the" Debtor as the Plan Administrator and ESOP Trustee under Section 704(a)(11).  *Id.* at 41-43.

Section 704(a)(11) provides that a Chapter 7 trustee must "continue to perform the obligations required of the" debtor as the ERISA plan administrator.[10]  11 U.S.C. § 704(a)(11).  Under Section 704(a)(11), a Chapter 7 trustee can only assert a claim on behalf of an ERISA trust if the debtor, as the ERISA plan administrator, would be obligated to assert that claim.  *See Kirschenbaum v. Dep't of Labor (In re Robert Plan Corp.)*, 777 F.3d 594, 597 (2d Cir. 2015) ("Section 704(a)(11) neither alters the substantive duties of ERISA plan administrators nor establishes substantive rights regarding ERISA plans.  Instead, Section 704(a)(11) provides the 'procedural vehicle for the assertion of a right conferred by some other body of law'—in this case, ERISA." (quoting *In re U.S. Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997))); *In re NSCO, Inc.*, 427 B.R. 165, 180 (Bankr. D. Mass. 2010) ("[T]he Trustee's duties are [not] created by ERISA.  His duties originate in Section 704(a) and only draw in ERISA because of § 704(a)(11).").  An ERISA plan

---

[9] Given the Trustee's concession that the Bergs were not ERISA fiduciaries "to the extent of" the ESOP Transaction, the Trustee's remaining ERISA claims all require the Trustee to prove that the ESOP Transaction was an ERISA "prohibited transaction."  Motion at 48-49.

[10] The Chapter 7 Trustee, performing his Section 704(a)(11) obligations, appointed himself as ESOP trustee.  *See* Case No. 24-30167, Dkt. 132.  As a result, if the Chapter 7 Trustee asserts a claim against the Bergs for breach of fiduciary duty owed to the ESOP Trust in his capacity as ESOP Trustee, that claim arises solely from his obligations under Section 704(a)(11).

**BERG DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**     Page 13

administrator cannot assert a time-barred claim. A subsequent Chapter 7 trustee cannot magically revive a time-barred claim and assert it pursuant to his Section 704(a)(11) powers.

The cases cited by the Trustee involved plaintiffs whose right to assert an ERISA claim was independent of the person who had actual knowledge of the ERISA violation.[11] For example, a plan beneficiary has a right to assert an ERISA claim regardless of whether a plan fiduciary has actual knowledge of the ERISA violation because the beneficiary has a right, independent of the plan fiduciary, to seek a remedy for the ERISA violation. *See* 29 U.S.C. § 1132(a). By contrast, under Section 704(a)(11), a Chapter 7 trustee has no such authority independent of the debtor to assert an ERISA claim because the Chapter 7 trustee's authority is limited to "continu[ing] to perform the obligations required of" the debtor as the ERISA plan administrator.

*Taunt v. Coenen*, which did involve a Chapter 7 trustee, is neither controlling nor persuasive. The court in *Taunt*, relying solely on the admittedly "sparse legislative history" of Section 704(a)(11), held that a "Chapter 7 trustee becomes a successor plan administrator," and does not merely "continue to perform the

---

[11] *See Lawrence v. Potter*, No. 17-cv-1239, 2018 WL 3625329, at *9 (D. Utah July 30, 2018) (trustee's knowledge not imputed to plan participant); *Stockwell v. Hamilton*, 163 F. Supp. 3d 484, 487, 489 (E.D. Mich. 2016) (trustee's knowledge not imputed to co-trustee); *CB Richard Ellis Invs., L.L.C. v. Sonnenblick*, 45 F. App'x 680, 681 (9th Cir. 2002) (plan fiduciary's actual knowledge not imputed to co-fiduciary); *Mason Tenders Dist. Council Pension Fund v. Messera*, 958 Fed. Supp. 869, 882 (S.D.N.Y. 1997) (former trustee's knowledge not imputed to current trustee); *District 65 Ret. Tr. for Members of Bureau of Wholesale Sales Reps. v. Prudential Sec., Inc.*, 925 F. Supp. 1551, 1559-60 (N.D. Ga. 1996) (same); *Useden v. Acker*, 734 F. Supp. 978, 980 (S.D. Fla. 1989) (same); *Landwehr v. Dupree*, 72 F.3d 726, 732 (9th Cir. 1995) (plan fiduciaries and beneficiaries' knowledge not imputed to other beneficiaries).

obligations required of the" debtor as the plan administrator.  538 B.R. 323, 346-47 (Bankr. E.D. Mich. 2015) (citing H.R. Rep. 109-31(l)).  The court's reliance on legislative history is invalid under subsequent Eighth Circuit and Supreme Court precedent because it is contrary to the plain text of the statute.  *See Goetz v. Weber (In re Goetz)*, 95 F.4th 584, 591 (8th Cir. 2024) ("No amount of legislative history can defeat the plain text of the [Bankruptcy] Code."); *Commonwealth of Puerto Rico v. Franklin Cal. Tax-free Tr.*, 579 U.S. 115, 125 (2016) ("The plain text of the Bankruptcy Code begins and ends our analysis.").  Here "the plain text" is clear: the Chapter 7 Trustee "continue[s] to perform the obligations required of the administrator," and those obligations do not include bringing a time-barred claim.[12]

The Trustee's ERISA claims are barred by the statute of limitations.  Counts 22, 23, and 24 must be dismissed.

## V.   COUNTS 25 AND 28:  THE TRUSTEE'S FRAUD AND SECURITIES FRAUD CLAIMS BROUGHT ON BEHALF OF THE ESOP TRUST FAIL TO STATE A CLAIM UNDER FEDERAL RULES 9(B) AND 12(B)(6).[13]

### A.  The Trustee alleges that Paredes, as the ESOP Trustee, knew or should have known of the alleged misrepresentations and omissions. Fraud claims on behalf of the ESOP Trust, therefore, fail as a matter of law.

---

[12] Even assuming the court in *Taunt* was correct that a Chapter 7 trustee is a successor plan administrator, courts in the Eighth Circuit have held that a plan administrator can impute actual knowledge to a successor plan administrator.  *See, e.g.*, *Victor v. Home Sav. of Am.*, 645 F. Supp. 1486, 1498-99 (E.D. Mo. 1986) (imputing actual knowledge of an alleged ERISA violation from the constituent corporation and former administrator to the successor administrator, the surviving corporation).

[13] For the Court's convenience, a chart listing the Berg Defendants' responses to each misrepresentation and omission alleged by the Trustee on behalf of the ESOP Trust is attached hereto as Appendix "C.'

**BERG DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**        Page 15

The Trustee concedes that if Paredes, as the ESOP Trustee, knew or should have known of the alleged misrepresentations and omissions, the fraud claims asserted on behalf of the ESOP Trust fail as a matter of law.  Response at 28-30. And that is exactly what the Trustee explicitly alleges—that Paredes knew or should have known of the alleged misrepresentations and omissions.[14]

In short, the Trustee has effectively pled himself out of court.  The fact that Paredes knew or should have known negates the requisite element of reasonable reliance.  *See Aaron v. Medtronic*, 209 F. Supp. 3d 994, 1015 (S.D. Ohio 2016) (inconsistent facts where complaint alleged person was "justified in relying on . . . Defendants' concealment of information and misrepresentations" but also knew such information was false); *Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 175 F. Supp. 2d 489, 493 (S.D.N.Y. 2000) (inconsistent facts where complaint alleged plaintiff "reasonably relied" on a representation about a property valuation and that defendant did not disclose the property valuation).

The Trustee attempts to avoid his fatal error by claiming "alternative pleading."  His twisted interpretation of that concept does not save his claims. Pleading in the alternative permits a plaintiff to plead inconsistent ***legal claims***, not inconsistent ***facts***.  For example, a plaintiff may alternatively plead breach of contract (which requires the existence of a contract) <u>and</u> quantum meruit (which requires that no contract existed).  *See, e.g.*, *Peter Kiewit Sons' Co. v. Summit Const.*

---

[14] For the Court's convenience, a chart listing these allegations is attached hereto as Appendix "D.'

**BERG DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**        Page 16

*Co.*, 422 F.2d 242, 271 (8th Cir. 1969).  But, a plaintiff may not plead inconsistent

*facts*—like a person both knew and did not know something.  *See, e.g., Aaron*, 209

F. Supp. 3d at 1015-16; *see also Jacoby v. Cable News Network, Inc.*, 537 F. Supp. 3d

1303, 1313 (M.D. Fla. 2021) (allegations that statement was true and false); *Hirsch*

*v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095-96 (2d Cir. 1995) (allegations that

defendant controlled and did not control a business).

The Trustee has pled facts that, on the face of the pleading, negate claims for

fraud and securities fraud.  The fraud and securities fraud claims in Counts 25 and

28 must be dismissed.

## B. The alleged misrepresentations in the Purchase Agreement were not false based on the face of the Complaint.

***Section 3.3(g)(i).***  The Trustee's cases do not support his allegations.

Response at 24-26.  As for *In re 3M Company Securities Litigation*, neither the basis

(a federal regulation concerning financial statements filed with the SEC) nor the

conclusion ("financial statements not prepared in accordance with GAAP are

presumed misleading or inaccurate") can be applied to this case, where nothing was

filed with the SEC.  No. 20-cv-2488, 2021 WL 4482987, at *3 (D. Minn. Sept. 30,

2021).  *DoubleLine Capital* explicitly stated that "accurately reported income that is

obtained from an unlawful source may not be actionable only on the grounds that

the unlawful source is not disclosed." *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*,

323 F. Supp. 3d 393, 442 (S.D.N.Y. 2018).

**BERG DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**     Page 17

**Section 3.3(g)(iii).**  The Trustee does not cite a single case holding that financial projections are actionable as misrepresentations of fact or explaining under what circumstances they could be.  Response at 26-27.

Because the Trustee fails to allege that the representations in Sections 3.3(g)(i) or 3.3(g)(iii) were false, the claims based on those sections in Counts 25 and 28 must be dismissed.

### C. The Trustee fails to plead with particularity the fraud claims asserted on behalf of the ESOP Trust.

The Trustee has not pleaded fraud with particularity as to Purchase Agreement Sections 3.3(h), (m), and (o).  Response at 27-28, 34-35.  As already explained, *see supra* Section I.D, the Trustee cannot merely allege that **every** 8(a) annual certification, **every** WOSB self-certification, and **every** Set-Aside Contract was fraudulent under Rule 9(b).  As the Eighth Circuit recognized in *U.S. ex rel. Dunn*, alleging that "every claim submitted from 1996 until the present is false" fails to allege fraud with particularity.  739 F.3d at 420.  The Trustee fails to identify a single statement in an 8(a) or WOSB certification that was allegedly false or a single Set-Aside Contract that was allegedly fraudulently obtained.  *See id.*  As for Section 3.3(h), the Trustee does not identify any 8(a) or WOSB Set-Aside Contracts that the Debtor was performing at the time of the ESOP Transaction.[15] *See supra* Section I.D n.4.  Nor did the Trustee plead in the Complaint that any

---

[15] The Trustee did not respond to the Bergs' argument that Section 3.3(h) was not false because Set-Aside Contracts and the Debtor's small-business status were not "Licenses and Permits" as defined in the Purchase Agreement. *See* Motion at 25-26; Response at 27-28.  The Trustee thereby waived any argument that Section 3.3(h) was fraudulent based on a misrepresentation concerning the Debtor's Set-Aside Contracts or small-business status.

government contracting officer in fact "'accept[ed]' the Debtor's [WOSB] 'self-certification.'" Response at 28. With respect to Section 3.3(m), the Trustee does not assert which of the nearly 100 federal regulations governing eligibility was violated. Finally, for Section 3.3(o), the Trustee does not identify which of the Debtor's Material Contracts was a Set-Aside Contract.

Because the Trustee fails to plead with particularity that any representation in Sections 3.3(h), (m), or (o) was fraudulent, the Trustee has failed to state a claim for fraud on behalf of the Debtor. The Trustee's fraud claims in Counts 25 and 28 based on these representations must be dismissed.

## D. The Trustee's securities fraud claims are duplicative because they are all premised on the same alleged misrepresentations and omissions made in connection with the ESOP Transaction.

Each of the Trustee's three theories of securities fraud is premised on the Bergs' alleged misrepresentations and omissions made in connection with the ESOP Transaction. Compl. ¶¶ 486-88; Motion at 42 n.15; Response at 35-36. The Trustee's alleged "scheme to defraud" includes the Bergs' purported 12-year fraud on the United States government. For securities fraud, the actionable conduct is limited to that done "*in connection with* the offer, sale, or purchase of any security." N.D. Cent. Code § 10-04-15(2) (emphasis added). The Trustee does not even allege that purported fraud on the United States was committed "in connection with the offer, sale, or purchase of any security." The conduct that the Trustee alleges comprised the "scheme to defraud" and which was done in connection with the ESOP Transaction was: forming the ESOP, selling Connie Berg's equity interest to the ESOP Trust, and making purported misrepresentations and omissions during

**BERG DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**          Page 19

the course of the ESOP Transaction.  *See* Response at 35-36.  These allegations are the same that underlie the Trustee's securities fraud claims premised on the Bergs' alleged misrepresentations and omissions.  *See* Compl. ¶¶ 486-87.  The Trustee's securities fraud claims in Count 28, thus, are duplicative and should be dismissed.

## VI.  COUNTS 7, 8, 25, AND 28:  THE TRUSTEE'S CLAIMS BASED ON MODIFICATION AGREEMENT SECTION 6(D) FAIL TO STATE A CLAIM BECAUSE THE REPRESENTATION WAS NOT FALSE.

Contracts that are "executed as part of the same transaction and contain[] terms relating to [the same subject matter]" are to be construed together.  *Evenson v. Hlebechuk*, 305 N.W.2d 13, 16 (N.D. 1981); *see also Williston on Contracts,* § 30:26 (4th ed.).  The Initial Loan Agreement and Modification Agreement must be construed together, and the definition of "Event of Default" applies to both.  The representation in Section 6(d) of the Modification Agreement was not false because no Event of Default existed.

The Trustee's claims based on Modification Agreement 6(d) in Counts 7, 8, 25, and 28 must be dismissed.

## VII.  COUNTS 3 AND 26:  THE TRUSTEE'S AIDING AND ABETTING CLAIMS FAIL AS A MATTER OF LAW

The Trustee urges the Court to recognize a new cause of action for aiding and abetting that does not exist under North Dakota law.

None of the cases cited by the Trustee "signal[]" or "suggest[]" that the North Dakota Supreme Court would recognize this new cause of action.  *See* Response 37-39.  Instead, those courts found that, even under other jurisdictions' torts for "aiding and abetting" and "acting in concert," the defendants were not liable because there

was no evidence the defendants' conduct constituted "aiding and abetting" or "acting in concert." *Nye v. Johnson*, 4 N.W.2d 819, 820-21 (N.D. 1942); *Hurt v. Freeland*, 589 N.W.2d 551, 557-58 (N.D. 1999); *Ward v. Bullis*, 748 N.W.2d 397, 407-09 (N.D. 2008). The federal district court cases cited by the Trustee did not "embrace[]" a claim for aiding and abetting because neither even addressed the merits of such a claim. Response at 39. *See Borsheim Builders Supply, Inc. v. Merrick Bank Corp.*, 387 F. Supp. 3d 957, 964 (finding allegations plausible but not addressing whether North Dakota would recognize a cause of action for aiding and abetting fraud); *Multi-Chem Grp., LLC v. 3Chem, LLC*, No. 13-cv-6, 2013 WL 12145976, at * (D.N.D. Aug. 7, 2013) (granting leave to amend complaint).

The Trustee's claims for aiding and abetting in Counts 3 and 26 must be dismissed.

## VIII.    CONCLUSION

For the foregoing reasons, the Berg Defendants respectfully request that the Court grant their motion to dismiss the claims asserted against them in the Complaint.

Dated:  February 14, 2025

 _/s/ Stephen M. Pezanosky_

Stephen M. Pezanosky (*admitted pro hac vice*)
Stephen.Pezanosky@haynesboone.com
Aimee M. Furness (*admitted pro hac vice*)
Aimee.Furness@haynesboone.com
Jordan E. Chavez (*admitted pro hac vice*)
Jordan.Chavez@haynesboone.com
Brenna H. Scully (*admitted pro hac vice*)
Brenna.Scully@haynesboone.com
**HAYNES AND BOONE LLP**
2801 N. Harwood St., Suite 2300
Dallas, Texas 75201
Telephone: (214) 651-5000
Facsimile:  (214) 651-5940

*Attorneys for Defendants Connie Berg, Kyle Berg, Connie Berg Revocable Living Trust, Kyle R. Berg Revocable Living Trust*

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 14 day of February 2025, the above

document was served on all counsel of record via CM/ECF, including the Trustee

and his counsel.

_/s/ Aimee M. Furness_
Aimee M. Furness

**Appendix A**

| Cause | Trustee's Claim | Must be dismissed because |
|---|---|---|
| 1, 2 | The Bergs breached fiduciary duty owed to the Debtor | <u>All Claims</u><br>• Connie Berg was the sole shareholder.<br>• Connie Berg ratified any purported breach of fiduciary duty by Kyle Berg when she was the sole shareholder.<br><u>Claim based on the Modification Agreement:</u><br>• The ESOP Trust, as the Debtor's sole shareholder, ratified the Bergs' purported breach of fiduciary duty.<br><u>Claim based on the Equity Distribution</u><br>• Trustee concedes that the claim against Connie Berg in her capacity as a director is time-barred.<br>• Trustee does not allege that the Bergs authorized the Equity Distribution in their capacity as officers of the Debtor.<br>• Officers lack authority to issue distributions.<br><u>Claim based on Defrauding the US</u><br>• Trustee concedes that the claim is time barred as to conduct before April 22, 2018.<br>• Fraud not pleaded with particularity as to conduct after April 22, 2018.<br><u>Claim based on Misrepresentation and Omission</u><br>• Trustee alleges the Debtor knew of the alleged misrepresentation and omission. |
| 9-20 | Fraudulent Transfer | • Allegations that the ESOP Transaction left the Debtor insolvent, unable to pay debts when due, or with unreasonably small capital not pleaded with particularity.<br>• Insufficient allegations of actual fraudulent intent. |
| 22 | Breach of ERISA Fiduciary Duty | • Trustee concedes that the Bergs were not ERISA fiduciaries "to the extent of" the ESOP Transaction. |

| 22-24 | ERISA liability based on prohibited transaction | • Barred by the statute of limitations |
|---|---|---|
| 25, 28 | Fraud on the ESOP Trust | <u>All Claims</u><br>• Trustee concedes claims fail because the Trustee alleges that Paredes should have known of the alleged misrepresentations and omissions.<br><u>Claim based on Purchase Agreement § 3.3(g)(i)</u><br>• Not false because no allegations that financial statements were inaccurate.<br><u>Claim based on Purchase Agreement § 3.3(g)(ii)</u><br>• Not actionable for fraud.<br><u>Claim based on Purchase Agreement § 3.3(h)</u><br>• Trustee waives claim based on Set-Aside Contracts and small-business status.<br>• Fraud not pleaded with particularity as to 8(a) and WOSB eligibility.<br><u>Claim based on Purchase Agreement §§ 3.3(m) and 3.3(o)</u><br>• Fraud not pleaded with particularity. |
| 28 | Securities Fraud on the Debtor and ESOP Trust | • Claims are duplicative because they are all premised on the same alleged misrepresentations and omissions made in connection with the ESOP Transaction. |
| 6, 8, 25, 28 | Misrepresentation in Purchase Agreement § 3.2(g) | • Purchase Agreement Article 6 explicitly provides that indemnification is the Debtor's sole remedy against Connie Berg for breach of contract.<br>• Not false because Trustee concedes no representation about the Debtor. |
| 7, 8, 25, 28 | Misrepresentation in Modification Agreement § 6(d) | • Not false because no default under the Initial Loan Agreement. |
| 3, 26 | Kyle Berg aided and abetted | • North Dakota courts would not recognize a cause of action for aiding and abetting. |

**Appendix B**

**Misrepresentations and Omissions
Alleged by the Trustee on Behalf of the Debtor**

| Count | Alleged misrepresentation or omission | Must be dismissed because: | | | | |
|---|---|---|---|---|---|---|
| | | Not false | Trustee alleges Debtor knew | Trustee concedes no representation about the Debtor | Indemnity is sole remedy | Claims are duplicative |
| 1, 2 | Misrepresented and omitted that a material amount of the Debtor's revenue was attributable to fraudulently obtained Set-Aside Contracts | | X | | | |
| 6, 8, 28 | Purchase Agreement § 3.2(g) | X | | X | X | |
| 7, 8, 28 | Modification Agreement § 6(d) | X | | | | |
| 28 | Scheme to defraud | X | | X | | X |

Page 3

**Appendix C**

**Misrepresentations and Omissions
Alleged by the Trustee on Behalf of the ESOP Trust**

| Count | Alleged misrepresentation or omission | Must be dismissed because: | | | |
|---|---|---|---|---|---|
| | | Trustee concedes claim fails | Not false | Not pleaded with particularity | Claims are duplicative |
| 25, 28 | Modification Agreement § 6(d) | X | X | | |
| 25, 28 | Initial Loan Agreement § 5.3(c) | X | | | |
| 25, 28 | Purchase Agreement § 3.2(g) | X | | | |
| 25, 28 | Purchase Agreement § 3.3(g)(i) | X | X | | |
| 25, 28 | Purchase Agreement § 3.3(g)(ii) | X | | | |
| 25, 28 | Purchase Agreement § 3.3(g)(iii) | X | X | | |
| 25, 28 | Purchase Agreement § 3.3(g)(v) | X | | | |
| 25, 28 | Purchase Agreement § 3.3(h) | X | | X | |
| 25, 28 | Purchase Agreement § 3.3(j) | X | | | |
| 25, 28 | Purchase Agreement § 3.3(m) | X | | X | |
| 25, 28 | Purchase Agreement § 3.3(o) | X | | X | |
| 28 | Scheme to defraud | X | X | X | X |

Page 4

## Appendix D

**Trustees' allegations that Paredes knew or should have known of the alleged
misrepresentations and omissions.**

| Alleged misrepresentation or omission | Allegation that Paredes knew or should have known of the misrepresentation or omission |
|---|---|
| <u>Modification Agreement Section 6(d), Initial Loan Agreement Section 5.3(c), Purchase Agreement Section 3.2(g):</u> The ESOP Transaction was an ERISA "prohibited transaction," and therefore the Bergs breached an ERISA fiduciary duty by allowing the Debtor to enter into the ESOP Transaction. | Paredes knew that: Connie Berg sold her shares of the Debtor to the ESOP Trust; Connie Berg was an officer and director of the Debtor, making her a "party in interest"; and the ESOP Trust "paid substantially more than adequate consideration for the Debtor's capital stock"—the elements of a prohibited transaction under ERISA.  Compl. ¶¶ 20, 128, 178; Berg Decl. Ex. 2, at 37-39. |
| <u>Purchase Agreement Sections 3.3(g)(i), 3.3(g)(iii), 3.3(j):</u>  A material amount of the Debtor's revenue was attributable to fraudulently obtained Set-Aside Contracts and the ESOP valuation was, therefore, inflated. | Paredes should have known that a material amount of the Debtor's revenue was attributable to fraudulently obtained Set-Aside Contracts and that the ESOP valuation was inflated.  Compl. ¶¶ 165-66, 178. |
| <u>Purchase Agreement Sections 3.3(g)(ii) and 3.3(g)(v)(M):</u> The Debtor faced substantial liability to the federal government for defrauding SBA and the 8(a) and WOSB Programs. | Paredes should have known that the Debtor faced substantial liability to the federal government for the purported fraud. Compl. ¶¶ 177-78. |
| <u>Purchase Agreement Sections 3.3(h), 3.3(m), 3.3(o):</u>  The Debtor was not eligible for the 8(a) and WOSB Programs, was not a small business, and was not eligible for associated Set-Aside Contracts. | Paredes should have known that the Debtor was not eligible for the Set-Aside Contracts. Compl. ¶¶ 165-77. |

Page 5