UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re:<br><br>Pro-Mark Services, Inc.,<br>       Debtor.<br>_____/<br>Erik A. Ahlgren, *as Chapter 7 Trustee of the*<br>*Bankruptcy Estate of Pro-Mark Services, Inc.,*<br>*As Administrator of the Pro-Mark Services, Inc.*<br>*Employee Stock Ownership Plan, and as*<br>*Trustee of the Pro-Mark Services, Inc. Employee*<br>*Stock Ownership Trust,*<br><br>       Plaintiff,<br><br>  vs.<br><br>Connie Berg, Kyle Berg,<br>Connie Berg Revocable Living Trust,<br>Kyle R. Berg Revocable Living Trust,<br>Chad Dubois, Mandy Grant and Miguel Paredes,<br><br>       Defendants.<br>_____/ | Bankruptcy No. 24-30167<br>Chapter 7<br><br><br><br><br><br><br><br><br><br><br><br><br>Adversary No. 24-07014 |

**ORDER DENYING IN PART AND GRANTING IN PART
MOTION TO DISMISS FILED BY CHAD DUBOIS**

**I.  INTRODUCTION**

Erik A. Ahlgren, as Chapter 7 Trustee of the Bankruptcy Estate of Pro-Mark Services, Inc., as Administrator of the Pro-Mark Services, Inc. Employee Stock Ownership Plan, and as Trustee of the Pro-Mark Services, Inc. Employee Stock Ownership Trust, initiated this adversary proceeding against Connie Berg, Kyle Berg, Connie Berg Revocable Living Trust, Kyle R. Berg Revocable Living Trust, Chad Dubois, Mandy Grant and Miguel Paredes on August 26, 2024. Ahlgren amended his complaint on September 25, 2024, before any of the Defendants filed an answer or other response. Ahlgren alleges

1

28 causes of action naming all or some of Defendants. Defendants filed Motions to Dismiss.

## II.     FACTS

In the context of this motion, the Court considered the factual allegations in Ahlgren's Amended Complaint, accepting them as true and construing all reasonable inferences in favor of Ahlgren.

Additionally, the Court considered the following exhibits attached to the Complaint:

| | | |
|---|---|---|
| Ex. A | | Redemption Note dated August 31, 2020 - $12,094,000, |
| Ex. B | | Amended and Restated Seller Note dated August 31, 2020 - $10,985,754, |
| Ex. C | | Search warrant dated March 1, 2022 (Kyle Berg person, belongings, containers), |
| Ex. D | | Pro-Mark Services, Inc., Non-Prosecution Agreement, and |
| Ex. E | | Pro-Mark's appeal of SBA's size determination finding Pro-Mark is not a small business. Determination affirmed. |

The following exhibits attached to Defendant Miguel Paredes' Motion:

| | |
|---|---|
| Ex. 1 | Unpublished cases and |
| Ex. 2 | Statement of Representation. |

The following exhibit attached to the Declaration of Connie Berg in Support of Berg Defendants' Motion:

| | |
|---|---|
| Ex. 5 | Confidential Information Memorandum. |

III.    ANALYSIS

    A.    Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure, applicable in this adversary proceeding under Federal Rule of Bankruptcy Procedure 7012(b), specifies that a party may move to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true the factual allegations in the complaint and construes all reasonable inferences in favor of the nonmoving party.  Par v. Wolfe Clinic, P.C., 70 F.4th 441, 445 (8th Cir. 2023).  Accordingly, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Norgren v. Minn. Dep't of Hum. Servs., 96 F.4th 1048, 1054 (8th Cir. 2024) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A claim is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Kelly v. City of Omaha, 813 F.3d 1070, 1075 (8th Cir. 2016) (quoting Iqbal, 556 U.S. at 678).  "'[C]onclusory statements' and 'naked assertion[s] devoid of further factual enhancement'" are insufficient to satisfy this standard.  Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768 (8th Cir. 2012) (alteration in original) (citation omitted).

"Dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Stringer v. St. James R–1 Sch. Dist., 446 F.3d 799, 802 (8th Cir. 2006).  As a practical matter, such dismissal "should be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Schmedding v. Tnemec Co., Inc., 187 F.3d

3

862, 864 (8th Cir. 1999); see also Butts v. InterSecurities, Inc., 2008 WL 901822, at *3 (D.N.D. Mar. 31, 2008) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 565 (3d ed. 2004) ("stating that 'relatively few complaints fail to meet this liberal standard and thereby become subject to dismissal' under Rule 12(b)(6)")).

Although courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts may also consider "'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;' without converting the motion into one for summary judgment." Zean v. Fairview Health Servs., 858 F.3d 520, 526 (8th Cir. 2017); see also Dittmer Props., L.P. v. F.D.I.C., 708 F.3d 1011, 1021 (8th Cir. 2013) ("Because these two documents are referred to either directly (the POA) or by inference (the amended partnership agreement) in the complaint and their authenticity is not questioned, we find that the district court appropriately considered them in ruling on the motion to dismiss.").

The Amended Complaint includes fraud allegations. Consequently, Ahlgren must satisfy the heightened pleading standard under Rule 9 of the Federal Rules of Civil Procedure for these fraud allegations. Although Rule 9(b) imposes a more exacting pleading standard, the "special nature of fraud does not necessitate anything other than notice of the claim; it simply necessitates a higher degree of notice." Abels v. Farmers Commodities Corp., 259 F.3d 910, 920 (8th Cir. 2001). The plaintiff must allege "circumstances constituting fraud." Id.; Fed. R. Civ. P. 9(b). In other words, plaintiffs must "plead the 'who, what, where, when, and how.'" Ascente Bus. Consulting, LLC v. DR

4

myCommerce, 9 F.4th 839, 845 (8th Cir. 2021) (quoting Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC, 949 F.3d 417, 421 (8th Cir. 2020)).

### B. Motion to Dismiss filed by DuBois

1. DuBois argues that Ahlgren lacks standing to pursue claims on behalf of the Employee Stock Ownership Plan (ESOP). More specifically, DuBois argues that Ahlgren's ESOP allegations are beyond the scope of section 704 of the Bankruptcy Code and acting as ESOP Trustee (but not administrator) will deprive Ahlgren of his requisite disinterestedness.

Pursuant to section 704, Ahlgren assumed the responsibilities of Debtor's ESOP administrator and began performing the obligations required of the administrator because Debtor served as administrator on the petition date. See 11 U.S.C. § 704(a)(11); see also Taunt v. Coenen (In re Trans-Indus., Inc.), 538 B.R. 323, 347 (Bankr. E.D. Mich. 2015) ("This legislative history indicates that Congress intended the Chapter 7 trustee to become the new plan administrator."). On September 25, 2025, the Court entered an Order authorizing Ahlgren to terminate the 401(k) plan, administer and terminate the ESOP and appoint an ESOP trustee, among other rights and duties. The Court issued the authorization subject to DuBois's reservation of rights regarding the administration of the ESOP. After entry of the Order, Ahlgren appointed himself as ESOP Trustee.

In the Amended Complaint, Ahlgren alleges that he "has discretionary authority and/or control over the management of the ESOP Plan and ESOP Trust and over the management and disposition of the ESOP Plan's assets and ESOP Trust's assets." Doc. 11 at ¶ 9. Ahlgren maintains that, in his role as ESOP administrator and/or Trustee, he is an ERISA fiduciary as defined by 29 U.S.C. § 1002(21). The Court agrees. See Mims v. Matrix Tr. Co. (In re Vantage Benefits Adm'rs, Inc.), 2021 WL 1815065, at *8 (Bankr. N.D.

Tex. May 5, 2021) ("The term 'fiduciary' is liberally construed in keeping with the remedial purpose of ERISA." (citing Am. Fed. of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc'y of the U.S., 841 F.2d 658, 662 (5th Cir.1988))); see also Samson v. Manlove, 2014 WL 5017917, at *2 (D. Mont. Sept. 30, 2014) ("Thus, regardless if Vann's established its fiduciary status through its designation as the plan administrator, or through the discretionary authority and responsibility bestowed upon it by the plan, Vann's is a fiduciary under the ESOP. Judge Lynch correctly determined that the Trustee has standing to bring the ERISA claims.").

ERISA empowers fiduciaries to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3); see also In re Vantage Benefits Adm'rs, Inc., 2021 WL 1815065, at *9 ("Thus, it seems plausible that a trustee should be able to bring suit, if the debtor served as a plan administrator as of the time of the commencement of the case, as part of his 'obligations' under section 704(a)(11)—particularly if no other party—not a plan participant or beneficiary or the Secretary of Labor—is bringing a suit when harm is alleged."); McLemore v. Regions Bank, 682 F.3d 414, 420 (6th Cir. 2012) ("ERISA not only permits—but requires—a fiduciary to remedy the known wrongs of a cofiduciary." (citing 29 U.S.C. § 1105(a)(3)). In fact, several courts have held that ERISA imposes a duty on fiduciaries to pursue viable causes of action. See Herman v. Mercantile Bank, N.A., 137 F.3d 584, 587 (8th Cir. 1998) (ERISA fiduciaries have a fiduciary duty to pursue litigation that "would be successful and advantage the beneficiaries of the plan"); Martin v. Feilen, 965 F.2d 660, 667 (8th Cir. 1992) ("As plan fiduciaries, defendants may have had an obligation to bring a derivative

action if they were aware that the officers and directors of the entities whose stock was held by the ESOP had breached fiduciary duties owed their shareholders . . . ." (quoting Canale v. Yegen, 782 F. Supp. 963, 968 n.3 (D.N.J. 1992))); Harris v. Koenig, 602 F. Supp. 2d 39, 54 (D.D.C. 2009) ("The duties of loyalty and prudence mandated in Section 404(a) of ERISA include the duty to take reasonable steps to realize on claims held in trust." (quotation omitted)); Allard v. Coenen (In re Trans-Indus., Inc.), 419 B.R. 21, 39 (Bankr. E.D. Mich. 2009) ("[A] strong argument can be made that under ERISA, a plan administrator does have a fiduciary duty to pursue valuable claims that the ERISA Plan has against other persons.").

The Court is not convinced that the phrase "obligations required of the administrator" in section 704(a)(11) limits Ahlgren's authority, as the Administrator of the ESOP, to bring a claim against other fiduciaries or defendants for known breaches. To the contrary, the Court finds that section 704(a)(11) together with the other authority referenced in this Order and during the April 3, 2025, hearing, grants Ahlgren standing to pursue claims against DuBois. See McLemore, 682 F.3d at 420 (affirming that a chapter 7 trustee has standing to bring claims "in his role as an ERISA fiduciary"); Taunt v. Coenen (In re Trans-Indus.), 538 B.R. 323, 347 (Bankr. E.D. Mich. 2015) ("Section 704(a)(11), a provision added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, also gives a Chapter 7 trustee the authority to pursue litigation against third parties that an administrator of an ERISA employee benefit plan would have authority to pursue."); Samson v. Manlove, 2014 WL 5017917, at *1 n.2 (D. Mont. Sept. 30, 2014) ("[A] bankruptcy trustee serving as a plan administrator [pursuant to Section 704(a)(11)] who qualifies as an ERISA fiduciary has standing to pursue claims on behalf of the ERISA plan participants.").

7

Accordingly, for the reasons stated above and during the April 3, 2025, hearing on DuBois's motion, DuBois's Motion to Dismiss the claims and causes of action alleged against DuBois based on the argument that Ahlgren lacks standing is denied.

2. DuBois also argues that Ahlgren does not have standing to pursue litigation claims on behalf of the ESOP while serving as bankruptcy trustee because doing so will cause him to be disinterested. For the reasons stated on the record at the April 3, 2025, hearing, the hypothetical potential conflicts suggested by DuBois are not yet potential conflicts or disqualifying conflicts and do not serve as grounds to dismiss any of the claims Ahlgren alleges in his capacity as the ESOP Administrator or ESOP Trustee. DuBois's Motion to Dismiss these claims and causes of action is denied.

3. Next, DuBois argues that Count 4 should be dismissed because Ahlgren does not allege a breach of a fiduciary duty owed to Debtor, and Ahlgren does not sufficiently allege the existence of cognizable resulting damages to Debtor's estate.

In the Amended Complaint, Ahlgren alleges DuBois knew Debtor did not qualify for 8(a) and Women Owned Small Business Set-Aside programs and "delivered a 'Statement of Representation' to Stout" that includes allegedly false statements or material omissions. Doc. 11 at ¶¶ 183-84, 190. By delivering this document and failing to notify Paredes of Debtor's ineligibility for these government contracts, DuBois allegedly breached his fiduciary duties to Debtor by facilitating and causing Debtor to enter the ESOP transaction and related transactions, transfers and distributions. See id. at ¶¶ 181-200, 212-215, 266-68.

In support of his allegation that DuBois's breach of fiduciary duty caused cognizable resulting damages, Ahlgren argues "Debtor was depleted of cash and became saddled with millions of dollars of unsustainable loan obligations, ultimately leading to its

8

bankruptcy filing." Doc. 69 at 18. Several allegations in the Amended Complaint support this claim. For example, Ahlgren alleges that, at DuBois's direction, Debtor borrowed from Capital Credit Union to satisfy the Bankers Trust loan and borrowed an additional $6,093,216.88 to make an advance principal payment to the Bergs. Doc. 11 at ¶ 214. Ahlgren also alleges that, during the time DuBois served as President of Debtor, Debtor used $2 million of its operating cash to fund a post-closing payment to Connie Berg and Debtor used $1.45 million of its operating cash between January 2021 and April 2022 to fund quarterly payments to Connie Berg. Id. at ¶ 213.

Accepting these factual allegations, among others in the Amended Complaint, as true and construing all reasonable inferences in favor of Ahlgren, the Court finds that Ahlgren plausibly alleges sufficient factual allegations in his Amended Complaint to support his claim that DuBois breached his fiduciary duty owed to Debtor, and these breaches caused damages to Debtor's estate. DuBois's Motion to Dismiss these claims in Count 4 is denied.

In Count 4, Ahlgren also alleges that DuBois breached his fiduciary duties to Debtor in connection with Greenstone Construction, Inc.'s size protest against Debtor in 2023. Id. at ¶¶ 230-38, 269. Ahlgren withdrew this allegation (in ¶ 269) in his response brief and during the April 3, 2025, hearing. Accordingly, Ahlgren's claim that DuBois breached his fiduciary duties to Debtor in connection with Greenstone Construction, Inc.'s size protest against Debtor in 2023 (¶ 269) is withdrawn and dismissed. DuBois's argument regarding Ahlgren's failure to join two indispensable parties is moot.

4.      In Count 27 of the Amended Complaint, Ahlgren alleges that DuBois's false representations and omissions constitute actual fraud as defined by N.D.C.C. § 9-03-08.

9

DuBois asserts that this statute is applicable only to contractual counterparties and claims Ahlgren failed to allege DuBois is in contractual privity with the ESOP.

Although the North Dakota Supreme Court may have overlooked the distinction between fraud and deceit, the North Dakota legislature adopted two separate statutes with different remedies.  Compare N.D.C.C. § 9-03-08, with § 9-10-02; see also Newfield Prod. Co. v. Eighty-Eight Oil LLC, 2017 WL 4247326, at *3 (D.N.D. Sept. 22, 2017) (explaining that fraud plaintiffs may rescind the contract but deceit plaintiffs can only recover damages).  Section 9-03-08 requires contractual privity, but Ahlgren did not plead that DuBois was in contractual privity with the ESOP trust.  Accordingly, DuBois's Motion to Dismiss Count 27 is granted.  Ahlgren's claim under N.D.C.C. § 9-03-08 is dismissed.  Given the early stage of this adversary proceeding and the liberal standard under Federal Rule of Bankruptcy Procedure 7015, the Court grants Ahlgren leave to amend his Amended Complaint to assert a claim for deceit under N.D.C.C. § 9-10-02.

5.	DuBois also argues that Count 28 should be dismissed because the Amended Complaint does not set forth allegations establishing that DuBois materially aided in the commission of a securities fraud or that he did so in relation to Connie Berg. In support of this argument, he observes that Ahlgren does not allege DuBois sold a security; owned Debtor; served as an agent of Connie Berg (who sold securities); controlled, supervised or exercised dominion over Connie Berg or served as an employee of Connie Berg.   One or more of these allegations may be necessary if Ahlgren asserted a claim against DuBois under N.D.C.C. § 10-04-17(1), but that is not the case.  In his opposition brief, Ahlgren explains: "Plaintiff is not asserting a claim against Mr. DuBois under Section 10-04-17(1). Instead, as noted above, Plaintiff asserts his claim against Mr. DuBois under N.D. Cent. Code § 10-04-17(6)(b)[.]"

10

Under N.D.C.C. § 10-04-17(6)(b), "an individual who is . . . associated with a person liable under this section and who materially aids the conduct giving rise to the liability" is "jointly and severally [liable] with and to the same effect as" such person, unless the individual "did not know, and in the exercise of reasonable care could not have known, of the conduct by reason of which the liability is alleged to exist."  N.D.C.C. § 10-04-17(6)(b).

DuBois argues the Amended Complaint does not include allegations establishing that he was "associated with" Connie Berg.  He argues that the "whole gravamen" of Ahlgren's case against DuBois is that DuBois was not an associate of Connie Berg because Connie Berg had almost nothing to do with Debtor's affairs.

In the Amended Complaint, Ahlgren alleges that both Kyle and Connie Berg are persons liable under section 10-04-17.  Ahlgren also sufficiently alleges that DuBois was "associated with" the Bergs.  Specifically, he alleges DuBois was the vice president of Debtor (Doc. 11 at ¶ 23) while Connie Berg owned Debtor and Kyle Berg controlled Debtor (Doc. 11 at ¶20).  Ostensibly, Connie Berg was DuBois's boss because she was Debtor's sole owner, director and president (Doc. 11 at ¶¶ 20, 44, 52), and Kyle Berg was his actual boss because he controlled Debtor (Doc. 11 at ¶¶ 20, 44, 55-64).  Ahlgren also argues DuBois was "associated with" Kyle Berg because DuBois employed Kyle Berg for more than a decade at a construction company DuBois owned.  Doc. 11 at ¶¶ 85, 185. Additionally, Ahlgren alleges that DuBois played a role in the Bergs' fraud scheme and materially aided the Bergs' conduct by signing the Statement of Representation, failed to stop the ESOP transaction and share redemptions and approved cash payments to Connie Berg.  Doc. 11 at ¶¶ 115, 189-200, 212-215, 477-479, 482.  Accepting these factual allegations as true and construing all reasonable inferences in favor of Ahelgren, the Court finds that Ahlgren plausibly alleges sufficient factual allegations in Count 28 of his

11

Amended Complaint to support his claim that DuBois was "associated with" the Bergs under N.D.C.C. § 10-04-17(6)(b).  DuBois's Motion to Dismiss Count 28 is denied.

IT IS ORDERED that Chad DuBois's Motion to Dismiss [Doc. 55] is granted in part and denied in part.

Dated: April 18, 2025.

*Shon Hastings*

Shon Hastings, Judge
United States Bankruptcy Court