UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In Re:                                                    Bankruptcy No. 24-30167
                                                          Chapter 7

Pro-Mark Services, Inc.,

                              Debtor.

_____/

Erik A. Ahlgren, as Chapter 7 Trustee of the
Bankruptcy Estate of Pro-Mark Services, Inc.,
as Administrator of the Pro-Mark Services, Inc.
Employee Stock Ownership Plan, and as
Trustee of the Pro-Mark Services, Inc. Employee
Stock Ownership Trust,

                              Plaintiff,

        vs.                                               Adversary No. 24-07014

Connie Berg, Kyle Berg,
Connie Berg Revocable Living Trust,
Kyle R. Berg Revocable Living Trust,
Chad Dubois, Mandy Grant and Miguel Paredes,

                              Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART
BERG DEFENDANTS' MOTION TO DISMISS**

## I.   INTRODUCTION

Erik A. Ahlgren, as Chapter 7 Trustee of the Bankruptcy Estate of Pro-Mark

Services, Inc., as Administrator of the Pro-Mark Services, Inc. Employee Stock

Ownership Plan, and as Trustee of the Pro-Mark Services, Inc. Employee Stock

Ownership Trust, initiated this adversary proceeding against Connie Berg, Kyle Berg,

Connie Berg Revocable Living Trust, Kyle R. Berg Revocable Living Trust, Chad

Dubois, Mandy Grant and Miguel Paredes on August 26, 2024.  Ahlgren amended his

1

complaint on September 25, 2024, before any Defendant filed an answer or other response.  Ahlgren alleges 28 counts in his Amended Complaint, naming Connie and Kyle Berg as Defendants in 24 of them.  These causes of action are premised on state law and federal securities law.

The Bergs filed a Motion to Dismiss seeking to dismiss all of Ahlgren's claims and causes of action against them.  In their motion and Demand for Jury Trial, the Bergs state that they do not consent to entry of final orders or judgment by the Bankruptcy Court.  Docs. 52, 54.

The Court held oral argument on the Bergs' Motion to Dismiss on April 3, 2025. During the hearing, the Court indicated that it planned to enter a report and recommendation regarding its rulings on the Bergs' motion to dismiss.  The more accurate term is "Proposed Findings of Fact and Conclusions of Law" under Rule 9033 of the Federal Rules of Bankruptcy Procedure.  After considering Rule 9033 and common law interpreting it, the Court finds that proposed findings of fact and conclusions of law are premature.  "It is now very well established that bankruptcy courts consistent with Stern v. Marshall may handle all pretrial proceedings short of a final ruling -- including entry of interlocutory orders dismissing fewer than all of the claims in an adversary complaint, granting partial summary judgment, or making discovery and evidentiary rulings -- without the need to issue proposed findings of fact and conclusions of law and invocation of Fed. R. Bankr. P. 9033." Windstream Holdings, Inc. v. Charter Commc'ns, Inc. (In re Windstream Holdings, Inc.), 2020 WL 833809, at *2 (Bankr. S.D.N.Y. Feb. 19, 2020) (citing cases).  Given that the Court is dismissing fewer than all the claims against the Bergs in this adversary proceeding, this

Order is not a final order or proposed findings of fact and conclusions of law.[1]  The

Court retains jurisdiction over all matters arising from or related to this Order.

## II.    FACTS

In the context of this motion, the Court considered the factual allegations in

Ahlgren's Amended Complaint, accepting them as true and construing all reasonable

inferences in favor of Ahlgren.

Additionally, the Court considered:

Ex. A          Redemption Note dated August 31, 2020 - $12,094,000,

Ex. B          Amended and Restated Seller Note dated August 31, 2020 - $10,985,754,

Ex. C          Search warrant dated March 1, 2022 (Kyle Berg person, belongings, containers),

Ex. D          Pro-Mark Services, Inc., Non-Prosecution Agreement and

Ex. E          Pro-Mark's appeal of SBA's size determination finding Pro-Mark is not a small business.  Determination affirmed.

Declaration of Connie Berg in Support of the Berg Defendants' Motion to Dismiss
attaching:

Ex. 1          Pro-Mark Servies, Inc. Employee Stock Ownership Trust,

---

[1] This Order, the Order Denying in part and Granting in Part Motion to Dismiss
filed by Miguel Paredes [Doc. 103], and the Order Denying in Part and Granting in Part
Motion to Dismiss filed by Chad DuBois [Doc. 110] are all interlocutory orders.  The
Court did not finally decide the underlying claims in this adversary proceeding.  See In
re Windstream Holdings, Inc., 2020 WL 833809, at *1 (Bankr. S.D.N.Y. Feb. 19, 2020)
(citing Ritzen Grp., Inc. v. Jackson Masonry, LLC, 589 U.S. 35, 37 (2020) ("Orders in
bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes
within the overarching bankruptcy case."); O'Toole v. McTaggart (In re Trinsum Grp.,
Inc.), 467 B.R. 734, 741 (Bankr. S.D.N.Y. 2012) ("[An] adversary proceeding being the
relevant judicial unit, the order ending the adversary proceeding would generally be the
only final order.")).

Ex. 2          Redemption and ESOP Stock Purchase Agreement,

Ex. 3          Initial Seller/ESOP Loan Agreement,

Ex. 4          Seller Note Exchange and ESOP Loan Modification Agreement and

Ex. 5          Confidential Information Memorandum.

Doc. 51.

## III.   ANALYSIS

### A.    Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure, applicable in this adversary

proceeding under Federal Rule of Bankruptcy Procedure 7012(b), specifies that a party

may move to dismiss a complaint for "failure to state a claim upon which relief may be

granted." Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion to

dismiss, the Court accepts as true the factual allegations in the complaint and construes

all reasonable inferences in favor of the nonmoving party.  Par v. Wolfe Clinic, P.C., 70

F.4th 441, 445 (8th Cir. 2023). Accordingly, to survive a motion to dismiss, "a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  Norgren v. Minn. Dep't of Hum. Servs., 96 F.4th 1048, 1054 (8th

Cir. 2024) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim is plausible on

its face 'when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.'" Kelly v.

City of Omaha, 813 F.3d 1070, 1075 (8th Cir. 2016) (quoting Iqbal, 556 U.S. at 678).

"'[C]onclusory statements' and 'naked assertion[s] devoid of further factual

enhancement'" are insufficient to satisfy this standard. Retro Television Network, Inc. v.

Luken Commc'ns, LLC, 696 F.3d 766, 768 (8th Cir. 2012) (alteration in original) (citation omitted).

Although courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts may also consider "'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned'; without converting the motion into one for summary judgment." Zean v. Fairview Health Servs., 858 F.3d 520, 526 (8th Cir. 2017); see also Dittmer Props., L.P. v. F.D.I.C., 708 F.3d 1011, 1021 (8th Cir. 2013) ("Because these two documents are referred to either directly (the POA) or by inference (the amended partnership agreement) in the complaint and their authenticity is not questioned, we find that the district court appropriately considered them in ruling on the motion to dismiss.").

Ahlgren's Amended Complaint includes fraud allegations.  Consequently, Ahlgren must satisfy the heightened pleading standard under Rule 9 of the Federal Rules of Civil Procedure for these fraud allegations.  Although Rule 9(b) imposes a more exacting pleading standard, the "special nature of fraud does not necessitate anything other than notice of the claim; it simply necessitates a higher degree of notice." Abels v. Farmers Commodities Corp., 259 F.3d 910, 920 (8th Cir. 2001). The plaintiff must allege "circumstances constituting fraud." Id.; Fed. R. Civ. P. 9(b).  In other words, plaintiffs must "plead the 'who, what, where, when, and how.'" Ascente Bus. Consulting, LLC v. DR myCommerce, 9 F.4th 839, 845 (8th Cir. 2021) (quoting Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC, 949 F.3d 417, 421 (8th Cir. 2020)).

**IV.    Motion to Dismiss filed by Defendants Connie and Kyle Berg**

For the reasons stated below and on the record at the April 3, 2025, hearing, the

Berg Defendants' Motion to Dismiss [Doc. 54] is granted in part and denied in part.

**A.    The Bergs argue that Ahlgren's breach of fiduciary duty claims fail to state a claim under Federal Rules 9(b) and 12(b)(6).**

**1.    The Bergs argue that Connie Berg could not breach a fiduciary duty owed to Debtor because she was the sole shareholder, and, if Kyle Berg breached a fiduciary duty, Debtor (through Connie Berg) consented to or ratified any alleged breach.**

The Bergs claim that Connie Berg could not breach a fiduciary duty owed to

Debtor because she was the sole shareholder.  Ahlgren does not allege that Connie

Berg breached a fiduciary duty owed to Debtor in her capacity as shareholder in Count

1.  Rather, he alleges that she breached her fiduciary duty in her capacity as director

and President of Debtor.  Doc. 11 at ¶ 251.

Further, the Court is not convinced that the common law "sole shareholder

exception" precludes Ahlgren's claims in Count 1.  North Dakota law governs the duties

directors and officers owe to a corporation under sections 10-19.1-50 and 10-19.1-60 of

the North Dakota Century Code.  The statutes provide no exceptions for sole

shareholders.  Additionally, the Court found no cases suggesting that a 100%

shareholder, who is also an officer and a director, could not be held liable for duties

owed to a corporation under these statutes.  The Court is also not convinced that North

Dakota courts would refuse to hold a sole shareholder liable to a corporation for

engaging in fraud or conduct that violates public policy.  Accordingly, Ahlgren alleges a

plausible claim that was pled with sufficient particularity under Count 1.  The Bergs'

Motion to Dismiss Count 1 is denied.

6

The Court also rejects the Bergs' assertion that they are entitled to dismissal of Count 2 alleging a breach of fiduciary claim against Kyle Berg because, if Kyle Berg breached a fiduciary duty, Debtor (through Connie Berg) consented to or ratified any alleged breach. Whether Connie Berg ratified Kyle Berg's conduct is an affirmative defense that creates a question of fact which may not be resolved in the context of a Rule 12(b)(6) motion. See Funke v. Aggregate Const., Inc., 2015 ND 123, ¶ 36, 863 N.W.2d 855 ("Whether or not ratification exists is a question of fact where more than one inference can be drawn from the evidence." (citation omitted) (quoting Lahnston v. Second Chance Ranch Co., 968 P.2d 32, 36 (Wyo.1998))); In re Abbott Lab'ys Derivative S'holders Litig., 325 F.3d 795, 811 (7th Cir. 2003) (applying Illinois's identical statute) ("Where the complaint sufficiently alleges a breach of fiduciary duties based on a failure of the directors to act in good faith, bad faith actions present a question of fact that cannot be determined at the pleading stage."); Delahoussaye v. Newhard, 785 S.W.2d 609, 613 (Mo. Ct. App. 1990) ("The bar of ratification extends only to acts which directors justify as matters of judgment, made fairly and in an honest manner. It does not apply to ultra vires, illegal or fraudulent acts.").

Further, the Court is not convinced that North Dakota courts would hold that a sole shareholder may ratify her husband's alleged breach of fiduciary duty—as a matter of law in the context of a Rule 12(b)(6) motion—where a plaintiff plausibly alleges that the shareholder and her husband, who exercised principal functions of an officer of the corporation, breached duties to the corporation by fraudulently enrolling the corporation in set-aside programs. See generally N.D.C.C. §§ 10-19.1-50 and 10-19.1-60.

7

Construing all reasonable inferences in favor of Ahlgren, the Court finds Ahlgren alleges a plausible claim that Kyle Berg owed fiduciary duties to Debtor because he is an "individual exercising the principal functions of an office." N.D.C.C. § 10-19.1-60. He also plausibly alleges that Kyle Berg breached those duties. The Court also finds that Ahlgren pled Count 2 with sufficient particularity to survive the Bergs' Rule 12(b)(6) motion. The Bergs' Motion to Dismiss Count 2 is denied.

**2.    The Bergs argue that the statute of limitations bars any breach of fiduciary duty claim related to the Equity Distribution.**

In the context of the ESOP transaction, Ahlgren alleges that Connie Berg received an equity distribution in the sum of $6,272,060 on August 27, 2020. Ahlgren seeks to recover this sum by alleging actual fraud, securities fraud, breach of fiduciary duties, breach of contract and fraudulent transfer causes of action against the Bergs. The Bergs assert Ahlgren's claims against Connie Berg for violation of her fiduciary duties related to this allegedly illegal distribution are time barred under sections 10-19.1-94 and 10-19.1-95 of the North Dakota Century Code, which bars commencement of an action more than two years from the distribution date.

Ahlgren alleges that Connie Berg authorized the distribution "in her capacities as Debtor's sole shareholder and sole director," in his Amended Complaint. Doc. 11 at ¶ 123. Despite this allegation, in his response brief, Ahlgren claims the Bergs breached their fiduciary duties relating to the equity distribution in their capacities as officers. Doc. 67 at 21. To the extent Ahlgren argues that Connie Berg authorized the allegedly illegal distribution in her capacity as President, this argument is rejected because officers may not authorize equity distributions under North Dakota law. See N.D.C.C.

§§ 10-19.1-92 ("The board may authorize and cause the corporation to make a

distribution . . . ."); 10-19.1-53 (authorizing distributions not listed in officers' duties).

During oral argument, Ahlgren argued that the Bergs breached their fiduciary

duties as officer and purported officer of Debtor when they refused to disclose their

fraudulent conduct to Debtor and the ESOP after the ESOP transactions were

completed.   He maintains that the statutes of limitations applicable to illegal

distributions authorized by shareholders and directors are not applicable to this cause of

action.  Essentially, Ahlgren alleges multiple causes of action arising from the same

transaction or series of events—the Bergs' failure to disclose that they fraudulently

enrolled Debtor in 8(a) and WOSB programs.

As a general rule,

> If two or more statutes of limitation within a jurisdiction may apply to a cause
> of action, generally the statute providing the longest limitation period is
> preferred and will be applied. Any doubt as to the application of two or more
> statutes of limitation to a claim should be resolved in favor of the longest
> limitation period. Thus, when two statutes of limitation conflict, or when a
> claim may be pursued on two theories having different limitation periods,
> the longer limitation period applies.

51 Am. Jur. 2d 547, Limitation of Actions § 76 (2016); see also Masloskie v. Century 21

Am. Real Est., Inc., 2012 S.D. 58, ¶ 12, 818 N.W.2d 798, 802 (finding that the

gravamen of the causes of action was fraud and that the longer 6-year statute of

limitations applied rather than the 2-year medical malpractice statute of limitations);

Cardiovascular Sys., Inc. v. Petrucci, 2022 WL 2133743, at *2 (8th Cir. June 14, 2022)

("Under Minnesota law, the nature of the underlying cause of action determines the

applicable statute of limitations."); Muhammad v. Wilkins Grp., 2009 WL 2923017, at *6

(E.D. Mo. Sept. 8, 2009) ("[T]he Eighth Circuit examined the Iowa Supreme Court's test

for determining the applicable statute of limitations for a cause of action, which requires 'look[ing] to the foundation of the action,' which in turn requires 'characterizing the actual nature of the action.' (quoting Vrban v. Deere & Co., 129 F.3d 1008, 1009 (8th Cir. 1997))); Betz v. Trainer Wortham & Co., Inc., 236 F. App'x 253, 254 (9th Cir. 2007) ("[U]nder California's 'gravamen rule,' courts look to the true nature of the plaintiff's suit, rather than the cause of action the plaintiff alleges, to determine the applicable statute of limitations."); Benz-Elliott v. Barrett Enters., LP, 456 S.W.3d 140, 141 (Tenn. 2015) (a court must identify the gravamen of each claim alleged to determine the applicable statute of limitations, requiring a court to consider both the legal basis of the claim and the injury for which damages are sought); United Gen. Title Ins. Co. v. AmeriTitle, Inc., 847 N.E.2d 848, 853 (Ill. App. Ct. 2006) ("In determining the applicable statute of limitations, we are obligated to evaluate a complaint to determine the true character of a plaintiff's cause of action."), overruled by Travelers Cas. & Sur. Co. v. Bowman, 893 N.E.2d 583 (Ill. 2008); Wages v. Young, 261 S.W.3d 711, 715 (Mo. Ct. App. 2008) ("[T]he 'gravamen' of the complaint or a fair reading of the complaint in its totality, should determine [what type of cause of action is alleged] and then the applicable statute of limitations should be applied." (alterations in original)).

To the extent Ahlgren claims that Connie Berg authorized the allegedly illegal equity distribution in her capacity as shareholder or director premised on failure to disclose fraudulent enrollment in these programs, these causes of action are barred by sections 10-19.1-94 and 10-19.1-95 of the North Dakota Century Code.  Ahlgren's breach of fiduciary duty claims against the Bergs in their role as officer and purported officer, which are also premised on the Bergs' failure to disclose the fraudulent

enrollments, are governed by the six-year statute of limitations in section 28-01-16 of

the North Dakota Century Code because the gravamen of this claim is liability created

by statute.  <u>See</u> N.D.C.C. § 28-01-16(2); N.D.C.C. §10-19.1-60.  Accordingly, the Bergs'

Motion to Dismiss based on the two-year time bar in sections 10-19.1-94 and 10-19.1-

95 of the North Dakota Century Code is granted in part and denied in part as outlined

above.

> **3.    The Bergs argue that the statute of limitations bars any breach of fiduciary duty claim based on an allegation that the Bergs "caused the Debtor to defraud the United States" before April 22, 2018.**

The Bergs assert that the Court "must dismiss any fiduciary duty claims based on

allegedly fraudulent conduct that occurred before April 22, 2018."  Doc. 50 at 27.  This

request is overbroad.  To the extent Ahlgren seeks a stand-alone remedy for the Bergs'

breach of fiduciary duty by allegedly causing Debtor to fraudulently obtain set-aside

contracts predating April 22, 2018, to which Debtor was not entitled, these claims are

barred by the six-year statute of limitations under N.D.C.C. § 28-01-16(2).  Likewise, to

the extent Ahlgren seeks a remedy arising from a conspiracy to defraud the government

where the final act of the conspiracy predates April 22, 2018, these claims may be

barred by the six-year statute of limitations under N.D.C.C. § 28-01-16(2).  To the extent

Ahlgren alleges fraudulent conduct predating April 2018 as background information to

support his claim that the Bergs breached fiduciary duties to Debtor by failing to

disclose this conduct in connection with the equity distribution and other acts related to

the 2020 ESOP transaction, these claims are not barred by the six-year statute of

limitations under N.D.C.C. § 28-01-16(2).  <u>See</u> Doc. 11 at ¶¶ 252, 258. The ESOP

transaction is the triggering date for purposes of the six-year statute of limitations under

N.D.C.C. § 28-01-16(2).  Accordingly, the Bergs' Motion to Dismiss Counts 1 and 2 on

this basis is granted in part and denied as outlined above.

> **4.    The Bergs argue that Ahlgren's claims premised on the Bergs
> allegedly "causing the Debtor to defraud the United States"
> are not pled with particularity.**

Ahlgren alleges the Bergs, acting in concert, falsely represented to the

government that Connie Berg controlled Debtor and Debtor met SBA's size

requirements for small businesses.  Doc. 11. at ¶¶ 27, 44-53, 226-28.  According to

Ahlgren, Kyle Berg controlled Debtor. Id. at ¶¶ 51-52, 55-66, 226-28; Doc. 11-1 at 26,

115.  Ahlgren also alleges that Debtor exceeded small-business size thresholds due to

its affiliations with other entities owned or controlled by Kyle Berg.  Doc. 11 at ¶¶ 53, 68-

98.  According to Ahlgren, Connie Berg "made these false representations to the

government on the following occasions: (i) when Debtor applied for the 8(a) program in

2008; (ii) each year when Debtor annually recertified for the 8(a) program until its

graduation in 2017; (iii) every time Debtor applied for an 8(a) set-aside contract; (iv)

each year from 2015 to 2020 when Debtor enrolled in the WOSB program; (v) every

time Debtor applied for a WOSB set-aside contract; and (vi) every time Debtor applied

for a small-business set-aside contract."  Doc. 67 at 22; Doc. 11 at ¶¶ 44-53.  As a

result of Connie Berg's allegedly false representations, "Debtor wrongfully enrolled in

the 8(a) and WOSB programs, wrongfully received about $70 million in 8(a) and WOSB

set-aside contracts from 2008 to 2020 and wrongfully received millions of dollars in

small-business set-aside contracts."  Doc. 67 at 22; Doc. 11 at ¶¶ 27, 44, 49-54, 66, 99-

101, 226-228.  Ahlgren claims that Debtor could not have enrolled in these programs or

received this revenue but for Connie Berg's false representations.  Id.  The Pro-Mark

Services, Inc., Non-Prosecution Agreement with attached Statement of Facts supports these allegations.

Additionally, Ahlgren alleges that Connie Berg's false representations exposed Debtor to significant liabilities that caused its bankruptcy, including liability to the government, loss of bonding, loss of employees, and harm to its reputation. Id. at ¶¶ 102-103, 229, 239-49.

Rule 9 does not demand that Ahlgren list the specific contracts Debtor obtained or specific details about affiliate revenues.  The allegations in the Amended Complaint together with the attachments include sufficient detail to plausibly allege that the Bergs caused Debtor to defraud the United States.  The Bergs' Motion to Dismiss the breach of fiduciary duty claims because they lack sufficient detail to plead a plausible claim is denied.

**B.    The Bergs argue that Ahlgren's claims based on alleged misrepresentations and omissions fail to state a claim under Federal Rules 9(b) and 12(b)(6).**
   **1.    The Bergs argue that, based on the plain language of the contracts, the alleged misrepresentations were not false.**

      **i.    The Bergs argue that Connie Berg did not breach the Modification Agreement or defraud Debtor or the ESOP Trust because she did not make a false representation in Section 6(d) of the Modification Agreement.**

Ahlgren alleges that Connie Berg's representation that she was not in default under section (6)(d) of the modification agreement was false. Section 6(d) provides:

> The Lender [Connie Berg] warrants and represents to the [ESOP] Trust and the [Debtor] that, as of time of delivery to the [Debtor] of the Lender's Initial Seller/ESOP Loan Document . . . no default or defaults have occurred with respect to the Initial Seller/ESOP Note [or] the Initial Seller/ESOP Loan Agreement[.]

Doc. 51-4 at 4.  Ahlgren argues Connie Berg defaulted under section 5.3(c) of Initial

Loan Agreement which provides:

> The execution, delivery, and performance of this Agreement by the Seller
> [Connie Berg] does not and will not . . . violate any law, regulation, judgment,
> or order applicable to the Seller [Connie Berg].

Doc. 51-3 at 4.  In support of this argument, Ahlgren alleges that Connie Berg's

execution, delivery and performance of the agreement violated multiple laws.

Specifically, he claims that the agreement was a part of a "prohibited transaction" under

ERISA, and Connie breached fiduciary duties to Debtor and the ESOP in violation of

North Dakota law.

The Bergs argue the agreement defines "Event of Default" as only "[t]he failure of

the Trust to pay when due any principal, interest, or other amounts due and payable

under the Initial Seller/ESOP Note." Id. at 5. The Bergs maintain that allegedly false

statements are not an "Event of Default."  Because there was no failure to pay when

she entered the agreement, the Bergs claim Connie Berg's representation that she was

not in default was true.

Section 6(d) of the modification agreement does not refer to the defined term:

"Event of Default." Instead, the language of the modification agreement refers to "no

default or defaults," a broader phase.  Construing "no default or defaults" in favor of

Ahlgren, the phrase covers any default or failure to perform a contractual duty under the

purchase and loan agreement.  Ahlgren alleges that Connie Berg failed to comply with

section 5.3(c) by violating an ERISA provision and breaching her fiduciary duties in

executing, delivering or performing the agreement.  Accepting Ahlgren's allegations as

true and construing all reasonable inferences in favor of Ahlgren, these allegations are

14

sufficient to allege a default under section (6)(d) of the modification agreement.  The

Bergs' Motion to Dismiss Counts 7, 8, 25 and 28 based on this argument is denied.

> **ii.    The Bergs argue  that Connie Berg did not defraud the ESOP Trust because she did not make a false representation in Section 5.3(c) of the Initial Loan Agreement.**

Section 5.3(c) of Initial Loan Agreement provides:

> The execution, delivery, and performance of this Agreement by the Seller [Connie Berg] does not and will not . . . violate any law, regulation, judgment, or order applicable to the Seller [Connie Berg].

Id. at 4.  As noted above, Ahlgren alleges that Connie Berg's execution, delivery and

performance of the agreement violated multiple laws.  Specifically, he claims that the

agreement was part of a "prohibited transaction" under ERISA, and Connie Berg

breached fiduciary duties to Debtor and the ESOP.  Assuming Ahlgren's allegations are

true and construing all reasonable inferences in favor of Ahlgren, these allegations are

sufficient to plausibly allege that Connie Berg defrauded the ESOP Trust by making a

false representation in Section 5.3(c) of the Initial Loan Agreement.  The Bergs' Motion

to Dismiss Counts 25 and 28 based on this argument is denied.

> **iii.    The Bergs argue that Connie Berg did not breach the purchase agreement or defraud Debtor or the ESOP Trust because she did not make a false representation in Section 3.2(g) of the purchase agreement.**

Section 3.2(g) of the purchase agreement provides:

> There is no claim, legal action, suit, arbitration, governmental investigation or other legal or administrative proceeding, nor any order, decree or judgment, in progress, pending, in effect, or to the Knowledge of the Seller [Connie Berg], threatened relating to this Agreement or the transactions contemplated by this Agreement, and the Seller [Connie Berg] does not know of any reason for, nor have any reason to be aware of, any basis for the same.

Doc. 51-2 at 15.  The Bergs argue that, to survive their motion to dismiss this claim, the Court must determine that a reasonable inference can be drawn that: "(i) Connie knew that a claim or investigation against the Debtor would be asserted months or years after the consummation of the ESOP Transaction, and (ii) any such claim or investigation would somehow 'relate' 'to [the] Agreement or the transactions contemplated by [the] Agreement."  Doc. 50 at 32 (alterations in original).  The Bergs assert that the government's investigation and Ahlgren's breach of fiduciary duty claims cannot possibly relate to the purchase agreement.  The Court disagrees.

When she signed the purchase agreement that included section 3.2(g), Connie Berg represented that she had no reason to be aware of <u>any basis</u> for a claim, legal action, suit, arbitration, governmental investigation or other legal or administrative proceeding.  Assuming the facts Ahlgren alleges are true and construing all reasonable inferences in favor of Ahlgren, it is plausible that Connie Berg had reason to be aware of a basis for a breach of fiduciary duty claim, ERISA violation, investigations by various federal agencies, and related claims and legal proceedings when she fraudulently obtained set-aside contracts and failed to disclose this information in the context of the ESOP transaction.  More specifically, Ahlgren plausibly alleges that Connie Berg knew that a material sum of Debtor's revenue was attributable to fraudulently obtained set-aside contracts, and that the ESOP paid more than adequate consideration in light of the fraudulent government contracting revenue and undisclosed liability potentially arising due to this fraudulent conduct.  Doc. 11 at ¶ 99-103, 141-145, 162-63, 277-78, 295, 298, 432-53.

Section 3.2(g) did not require Connie Berg to predict a future investigation; it only required that she disclose the basis for a claim or investigation.  Ahlgren plausibly alleges and argues that Connie Berg knew the ESOP purchase agreement and related transactions effected a prohibited transaction in violation of ERISA and she breached ERISA fiduciary duties by facilitating it.

Accepting the allegations in the Amended Complaint as true and construing all reasonable inferences in favor of Ahlgren, Ahlgren plausibly alleges that Connie Berg breached the purchase agreement or defrauded Debtor or the ESOP Trust by making a false representation in Section 3.2(g) of the purchase agreement.  The Bergs' Motion to Dismiss Counts 6, 8, 25 and 28 based on this argument is denied.

> **iv.    The Bergs argue that Connie Berg did not defraud the ESOP Trust because she did not make a false representation in Sections 3.3(g)(i) and (iii) of the purchase agreement.**

Section 3.3(g)(i) of the purchase agreement provides:

The reviewed financial statements of the Company . . . and internally-prepared balance sheet and income statement . . . (B) present fairly the financial position of the Company of such date and the results of operations of the Company for such period in all material respects; (C) contain no untrue statements of material fact, do not omit any material fact necessary to make such Financial Statements not misleading . . ."

Doc. 51-2 at 16.

Section 3.3(g)(iii) of the purchase agreement provides:

The financial projections furnished by the Company to the Trustee in connection with the transaction contemplated hereunder are reasonable and complete, and (1) reflect the Company's best efforts to accurately and correctly project the future operations of the Company; and (2) to the Seller's [Connie Berg's] Knowledge there are no material adjustments that should be made to such financial projections to make the financial projections reasonable and complete.

Id. at 17.

17

The Bergs claim that Ahlgren does not allege that the financial statements were inaccurate.  Accordingly, Connie Berg complied with section 3.3(g)(i) of the purchase agreement.

While the figures the Bergs disclosed on financial statements during the ESOP transaction might have reflected information from Debtor's balance sheets and income statements, it is the information the Bergs failed to disclose that Ahlgren alleges was false and misleading.  Ahlgren alleges Connie Berg's representations under section 3.3(g)(i) were false because the financial statements did not disclose that at least 26.5% of Debtor's revenue was attributable to fraudulently obtained contracts and did not disclose foreseeable losses and liabilities stemming from this fraudulent revenue— including contract termination, competitor protests, suspension or debarment, loss of bonding, and civil and criminal liability. Without these disclosures, Debtor's historical financial statements did not fairly present its financial position and were misleading, according to Ahlgren.  Construing all reasonable inferences in favor of Ahlgren, the financial statements suggested Debtor was a profitable and successful company generating millions of dollars in revenue, when some of the revenue was attributable to the Bergs' alleged government contracting fraud, and there remained undisclosed liabilities that would threaten Debtor's continued existence as a going concern.

In response to Ahlgren's claims, the Bergs argue that accurately reported income obtained from an unlawful source may not be actionable only on the grounds that the unlawful source is not disclosed. See Doc. 50 at 34 (citing DoubleLine Cap. LP v. Odebrecht Fin. Ltd., 323 F. Supp. 3d 393, 442 (S.D.N.Y. 2018)).  To the extent DoubleLine Cap. is analogous to this case, the Bergs read the cited passage too

18

narrowly. Ahlgren's allegations extend beyond securities violations. To the extent the securities violations alleged in this case are analogous to the security violations by public company in DoubleLine Cap., Ahlgren's allegations are sufficient to show a plausible duty to disclose the "unlawful source."

In the part of the opinion cited by the Bergs and Ahlgren, the DoubleLine Cap. court discussed conduct that might give rise to a duty to disclose. The court explained that "there must be a connection between the illegal conduct and the [prior] misleading statements beyond the simple fact that a criminal conviction would have an adverse impact upon the corporation's operations in general or the bottom line." Id. at 441 (alteration in original). The circumstances that may give rise to a duty to disclose include "when a defendant makes a statement that can be understood, by a reasonable investor, to deny that the illegal conduct is occurring." Id. Ahlgren argues and alleges that Connie Berg repeatedly represented to the ESOP that Debtor had not engaged in any fraudulent or illegal conduct, which Ahlgren alleges and argues was false and misleading. See Doc. 67 at 28. Assuming these allegations are true, they are sufficient to show a plausible duty to disclose.

For the reasons listed above, Ahlgren plausibly alleges that Connie Berg defrauded the ESOP Trust by making a false representation in Section 3.3(g)(i) of the purchase agreement.

The Bergs also argue that Connie Berg did not defraud the ESOP Trust because she did not make a false representation in Section 3.3(g)(iii) relating to the financial projections furnished by Debtor to the ESOP Trust. Because Ahlgren admits that Debtor was not eligible for woman-owned or small business contracts at the time the

financial statements were disclosed in the context of the ESOP transaction, the Bergs argue Debtor's financial projections could not and would not have included anticipated revenue from those contracts. They also argue that representations based on projections are not fraudulent. Doc. 50 at 34 (citing <u>Dahl v. Messmer</u>, 2006 ND 166, ¶ 15, 719 N.W.2d 341).

Although financial projections "[g]enerally" are not "actionable as misrepresentations of fact" because they "fall within the class of statements whose truth or falsity cannot be precisely determined," whether the projections are actionable in any specific case depends "upon the facts in each case." <u>Dahl</u>, 2006 ND 166, ¶ 15, 719 N.W.2d 341. In this case, Ahlgren is not challenging "general expressions of opinion," "puffing," or "dealer's talk." <u>See id.</u> Instead, Ahlgren alleges that the projections (a) included illegal revenue and (b) did not account for known and foreseeable liabilities resulting from Connie Berg's intentional, fraudulent, and illegal conduct. Doc. 11 at ¶¶ 99-103, 141-42, 150-51, 162. Although Debtor graduated from the 8(a) Program before the ESOP transaction and was no longer eligible for new 8(a) Program or WOSB Set-Aside Contracts after the transaction, Debtor was still receiving proceeds from these contracts after the ESOP transactions closed. <u>Id.</u> at ¶ 227. Accordingly, Ahlgren's allegations are sufficient to show a plausible claim that the representations based on projections are fraudulent.

Accepting the allegations in the Amended Complaint as true and construing all reasonable inferences in favor of Ahlgren, Ahlgren plausibly alleges that Connie Berg defrauded the ESOP Trust by making a false representation in Section 3.3(g) (iii) of the

purchase agreement.  The Bergs' Motion to Dismiss Counts 25 and 28 based on these arguments is denied.

> ### v.  The Bergs argue that Connie Berg did not defraud the ESOP Trust because she did not make a false representation in Section 3.3(h) of the purchase agreement.

Section 3.3(h) of the purchase agreement provides:

> The Company has complied in all respects with the eligibility and other requirements of a License or Permit.

Doc. 51-2 at 18-19.

According to the purchase agreement, the definition of "Licenses and Permits" includes:

> [L]icenses, permits, certifications, franchises, authorizations, registrations, approvals, and certificates of occupancy (or their equivalent) issued or granted to the Company with respect to its business by the government of the United States . . . .

Id. at 8.

Although the Bergs do not appear to dispute that Debtor's 8(a) Program certification was a "License or Permit" within the scope of Section 3.3(h) of the purchase agreement, they suggest that this certification expired before the ESOP transactions or that no such certifications took place at or near the time of the ESOP transactions. More specifically, the Bergs assert that Debtor's 8(a) Program certification was not a "License or Permit" when the purchase agreement was signed because Debtor graduated from the 8(a) program in 2017.

In the Amended Complaint, Ahlgren alleges that Connie Berg falsely certified to the Small Business Administration (in writing) that Debtor met the eligibility criteria for the 8(a) Program.  Doc. 11 at ¶ 46-47, 51.  Ahlgren also alleges that Debtor was still receiving proceeds from active 8(a) Program contracts on the ESOP closing date. See

id. at ¶ 227.  Construing all reasonable inferences in favor of Ahlgren, it is plausible that

eligibility requirements for 8(a) Program contracts remain in place throughout the life of

the government contracts.  Accordingly, Ahlgren's allegation that Debtor was still

receiving proceeds from active 8(a) contracts at the time of the ESOP transactions is

sufficient to rebut the suggestion that all 8(a) "approvals" or "authorizations" under the

"Licenses and Permits" definition took place before the Debtor graduated from the

program in 2017 and no longer applied to active contracts awarded under the program.

Assuming Ahlgren's allegations are true and granting all reasonable inferences in

favor of Ahlgren, the Court finds that Ahlgren alleges a plausible claim that Connie Berg

defrauded the ESOP Trust by making a false representation in Section 3.3(h) of the

purchase agreement.  The Bergs' Motion to Dismiss Counts 25 and 28 based on these

arguments is denied.

In the context of alleged violations of Section 3.3(h), the Bergs also argue that

Debtor's WOSB status was not a "License or Permit."  They also maintain set-aside

contracts do not fall within the scope of "License or Permit" of Section 3.3(h).

In response, Ahlgren argues that Debtor self-certified its eligibility for WOSB

status, and maintains that a "government 'contracting officer' had to 'accept' the

Debtor's 'self-certification.'"  Doc. 67 at 31.  In support of this argument, Ahlgren cites to

13 C.F.R. §127.301, which provides that a contracting officer may accept an entity's

self-certification as accurate for a specific procurement reserved for an award under the

Women-Owned Small Business Federal Contract Program under certain circumstances.

See 13 C.F.R. §127.301 (version effective 12/31/13 to 7/14/20).  Ahlgren maintains that

the SBA contracting officer's acceptance constituted an authorization or approval under

22

the "License or Permit" definition.  Ahlgren's allegations that Debtor received contract awards under the WOSB program also supports this proposition.  Whether a self-certification qualifies as a "License or Permit" under the purchase agreement remains an open question for trial, but Ahlgren's allegations together with the applicable regulation are sufficient to meet the plausibility standard.

Assuming Ahlgren's allegations are true and granting all reasonable inferences in favor of Ahlgren, the Court finds that Ahlgren alleges a plausible claim that Connie Berg defrauded the ESOP Trust by submitting a false self-certification under the WOSB (that was ultimately accepted by an SBA contracting officer) in violation of Section 3.3(h) of the purchase agreement.  The Bergs' Motion to Dismiss Counts 25 and 28 based on these arguments is denied.

Finally, in the context of alleged violations of Section 3.3(h) of the purchase agreement, the Bergs also argue that Debtor's small business status was not a "License or Permit."  They also maintain that set-aside contracts based on Debtor's small business status do not fall within the scope of "License or Permit" of Section 3.3(h). Ahlgren offers no response to this argument, and the Court finds Ahlgrens' allegations regarding Debtor's small business status insufficient to allege a violation of section 3.3(h) of the purchase agreement.

To the extent Ahlgren alleges a violation of Section 3.3(h) of the purchase agreement based on Connie Berg's allegedly false certification regarding Debtor's eligibility for set-aside contracts based solely on Debtor's small business status, this claim is dismissed.

**2.      The Bergs claim that any purported misrepresentation is not actionable because Ahlgren alleges that Debtor knew, and the ESOP Trustee should have known, of the purportedly misrepresented and omitted information.**

The Bergs claim that Ahlgren's breach of fiduciary duty, fraud and securities fraud claims should be dismissed, as a matter of law, because the "means of knowledge" regarding the Bergs' conduct was "open and at hand" and no effort was made to prevent Debtor or the ESOP Trustee from using the information.  Doc. 50 at 37-49 (citing Shappirio v. Goldberg, 192 U.S. 232, 241-42 (1904)).[2]  They cite Shappirio v. Goldberg and several other cases for the general proposition that if all parties have access to the same information, claims regarding fraudulent misrepresentations or breach of fiduciary duty are not actionable.  Doc. 50 at 37-38.[3]

"A corporation is an artificial person that acts through its agents." Erickson v. Brown, 2008 ND 57, ¶ 17, 747 N.W.2d 34.  Under section 3-03-01 of the North Dakota Century Code, an agent represents a principal "for all purposes within the scope of the

---

[2] In Shappirio v. Goldberg, the Court opined: "When the means of knowledge are open and at hand, or furnished to the purchaser or his agent, and no effort is made to prevent the party from using them, and especially where the purchaser undertakes examination for himself, he will not be heard to say that he has been deceived to his injury to the misrepresentations of the vendor."  192 U.S. at 241-42.

[3] Most of the cases the Bergs cite are securities fraud cases. Under Rule 10b-5, an element of a securities fraud claim is reliance. DoubleLine Cap. LP v. Odebrecht Fin., Ltd., 323 F. Supp. 3d 393, 434 (S.D.N.Y. 2018) ("To state a claim under Section 10(b) and Rule 10b-5 for fraudulent misrepresentations, a plaintiff must allege . . . (4) reliance upon the misrepresentation or omission.").

Fiduciary duty claims do not include reliance as an element. See Meyer v. Maus, 2001 ND 87, ¶ 14, 626 N.W.2d 281 (listing the elements for breach of fiduciary duty claim as (1) a fiduciary relationship, (2) a duty, (3) a breach of that duty and (4) damage to the plaintiff proximately caused by that breach).

agent's actual or ostensible authority, and all the rights and liabilities which would accrue to the agent from the transactions within such limit, if they had been entered into on the agent's own account, accrue to the principal." N.D.C.C. § 3-03-01. Even fraud and deceit may be imputed from an agent to the principal under North Dakota agency law. Am. Bank Ctr. v. Wiest, 2010 ND 251, ¶ 16, 793 N.W.2d 172.

Similar principles hold true under corporate law. "Generally, the knowledge of the board of directors, officers, or agents of a corporation is imputed to the corporation." Id. at ¶ 15. There are exceptions to this general rule. The knowledge of an officer or director is not imputed to the corporation "in the case of a fraud on the corporation committed by or with the consent of the officer or director." N.D.C.C. § 10-19.1-01.2(7). The "adverse interest exception" is also recognized under North Dakota law. Wiest, 2010 ND 251, ¶ 20, 793 N.W.2d 172. The Restatement of Agency, which the North Dakota Supreme Court found to be in harmony with North Dakota law, provides:

> "For purposes of determining a principal's legal relations with a third party, notice of a fact that an agent knows or has reason to know is not imputed to the principal if the agent acts adversely to the principal in a transaction or matter, *intending to act solely for the agent's own purposes or those of another person.* Nevertheless, notice is imputed
>
> > (a) when necessary to protect the rights of a third party who dealt with the principal in good faith; or
> > (b) when the principal has ratified or knowingly retained a benefit from the agent's action.
>
> A third party who deals with a principal through an agent, knowing or having reason to know that the agent acts adversely to the principal, does not deal in good faith for this purpose."

Id. (emphasis in original) (quoting Restatement (Third) of Agency § 5.04 (2006)). These principles serve as guidance for the following arguments asserted by the Bergs.

> i.  **The Bergs argue any alleged misrepresentation in
> Section 5.3(c) of the Initial Loan Agreement is not
> actionable because Ahlgren alleges that Paredes knew
> the purportedly misrepresented and omitted
> information.**

Ahlgren claims that Connie Berg misrepresented that she did not violate any law,
regulation, judgment or order under section 5.3 of the Initial Loan Agreement.  The
Bergs argue that Connie Berg's representations that she did not violate any law,
regulation, judgment or order, are not actionable because Ahlgren also alleges that
Paredes should have known the ESOP transaction was a prohibited transaction under
ERISA.

In paragraphs 141 through 163 of the Amended Complaint, Ahlgren alleges the
Bergs concealed their fraud from Paredes and the ESOP Trust.  The paragraphs that
reference Paredes's knowledge or include allegations that Paredes should have known
the price the ESOP paid for Debtor's equity was inflated were specifically excluded in
Counts 25 and 28.  For the reasons stated on the record at the April 2, 2025, hearing on
Paredes's Motion to Dismiss, which counsel for the Bergs attended and referenced in
oral argument on April 3, 2025, Ahlgren's careful approach to pleading in the alternative
was sufficient to put the parties on notice of his alternative theories: one theory of
recovery that asserts Paredes knew or should have known the ESOP transaction was a
prohibited transaction under ERISA (which was excluded from Counts 25 and 28
alleging Connie Berg is liable for fraud and the Berg Defendants, DuBois and Grant are
liable for securities fraud) and the other theory asserting that Paredes reasonably relied
on the Bergs' alleged misrepresentations because the Bergs concealed their alleged
fraud from Paredes and the ESOP Trust.  Additionally, Ahlgren alleges facts that

plausibly support his alternative causes of action.   In light of the liberal approach to pleading permitted under the federal rules and case law within the Eighth Circuit allowing alternative, mutually exclusive theories of recovery, the Court finds that Ahlgren's allegations are consistent with the Rule 8 pleading standard.   Setting aside the allegations in paragraphs 164-179 and Count 21, Ahlgren alleges facts in sufficient detail that plausibly allege that Connie Berg violated section 5.3(c) of the Initial Loan Agreement when she failed to disclose that the ESOP transaction was a prohibited transaction under ERISA.   The Bergs' Motion to Dismiss Counts 25 and 28 based on this argument is denied.

> **ii.     The Bergs argue that any alleged omission or misrepresentation concerning revenue from fraudulently obtained Set-Aside Contracts is not actionable because Ahlgren alleges Debtor knew the purportedly misrepresented and omitted information.**
>
> > **a.     The Bergs argue that the CIM disclosed to Debtor (and the ESOP Trustee) the facts that Ahlgren classifies as "fraud."**

In support of their argument that means of knowledge regarding the Bergs' alleged fraud was open and available to Debtor, the Bergs highlight allegations in the Amended Complaint, including:

> 1) a material amount of the Debtor's revenue was attributable to Set-Aside Contracts obtained based on the 8(a) and WOSB Programs and as a small business, and (2) the Debtor was not eligible for the 8(a) or WOSB Programs and was not a small business.

Doc. 50 at 40.  The Bergs argue that these allegations show Debtor knew the underlying facts regarding the Bergs' alleged omission or misrepresentation concerning revenue from fraudulently obtained set-aside contracts and the risk to Debtor resulting from it.  The Bergs also maintain that the Confidential Information Memorandum

prepared by Debtor's independent financial advisor also shows that Debtor knew the purportedly misrepresented and omitted information. According to the Bergs, this knowledge bars Ahlgren's claims that the Bergs allegedly omitted or misrepresented information concerning revenue from fraudulently obtained set-aside contracts.

In pursuing these arguments, the Bergs focus on Ahlgren's claims that the Bergs allegedly defrauded the Small Business Administration—which they argue is central to Ahlgren's allegations. While Debtor could not escape liability to the Small Business Administration resulting from the Bergs' alleged fraud, Ahlgren is not asserting a claim for contract fraud on behalf of the United States. Rather, his allegations regarding the fraudulently obtained set-aside contracts are background information for his claim that the Bergs failed to disclose revenue from these contracts and the risk to Debtor arising from the misrepresentations and fraud in the context of the ESOP transaction. Debtor and the ESOP Trust are the victims of these allegedly fraudulent omissions and breach of fiduciary duties, not the Small Business Administration. Connie Berg's knowledge as a director and officer during some of the ESOP transactions, and DuBois's and Grant's knowledge as officers during some of the transactions are not imputed to Debtor because they allegedly participated in a scheme to defraud Debtor (Connie Berg and Kyle Berg), facilitated and/or consented to the fraud. In allegedly failing to disclose Debtor's ineligibility for the set-aside contracts and the risk to Debtor resulting from this conduct, Connie Berg acted solely for her own purposes. Ahlgren also alleges facts sufficient to plausibly allege that DuBois and Grant actively facilitated or consented to the Bergs' fraud on Debtor and the ESOP by failing to stop the ESOP transaction. Debtor received no benefit according to the allegations in the Amended Complaint. To

the contrary, Debtor lost equity and became liable for repayment of loans, the proceeds of which were disbursed to Connie Berg.

Assuming Ahlgren's allegations are true and construing all reasonable inferences in his favor, Ahlgren plausibly alleges that Connie Berg may be held liable for misrepresentations concerning revenue from fraudulently obtained set-aside contracts. He also alleges facts sufficient to plausibly allege that DuBois's and Grant's knowledge may not be imputed to Debtor and/or the adverse interest exception to the general rule of imputation may apply. Accordingly, the Bergs' Motion to Dismiss Counts 1, 2, 8 and 28 on these grounds is denied.

### b. Ahlgren alleges that Debtor's employees knew of the purported fraud.

In support of their argument that means of knowledge regarding the Bergs' alleged fraud was open and available to Debtor, the Bergs point to allegations that Debtor's employees knew (1) a material amount of Debtor's revenue was attributable to Set-Aside Contracts obtained based on the 8(a) and WOSB Programs and as a small business, and (2) Debtor was not eligible for the 8(a) or WOSB Programs and was not a small business. Doc. 50 at 42-43. In support of this argument, they cite to allegations in the Amended Complaint, including:

- "[I]t was general knowledge within the company" that "the Bergs had been applying for government contracts on the basis of the Debtor being woman owned/controlled." Compl. ¶ 188.

* * *

- "The Debtor's employees, including senior employees and construction project managers, openly recognized that Kyle Berg—not Connie Berg—controlled the Debtor. They considered him to be their immediate or ultimate supervisor, and they looked to him for direction and answers about issues that arose during their employment. The Debtor's

> employees never sought guidance from Connie Berg regarding the Debtor's construction business." Id. ¶ 63.

- "In the rare instances when [Connie Berg] communicated with the Debtor's employees, she used a personal Hotmail email address. By Contrast, Kyle Berg sent thousands of emails from his Debtor-sponsored email address to the Debtor's employees . . . concerning the Debtor's strategic and day-to-day construction work, and he received thousands of e-mails from those individuals . . . regarding the Debtor's business at that same e-mail address." Id. ¶ 64.

- "[M]eeting the Debtor's employees" would have led Paredes to "discover[] that Connie Berg did not actually operate or control the Debtor, that Kyle Berg ran the Debtor's day-to-day communications. . . ." Id. ¶ 177.

Doc. 50 at 43.

Under the Business Corporation Act, "a person knows or has knowledge of a fact if the person has actual knowledge." N.D.C.C. § 10-19.1-01.2(1). Actual knowledge is a question of fact. See generally Burr v. Kulas, 1997 ND 98, ¶ 11, 564 N.W.2d 631 ("Questions such as knowledge, intent, negligence, and state of mind are generally questions of fact."); Krout v. Goemmer, 583 F.3d 557, 567 (8th Cir. 2009) ("The showing of actual knowledge is a 'question of fact[.]'").

Ahlgren argues that Debtor's regular employees had no reason to be aware of program eligibility requirements, whether Debtor qualified, what the Bergs represented to the government, or what the Bergs represented during the ESOP transaction. He maintains that the employees "were innocent victims of the Bergs' fraud" and had no "meaningful" involvement in the scheme. See Doc. 11 at ¶ 229; Doc. 11-1 at 103 ("None of [Debtor's current] employees had a meaningful role in the criminal conduct[.]"). Ahlgren's allegations raise questions of fact regarding the extent of the employees' knowledge regarding the Bergs' allegedly fraudulent contract eligibility. Granting all

reasonable inferences in favor of Ahlgren, these allegations are sufficient to allege a plausible claim that Debtor's employees did not have actual knowledge of the Bergs' alleged fraud.

The Bergs also highlight the Confidential Information Memorandum ("CIM") prepared by Debtor's financial advisor and agent, Lazear Capital, in support of its argument that Debtor's agents knew about the fraud and this knowledge should be imputed to Debtor. Construing all reasonable inferences in favor of Ahlgren, the allegations do not show that Lazear Capital had "actual knowledge" of the Bergs' fraud that would be imputable to Debtor. See N.D.C.C. § 10-19.1-01.2(1).

For the reasons stated on the record at the April 3, 2025, hearing and for those highlighted above, the Bergs' Motion to Dismiss Counts 1, 2, 8 and 28 on these grounds is denied.

> ### iii. The Bergs argue that any alleged misrepresentation in the purchase agreement is not actionable because Ahlgren alleges that the ESOP Trustee should have known the purportedly misrepresented and omitted information.

The Bergs acknowledge that Ahlgren alleges that misrepresentations and omissions in the purchase agreement fraudulently induced the ESOP Trust to enter the ESOP transaction. They argue that these allegations are not actionable because Ahlgren also alleges that Paredes should have known the representations were false if he had conducted standard due diligence.

In paragraphs 141 through 163, Ahlgren alleges the Bergs concealed their alleged fraud from Paredes and the ESOP Trust. The paragraphs in the Amended Complaint that reference Paredes's knowledge or include allegations that Paredes should have known the price the ESOP paid for Debtor's equity was inflated were

31

specifically excluded in Counts 25 and 28.  For the reasons stated on the record at the

April 2, 2025, hearing on Paredes's Motion to Dismiss, which counsel for the Bergs

attended and referenced in oral argument on April 3, 2025, Ahlgren's careful approach

to pleading in the alternative was sufficient to put the parties on notice of his alternative

theories:  one theory of recovery that asserts Paredes knew or should have known the

ESOP transaction was a prohibited transaction under ERISA (which was excluded from

Counts 25 and 28 alleging Connie Berg is liable for fraud and the Berg Defendants,

DuBois and Grant are liable for securities fraud) and the other theory asserting that

Paredes reasonably relied on the Bergs' alleged misrepresentations because the Bergs

concealed their alleged fraud from Paredes and the ESOP Trust.  Additionally, Ahlgren

alleges facts that plausibly support his alternative causes of action.  In light of the liberal

approach to pleading permitted under the federal rules and case law within the Eighth

Circuit allowing alternative, mutually exclusive theories of recovery, the Court finds that

Ahlgren's allegations are consistent with the Rule 8 pleading standard.  Setting aside

the allegations in paragraphs 164-179 and Count 21, Ahlgren alleges facts in sufficient

detail that plausibly allege that Connie Berg violated sections 3.2(g), 3.3(g)(i), 3.3(g)(ii),

3.3(g)(iii) (except as noted above), 3.3(g)(v), 3.3(h), 3.3(j), 3.3(m) and 3.3(o) of the

purchase agreement when she failed to disclose that the ESOP transaction was a

prohibited transaction under ERISA.  The Bergs' Motion to Dismiss Counts 25 and 28

based on this argument is denied.

> **3.    The Bergs argue that the fiduciary duty and fraud claims must be
> dismissed because Ahlgren alleges contradictory facts in support of
> those claims.**

The Bergs argue that the Court should dismiss Counts 1, 2, 8, 25 and 28

because Ahlgren's factual allegations are inconsistent and contradictory.  In paragraphs

141 through 163, Ahlgren alleges the Bergs concealed their alleged fraud from Paredes

and the ESOP Trust.  The paragraphs in the Amended Complaint that reference

Paredes's knowledge or include allegations that Paredes should have known the price

the ESOP paid for Debtor's equity was inflated were specifically excluded in Counts 25

and 28.  For the reasons stated on the record at the April 2, 2025, hearing on Paredes's

Motion to Dismiss, which counsel for the Bergs attended and referenced in oral

argument on April 3, 2025, Ahlgren's careful approach to pleading in the alternative was

sufficient to put the parties on notice of his alternative theories: one theory of recovery

that asserts Paredes knew or should have known the ESOP transaction was a

prohibited transaction under ERISA (which was excluded from Counts 25 and 28

alleging Connie Berg is liable for fraud and the Berg Defendants, DuBois and Grant are

liable for securities fraud) and the other theory asserting that Paredes reasonably relied

on the Bergs' alleged misrepresentations because the Bergs concealed their alleged

fraud from Paredes and the ESOP Trust.  Additionally, Ahlgren alleges facts that

plausibly support his alternative causes of action.  In light of the liberal approach to

pleading permitted under the federal rules and case law within the Eighth Circuit

allowing alternative, mutually exclusive theories of recovery, the Court finds that

Ahlgren's allegations are consistent with the Rule 8 pleading standard.  Setting aside

the allegations in paragraphs 164-179 and Count 21, Ahlgren alleges facts in sufficient

detail that plausibly allege the violations included in Counts 1, 2, 8, 25 and 28.  The

Bergs' Motion to Dismiss Counts 1, 2, 8, 25 and 28 based on this argument is denied.

4.     **The Bergs argue that the allegations that Connie Berg's misrepresentations in the purchase agreement defrauded the ESOP Trust are not pled with particularity.**

The Bergs list two arguments that they maintain justify dismissal of Counts 25 and 28: (1) Ahlgren did not "identify a single Set-Aside Contract that the Debtor fraudulently obtained," and (2) Ahlgren failed to allege the representations about Licenses or Permits, compliance with applicable laws and material contracts fraudulently induced the ESOP Trust because Ahlgren did not identify what was obtained by the purported fraud. Doc. 50 at 52. The pleading standards do not require Ahlgren to identify one or more specific set-aside contracts because he alleges that they were all fraudulent. See Doc. 11 at ¶¶ 27, 44-54, 99-103, 152-59, 228. These allegations are sufficient to identify the contracts at issue under Counts 25 and 28.

The Amended Complaint also alleges with sufficient particularity what Connie Berg "obtained" from her false representations: $9,014,246 in cash when the ESOP transaction closed and $9,542,602.39 in cash post-closing. Id. at ¶¶ 138, 213-17, 466. According to the allegations in the Amended Complaint, if Connie Berg had truthfully disclosed to Paredes the information required in sections 3.3(h), 3.3(j), 3.3(m), and 3.3(o) of the ESOP purchase agreement, the transaction would not have closed, and Connie Berg would not have received the payments. Id. at ¶ 162.

Additionally, the Amended Complaint identifies the "applicable laws" Debtor allegedly violated: 8(a) and WOSB eligibility laws and set-aside contract eligibility laws. See id. at ¶¶ 27-43, 156-57. These allegations are sufficient to allege a plausible claim that Connie Berg's misrepresentations in the purchase agreement defrauded the ESOP

Trust. The Bergs' Motion to Dismiss Counts 25 and 28 based on this argument is denied.

> **5.     The Bergs argue that allegations that the Bergs committed securities fraud by employing a scheme to defraud Debtor and the ESOP Trust are not pled with sufficient particularity.**

Section 10-04-15(2)(a) does not define "scheme to defraud." N.D.C.C. § 10-04-15(2)(a). But in other contexts, the North Dakota Supreme Court has defined "scheme" to mean "a design or plan formed to accomplish some purpose." See Dewey v. Lutz, 462 N.W.2d 435, 441 (N.D. 1990). Here, the Amended Complaint specifically and plausibly alleges that the Bergs designed and formed a multi-year plan to fraudulently inflate Debtor's value and then enrich themselves.

Ahlgren alleges that, from 2008 to 2020, the Bergs participated in a design or plan to defraud the federal government, which artificially inflated Debtor's value. Doc. 11 at ¶¶ 44-66, 99-103, 228. Ahlgren also alleges that as part of this scheme, in 2019 and 2020, the Bergs formed the ESOP and sold Connie Berg's 100% equity interest, netting over $18.5 million in cash from the transaction, plus another $6.27 million in cash via an equity distribution. Id. at ¶¶ 104-40, 213-16. Additionally, Ahlgren alleges that the Bergs affirmatively concealed Debtor's fraudulent revenue and associated liabilities during the transaction through false representations and material omissions. Id. at ¶¶ 141-63. Ahlgren claims that, by failing to disclose this information, the Bergs received substantially more than adequate consideration for Debtor's stock before the government uncovered their unlawful behavior. Id. at ¶¶ 99-103, 141-42, 229, 486-88. These allegations are sufficiently particular to allege a plausible claim that the Bergs

participated in a scheme to defraud Debtor and the ESOP Trust.  The Bergs' Motion to
Dismiss Count 28 based on this argument is denied.

### 6.    The Bergs argue that Debtor cannot recover damages for purported breach of the purchase agreement, which limits the available remedy to indemnification.

In Count 6, Ahlgren seeks damages for Connie Berg's breach of section 3.2(g) of
the purchase agreement.  Debtor, the ESOP Trust, and Connie Berg are the parties to
the purchase agreement.  Article 6 titled "Indemnification" specifies that "the Parties
shall indemnify each other as provided in this Article 6."  Doc. 51-2 at 32.  Section 6.6
provides: "Except for fraud, the provisions of Article 6 shall be the sole and exclusive
remedy for breaches of representations, warranties and covenants contained in this
Agreement."  Id. at 34.

Ahlgren alleges Connie Berg breached section 3.2(g) of the purchase agreement
by making false representations to Debtor.  He concedes that Article 6 of the purchase
agreement provides that Article 6 is the sole remedy for breaches of the agreement and
that Article 6 "is **completely silent** on the Debtor's remedies against Ms. Berg for
representation breaches."  Doc. 67 at 39 (emphasis in original).  Instead, Article 6 only
requires Connie Berg to indemnify the ESOP (§ 6.1) and Debtor to indemnify Connie
Berg (§ 6.2). It does not include a provision requiring Connie Berg to indemnify Debtor
or provide Debtor with any other remedy against Connie Berg.

Ahlgren argues that if Article 6 is Debtor's exclusive remedy for Connie Berg's
breach of section 3.2(g), it would mean Debtor has no remedy against her. Ahlgren
asserts this would be an absurd result rendering section 3.2(g) meaningless.
Consequently, he argues that the only reasonable construction of Article 6 is that it does

not govern Debtor's remedies against Connie Berg for breach of section 3.2(g). He further asserts that, if the parties wanted to limit Debtor's remedies against Connie Berg to indemnification or anything else, Article 6 could have done so, but it does not. Ahlgren claims that Debtor is free to pursue breach of contract and seek damages against Connie Berg.

Under North Dakota law, the parties retain the freedom to contract.  See Markwed Excavating, Inc. v. City of Mandan, 2010 ND 220, ¶ 16, 791 N.W.2d 22. Section 3.2(g) is not rendered meaningless because the representations and warranties about Debtor's financial information were critical to the ESOP.  More importantly, the purchase agreement expressly and unambiguously provides that the provisions of Article 6 are the sole and exclusive remedy for breaches. Parties to a contract may modify, limit or exclude remedies.  Ahlgren does not argue any exclusions, limitations or exceptions to the general principle that parties to a contract may limit or exclude remedies, including unconscionability.

Accordingly, Count 6 is dismissed because Article 6 of the purchase agreement does not provide a remedy for Debtor in the event of a breach by Connie Berg (and if it did, the remedy would be limited to indemnification and exclude damages as alleged in Count 6).

### C.   The Bergs argue that North Dakota has not yet recognized a tort for "aiding and abetting."

The Bergs argue that Ahlgren fails to state a claim for relief against Kyle Berg in Counts 3 and 26 because North Dakota has not recognized aiding and abetting as an independent tort.  Ahlgren concedes and the Court agrees that North Dakota has not yet decided whether to recognize a tort cause of action for aiding and abetting.  Rather

37

than postponing the disposition of this matter to certify a question to the North Dakota

Supreme Court, the Court elects to grant Ahlgren's request to amend his Amended

Complaint to add a cause of action alleging that one or more defendants "acted in

concert."

In the event Ahlgren elects to pursue his aiding and abetting cause of action in

addition to or in lieu of a claim alleging that one or more defendants "acted in concert,"

the Court finds that it is unable to conclude, as a matter of law, that Ahlgren does not

allege a plausible cause of action.

Accordingly, the Bergs' Motion to Dismiss for failure to state an aiding and

abetting claim under North Dakota law is denied.  See Mims v. Matrix Tr. Co. (In re

Vantage Benefits Adm'rs, Inc.), 2021 WL 1815065, at *20 (Bankr. N.D. Tex. May 5,

2021) ("Given that the Texas Supreme Court has yet to decide whether aiding and

abetting is a recognized cause of action, this court is unable to conclude as a matter of

law that the Trustee is unable to bring a cause of action or has not met his burden

pleading under Texas law.").

**D.    The Bergs argue that Ahlgren's ERISA claims fail to state a claim under Federal Rule 12(b)(6).**

**1.    The Bergs argue that they could not breach a fiduciary duty owed to the ESOP Trust because they were not fiduciaries for the ESOP transaction.**

In Count 22, Ahlgren alleges the Bergs breached fiduciary duties owed to the

ESOP Trust under ERISA by allowing the ESOP transaction to close.  Doc. 11 at ¶ 439.

Essentially, Ahlgren asserts two theories: (1) the Bergs breached their duty to monitor

the trustee they appointed, and (2) the Bergs breached a fiduciary duty by

"orchestrating" the ESOP transaction. Id. at ¶¶ 436, 438.

Under ERISA:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

"A fiduciary within the meaning of ERISA must be someone acting in the capacity of manager, administrator, or financial adviser to a 'plan.'" Pegram v. Herdrich, 530 U S. 211, 222 (2000). "'[O]nly when fulfilling certain defined functions, including the exercise of discretionary authority or control over plan management or administration,' does a person become a fiduciary under [§ 1002(21)(A)]." Lockheed Corp. v. Spink, 517 U.S. 882, 890 (1996) (quoting Siskind v. Sperry Ret. Program, Unisys, 47 F.3d 498, 505 (2d Cir. 1995)).

As an initial matter, it is arguably premature to rule on fiduciary status at this early stage of the proceedings.  Courts within the Eighth Circuit have held that fiduciary status is a mixed question of law and fact:

> Jump specifically alleges that Northern Tier was a fiduciary under ERISA and acting within its fiduciary capacity when it misled him as to the terms of the Northern Tier Plan. (1st Consol. Compl. ¶¶ 71–72.) Jump further alleges that he relied to his detriment on Northern Tier's misstatements by accepting employment with Northern Tier, and relinquishing his right to subsidized health care benefits under the Speedway Plan. (Id. ¶¶ 71–74.) As this Court has observed, it would be "'premature to determine a defendant's fiduciary status at the motion to dismiss stage of the proceedings,' because a determination of fiduciary status based on function is a 'mixed question of law and fact.'" In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig., 312 F.Supp.2d 1165, 1181 (D.Minn.2004) (Doty, J.) (quoting In re Elec. Data Sys., 305 F.Supp.2d 658, 665 (E.D.Tex.2004)). Moreover, "'fiduciary status under ERISA is to be

39

construed liberally, consistent with ERISA's policies and objectives.'" Id. (quoting In re Enron Corp. Sec., Derivative & ERISA Litig., 284 F.Supp.2d 511, 544 (S.D.Tex.2003)). Thus, although the facts as developed through discovery may yield a different result, Jump has adequately pled Northern Tier's fiduciary status under ERISA.

Jump v. Speedway LLC, 23 F. Supp. 3d 1024, 1031 (D. Minn. 2014); see also BH

Servs. Inc. v. FCE Benefit Adm'rs. Inc., 2018 WL 3222512, at *4 (D.S.D. June 28, 2018)

("And whether these factual allegations against Transamerica establish that

Transamerica acted as a fiduciary within the meaning of ERISA's definition is premature

because a determination of fiduciary status based on function is a mixed question of law

and fact." (internal quotations omitted)).

Turning to the merits, the Bergs argue that Ahlgren failed to plead facts

demonstrating the Bergs were fiduciaries "to the extent of" the ESOP transaction.  In

other words, the Bergs claim they do not fall within the definition of "fiduciary" under 29

U.S.C. § 1002(21)(A) as it pertains to the ESOP transaction.

In response to this argument, Ahlgren claims that the Bergs retained the power to

appoint and remove Paredes and, therefore, served as fiduciaries "to the extent of" the

ESOP transactions.  "[T]hose who appoint plan administrators have an ongoing duty

under ERISA to monitor the activities of their appointees." Howell v. Motorola, Inc., 633

F.3d 552, 573 (7th Cir. 2011) (citing Leigh v. Engle, 727 F.2d 113, 134-35 (7th Cir.

1984)); see Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1465 (4th Cir. 1996) ("[T]he

power (through plan amendment) to appoint, retain and remove plan fiduciaries

constitutes 'discretionary authority' over the management or administration of a plan

within the meaning of § 1002(21)(A). . . . [T]his authority carries with it a duty to 'to

monitor appropriately' those subject to removal."); Scalia v. Reliance Tr. Co., 2021 WL

795270, at *30 (D. Minn. Mar. 2, 2021) ("ERISA opinions and the position of the

Department of Labor make clear that the power to appoint and remove plan fiduciaries implies the duty to monitor appointees to ensure that their performance is in compliance with the terms of the plan and statutory standards." (quoting <u>Krueger v. Ameriprise Fin., Inc.</u>, 2012 WL 5873825, at *17 (D. Minn. Nov. 20, 2012))).  "Admittedly, this duty is a narrow one and does not require such persons to review all business decisions" of the appointee, as such "standard would defeat the purpose of having [fiduciaries] appointed to run a benefits plan in the first place." <u>Scalia</u>, 2021 WL 795270 at *22 (alteration in original).  According to the <u>Howell</u> court, the "duty exists so that a plan administrator or sponsor cannot escape liability by passing the buck to another person and then turning a blind eye."  <u>Howell</u>, 633 F.3d at 573.

In the Amended Complaint, Ahlgren sufficiently alleges that the Bergs, as ERISA fiduciaries, breached their duty to monitor Paredes.  The Bergs appointed Paredes to serve as ESOP Trustee. Connie Berg signed Debtor's engagement letter with Paredes and executed a written consent ratifying his appointment as ESOP Trustee.  Doc. 11 at ¶¶ 111, 117, 446.  Kyle Berg, who actually controlled Debtor and who served as  the primary point of contact for all aspects of the ESOP transaction, allegedly orchestrated Paredes's appointment.  <u>Id.</u> at ¶¶ 107, 119-120, 170, 228(e), 437-38, 446-47.  The Bergs, through their control of Debtor and Connie Berg's purported status as sole director and president, retained the power to remove Paredes as ESOP Trustee. Doc. 51-1 at 13 ("The [Debtor] may remove any Trustee . . . .").

Ahlgren also alleges that the Bergs breached their fiduciary duty by "orchestrating" the ESOP transaction.  Fiduciary liability under ERISA arising from a director's alleged orchestration of an improper ESOP transaction is a theory that several

41

courts have recognized.  See Scalia, 2021 WL 795270, at *29; Acosta v. Saakvitne, 355
F. Supp.3d 908, 920-23 (D. Haw. 2019); Keach v. U.S. Tr. Co., 234 F. Supp. 2d 872,
882-83 (C.D. Ill. 2002).  As the Scalia court noted, "ERISA directs courts to look beyond
[fiduciaries'] formal authority with respect to the plan, limited to selection and retention
of administrators, and to consider what real authority they had over plan investments by
virtue of their having appointed [the specific plan administrators]."  Scalia, 2021 WL
795270, at *29 (alteration in original) (quoting Leigh, 727 F.2d at 134 n.33).

In the Amended Complaint, Ahlgren alleges that the Bergs knew the ESOP was
paying substantially more than adequate consideration for Debtor's shares because the
purchase price did not account for Debtor's fraudulent set-aside revenue or undisclosed
liabilities and legal risks stemming from their fraud. Doc. 11 at ¶¶ 99-103, 141-42, 162-
63, 228, 439, 449-51.  Ahlgren also alleges that the Bergs never informed Paredes of
these facts, did not appoint a new trustee who would perform better diligence, and
allowed Paredes to close the transaction at the inflated price.  Id.  He also plausibly
alleges that the Bergs breached their ongoing fiduciary duties under ERISA by
orchestrating an improper ESOP transaction.  See Scalia, 2021 WL 795270, at *31
("Courts have recognized that a fiduciary's failure to provide complete and accurate
information to a valuation firm may constitute a breach of one's fiduciary duties.").  For
these reasons, the Bergs' Motion to Dismiss Count 22 is denied.

> **2.      The Bergs argue that the statute of limitations bars any claim
> that the Bergs are liable for Paredes's breach of fiduciary duty.**

In Count 22 of the Amended Complaint, Ahlgren alleges that the Bergs are liable
to the ESOP Trust because they breached their fiduciary duties owed to the ESOP
Trust by allowing it to enter the ESOP transaction, knowing that (a) Debtor's shares

were substantially overvalued, (b) the ESOP paid more than adequate consideration in the transaction, and (c) the ESOP transaction was a prohibited transaction under ERISA.  Doc. 11 at ¶ 439.  He also alleges that the Bergs failed to adequately monitor Paredes.  Id.

In Count 23, Ahlgren alleges that the Bergs are co-fiduciaries with Paredes and equally liable for Paredes's breaches of his fiduciary duties under ERISA by causing the ESOP Trust to enter a prohibited transaction Id. at ¶¶ 444, 448-53.

In Count 24, Ahlgren alleges, in the alternative, that even if the Bergs were not plan fiduciaries, they are liable under ERISA for knowingly participating in Paredes's breaches of fiduciary duties.  Id. at ¶¶ 457, 460.

Section 1113 of ERISA provides:

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

The Bergs argue that ERISA's three-year statute of limitations under subsection (2) bars Ahlgren's claims because he alleges "Debtor, as the plan administrator, had actual knowledge of the alleged ERISA violation—the prohibited transaction—when the ESOP transaction closed on August 31, 2020 (at the very latest)."  Doc. 50 at 60.  The Bergs assert the three-year statute of limitations expired on August 31, 2023, more than

43

six months before Debtor petitioned for bankruptcy relief, barring Ahlgren's ERISA

claims.

The Supreme Court recently clarified that ERISA section 1113(2) requires actual,

rather than constructive, knowledge. See Intel Corp. Inv. Policy Comm. v. Sulyma, 589

U.S. 178, 184 (2020) ("We granted certiorari to resolve whether the phrase 'actual

knowledge' does in fact mean 'what it says,' and hold that it does." (citations omitted)).

In defining actual knowledge, the Eighth Circuit observed:

> This court has not discussed the actual knowledge component of §
> 1113(2), but we agree with the interpretive principles developed with
> substantial unanimity by our sister circuits. Because the statute requires
> "actual knowledge *of the breach or violation,*" a plaintiff must have "actual
> knowledge of all material facts necessary to understand that some claim
> exists." Gluck v. Unisys Corp., 960 F.2d 1168, 1177 (3d Cir.1992). In most
> cases, "disclosure of a transaction that is not inherently a statutory breach
> of fiduciary duty ... cannot communicate the existence of an underlying
> breach." Fink v. National Sav. & Trust Co., 772 F.2d 951, 957
> (D.C.Cir.1985), quoted in Waller v. Blue Cross of California, 32 F.3d 1337,
> 1341 (9th Cir.1994). Therefore, when a fiduciary's investment decision is
> challenged as a breach of an ERISA duty, the nature of the alleged breach
> is critical to the actual knowledge issue. For example, if the fiduciary made
> an *illegal* investment—in ERISA terminology, engaged in a prohibited
> transaction—knowledge of the transaction would be actual knowledge of
> the breach. But if the fiduciary made an *imprudent* investment, actual
> knowledge of the breach would usually require some knowledge of how the
> fiduciary selected the investment. See Maher v. Strachan Shipping Co., 68
> F.3d 951, 955–56 (5th Cir.1995), and cases cited.

Brown v. Am. Life Holdings, Inc., 190 F.3d 856, 859 (8th Cir. 1999) (emphasis in
original).

Ahlgren maintains that Debtor's knowledge is not imputed to him.  Instead, he

asserts that the three-year limitations period does not begin to run until the person

bringing the lawsuit learns of the breach or violation.  Doc. 67 at 44-45 (quoting Mason

Tenders Dist. Council Pension Fund v. Messera, 958 F. Supp. 869, 882 (S.D.N.Y 1997)

("Actual knowledge is measured from the standpoint of the trustees who commenced

the lawsuit and cannot be attributed to them by the knowledge of prior trustees.") and

citing CB Richard Ellis Inv'rs, L.L.C. v. Sonnenblick, 45 F. App'x 680, 681 (9th Cir. 2002)

(permitting imputation could lead to abuse, such as enabling an "unfaithful fiduciary . . .

to control the starting date of the statute of limitations")).

Courts in other circuits follow the plain language of the statute to hold that a

plaintiff is not imputed with the knowledge of previous trustees:

> In Landwehr, we considered whether the statute of limitations for an
> ERISA claim ran from when the individual plaintiff, rather than the plan,
> became aware of the claim. Citing the "unfairness" that would result from a
> rule that extinguished a plaintiff's claim where the plan became aware of the
> claim—and did nothing—long before the individual plaintiff had notice of it,
> we held that the statute of limitations ran from the time when the individual
> plaintiff had actual knowledge of the claim. Id. at 732. In so holding, we
> expressly declined to treat the "real plaintiff" as the plan. See id. Even
> though money recovered on the ERISA claim would go to the plan, we held
> that the cause of action belonged to the individual plaintiff. Comer's cause
> of action is materially indistinguishable from the EEOC's suit in Waffle
> House, which appears to have overruled the Third Circuit's approach.

Comer v. Micor, Inc., 436 F.3d 1098, 1103 (9th Cir. 2006) (citing Landweher v. DuPree,

72 F.3d 726 (9th Cir. 1995)); see also Sec'y U.S. Dep't of Labor v. Kwasny, 853 F.3d

87, 93 (3d Cir. 2017) ("As the District Court correctly noted, whether or not Firm

employees were aware of violations is legally irrelevant because the plaintiff in this case

is the Secretary of Labor, not the Firm employees."); Taunt v. Coenen (In re Trans-

Indus., Inc.), 538 B.R. 323, 352 (Bankr. E.D. Mich. 2015) ("This Court agrees with the

holdings of, and reasoning in, the cases cited by the Trustee, and other cases reviewed

by the Court, which refuse to impute the knowledge of another person or entity to the

plaintiff bringing a breach of fiduciary suit under ERISA." (citing Mason Tenders, 958 F.

Supp. at 882)).

The Court declines to impute Debtor's knowledge to Ahlgren and, instead, adopts the reasoning of the courts that look to the plain language of 29 U.S.C. § 1113 in determining whether "the plaintiff" had actual knowledge of the breach or violation.  In the Amended Complaint, Plaintiff Ahlgren alleges he "had no involvement with or knowledge of the Debtor, the ESOP Plan, or the ESOP Trust before his appointment as Trustee," on April 22, 2024.  Doc. 11 at ¶¶ 6, 10. He commenced this action on August 26, 2024, less than five months after his appointment as Trustee, well within the three-year limitation period.  The claims Ahlgren alleges in Counts 22-24 are not time-barred. Accordingly, the Bergs' Motion to Dismiss Counts 22-24 as time barred is denied.

### E.    The Bergs argue that Ahlgren's fraudulent transfer claims fail to state a claim under Federal Rules 9(b) and 12(b)(6).

#### 1.    The Bergs argue that Ahlgren fails to allege facts that give rise to a plausible inference that Debtor entered the ESOP Transaction with actual intent to hinder, delay, or defraud unknown, future creditors.

In Counts 9 and 11-15 of the Amended Complaint, Ahlgren seeks to avoid multiple transfers or obligations Debtor incurred through actual fraud under 11 U.S.C. § 544(b) and N.D.C.C. § 13-02.1-04(1)(a).  The transfers and obligations at issue include:

- $6,272,060 equity distribution Debtor paid to Connie Berg (Count 9);

- $335,000 Debtor transferred to the ESOP Trust as a plan contribution for the fiscal year ending 2019, which the ESOP Trust immediately transferred to Connie Berg as partial payment for her 62,317 shares of Debtor's stock (Count 11);

- $200,000 Debtor transferred to the ESOP Trust as a plan contribution for the fiscal year ending 2020, which the ESOP Trust immediately transferred to Connie Berg as partial payment for her 62,317 shares of Debtor's stock (Count 12);

- $8,479,246 Debtor loaned to the ESOP Trust which the ESOP Trust immediately transferred to Connie Berg as partial payment for her 62,317 shares of Debtor's stock (Count 13);

- $12,094,000 obligation Debtor incurred under the redemption note in favor of Connie Berg to purchase and redeem 37,683 shares of Debtor's stock (Count 14);

- $10,985,754 obligation Debtor incurred under the seller note in favor of Conie Berg (Count 15).

Doc. 11. at ¶¶ 307, 325, 335, 345, 355-56, 364.

As an initial matter, the Bergs argue that Ahlgren does not allege that "the challenged transfers were made, or obligations were incurred, with the actual intent to hinder, delay or defraud creditors that held claims as of the time of the transfers and obligations because no such creditors exist." Doc. 50 at 62. The Bergs claim that Ahlgren's fraudulent transfer allegations refer only to future creditors whose claims arose years after the ESOP transaction. Id. This assertion is incorrect. In each of the Counts in which Ahlgren pleads a fraudulent transfer cause of action based on actual fraud, he lists no fewer than five creditors "with allowed unsecured claims that arose before or after" the fraudulent transfer. See Doc. 11 at ¶¶ 313, 332, 342, 352, 361, 370. To the extent the Bergs dispute that the creditors listed in these paragraphs held unsecured claims at the time alleged, this raises a question of fact which is not appropriate to resolve at this stage of the litigation.

Even if Ahlgren listed only future creditors affected by the fraudulent transfer in his Amended Complaint, these allegations would not serve as a basis to dismiss his claims. The North Dakota fraudulent transfer statute is titled: "**Transfer or obligation voidable as to present or future creditor**," clearly permitting a plaintiff to include future creditors in fraudulent transfer allegations. See N.D.C.C. § 13-02.1-04 (emphasis in original); see generally In re Petters Co., 494 B.R. 413, 433–34 (Bankr. D. Minn. 2013) (finding that, under Minnesota law, a debtor's actual intent to defraud either

47

present or future creditors could render a transfer fraudulent as to both classes); <u>Giove v. Stanko</u>, 977 F.2d 413, 417 (8th Cir. 1992) (affirming district court decision avoiding fraudulent transfers under Nebraska law because transferor "was attempting to shield his assets from current and future creditors").  Accordingly, the Bergs' argument is rejected.

Next, the Bergs argue that Ahlgren alleges a limited number of badges of fraud supporting his fraudulent transfer claim and suggest that several of the badges Ahlgren lists should not be considered.  In other words, the Bergs claim that Ahlgren failed to allege sufficient badges of fraud to plead a plausible claim for actual fraud.

To determine actual intent to hinder, delay or defraud under section 13-02.1-04(1)(a), a court may consider a combination of circumstances, or "badges of fraud." N.D.C.C. § 13-02.1-04(2).  The "badges of fraud" include, "among other factors," whether:

a. The transfer or obligation was to an insider;
b. The debtor retained possession or control of the property transferred after the transfer;
c. The transfer or obligation was disclosed or concealed;
d. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
e. The transfer was of substantially all the debtor's assets;
f. The debtor absconded;
g. The debtor removed or concealed assets;
h. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
i. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
j. The transfer occurred shortly before or shortly after a substantial debt was incurred; and
k. The debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.

<u>Id.</u>  As this Court explained in <u>Doeling v. Doll</u> (<u>In re Doll</u>):

48

> The presence of a single badge is typically not sufficient to establish actual fraudulent intent. Brown v. Third Nat'l Bank (In re Sherman), 67 F.3d 1348, 1354 (8th Cir. 1995). The confluence of several badges, however, creates a presumption of fraudulent intent. Ritchie, 779 F.3d at 861–62; Kelly v. Armstrong, 141 F.3d 799, 802 (8th Cir. 1998); Dantzler v. Zulpo (In re Zulpo), 592 B.R. 231, 247 (Bankr. E.D. Ark. 2018); see also Rademacher v. Rademacher (In re Rademacher), 549 B.R. 889, 894 (Bankr. E.D. Mo. 2016) (noting that the presence of more than one badge of fraud "strongly indicates that the debtor did, in fact, possess the requisite intent").

2025 WL 663290, at *15 (Bankr. D.N.D. Feb. 28, 2025) (analyzing the badges of fraud in a denial of discharge case).

Ahlgren alleges that several badges apply to each of the transfers:

- the transfers were to or for the benefit of insiders, Connie and Kyle Berg;
- the Bergs concealed information regarding Debtor's assets, liabilities and enterprise value;
- Debtor did not receive reasonably equivalent value from Connie Berg for any of the transfers;
- Debtor incurred substantial debt immediately before and after the transfers including the secured debt to Bankers Trust, other seller financing from Connie Berg and the obligations to the ESOP Trust; and
- the transfers left Debtor insolvent, unable to pay its debts when due, and/or with unreasonably small capital.

Doc. 11 at ¶¶ 309, 327, 337, 347, 357, 366.

Although the Bergs acknowledge a factual dispute regarding whether the transfers and obligations were for reasonably equivalent value, they argue that the other four badges identified by Ahlgren are inapplicable.  First, the Bergs claim that Ahlgren's assertion about concealment misses the mark.  The Court agrees.  Ahlgren asserts the Bergs concealed material information regarding Debtor's assets, liabilities, and enterprise value, but this badge of fraud considers whether the transfer was concealed.

The Bergs also assert that two of the badges of fraud identified by Ahlgren (insider status and transfers shortly before significant debt is incurred) are present in nearly all ESOP transactions and do not support an intent to defraud creditors. Doc. 50

49

at 64 (citing U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc., 761 F.3d 409, 435 (5th Cir. 2014)).  In U.S. Bank Nat'l Ass'n, the Fifth Circuit discussed the district court's conclusion that the only two badges of fraud—transfer to an insider and transfer shortly before a substantial debt was incurred—present in the case could not alone support a finding of fraudulent intent in a spin-off case because they "are a feature of every spin-off transaction that involves debt." 761 F.3d at 435. The court held "that the presence of so few badges, in such a context, is insufficient as a matter of law to support a finding of actual intent to hinder, delay or defraud."  Id.  Notably, the court in U.S. Bank Nat'l Ass'n concluded that the case did not include questions (i.e., badges) about reasonably equivalent value or insolvency, both of which are issue in this case.  The rationale of U.S. Bank Nat'l Ass'n court might be persuasive as to the weight of the facts related to these factors, but it does not support the conclusion that the Court should refuse to consider the factors in this case as a matter of law.  Whether certain badges of fraud are present—and the weight of each of them—are questions of fact.

In analyzing whether Ahlgren's allegations are sufficient to plead intent to defraud, the Court considers insider status and the timing of the transfers in context. Algren alleges that the Bergs selected the ESOP transaction, which he argues made it easier for the Bergs to defraud creditors.  Rather than market the company and find a third-party buyer who would fund the purchase price, the Bergs selected a purchase structure that required Debtor to incur all the debt.  Because the Bergs controlled Debtor, Ahlgren argues they authorized the incurrence of the debt, and they also selected their negotiating counterparty, Paredes, who had no personal financial stake in the transaction other than his flat fee.  Additionally, Ahlgren asserts that the real parties

in interest, Debtor's employees, were not involved in negotiating the transaction. Ahlgren includes facts supporting these inferences in his Amended Complaint.

Construing all reasonable inferences in favor of Ahlgren, the Bergs' insider status, the timing of the transfers, the alleged lack of reasonably equivalent value paid to Debtor, the Bergs' involvement in liquidating Debtor's equity and burdening Debtor with loans for their benefit, and the allegation that the fraudulent transfers left Debtor with unreasonably small capital are sufficient, taken as a whole, to allege an inference of fraud. Accordingly, the Court finds Ahlgren alleges a sufficiently particular and plausible claim that Debtor entered the ESOP transaction with the intent to hinder, delay or defraud creditors under N.D.C.C. § 13-02.1-04(1)(a). The Bergs' Motion to Dismiss Counts 9 and 11-15 is denied.

> **2.    The Bergs argue that the allegations that Debtor's transfers and obligations were constructive fraudulent transactions are not pled with particularity.**

In Counts 10, 16-20 of the Amended Complaint, Ahlgren seeks to avoid the same transfers and obligations listed above because he alleges they are constructively fraudulent under 11 U.S.C. § 544(b) and N.D.C.C. § 13-02.1-04(1)(b). Under N.D.C.C. § 13-02.1-04(1)(b), a transfer or obligation is voidable if the debtor made the transfer or incurred the obligation:

> Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or the debtor intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

N.D.C.C. § 13-02.1-04(1)(b).

In the Amended Complaint, Ahlgren includes details supporting the allegation that the transfers and obligations were made to consummate and fund the ESOP transaction which was based on a materially inflated $31.5 million valuation. Doc. 11 at ¶¶ at 99-142.  He alleges that the value was inflated in several ways, including considering $38 million in fraudulent revenue and $4.7 million in fraudulent net income from contracts for which it was not eligible.  Id. at ¶ 100.  By concealing years of fraud, Ahlgren alleges the Bergs put Debtor at risk for significant consequences including civil and criminal liability, debarment, loss of bonding and reputational damage and inflated its value.  Id. at ¶ 103.  As a result of the risk to Debtor resulting from the alleged fraud, Ahlgren claims Debtor paid materially more for Debtor's stock than it was worth, which he maintains is not reasonably equivalent value.  Construing all reasonable inferences in favor of Ahlgren, the Court finds that he specifically and plausibly alleges why Debtor's stock value was not reasonably equivalent to $31.5 million.

Ahlgren also sufficiently pled that Debtor engaged in the ESOP transactions that left Debtor's remaining assets unreasonably small in relation to the transactions. Specifically, Ahlgren alleges that the $6,272,00 equity distribution to Connie Berg "depleted the Debtor of substantial cash just four days before [Debtor] incurred $11.9 million of secured debt to Banker Trust, millions of dollars of seller financing obligations to Connie Berg, and obligations to the ESOP Trust."  Id. at ¶ 318; see also ¶¶ 246, 375, 385, 395, 405, 415.  He also alleges Debtor could not afford to repay the debt obligations as they became due.  Id. at ¶ 246.  Ahlgren maintains that, after the government enforcement action in 2022, Debtor could not service its inflated debt obligations. Id. at ¶ 246.

Construing all reasonable inferences in favor of Ahlgren, the Court finds Ahlgren alleges a sufficiently particular and plausible claim that Debtor made transfers and incurred obligations for less than reasonably equivalent value rendering it unable to pay debts as they came due under N.D.C.C. § 13-02.1-04(1)(b).  The Bergs' Motion to Dismiss Counts 10 and 16-20 is denied.

## V.    Conclusion

For the reasons stated above, the Berg Defendants' Motion to Dismiss [Doc. 54] is granted in part and denied in part.

Dated:  May 1, 2025.

Shon Hastings, Judge
United States Bankruptcy Court