## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| IN RE: | **Case No. 24-30167** |
| **Pro-Mark Services, Inc.,** | **Chapter 7** |
| Debtor. | **Chief Judge Shon Hastings** |
| **Erik A. Ahlgren, Trustee,**<br><br>Plaintiff,<br><br>-v-<br><br>**Connie Berg, et al.,**<br><br>Defendants. | **Adv. Case No. 24-07014** |

## DEFENDANT MIGUEL PAREDES' ANSWER & AFFIRMATIVE DEFENSES TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AND COUNTERCLAIM

For his Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint ("SAC"), Defendant Miguel Paredes states as follows:

## ANSWER

The numbered paragraphs below correspond to the paragraph numbers contained in the SAC. The headings and capitalized terms used match those chosen by Plaintiff – they are included for ease of reference and do not constitute an admission. Defendant generally denies all allegations in the SAC not expressly admitted, including all allegations contained in the headings, footnotes, and prayer for relief.

## BACKGROUND

## PRELIMINARY STATEMENT

1.      The Debtor was a federal contractor that did construction and general contracting work for the federal government. In August 2020, the Debtor's then-owners, Defendants Connie

Berg and Kyle Berg, sold their equity interest in the company to its employees via an "ESOP" transaction. Defendant Miguel Paredes acted as ESOP trustee in closing the transaction on behalf of the Debtor's employees. From the transaction, the Bergs received over $25 million of cash.

**ANSWER: Defendant admits that Debtor's business included general contracting work with the United States government and that at one point shares in the Debtor were sold to an ESOP. Defendant admits that he was, for a time, the ESOP trustee. Defendant lacks knowledge or information sufficient to form a belief about the amount of cash the Bergs ultimately received. Defendant denies all other allegations in paragraph 1.**

2.      The ESOP transaction, however, was based on lies and misrepresentations. For over a decade, the Bergs had illegally enrolled the Debtor in government contracting programs intended for socially or economically disadvantaged individuals, women, and small businesses, including the WOSB and 8(a) programs. Based on the Bergs' fraud, the Debtor received millions of dollars in revenue and profits from federal contracts for which it did not qualify. Had the Bergs disclosed their scheme during the ESOP negotiations, the transaction never would have closed— let alone at a $31.5 million valuation. Had Defendant Miguel Paredes performed reasonable due diligence as ESOP trustee, he would have discovered the fraud before consummating the ESOP transaction. Instead, the Bergs received a windfall, and the Debtor's creditors and employees were left holding the bag.

**ANSWER: Defendant denies the allegations in paragraph 2 addressing his due diligence, denies any wrongdoing or violation of ERISA and incorporates by reference the Plaintiff's admission in SAC paragraphs 458 and 472 that he and through him, the ESOP, reasonably relied on the information Defendant received from the Bergs, the Debtor, the Debtor's prepetition employees and Debtor's agents and advisors. Defendant lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 2.**

3.      Just two years after the ESOP transaction closed, the Bergs' scheme unraveled when the federal government raided the Debtor's headquarters. Ultimately, in October 2023, the Debtor and the federal government entered into a non-prosecution agreement, under which the

Debtor admitted that the Bergs' misconduct violated federal law and agreed to pay a $949,000 criminal fine. But unfortunately for the Debtor, its creditors, and employees, the damage was already done. The Debtor's business was in a tailspin, it could not obtain bonding for its construction projects, and it lost its small business certification. In April 2024, the Debtor filed for chapter 7 bankruptcy protection, reporting just $4.4 million in assets and more than $33.3 million in liabilities.

**ANSWER: Defendant admits that Exhibit D to the SAC indicates that the company entered into a prepetition non-prosecution agreement with the government and agreed to pay a $949,000 fine. Defendant admits that the Debtor ultimately filed for chapter 7 bankruptcy protection. Defendant lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 3.**

4.      Plaintiff Erik A. Ahlgren, in his capacities as chapter 7 trustee and administrator and trustee of the Debtor's ESOP plan, now brings this action to hold the Bergs, Mr. Paredes, and others accountable for their breaches of fiduciary duties, misconduct, and fraud.

**ANSWER: Defendant denies that Plaintiff has standing under ERISA section 502 or otherwise to bring claims against Defendant in Count 21 or otherwise under ERISA. Defendant denies any wrongdoing, including any violation of ERISA, breaches of fiduciary duty or other misconduct. Defendant admits that Plaintiff is the chapter 7 trustee. Defendant denies any other allegations in paragraph 4.**

## JURISDICTION AND VENUE

5.      On April 22, 2024 ("Petition Date"), Pro-Mark Services, Inc. ("Debtor") filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the District of North Dakota ("Bankruptcy Court"). The Debtor's bankruptcy case is pending and administered as case number is 24-30167.

**ANSWER: Defendant admits the allegations in paragraph 5.**

6.      On the Petition Date, Plaintiff Erik A. Ahlgren was appointed chapter 7 trustee of the Debtor's bankruptcy estate.

**ANSWER: Defendant admits the allegations in paragraph 6.**

7.    The Debtor established and is the sponsor of the Pro-Mark Services, Inc. Employee Stock Ownership Plan ("ESOP Plan") and the Pro-Mark Services, Inc. Employee Stock Ownership Trust ("ESOP Trust"). As of the Petition Date, the Debtor or an entity designated by the Debtor served as administrator of the ESOP Plan. Accordingly, as of the Petition Date, and pursuant to 11 U.S.C. § 704(a)(11), the Trustee is the administrator of the ESOP Plan (in such capacity, the "Administrator").

**ANSWER: Defendant admits that the Debtor established the ESOP and ESOP Trust. Defendant refers to the Plan and Trust documents for their exclusive terms, and denies any allegation that is inconsistent with the complete terms of those documents. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 7 regarding the ESOP sponsor and plan administrator as of the Petition Date, and the application of 11 U.S.C. section 704(a)(11).**

8.    Plaintiff Erik A. Ahlgren, in his capacities as Trustee and Administrator, appointed himself to serve as trustee of the ESOP Trust (in such capacity, "ESOP Trustee").

**ANSWER: Although Plaintiff purports to act in the alleged capacities, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 8.**

9.    As Administrator and ESOP Trustee, Plaintiff Erik A. Ahlgren has discretionary authority and/or control over the management of the ESOP Plan and ESOP Trust and over the management and disposition of the ESOP Plan's assets and ESOP Trust's assets.

**ANSWER: Although Plaintiff purports to act in the alleged capacities, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 9.**

10.    Plaintiff Erik A. Ahlgren had no involvement with or knowledge of the Debtor, the ESOP Plan, or the ESOP Trust before his appointment as Trustee.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 10.**

11.    This action arises in or relates to a case under title 11 of the United States Code.

**ANSWER:  Defendant admits the allegations in paragraph 11.**

12.    This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a), 157(b), and 1334, and 29 U.S.C. § 1132(e).

**ANSWER: Defendant admit the Court has subject matter jurisdiction under 28 U.S.C. sections 157(a) and 1334, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 12.**

13.    This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (H), and (O).

**ANSWER:  Defendant denies the allegations in paragraph 13.**

14.    This matter involves a federal question under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 et seq., as it concerns administration of conduct relating to the ESOP Plan and ESOP Trust.

**ANSWER:  Defendant admits that Plaintiff purports to bring this action under ERISA, but denies any other allegations in paragraph 14.**

15.    Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1409.

**ANSWER:  Defendant admits venue is proper in this judicial district.**

16.    This Complaint is filed under Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7001(1), (2), (7), (8), and (9).

**ANSWER:  Defendant admits that Plaintiff purports to have filed the SAC as an adversary proceeding, but denies the other allegations in paragraph 16.**

17.    Pursuant to Bankruptcy Rule 7008, Plaintiff consents to entry of final orders and judgments by the Bankruptcy Court.

**ANSWER: Defendant admits that Plaintiff consents to the entry of final orders and judgments by the Bankruptcy Court.**

## PARTIES

18.    The Debtor is a North Dakota corporation. At all relevant times, its principal place of business was in Fargo, North Dakota.

**ANSWER:  Defendant admits the Debtor is a North Dakota corporation. Defendant lacks knowledge or information sufficient to form a belief about the remaining allegations in Paragraph 18.**

19.    Plaintiff Erik A. Ahlgren is Trustee of the Debtor's bankruptcy estate, Administrator of the ESOP Plan, and ESOP Trustee of the ESOP Trust.

**ANSWER:  Defendant admits that Plaintiff is the bankruptcy trustee. Defendant lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 19.**

20.    Defendants Connie and Kyle Berg are natural persons domiciled in North Dakota. On information and belief, they are married. At all relevant times before August 31, 2020, Connie Berg was the Debtor's sole owner, director, and President, and Kyle Berg was an employee and/or consultant of the Debtor. However, as detailed below, Kyle Berg was the Debtor's true control person, and Connie Berg had only a nominal role in the business to facilitate the fraudulent representations to SBA and the federal government.

**ANSWER:  Defendant admits the Bergs are "natural persons". Defendant lacks knowledge or information sufficient to form a belief about the other allegations in the first three sentences of paragraph 20. Defendant denies the remaining allegations in paragraph 20.**

21.    Defendant Connie Berg Revocable Living Trust (the "<u>Connie Berg Trust</u>") is a revocable living trust for which Connie Berg is the grantor/settlor. At all relevant times, the Connie Berg Trust was and is a resident of North Dakota and owns real property in North Dakota. On information and belief, Connie Berg routinely transfers assets to the Connie Berg Trust, including assets sought to be recovered in this adversary proceeding.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 21.**

22.    Defendant Kyle R. Berg Revocable Living Trust (the "Kyle Berg Trust") is a revocable living trust for which Kyle Berg is the grantor/settlor. At all relevant times, the Kyle Berg Trust was and is a resident of North Dakota and owns real property in North Dakota. On

information and belief, Kyle Berg routinely transfers assets to the Connie Berg Trust, including

assets sought to be recovered in this adversary proceeding.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 22.**

23.     Defendant Chad DuBois is a natural person domiciled in North Dakota. From about

June 2018 to July 2019, Mr. DuBois was the Debtor's controller. In July 2019, he was promoted

to Vice President. On August 31, 2020, he was promoted to become the Debtor's President and

was appointed as a director on the Debtor's board.

**ANSWER:  Defendant admits Dubois is a "natural person", and the allegations concerning his corporate roles with the Debtor. Defendant lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 23.**

24.     Mandy Grant was previously a defendant in this action. By orders dated May 7,

2025 (Bankr. No. 24, 30167, Doc. 215; Adv. No. 24-07014, Doc. 114), the Bankruptcy Court

approved a settlement between Plaintiff and Ms. Grant, and Ms. Grant was dismissed as a

defendant.

**ANSWER:  Defendant admits the allegations in paragraph 24.**

25.     Defendant Miguel Paredes is a natural person domiciled in California. As detailed

below, Mr. Paredes served as transactional trustee for the ESOP Trust. As transactional trustee,

Mr. Paredes was responsible for all due diligence relating to the ESOP transaction and closing the

transaction on behalf of the ESOP participants.

**ANSWER:  Defendant admits that he is a natural person domiciled in California and that he was appointed to serve as the ESOP trustee. Defendant denies he was responsible for "all" due diligence relating to the ESOP transaction. Further responding, Defendant refers to, among other things, his prepetition engagement agreement with the Debtor, and to ERISA for his duties as ESOP trustee. Defendant denies all allegations in paragraph 25 inconsistent with those and other sources of his duties.**

## FACTS

26.　Kyle and Connie Berg incorporated the Debtor in 2001. Connie Berg owned 51% of the company and Kyle Berg owned 49%. The Debtor's original purpose was specialty retail sales. Eventually, however, the Debtor became a construction and general contracting company that did work for the federal government.

**ANSWER:  Defendant admits that Kyle and Connie Berg founded the Debtor in 2001, and that while he was ESOP Trustee, Debtor performed construction and general contracting work for the federal government. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 26.**

27.　Starting in or around 2007, the Bergs caused the Debtor to fraudulently obtain federal government set-aside contracts ("Set-Aside Contracts") to which it was not entitled. Specifically, the Bergs caused the Debtor to wrongfully enroll in the 8(a) Business Development program ("8(a) Program") and the Women Owned Small Business program ("WOSB Program"), each administered by the U.S. Small Business Administration ("SBA"). The Bergs also caused the Debtor to wrongfully certify itself as a "small business."

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 27.**

**A.　Set-Aside Contracts for 8(A) Program Enrollees**

28.　SBA's 8(a) Program aims to award at least 5% of all federal contracting dollars to small businesses owned and controlled by socially and economically disadvantaged individuals. Businesses enrolled in the 8(a) Program receive various benefits, including the right to bid for Set-Aside Contracts specially "set aside" only for 8(a) Program participants.

**ANSWER: Defendant refers to the federal statutes and regulations that establish and address SBA's 8(a) Program for their exclusive terms, and denies any allegation in paragraph 28 that is inconsistent with those statutes and regulations. Defendant lacks knowledge or information sufficient to form a belief about the truth of any other allegations in paragraph 28.**

29.     Participation in the 8(a) Program is limited to nine (9) years, with the goal that participants can thrive in a competitive bidding environment upon graduation from the program.

**ANSWER: Defendant refers to the federal statutes and regulations that establish and address SBA's 8(a) Program for their exclusive terms, and denies any allegation in paragraph 29 that is inconsistent with those statutes and regulations. Defendant lacks knowledge or information sufficient to form a belief about the truth of any other allegations in paragraph 29.**

30.     To qualify for the 8(a) Program, the applicant business must satisfy three criteria. First, the business must be at least 51% owned by one or more socially and economically disadvantaged persons. Second, the business must be controlled only by socially and economically disadvantaged persons. Third, the business must qualify as a "small" business.

**ANSWER: Defendant refers to the federal statutes and regulations that establish and address SBA's 8(a) Program for their exclusive terms, and denies any allegation in paragraph 30 that is inconsistent with those statutes and regulations. Defendant lacks knowledge or information sufficient to form a belief about the truth of any other allegations in paragraph 30.**

31.     Factors relevant to determining whether an applicant is controlled only by socially and economically disadvantaged persons include whether the purported control person (a) has the requisite management capabilities to, and actually does, manage the business, (b) works full-time for the business during normal business hours, and (c) holds the highest officer position in the company. While a non-disadvantaged individual or entity may be involved in the business, they may not exercise control over the business.

**ANSWER: Defendant refers to the federal statutes and regulations that establish and address SBA's 8(a) Program for their exclusive terms, and denies any allegation in paragraph 31 that is inconsistent with those statutes and regulations. Defendant lacks knowledge or information sufficient to form a belief about the truth of any other allegations in paragraph 31.**

32.     To determine whether the applicant business is a "small" business, SBA measures the company's revenue together with the revenue of any affiliated businesses. The revenue threshold varies by industry.

**ANSWER: Defendant refers to the federal statutes and regulations that establish and address SBA's 8(a) Program for their exclusive terms, and denies any allegation in paragraph 32 that is inconsistent with those statutes and regulations. Defendant lacks knowledge or information sufficient to form a belief about the truth of any other allegations in paragraph 32.**

33.     To enroll in the 8(a) Program, the applicant business must certify to SBA in writing that it is owned and controlled by socially and economically disadvantaged persons and provide documentary evidence for each criterion. SBA's application form cautions that an applicant is subject to criminal prosecution if the applicant provides false information or makes misrepresentations.

**ANSWER: Defendant refers to the federal statutes and regulations that establish and address SBA's 8(a) Program for their exclusive terms, and denies any allegation in paragraph 33 that is inconsistent with those statutes and regulations. Defendant lacks knowledge or information sufficient to form a belief about the truth of any other allegations in paragraph 33.**

34.     Each year, the business must recertify with SBA to maintain eligibility in the 8(a) Program. Additionally, each time the business applies for Set-Aside Contract via the 8(a) Program, it typically must certify that it continues to meet the eligibility criteria.

**ANSWER: Defendant refers to the federal statutes and regulations that establish and address SBA's 8(a) Program for their exclusive terms, and denies any allegation in paragraph 34 that is inconsistent with those statutes and regulations. Defendant lacks knowledge or information sufficient to form a belief about the truth of any other allegations in paragraph 34.**

**B.      Set-Aside Contracts for WOSB Program Enrollees**

35.     Similar to the 8(a) Program, SBA's WOSB Program aims to award at least 5% of all federal contracting dollars to women-owned small businesses. Businesses enrolled in the

WOSB Program receive various preferences and benefits from the federal government, including the right to bid for Set-Aside Contracts allocated only for WOSB Program participants.

**ANSWER: Defendant refers to the federal statutes and regulations that establish and address SBA's WOSB Program for their exclusive terms, and denies any allegation in paragraph 35 that is inconsistent with those statutes and regulations. Defendant lacks knowledge or information sufficient to form a belief about the truth of any other allegations in paragraph 35.**

36.     To qualify for the WOSB Program, the applicant business must satisfy three criteria. First, the business must be at least 51% owned by one or more women. Second, the business must be controlled and managed on a full-time basis only by women. Third, the business must qualify as a "small" business.

**ANSWER: Defendant refers to the federal statutes and regulations that establish and address SBA's WOSB Program for their exclusive terms, and denies any allegation in paragraph 36 that is inconsistent with those statutes and regulations. Defendant lacks knowledge or information sufficient to form a belief about the truth of any other allegations in paragraph 36.**

37.     Factors relevant to determining whether an applicant business is controlled only by women include whether (a) a woman holds the highest position in the business, (b) such woman has the management experience necessary to run the business, and (c) such woman is engaged in outside employment that prevents her from controlling the day-to-day business operations. While men or other entities may be involved in managing the business, they may not control the business.

**ANSWER: Defendant refers to the federal statutes and regulations that establish and address SBA's WOSB Program for their exclusive terms, and denies any allegation in paragraph 37 that is inconsistent with those statutes and regulations. Defendant lacks knowledge or information sufficient to form a belief about the truth of any other allegations in paragraph 37.**

38.     As with the 8(a) Program, to determine whether the applicant business is a "small" business, SBA measures the company's revenue together with the revenue of any affiliated businesses. The revenue threshold varies by industry.

**ANSWER: Defendant refers to the federal statutes and regulations that establish and address SBA's WOSB Program for their exclusive terms, and denies any allegation in paragraph 38 that is inconsistent with those statutes and regulations. Defendant lacks knowledge or information sufficient to form a belief about the truth of any other allegations in paragraph 38.**

39.     To enroll in the WOSB Program, the applicant business must certify to SBA in writing that it is owned and controlled only by women and provide documentary evidence for each criterion. SBA's application form cautions that an applicant is subject to criminal prosecution if the applicant provides false information or makes misrepresentations.

**ANSWER: Defendant refers to the federal statutes and regulations that establish and address SBA's WOSB Program for their exclusive terms, and denies any allegation in paragraph 39 that is inconsistent with those statutes and regulations. Defendant lacks knowledge or information sufficient to form a belief about the truth of any other allegations in paragraph 39.**

40.     Until October 2020, applicants could self-certify that they were eligible for the WOSB Program by submitting annual representations to SBA under penalty of perjury. Additionally, each time the business applies for a Set-Aside Contract via the WOSB Program, it typically must certify that it continues to meet eligibility criteria.

**ANSWER: Defendant refers to the federal statutes and regulations that establish and address SBA's WOSB Program for their exclusive terms, and denies any allegation in paragraph 40 that is inconsistent with those statutes and regulations. Defendant lacks knowledge or information sufficient to form a belief about the truth of any other allegations in paragraph 40.**

C.     **Set-Aside Contracts for Small Businesses**

41.     As part of its statutory policies and mandates, SBA seeks to award at least 23% of federal contracting dollars to small businesses. To accomplish this goal, the government "sets aside" certain Set-Aside Contracts only for small businesses.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 41.**

42.    Whether the applicant business is a "small business" depends on its revenue, viewed in conjunction with the revenue of any affiliated businesses. The revenue threshold various by industry.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 42.**

43.    Each time a business applies for a Set-Aside Contract designated for small businesses, it must certify that it, in fact, qualifies as a small business.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 43.**

**D.    The Bergs Fraudulently Enroll the Debtor in the 8(a) and WOSB Programs**

44.    Understanding the substantial benefits of the 8(a) Program, the WOSB Program, and small business program, the Bergs devised a scheme to fraudulently divert funds from government Set-Aside Contracts to themselves. On August 1, 2007, Kyle Berg gifted his 49% interest in the Debtor to Connie Berg, making her sole owner on paper. Notwithstanding the transfer of his equity interest, Kyle Berg maintained his control over the Debtor as a full-time "employee" and/or "consultant."

**ANSWER:  Defendant admits that in 2007, Kyle Berg sold shares in the Debtor to Connie Berg. Responding further, Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 44.**

45.    Just over four months later, on December 6, 2007, Connie Berg applied for SBA's 8(a) Program on behalf of the Debtor. In her application to SBA, Connie Berg claimed social disadvantage based on gender bias. SBA accepted the Debtor into the 8(a) Program on May 23, 2008.

**ANSWER:  Defendant admits that Debtor obtained 8(a) status in 2008, and graduated from the 8(a) program in 2017. Defendant admits that Plaintiff refers to alleged statements made in an 8(a) Program application, and denies any allegation inconsistent with those statements. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the**

remaining allegations in Paragraph 45. **Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing.**

46.     In the Debtor's initial 8(a) Program application to SBA, Connie Berg certified that (a) she was responsible for all control, management, and business decisions of the Debtor, (b) she was the Debtor's only director, officer, management member, key employee, or owner, and (c) she worked 40 hours per week for the Debtor. She also certified to SBA that the Debtor earned 100% of its revenue from selling "specialty retail clothing." Connie Berg knew that these certifications were false.

**ANSWER: Defendant refers to the statements set forth in the referenced 8(a) Program application, and denies any allegation inconsistent with those statements. Defendant lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 46.**

47.     From 2010 to 2016, the Debtor annually recertified to SBA that it continued to qualify for the 8(a) Program. Connie Berg signed the recertification forms on the Debtor's behalf and certified to SBA that (a) she was the Debtor's president and 100% owner, (b) she dedicated 40 hours per week to managing the company, (c) no one other than an economically and socially disadvantaged individual holds the highest position in the business, (d) the Debtor had no affiliations with any other businesses, and (e) the Debtor continued to be eligible for the 8(a) Program. Connie Berg knew that these certifications were false.

**ANSWER: Defendant refers to the statements set forth in the referenced 8(a) Program recertification forms, and denies any allegation inconsistent with those statements. Defendant lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 47.**

48.     From 2015 to 2020, Connie Berg also enrolled the Debtor in SBA's WOSB Program. Each year, Connie Berg, on behalf of the Debtor, self-certified to SBA that (a) she managed and controlled the Debtor's daily business operation, (b) she controlled the Debtors long term decision making and the day-to-day management and administration of the business

14

operations, (c) she held the highest officer position in the business and managed the Debtor on a full-time basis, (d) she had the managerial experience of the extent and complexity needed to run the Debtor, and (e) the Debtor continued to be eligible for the WOSB Program. Connie Berg knew that these certifications were false.

**ANSWER:  Defendant refers to the statements set forth in the referenced WOSB Program documents, and denies any allegation inconsistent with those statements. Defendant lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 48.**

49.    Based on its enrollment in the 8(a) and WOSB Programs, and its claimed status as a "small business," the Debtor was awarded thousands of Set-Asides Contracts from the VA, Army, Air Force, and other federal agencies, totaling millions of dollars. All, or the vast majority of such Set-Asides Contracts were for construction-related services, not specialty retail clothes as certified in the original 8(a) Program application.

**ANSWER: Defendant admits Debtor was awarded contracts under the 8(a) and WOSB programs, but lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 49.**

50.     In reality, the Debtor did not qualify for the 8(a) and WOSB Programs, and, in many cases, was not a small business. Connie Berg's representations to SBA were knowingly false. Defendant Kyle Berg knew of her misrepresentations, assisted her in making them, and profited from them.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 50.**

51.    Contrary to Connie Berg's initial, annual, and other certifications to SBA, she did not control the Debtor and its business. To the contrary, Kyle Berg—a non-disadvantaged white man—controlled the Debtor and its business.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 51.**

52.    The Bergs installed Connie as the Debtor's 100% owner, sole director, and president in name only so the Debtor could fraudulently obtain preferential access to Set-Aside Contracts. Her involvement in the business was nothing more than a pretext to facilitate the Bergs' fraudulent scheme.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 52.**

53.    Additionally, the Debtor did not qualify as a "small business" due to its extensive (and undisclosed) affiliations, improper joint ventures, and improper mentor-protégé relationships with various other entities owned or controlled by Kyle Berg, including, without limitation, Fed Serve, LLC, KRB Holdings, LLC, Marlin Creek Holdings, LLC, MDM Construction, LLC, OK2 Construction, LLC, Razor Consulting Solutions, Inc., Tunheim Holdings, LLC, Tunheim Construction, PMR Services, LLC, PMR II Services, BAD Investments, Thermal Air, and N40GB, LLC.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 53.**

54.    The Bergs perpetrated the government contract fraud to enrich themselves. By fraudulently enrolling in the 8(a) and WOSB Programs, and representing that it was a small business, the Debtor received thousands of Set-Aside Contracts to which it was not entitled, ensuring a steady stream of revenue and profits to the Bergs individually.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 54.**

**E.    Connie Berg Had No Relevant Experience in Government Contracting or the Construction Business**

55.    As noted above, one factor for determining control for both the 8(a) and WOSB Programs is whether the purported control person has the relevant managerial experience to operate the business—in this case a construction business.

**ANSWER: Defendant refers to the federal statutes and regulations that establish and address the referenced SBA programs for their exclusive terms, and denies any allegation in paragraph 55 that is inconsistent with those statutes and regulations.**

56.    From 2009 through 2020, the Debtor was awarded thousands of Set-Aside Contracts for construction-related services, generating millions of dollars for the Debtor. As the purported control person, however, Connie Berg had no relevant training or experience in construction.

**ANSWER: Defendant admits Debtor was awarded Set-Aside-Contracts by the SBA, but lacks knowledge or information sufficient to form a belief as to the exact number of contracts and the associated revenue for each one dating back to 2009, and denies the remaining allegations in paragraph 56.**

57.    Connie Berg's professional background was in screen printing fabric and clothing. Her work experience included employment at Logotech, a company engaged in making custom promotional products, and Creative Imprintz, a branded apparel business. The Debtor never (or rarely) received any Set-Aside Contracts relating to clothing, screen printing, or retail sales— Connie Berg's only areas of experience. Further, by 2014, less than 1% of the Debtor's annual revenue was attributable to clothing and related retail sales, even though the Debtor's original application for the 8(a) Program stated that the Debtor's primary business was specialty retail sales.

**ANSWER: Defendant admits the allegations in the first sentence, and that generally the government contracts awarded to Debtor were mostly related to construction. Defendant refers to the statements set forth in the referenced 8(a) Program application, and denies any allegation inconsistent with those statements. Defendant lacks knowledge or information sufficient to form a belief as to the exact percentage of Debtor's annual revenue attributable to "clothing and related retail sales" in 2014, six years before the ESOP transaction, and denies all other allegations in paragraph 57.**

58.     Kyle Berg, by contrast, had extensive experience in general contracting, government contracting, and construction. As of 2007, Kyle Berg had at least 14 years of construction experience, including employment as a vice president and project manager at CS DuBois Construction, a construction company that itself graduated from the 8(a) program in July 2007.

**ANSWER: Defendant admits that Kyle Berg was an experienced businessman with a history of participation in government contracting who had worked at CS DuBois Construction. Defendant lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 58.**

59.     Kyle Berg's experience, contrasted with Connie Berg's lack of relevant experience, demonstrates that Kyle Berg was the Debtor's de facto owner and control person.

**ANSWER:  Defendant denies the allegations in paragraph 59.**

F.     **Kyle Berg, a Non-Disadvantaged White Male, Controlled the Debtor**

60.     Connie Berg also was not meaningfully involved in the day-to-day or long-term management of the Debtor.

**ANSWER:  Defendant denies the allegations in paragraph 60.**

61.     Contrary to her repeated certifications to the government, Connie Berg (a) did not work 40 hours per week for the Debtor; (b) had no involvement in selecting, estimating, or structuring the bids that the Debtor submitted for federal construction contracts, including Set-Aside Contracts; (c) did not engage in substantive discussions with the government contracting officers responsible for awarding, evaluating, or overseeing bids; (d) had no involvement in hiring, directing, or managing the Debtor's employees and subcontractors; (e) had no involvement in managing the Debtor's business operations, and (f) had no involvement in the Debtor's financials.

**ANSWER:  Defendant denies the allegations in paragraph 61.**

62.     Contrary to Connie Berg's repeated certifications to the government, Kyle Berg managed and controlled all aspects of the Debtor's business. From 2008 through August 2020, Kyle Berg determined which government contracts the Debtor would bid, structured the bids, estimated the costs for the bids, directed employees how to complete proposals, and communicated with government contracting officers. He also made all decisions for the Debtor about the Debtor's employees, including salaries, raises, and bonuses. He directed the activity and work of the Debtor's employees, subcontractors, and suppliers. And he managed the Debtor's financial reporting and controlled all finances of the Debtor, including company bank accounts, loans, and payroll.

**ANSWER:  Defendant denies the allegations in paragraph 62.**

63.     The Debtor's employees, including senior employees and construction project managers, openly recognized that Kyle Berg—not Connie Berg—controlled the Debtor. They considered him to be their immediate or ultimate supervisor, and they looked to him for direction and answers about issues that arose during their employment. The Debtor's employees never sought guidance from Connie Berg regarding the Debtor's construction business.

**ANSWER:  Defendant denies the allegations in paragraph 63.**

64.     Connie Berg did not even have an email address with the Debtor, despite being the Debtor's purported sole director, president, and sole owner. In the rare instances when she communicated with the Debtor's employees, she used a personal Hotmail email address. By contrast, Kyle Berg sent thousands of e-mails from his Debtor-sponsored e-mail address to the Debtor's employees, subcontractors, suppliers, and others concerning the Debtor's strategic and day-to-day construction work, and he received thousands of e-mails from those individuals and entities regarding the Debtor's business at that same e-mail address.

**ANSWER:  Defendant admits that Connie Berg occasionally received business emails at the address "berg_connie@hotmail.com", but lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 64.**

65.    Connie Berg knew, but never disclosed Kyle Berg's control over the Debtor to SBA. Instead, she, working with and at the direction of Kyle Berg, repeatedly misrepresented to SBA that she ran or supervised all aspects of the Debtor's business operations.

**ANSWER:  Defendant denies the allegations in paragraph 65.**

66.    Had the Bergs disclosed to SBA that Kyle Berg controlled the Debtor and its business relating to the government contracts, the Debtor would not have qualified for the 8(a) and WOSB Programs and would not have been awarded any Set-Aside Contracts.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 66.**

**G.    Kyle Berg's Efforts to Defraud the SBA Extend Well-Beyond the Debtor**

67.    Kyle Berg has a long history, pattern, and practice of defrauding the federal government to obtain Set-Aside Contracts and other benefits. He orchestrated and controlled multiple entities contracting with the government, proving that the Bergs' actions, representations, and certifications with the Debtor were knowing and intentional.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 68.**

**i.    Razor Consulting Solutions, Inc.**

68.    Razor Consulting Solutions, Inc. ("Razor") is majority owned by Carla Schwartzenberger. Beginning in around 2016, Razor registered to be part of SBA's 8(a) and WOSB Programs based on Schwartzenberger's status as a Native American woman. Razor then applied for and was awarded numerous Set-Aside Contracts, generating millions of dollars in revenue and profit.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing. Defendant admits that Razor was at times awarded various government contracts, including under 8(a). Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 68.**

69.     However, Razor did not qualify for the 8(a) or WOSB Programs because, like Connie Berg with the Debtor, Schwartzenberger did not "control" Razor, as required by SBA eligibility regulations. Razor and Schwartzenberger were fronts for Kyle Berg and his affiliated entities (including the Debtor) to fraudulently obtain and profit from Set-Aside Contracts to which they were not entitled and evade small business thresholds.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69.**

70.     Nearly all of Razor's Set-Aside Contracts were in construction, maintenance, and housekeeping—areas in which Schwartzenberger had no experience. Instead, her experience was in software design, development, and implementation, and general bookkeeping.

**ANSWER: Defendant admits that Razor was awarded government contracts related to construction, but lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 70.**

71.     Further, like Connie Berg at the Debtor, Schwartzenberger was not meaningfully involved in the day-to-day management of Razor's Set-Aside Contracts, as required by SBA regulations. Schwartzenberger's role in Razor's government contracts was limited to submitting paperwork where her signature was required and some tracking of accounts payable and receivable.

**ANSWER: Defendant denies the allegations in sentence one of Paragraph 71, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 71.**

72.     Kyle Berg and his affiliated entities (including the Debtor) controlled Razor's day-to-day operations, staffing, and strategy. Tyler Kellen, an employee of the Debtor, wrote in an

October 2019 email that the Debtor "basically do[es] all the work for Razor when it comes to the construction side" of the business and Razor does not "know how to do anything." Kellen also wrote that he spent at least 25 hours per week on Razor projects, while Razor employees "spend 0" hours per week on construction projects. Mandy Grant, another employee of the Debtor, wrote in response: "**We all work for [the Debtor]** so if we all work together we can help each other out and hopefully ease workloads for everyone . . . ." (emphasis added).

**ANSWER: Defendant refers to the writings referenced in paragraph 72 and denies any allegations inconsistent with the statements in those writings. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 72.**

73.    Had Razor disclosed Kyle Berg's involvement in the business, Schwartzenberger's lack of involvement and control, and Razor's dependence on Kyle Berg and the Debtor, Razor would not have been eligible for SBA's 8(a) and WOSB Programs. Additionally, Razor's revenue would have been combined with the Debtor's revenue for purposes of calculating whether each entity was in fact a small business. Schwartzenberger and the Bergs conspired to conceal this information from SBA.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 73 as to what would have occurred under the referenced hypothetical scenario. Defendant lacks knowledge or information sufficient to form a belief about the remaining allegations in paragraph 73.**

74.    For each Set-Aside Contract awarded to Razor for construction, maintenance, and housekeeping, Razor shared a substantial portion of its profits with the Debtor. For example, in June 2019, November 2019, January 2020, April 2020, and July 2020, Schwartzenberger emailed quarterly reports to Kyle Berg and Chad DuBois listing profits and losses for Set-Aside Contracts that the government awarded solely to Razor. The statements show that Razor allocated 49% of the net income on the contracts to the Debtor. Razor did not disclose this profit-sharing

arrangement to SBA because it would have raised serious questions regarding the Debtor's and

Razor's qualifications for Set-Aside Contracts and profits paid to the Bergs.

**ANSWER: Defendant admits that Debtor received some revenue based on its Mentor-Protégé and JV agreements with Razor, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 74.**

    **ii.    Fed Serve, LLC**

75.    Fed Serve, LLC ("Fed Serve") is a general contracting company that is 100%

owned by Kyle Berg.

**ANSWER: Defendant admits the allegations in paragraph 75 as of the time he served as ESOP trustee.**

76.    In or around 2019, Kyle Berg registered Fed Serve as a "HUBZone small business"

with SBA. Fed Serve then used its HUBZone status to apply for and receive various Set-Aside

Contracts generating millions of dollars in revenues and profits. However, Fed Serve did not meet

HUBZone's eligibility requirements. Instead, Kyle Berg used Fed Serve as a front to fraudulently

obtain and profit from Set-Aside Contracts to which he and his entities (including the Debtor) were

not entitled.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first three sentences of paragraph 76. Defendant denies the remaining allegations in paragraph 76.**

77.    Similar to the 8(a) and WOSB Programs, the HUBZone program objective is to

award 3% of federal contracting dollars to small businesses located in designated historically

underutilized business areas (*i.e.*, HUBZones). To be eligible for the HUBZone program, the small

business's principal office must be located in a designated HUBZone (although the business may

have other offices) and at least 35% of the employees must reside in a HUBZone (although it is

not necessary that the employees reside in the same HUBZone as the principal office).

Additionally, the business must qualify as a "small" business. As with the 8(a) and WOSB

Programs, SBA measures the applicant's revenue, as well as the revenue of any affiliated businesses, to determine if the applicant is a "small" business.

**ANSWER: Defendant refers to the federal statutes and regulations that establish and address the HUBZone SBA program for their exclusive terms, and denies any allegation in paragraph 77 that is inconsistent with those statutes and regulations. Defendant lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 77.**

78.    In Fed Serve's verification to SBA, Kyle Berg listed 3950 25th St., N Fargo, North Dakota, 58102 as its principal office, which falls within a HUBZone. However, Kyle Berg's verification was false. That location was not actually Fed Serve's principal office. Fed Serve leased the location from one of Kyle Berg's other affiliated entities, Tunheim Holdings, LLC ("Tunheim Holdings"), to create an office in a HUBZone for purposes of procuring government contracts.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 78.**

79.    Further, Kyle Berg falsely represented to SBA that at least 35% of Fed Serve's employees reside in a HUBZone. Fed Serve's sole employee from May 2018 through August 2020 was Anthony Luchsinger, who resided in a HUBZone. However, Luchsinger actually worked for Tunheim Holdings. Fed Serve "employed" Luchsinger as a pretext to satisfy the HUBZone criteria. Although Fed Serve paid Luchsinger a salary, Tunheim Holdings reimbursed Fed Serve for some or all his salary.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 79.**

80.    When Luchsinger moved out of the HUBZone in September 2019, Kyle Berg immediately took him off Fed Serve's payroll—demonstrating that Luchsinger was never really a legitimate Fed Serve employee. In an email sent on September 2, 2020, Kyle Berg wrote:

"[Luchsinger] will be moving out of the HUBZone so this will be his last week he will receive a check."

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 80.**

81.    In Luchsinger's place, Kyle Berg hired his college-enrolled son (Blake Berg), his minor son (Evan Berg), and Chad DuBois's college-enrolled daughter (Paige DuBois) as Fed Serve's new employees. These hirings were a pretext to falsely maintain Fed Serve's eligibility as a HUBZone business.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 81.**

82.    Kyle Berg also failed to disclose to SBA Fed Serve's extensive ties to his other business and affiliates, including the Debtor and MDM Construction, LLC. Fed Serve and the Debtor were marketed as interchangeable companies, they shared resources and employees, and the Debtor provided financial support to Fed Serve. Additionally, Fed Serve and MDM shared profits, and MDM provided financial support to Fed Serve.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 82.**

83.    But for Kyle Berg's misrepresentations, Fed Serve would not have qualified for the HUBZone program. Additionally, Fed Serve's revenue would have been combined with the Debtor's revenue for purposes of calculating whether each entity was a small business.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 83.**

### iii.    MDM Construction, LLC

84.    MDM Construction, LLC ("MDM") is owned by Daniel Walters, a service-disabled military veteran. Walters formed MDM in 2009.

25

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 84.**

85. Kyle Berg and Dan Walters had a long history of working together. Before forming MDM, Walters worked as a construction project manager for the Debtor and for Estoria Homes, an entity owned by Kyle Berg. Additionally, Walters and Kyle Berg worked together at CS DuBois, a construction company owned by Chad DuBois.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 85.**

86. Kyle Berg and Walters also had various business ventures together. For example, they co-owned Marlin Creek Holdings LLC, N40GB LLC, 1776 Investments, and TRM.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the allegations in paragraph 86.**

87. Beginning in 2011, Walter registered MDM as a service-disabled veteran-owned small business ("SDVOSB") with the VA's Center for Verification and Evaluation ("CVE"). MDM then used its SDVOSB status to apply for and receive various Set-Aside Contracts, totaling millions of dollars.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 87.**

88. However, MDM did not meet the eligibility requirements for the SDVOSB program. As with other entities owned or controlled by Kyle Berg, Walters and Kyle Berg used MDM as a front to fraudulently obtain and profit from Set-Aside Contracts to which they were not entitled.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 88.**

89. Similar to the 8(a), WOSB, and HUBZone programs, the SDVOSB program's goal is to award about 3% of all federal contracting dollars to SDVOSBs each year. To be eligible for

the SDVOSB program, the applicant business must be least 51% unconditionally and directly owned by a veteran with a service disability recognized by the VA or the Department of Defense.

**ANSWER: Defendant refers to the federal statutes and regulations that establish and address the SDVOSB program for their exclusive terms, and denies any allegation in paragraph 89 that is inconsistent with those statutes and regulations. Defendant lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 89.**

90.     Additionally, the business must be controlled by only service-disabled veterans. To demonstrate control, the service-disabled veteran must be the highest paid person, hold the highest officer position, and receive at least 51% of profit from the business. Factors relevant to evaluating whether an applicant is controlled by a non-service-disable veteran individual or ineligible entity include (a) whether the applicant shares employees or resources with another company, (b) whether another entity or individual provides critical financing or bonding support to the applicant, and (c) whether the extent of business relationships with another company leaves the applicant so dependent on the other company that it cannot exercise independent business judgment.

**ANSWER: Defendant refers to the federal statutes and regulations that establish and address the SDVOSB program for their exclusive terms, and denies any allegation in paragraph 90 that is inconsistent with those statutes and regulations. Defendant lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 90.**

91.     MDM did not qualify for the SDVOSB program because Walters did not actually "control" the business, as required by the eligibility regulations. Instead, MDM was dependent on and controlled by non-veterans, including Kyle Berg and entities controlled by Kyle Berg, including the Debtor. By way of example, MDM, the Debtor, Fed Serve, and other entities affiliated with Kyle Berg routinely bid projects together and shared profits, assets, employees, facilities, and business records. As with the Debtor, Kyle Berg is the linchpin in the fraudulent scheme.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 91.**

92.    Kyle Berg and Dan Walters also had a "handshake" agreement that their various entities, including the Debtor, MDM, and OK2, would not bid against each other for projects.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 92.**

93.    But for Kyle Berg's misrepresentations to the government, MDM would not have qualified for the SDVOSB program. Additionally, MDM's revenue would have been combined with the Debtor's revenue for purposes of calculating whether each entity was a small business.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 93 as to what would have occurred under the referenced hypothetical scenario. Defendant lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 93.**

### iv.    OK2 Construction, LLC

94.    OK2 Construction, LLC ("OK2") is 51% owned by Kenneth Kurk, a service-disabled military veteran. OK2 was formed in 2015 by Kruk, Kyle Berg, and Osvaldo Cruz. Kyle Berg and Cruz are not service-disabled military veterans, and each purportedly owned 24.5% of the company.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 94.**

95.    Beginning in 2016, OK2 registered as an SDVOSB. OK2 then used its SDVOSB status to apply for and receive various Set-Aside Contracts, totaling millions of dollars. However, OK2 did not meet the eligibility requirements because Kurk did not control the business. Instead, Kurk, Kyle Berg, and Cruz used OK2 as a front to fraudulently obtain preferential status and profit from Set-Aside Contracts to which they were not entitled.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 95.**

96.     OK2 was in fact dependent on and controlled by Cruz, Kyle Berg, and Berg's affiliated entities, including the Debtor. Although Kurk was the "majority owner" on paper, Kyle Berg and Cruz provided OK2 with repeated cash injections to support OK2's ability to obtain bonding for the construction projects it bid. Kurk did not provide equivalent amounts of capital. Kyle Berg and Cruz also sought and/or received profits from OK2 in excess of their ownership stakes, notwithstanding the SDVOSB requirement that Kurk receive at least 51% of the profits.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 96.**

97.     As with all his affiliated entities, Kyle Berg also exercised de facto control over OK2. Kurk routinely deferred to Kyle Berg on business decisions. In addition, OK2 routinely relied on the Debtor's employees (including Chad DuBois) to perform necessary office work and bid for government contracts, instead of using personnel employed by OK2. And OK2 routinely used the Debtor's facilities, as well as facilities connected to Kyle Berg and Cruz.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 97.**

98.     Kyle Berg, Kurk, and Cruz affirmatively concealed from the federal government that Kurk did not control OK2. Had they made truthful disclosures to the federal government, OK2 would not have qualified for the SDVOSB program. Additionally, OK2's revenue would have been combined with the Debtor's revenue for purposes of calculating whether each business was a small business.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 98 as to what would have occurred under the referenced hypothetical scenario. Defendant lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 98.**

**H.      The Bergs' Fraud Inflates the Debtor's Value and Places the Company at Risk**

99.     The Bergs' fraudulent scheme materially inflated the Debtor's value relating to the subsequent ESOP transaction.

**ANSWER:  Defendant denies the allegations in paragraph 99.**

100.    Millions of dollars of the Debtor's revenue came from Set-Aside Contracts awarded via the 8(a) and the WOSB Programs, and as a result of the Debtor's status as a "small business." For example, from 2017 to 2020, about $38 million of the Debtor's total revenue (approximately 26.5%) and about $4.7 million of its net income derived from the 8(a) and the WOSB Programs. But for the Bergs' fraud, the Debtor would not have been eligible for such contracts and would not have received this revenue and net income.

**ANSWER: Defendant admits that Debtor obtained revenue from government set-aside contracts. Further responding, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 100 as to what would have occurred under the referenced hypothetical scenario, and as to how Plaintiff determined the particular figures in Paragraph 100. Defendant lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 100.**

101.    Additionally, the Debtor received substantial revenue from Kyle Berg's affiliated entities—including, without limitation, Razor, Fed Serve, MDM, and OK2. As detailed above, Kyle Berg used these entities to defraud SBA and obtain preferential Set-Aside Contracts to which the affiliated entities were not entitled. But for Kyle Berg's fraud, the Debtor would not have received revenue from Razor, Fed Serve, MDM, OK2, and others entities. The Bergs' fraudulent conduct inflated the Debtor's revenue and profits, for the sole benefit of the Bergs.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 101, which is unlimited in time, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 101.**

102.    Not only did the Bergs' scheme inflate the Debtor's value for purposes of the ESOP transaction, it also put the Debtor's business at significant and foreseeable risk.

**ANSWER:  Defendant denies the allegations in paragraph 102.**

103.    If the federal government discovered the Bergs' fraud, among other things, (a) government counterparties could seek contractual remedies from the Debtor, including price reductions, terminations, and disgorgement, (b) competitors could protest the Debtor's contract awards, (c) the federal government could suspend or bar the Debtor from bidding on contracts, (d) the Debtor could be subject to criminal and civil liability for violating federal law, (e) bonding companies and lenders could refuse to do business with the Debtor, (f) the Debtor would suffer harm to its business reputation, and (g) the Debtor would likely incur significant legal and other professional fees dealing with all the foregoing. All these consequences are reasonably foreseeable and would significantly impact the Debtor's ability to continue as a going concern after the closing of the ESOP transaction.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 102 as to what would have occurred under the referenced hypothetical scenario. Defendant denies all other allegations in paragraph 102.**

**I.    The Bergs Orchestrate the ESOP Transaction to Fraudulently Enrich Themselves at the Expense of the Debtor's Employees and Creditors**

104.    In or around 2019, the Bergs decided that they wanted to monetize Connie Berg's equity interest in the Debtor. They elected to do so via an ESOP transaction.

**ANSWER:  Defendant admits that the Connie Berg decided to sell shares in the Debtor to an ESOP and eventually pursued such a transaction.**

105.    ESOP stands for employee stock ownership plan. In a typical employee stock option plan transaction, the existing shareholders sell their equity in the company to an ESOP trust in exchange for cash, notes, or a combination of both. The employees, who are the beneficiaries of the ESOP trust, then acquire the shares of the company from the ESOP trust over time, typically financed with a loan from a third-party lender.

**ANSWER:  Defendant admits that in any given time period shareholders sometimes choose to sell their stock to an employee stock ownership plan, an employee benefit plan authorized under ERISA, Department of Labor Regulations, and the Internal Revenue Code, and that sometimes the structure of such transactions generally fit the description set forth in paragraph 105. Defendant denies all other allegations in paragraph 105.**

106.    An ESOP transaction has two basic purposes. First, it enables the existing shareholders to monetize their equity interests in the company—often as a business succession tool. And second, it enables the employees of the company to become its owners and reap the benefits of their hard work.

**ANSWER: Defendant admits that in any given time period and transaction, some shareholders who sell stock to an employee stock ownership plan may have in mind the goals referenced in paragraph 106. Defendant denies all other allegations in paragraph 106.**

107.    On December 26, 2019, Connie Berg, in her capacity as the Debtor's sole director, executed a written consent authorizing the Debtor to form the ESOP Plan and the ESOP Trust. Connie Berg appointed Kyle Berg as the initial trustee of the ESOP Trust.

**ANSWER:  Defendant admits the allegations in paragraph 107.**

108.    The ESOP Plan in this case is governed by a plan document (the "<u>Plan Agreement</u>"), which in the Debtor's case was executed on December 26, 2019. Chad DuBois, the Debtor's vice president, executed the Plan Agreement on behalf of the Debtor. At all relevant times, the Debtor, or someone appointed by the Debtor, has served as administrator of the ESOP Plan.

**ANSWER:  Defendant admits the allegations in paragraph 108 were true as of the time he served as ESOP trustee, but lacks knowledge or information to form a belief as to the truth of what occurred after he was the ESOP trustee.**

109.    The ESOP Trust in this case is governed by a Trust Agreement executed on December 26, 2019 (the "<u>Trust Agreement</u>" and together with the Plan Agreement, the "<u>Plan</u>

Documents"). Chad DuBois, the Debtor's vice president, executed the Trust Agreement on behalf

of the Debtor, and Kyle Berg executed the Trust Agreement in his capacity as ESOP trustee.

**ANSWER: Defendant admits the allegations in paragraph 109 were true as of the time he served as ESOP trustee, but lacks knowledge or information to form a belief as to the truth of what occurred after he was ESOP trustee. Further responding, Defendant states that the ESOP Trust is also "governed" by ERISA, the Internal Revenue Code and Department of Labor regulations.**

110.   The ESOP Trust forms part of the ESOP Plan.

**ANSWER: Defendant admits that the ESOP Trust and the ESOP Plan are features of the employee benefit plan established through the ESOP transaction. Defendant denies any other allegations in paragraph 110.**

**J.     The Bergs Retain Miguel Paredes to Serve as ESOP Trustee**

111.   In May 2020, the Debtor retained Miguel Paredes to take over as trustee of the

ESOP Trust. His retention was governed by an engagement letter dated May 19, 2020 (the

"Engagement Letter") between the Debtor and Paredes. Connie Berg signed for the Debtor in her

capacity as President.

**ANSWER: Defendant admits that Mr. Paredes was engaged to be the ESOP trustee in May 2020 and that his engagement was, in part, governed by the Engagement Letter he and the Debtor signed. Defendant refers to the Engagement Letter for its exclusive terms, and denies any allegation in paragraph 111 that is inconsistent with it. Further responding, Defendant states that his "retention" as ESOP trustee is governed by, among other things, ERISA and Department of Labor regulations.**

112.   Under the Engagement Letter, the parties agreed that Paredes would "act as an

independent transactional trustee for the Plan in connection with the proposed ESOP Transaction."

**ANSWER: Defendant admits that the excerpt quoted in paragraph 112 is in the Engagement Letter but refers to the Engagement Letter for its exclusive terms, and denies any allegation in paragraph 112 that is inconsistent with it. Defendant denies any other allegations in paragraph 112.**

113.   Paredes' role as trustee was to, among other things: "(1) evaluate the proposed

purchase of Company stock by the ESOP; (2) *perform due diligence with respect to the Company*

and the proposed ESOP Transaction; and (3) *act independently of the Company and its agents*

*and representatives* to negotiate on behalf of the ESOP the price, terms, and conditions of the ESOP Transaction." (Emphasis added.)

**ANSWER:  Defendant admits that the quoted but unsourced language in paragraph 113 is in the Engagement Letter but refers to the Engagement Letter for its exclusive terms, and denies any allegation in paragraph 113 that is inconsistent with it. Further responding, Defendant states that his "role" as ESOP trustee is informed by, among other things, ERISA and Department of Labor regulations. Defendant denies any other allegations in paragraph 113.**

114.    Additionally, Paredes was charged with ensuring that "the ESOP pays no more than adequate consideration for the Company stock, that [the proposed transaction] is fair to the ESOP from a financial point of view, and that [the proposed transaction] is in accordance with the terms of the Plan and applicable law, including, but not limited to, ERISA and the Internal Revenue Code."

**ANSWER:  Defendant admits that he had discretion to approve the ESOP transaction if, among other things and factors, he made the determinations set forth in the quoted, but unsourced, language in paragraph 114, and admits that he, in fact, did properly make such findings with the assistance of his experienced professional advisors.**

115.    Paredes retained Stout Risius Ross, LLC ("Stout") to serve as the ESOP Trust's financial advisor pursuant to an engagement letter dated May 21, 2022. Among other things, Stout's role was to render a "written opinion" that "[t]he consideration to be paid by the ESOP for its shares of Company stock pursuant to the terms of the Transaction is not greater than the Fair Market Value of such shares" and "[t]he terms and conditions of the Transaction, taken as a whole, are fair to the ESOP from a financial point of view." Both are duties of Paredes under his Engagement Letter and applicable law.

**ANSWER:  Defendant admits that he retained Stout to act as the ESOP Trust's financial advisor. Further responding, Defendant refers to the Stout engagement letter and his Engagement Letter with the Debtor for their exclusive terms, and denies any allegation in paragraph 115 that is inconsistent with them. Defendant denies that the quoted but unsourced language in paragraph 115 encompassed the entirety of what Stout was hired to do. Defendant denies all other allegations in paragraph 115.**

116.     Paredes also retained the law firm Benesch, Friedlander, Coplan & Aronoff LLP

("Benesch") to assist him in his duties as independent trustee for the ESOP transaction.

**ANSWER:  Defendant admits that he hired Benesch to act as his legal advisor for the ESOP transaction. Defendant denies any other allegations in paragraph 116.**

117.     On August 27, 2020, Connie Berg, in her capacity as the Debtor's sole director,

executed a written consent ratifying the Engagement Letter and the Debtor's appointment of

Paredes "as the transactional trustee of the ESOP Trust."

**ANSWER:  Defendant admits that paragraph 117 cites to an August 27, 2020 written consent. Defendant refers to that written consent for its exclusive terms, and denies any allegation in paragraph 117 that is inconsistent with it.**

118.     Paredes received a flat fee of $38,000 from the Debtor for serving as trustee of the

ESOP Trust.

**ANSWER:  Defendant admits the allegations in paragraph 118.**

**K.     The Parties Negotiate the ESOP Transaction and Connie Berg Receives an Initial $6.2 million Equity Distribution Before Closing the ESOP Transaction**

119.     Between approximately May 2020 and August 2020, the Bergs and Paredes

negotiated the terms of the ESOP transaction, including entering into a non-binding term sheet (the

"ESOP Term Sheet").

**ANSWER:  Defendant admits that he participated in negotiations leading to a non-binding term sheet and the ESOP transaction, but denies the remainder of the allegations in paragraph 119.**

120.     Kyle Berg handled the negotiations. On information and belief, Connie Berg had

little or no role in the transaction other than to reap the benefits of the Debtor's inflated value.

**ANSWER:  Defendant admits that Kyle Berg had a role in negotiating the non-binding term sheet and the ESOP transaction. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 120.**

121.     In the ESOP Term Sheet, the Bergs and Paredes preliminarily agreed that Connie

Berg would sell 100% of her shares in the Debtor for an aggregate price of about $31 million, with

some of her shares to be purchased by the ESOP Trust and some of her shares to be redeemed by the Debtor in conjunction with the purchase. The Bergs knew that the Debtor's valuation was substantially inflated due to their government contract fraud.

**ANSWER:  Defendant refers to the ESOP Term Sheet for its exclusive terms, and denies any allegation in paragraph 121 that is inconsistent with it. Defendant denies the remaining allegations in paragraph 121.**

122.    The Bergs and Paredes also preliminarily agreed that, immediately before the closing of the ESOP Transaction, Connie Berg would receive an equity distribution from the Debtor equal to her accumulated adjustments account balance, or "AAA" balance. The AAA balance represented the Debtor's accumulated gross income, less expenses, that had not been distributed to Connie Berg up through the closing of the ESOP transaction. The distribution was purportedly related to the Debtor's conversion from an S-Corporation to a C-Corporation, which was a necessary precursor to the ESOP transaction.

**ANSWER:  Defendant admits that Connie Berg received an equity distribution prior to the transaction's closing. Defendant denies the remaining allegations in paragraph 122.**

123.    Consistent with the ESOP Term Sheet, on August 11, 2020, Connie Berg, in her capacities as the Debtor's sole shareholder and sole director, executed a written consent authorizing the Debtor to make a $6,272,060 equity distribution to herself, which represented her purported AAA balance. No independent director approved the distribution. Paredes did not object to the distribution. Accordingly, the Debtor distributed $6,272,060 in cash to Connie Berg on August 27, 2020. On information and belief, Connie Berg deposited the funds into her UBS AG bank account, account no. XXX-XX-XXX641-000 (the "UBS Berg Account").

**ANSWER:  Defendant admits that Connie Berg authorized and received a $6,272,060 equity distribution in advance of the ESOP Transaction and that Defendant did not object to the distribution after his due diligence investigation confirmed that the distribution was appropriate. Defendant lacks knowledge or information sufficient to form a belief about the**

truth of the allegations concerning Connie Berg's post-distribution deposit of the funds.
Defendant denies any remaining allegations in paragraph 123.

124.    On August 27, 2020, Connie Berg, in her capacity as the Debtor's sole director,
executed a written consent authorizing the Debtor to make a $335,000 contribution to the ESOP
Trust for the plan year ending December 31, 2019, and a $200,000 contribution to the ESOP Trust
for the plan year ending December 31, 2020. No independent director approved the contributions.
The Debtor made these contributions to the ESOP Trust on or around August 31, 2020.

**ANSWER:  Defendant admits the allegations in paragraph 124.**

**L.    The ESOP Transaction Closes on August 31, 2020**

125.    On August 31, 2020, Connie Berg, in her capacity as the Debtor's sole director,
executed a written consent authorizing the Debtor to consummate the ESOP transaction. No
independent director approved the transaction. The ESOP transaction closed that same day, on
August 31, 2020. On the closing date, the Debtor had approximately 30 employees.

**ANSWER:  Defendant admits the allegations in paragraph 125.**

126.    The terms of the ESOP transaction mirrored those from the ESOP Term Sheet.
Connie Berg received $31,559,000 of consideration from the ESOP Trust and the Debtor in
exchange for her 100% equity stake in the Debtor. The step-by-step details of the ESOP transaction
are set forth below.

**ANSWER:  Defendant refers to the ESOP Term Sheet and the ESOP Transaction closing
documents for their exclusive terms and denies any allegation in paragraph 126 inconsistent
with those materials. Defendant denies that the following paragraphs fully and accurately
set out the ESOP Transaction.**

127.    Pursuant to a Redemption and ESOP Stock Purchase Agreement dated August 31,
2020 (the "ESOP Purchase Agreement"), Connie Berg sold 37,683 shares of the Debtor's stock
back to the Debtor for redemption. In exchange, she received a promissory note from the Debtor

in the original principal amount of $12,094,000 (the "Redemption Note"). A true and correct copy

of the Redemption Note is attached as **Exhibit A** and is incorporated by reference.

**ANSWER: Defendant refers to the ESOP Purchase Agreement and ESOP transaction closing documents for their exclusive terms and denies any allegation in paragraph 126 inconsistent with those materials. Defendant admits that Exhibit A is what the plaintiff purports it to be.**

128.    Also pursuant to the ESOP Purchase Agreement, Connie Berg sold her remaining

62,317 shares of the Debtor's stock to the ESOP Trust for $10,985,754 in seller financing and

$9,014,246 in cash.

**ANSWER: Defendant refers to the ESOP Purchase Agreement for its exclusive terms and denies any allegations in paragraph 128 inconsistent with it. Further responding, Defendant admits that Ms. Berg sold 62,317 shares to the ESOP Trust for cash consideration, seller financing and bank financing.**

129.    To evidence the seller financing, Connie Berg and the ESOP Trust entered into an

Initial Seller/ESOP Loan Agreement (the "Initial Seller/ESOP Loan Agreement") and an Initial

Seller/ESOP Note (the "Initial Seller/ESOP Note"), each dated August 31, 2020.

**ANSWER: Defendant admits that Ms. Berg and the ESOP Trust entered into the Initial Seller/ESOP Loan Agreement and the Initial Seller/ESOP Note, each dated August 31, 2020.**

130.    The ESOP Trust funded the $9,014,246 cash purchase price entirely with money it

received from the Debtor. The Debtor obtained most of the funds with an $8,479,246 term loan

from Bankers Trust (the "Bankers Trust Loan"), the proceeds of which it immediately loaned to

the ESOP Trust pursuant to an Initial Company/ESOP Loan Agreement (the "Initial

Company/ESOP Loan Agreement") and an Initial Company/ESOP Note (the "Initial

Company/ESOP Note"), each dated August 31, 2020. The Debtor obtained the Bankers Trust Loan

for the sole purpose of funding the payment to Connie Berg. For the remaining balance of the cash

purchase price, the ESOP Trust used the Debtor's plan contributions for 2019 and 2020, which

were $335,000 and $200,000, respectively.

**ANSWER:  Defendant admits that the Debtor borrowed money from Bankers Trust as part of the ESOP Transaction and that the Debtor lent those loan proceeds to the ESOP Trust, indicating that like Mr. Paredes, Bankers Trust too determined in good faith and after diligence that the ESOP transaction price was no more than fair market value. Defendant denies all other allegations in paragraph 130.**

131.    Connie Berg deposited the funds, totaling $9,014,246, into the UBS Berg Account.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 131.**

132.    Connie Berg signed the ESOP Purchase Agreement in two capacities: on behalf of the Debtor as its "President" and individually as the "Seller" of the Debtor's stock. Paredes signed the ESOP Purchase Agreement on behalf of the ESOP Trust in his capacity as ESOP trustee.

**ANSWER: Defendant admits that Ms. Berg and Mr. Paredes, in his capacity as ESOP trustee, signed the ESOP Purchase Agreement. Defendant refers to the ESOP Purchase Agreement for its exclusive terms and denies any allegations in paragraph 132 inconsistent with it.**

133.    Immediately after entering into the ESOP Purchase Agreement, the Debtor, the ESOP Trust, and Connie Berg entered into a Seller Note Exchange and ESOP Loan Modification Agreement dated August 31, 2020 (the "ESOP Modification Agreement"), pursuant to which they agreed to modify, restructure, and consolidate certain obligations relating to the ESOP transaction.

**ANSWER:  Defendant refers to the ESOP Modification Agreement for its exclusive terms and denies any allegations in paragraph 133 inconsistent with it. Defendant admits the Loan Modification Agreement is dated August 31, 2020 and that the Debtor, ESOP Trust and Ms. Berg were parties to that agreement. Defendant denies any other allegations in paragraph 133.**

134.    First, in accordance with the ESOP Modification Agreement, the Debtor agreed to assume the ESOP Trust's obligations to Connie Berg under the Initial Seller/ESOP Note and the Initial Seller/ESOP Loan Agreement—so that the Debtor would be directly liable to Connie Berg rather than the ESOP Trust. To evidence such assumption, Connie Berg assigned all her rights under the Initial Seller/ESOP Note and the Initial Seller/ESOP Loan Agreement to the Debtor, and

the Debtor issued to Connie Berg an Amended and Restated Seller Note dated August 31, 2020 (the "A&R Seller Note"), in the original principal amount of $10,985,754. A true and correct copy of the A&R Seller Note is attached as **Exhibit B** and is incorporated by reference.

**ANSWER: Defendant refers to the ESOP Modification Agreement, the A&R Seller Note and the other documents referenced for their exclusive terms and denies any allegations in paragraph 134 inconsistent with those instruments and documents. Defendant admits that Exhibit B is a true and correct copy of the A&R Seller Note.**

135.   Second, the ESOP Trust and the Debtor entered into an Amended and Restated ESOP Loan Agreement (the "A&R ESOP Loan Agreement") and an Amended and Restated ESOP Note (the "A&R ESOP Note"), each dated August 31, 2020, to consolidate all the ESOP Trust's obligations to the Debtor into one loan. The original principal amount of the A&R ESOP Note was $19,465,000, reflecting the $10,985,754 of original principal under the Initial Seller/ESOP Note and the $8,479,246 of original principal under the Initial Company/ESOP Note.

**ANSWER:  Defendant refers to the A&R ESOP Loan Agreement, the A&R ESOP Note and the other referenced documents for their exclusive terms and denies any allegations in paragraph 135 inconsistent with those instruments and documents. Defendant admits that the referenced documents are dated August 31, 2020.**

136.   Connie Berg signed the ESOP Modification Agreement in two capacities: on behalf of the Debtor as its "President" and individually as "Lender." Paredes signed the ESOP Purchase Agreement on behalf of the ESOP Trust in his capacity as trustee.

**ANSWER: Defendant admits that Ms. Berg and Mr. Paredes, in his capacity as ESOP trustee, signed the ESOP Modification Agreement. Defendant refers to the ESOP Modification Agreement for its exclusive terms and denies any allegations in paragraph 136 inconsistent with it.**

137.   As a result of the ESOP transaction, the ESOP Plan and ESOP Trust became the Debtor's sole equity owner, holding 62,317 shares of capital stock. The Debtor's eligible employees, meanwhile, had the right to acquire shares over time pursuant to the terms of the Plan Documents.

**ANSWER:  Defendant admits that after the ESOP Transaction, 100% of the Debtor's shares were held by the ESOP Trust, and that participants in the ESOP Plan would be allocated shares of Debtor's stock consistent with the Plan Document, refers to the Plan Document and the ESOP Trust for their exclusive terms, and denies any allegations inconsistent with them.**

138.    From the ESOP transaction closing, Connie Berg received total consideration of $31,559,000 for her 100% equity interest in the Debtor, comprised of (a) $9,014,246 of cash, the Redemption Note from the Debtor in the original principal amount of $12,094,000, and the A&R Seller Note from the Debtor in the original principal amount of $10,985,754. As detailed above, Connie Berg received an additional $6,272,060 as an equity distribution from the Debtor four days before the ESOP transaction closed.

**ANSWER:  Defendant admits that the ESOP closing documents and flow of funds sheets identify and explain the various amounts paid in connection with the ESOP transaction, and denies any allegations in paragraph 138 inconsistent with them. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the total amounts Connie Berg "received".**

139.    The Debtor either funded or is the primary/ultimate obligor for all distributions and consideration given to Connie Berg in connection with the ESOP transaction.

**ANSWER:  Defendant denies the allegations in paragraph 139.**

140.    The following diagram depicts the Debtor's capital and equity structure immediately after the ESOP transaction:



**ANSWER:  Defendant denies the allegations in paragraph 140.**

**M.      The Bergs Concealed Their Fraud from Paredes and the ESOP Plan**

141.      During the ESOP negotiations, the Bergs never disclosed to Paredes or the ESOP Trust that (a) millions of dollars of the Debtor's historical revenue and profits were attributable to their fraud on the federal government; (b) the Debtor had fraudulently enrolled in the 8(a) and WOSB Programs and was not a qualifying small business; (c) the Debtor had been fraudulently awarded thousands of Set-Aside Contracts, totaling millions of dollars; (d) the Debtor received fraudulent revenue from Razor, Fed Serve, MDM, OK2, and other entities affiliated with or controlled by Kyle Berg; and (e) the Debtor's $31,559,000 valuation for the ESOP transaction was materially inflated.

**ANSWER:  Defendant denies that the valuation of Debtor's stock was inflated, materially or at all. Defendant lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 141.**

142.    Instead, the Bergs repeatedly made false representations to Paredes, the ESOP

Trust, and the Debtor to conceal their fraud and obtain the highest possible share valuation and

purchase price. The Bergs acted to enrich themselves, to the knowing detriment of the Debtor, its

creditors, the ESOP Plan, the ESOP Trust, and the ESOP participants.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the
truth of the allegations in paragraph 142.**

143.    For example, Connie Berg made numerous false representations in the ESOP

transaction documents. Kyle Berg, who was the primary point of contact for the ESOP transaction

and negotiations, assisted Connie Berg in her misrepresentations.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the
truth of the allegations in paragraph 143.**

144.    In Section 3.2(g) of the ESOP Purchase Agreement, Connie Berg represented to the

ESOP Trust and the Debtor as follows: "There is no claim, legal action, suit, arbitration,

governmental investigation or other legal or administrative proceeding, nor any order, decree or

judgment, in progress, pending, in effect, or to the Knowledge of the Seller, threatened relating to

this Agreement or the transactions contemplated by this Agreement, ***and the Seller does not know

of any reason for, nor have any reason to be aware of, any basis for the same***." (Emphasis added.)

**ANSWER:  Defendant admits that the quoted language is contained within ESOP Purchase
Agreement section 3.2(g), refers to the ESOP Purchase Agreement for its exclusive terms,
and denies any allegations in paragraph 144 that are inconsistent with it.**

145.    These representations were false because Connie Berg knew that a material amount

of the Debtor's revenue was attributable to fraudulently obtained Set-Aside Contracts and the

ESOP valuation was, therefore, inflated. These facts were the "basis" for various claims, legal

actions, suits, arbitrations, government investigations, or other legal or administrative proceedings

relating to the Debtor and the ESOP transaction, including breach of contract claims, breach of

fiduciary duty claims, ERISA claims, investigations by the FBI, DOJ, and Department or Labor,

and related criminal and civil claims and legal proceedings.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 145.**

146.    In Section 3.3(g)(i) of the ESOP Purchase Agreement, Connie Berg represented to

the ESOP Trust that, among other things, the Debtor's financial statements "present fairly the

financial position of the Company of such date and the results of the operations of the Company

for such period in all materials respects" and "contain no untrue statements of material fact, do not

omit any material fact necessary to make such Financial Statements not misleading."

**ANSWER:  Defendant admits that the quoted language is contained within ESOP Purchase Agreement section 3.3(g)(i), refers to the ESOP Purchase Agreement for its exclusive terms, and denies any allegations in paragraph 146 that are inconsistent with it.**

147.    These representations were false because Connie Berg knew that a material amount

of the Debtor's revenue was attributable to fraudulently obtained Set-Aside Contracts and,

therefore, the financial statements did not fairly present the Debtor's financial position and results,

contained untrue statements of material fact, and omitted material facts necessary to make such

financial statements not misleading.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 147.**

148.    In Sections 3.3(g)(ii) and 3.3(g)(v) of the ESOP Purchase Agreement, Connie Berg

represented to the ESOP Trust that the Debtor had no undisclosed liabilities or obligations, other

than those disclosed in those sections and the corresponding disclosure sections.

**ANSWER:  Defendant refers to the ESOP Purchase Agreement for its exclusive terms and denies any allegations in paragraph 148 that are inconsistent with it generally, and in particular sections 3.3(g)(ii) and 3.3(g)(v).**

149.    These representations were false because Connie Berg failed to disclose that the Debtor faced substantial liability to the federal government for, without limitation, its actions in defrauding SBA, the 8(a) Program, and the WOSB Program.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 149.**

150.    In Section 3.3(g)(iii) of the ESOP Purchase Agreement, Connie Berg represented to the ESOP Trust as follows: "The financial projections furnished by the Company to the Trustee in connection with the transaction contemplated hereunder are reasonable and complete, and (1) reflect the Company's best efforts to accurately and correctly project the future operations of the Company; and (2) to the Seller's Knowledge there are no material adjustments that should be made to such financial projections to make the financial projections reasonable and complete." The term "Seller's Knowledge" is defined to include Kyle Berg's knowledge.

**ANSWER:  Defendant admits that the quoted language is contained within ESOP Purchase Agreement section 3.3(g)(iii), refers to the ESOP Purchase Agreement for its exclusive terms, and denies any allegations in paragraph 150 that are inconsistent with it.**

151.    These representations were false because Connie Berg and Kyle Berg knew that the Debtor's financial projections, among other things, (a) were inflated, (b) were based on fraudulent revenues that the Debtor could not legally maintain, and (c) did not account for the significant legal risks and liabilities the Debtor would face when their fraud was inevitably discovered.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 151.**

152.    In Section 3.3(h) of the ESOP Purchase Agreement, Connie Berg represented to the ESOP Trust that the Debtor "has complied in all respects with the eligibility and other requirements of any License or Permit." "Licenses and Permits," in turn, is defined as "licenses, permits, certification, franchises, authorizations, registrations, approvals, and certificates of

occupancy (or their equivalent) issued or granted to the Company with respect to its business by the government of the United States."

**ANSWER:  Defendant admits that the quoted language is contained within ESOP Purchase Agreement section 3.3(h), refers to the ESOP Purchase Agreement for its exclusive terms, and denies any allegations in paragraph 152 that are inconsistent with it.**

153.    This representation was false because Connie Berg knew that the Debtor had not complied with the Licenses and Permits for its active 8(a), WOSB, and small-business set-aside contacts. For its active 8(a) contracts, the Debtor had not complied in all respects with the eligibility and other requirements of the applicable Licenses or Permits because, among reasons, Connie Berg did not actually control the Debtor and the Debtor was not a qualifying small business. For its active WOSB contracts, the Debtor had not complied in all respects with the eligibility and other requirements of the applicable Licenses or Permits because Connie Berg caused the Debtor to falsely self-certify to the government that she controlled the Debtor and that the Debtor was a qualifying small business, which self-certifications a government "contracting officer" had to (and did) "accept." *See* 13 C.F.R. § 127.301(a)(2) (WOSB self-certification regulation in effect from 2015 to July 15, 2020, when the Debtor enrolled in the WOSB program and applied for WOSB Set-Aside Contracts). his acceptance constituted an "authorization[] . . . [or] approval[] . . . issued or granted to the Company with respect to its business by the government of the United States"—*i.e.*, a "License or Permit." And for the active small-business set-aside contracts, the Debtor had not complied in all respects with the eligibility and other requirements of the applicable Licenses or Permits because, among reasons, the Debtor was not a qualifying small business.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 153.**

154.    In Section 3.3(j) of the ESOP Purchase Agreement, Connie Berg represented to the ESOP Trust that "[n]either the Seller nor the directors and officers nor the employees with responsibility for litigation matters of the Company have any reason to believe that any such action, suit, proceeding, hearing, or investigation may be brought or threatened against the Company."

**ANSWER:  Defendant admits that the quoted language is contained within ESOP Purchase Agreement section 3.3(j), refers to the ESOP Purchase Agreement for its exclusive terms, and denies any allegations in paragraph 154 that are inconsistent with it.**

155.    These representations were false because Connie Berg knew that a material amount of the Debtor's revenue was attributable to fraudulently obtained Set-Aside Contracts and the ESOP valuation was, therefore, grossly over-inflated. These facts were the basis for various actions, suits, proceedings, hearings, or investigations that could by brought against the Debtor, including breach of contract claims, breach of fiduciary duty claims, ERISA claims, investigations by the FBI, DOJ, and Department of Labor, and related criminal and civil claims and legal proceedings.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 155.**

156.    In Section 3.3(m) of the ESOP Purchase Agreement, Connie Berg represented to the ESOP Trust that the Debtor "is in compliance with all applicable laws."

**ANSWER:  Defendant admits that the quoted language is contained within ESOP Purchase Agreement section 3.3(m), refers to the ESOP Purchase Agreement for its exclusive terms, and denies any allegations in paragraph 156 that are inconsistent with it.**

157.    This representation was false because Connie Berg knew that the Debtor did not qualify for the 8(a) and WOSB Programs, was not a small business, and was not eligible for associated Set-Aside Contracts.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 157.**

158.    In Section 3.3(o) of the ESOP Purchase Agreement, Connie Berg represented to the ESOP Trust that each "Material Contract is legal, valid, binding, [and] enforceable" and will continue to be "legal, valid, binding, [and] enforceable ... on identical terms following the consummation of the transactions contemplated by the [Purchase] Agreement."

**ANSWER:  Defendant admits that the quoted language is contained within ESOP Purchase Agreement section 3.3(o), refers to the ESOP Purchase Agreement for its exclusive terms, and denies any allegations in paragraph 158 that are inconsistent with it.**

159.    These representations were false. Many of the "Material Contracts" were Set-Aside Contracts that the Debtor was awarded by virtue of its enrollment in the 8(a) or WOSB Programs, or purported status as a small business. Connie Berg therefore knew that these Material Contracts were not legal, valid, binding, and enforceable, and would be (or could be) terminated upon discovery of the Bergs' fraud.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 159.**

160.    In Section 5.3(c) of the Initial Seller/ESOP Loan Agreement, Connie Berg made the following representation and warranty to the ESOP Trust and Paredes, as trustee: "The execution, delivery, and performance of this Agreement by the Seller does not and will not . . . violate any law, regulation, judgment, or order applicable to the Seller."

**ANSWER:  Defendant admits that the quoted language is contained within ESOP Purchase Agreement section 5.3(c), refers to the ESOP Purchase Agreement for its exclusive terms, and denies any allegations in paragraph 160 that are inconsistent with it.**

161.    This representation and warranty was false because Connie Berg's execution, delivery, and performance of the Initial Seller/ESOP Loan Agreement breached her fiduciary duties under state law and ERISA, and the ESOP transaction was a prohibited transaction under 29 U.S.C. § 1106(a)(1)(A).

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 161.**

162.     The Bergs withheld critical information and made material misrepresentations to the Debtor, Paredes, the ESOP Trust, and ESOP Plan. Had the Bergs truthfully disclosed that Debtor's business was predicated on more than a decade of fraud, the ESOP transaction and share redemption never would have occurred (let alone at a $31.5 million valuation) and the Debtor never would have made the over $6 million equity distribution to Connie Berg.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 162 as to what would have occurred under the referenced hypothetical scenario.**

163.     In negotiating and consummating the equity distribution, ESOP transaction, and share redemption, the Bergs committed a fraud on the Debtor to enrich themselves.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 163.**

**N.     Paredes Would Have Discovered the Bergs' Fraud with Basic Due Diligence**

164.     Paredes' job as trustee of the ESOP Trust, among other things, was to conduct due diligence into the Debtor and the proposed ESOP transaction to ensure that (a) the ESOP price, terms, and conditions were fair, (b) the ESOP Trust paid no more than adequate consideration to Connie Berg, (c) the ESOP transaction complied with ERISA and other applicable law, and the (d) the Debtor's business was as represented in the ESOP transaction documents.

**ANSWER:  Defendant refers to his prepetition engagement letter with the Debtor, ERISA, and Department of Labor regulations as the exclusive sources of his duties as ESOP trustee, and denies any allegations in paragraph 164 that are inconsistent with those sources.**

165.     Paredes failed in each of these duties. Although the Bergs and others concealed the government contracting fraud from Paredes, he could have discovered the fraud with basic due diligence.

**ANSWER:  Defendant denies the allegations in paragraph 165.**

166.    A material amount of the Debtor's historical revenue was attributable to Set-Aside Contracts that the Debtor received via the 8(a) and WOSB Programs, and as a small business. For example, on information and belief, about 26.5% of the Debtor's **total** revenue in the 4-year period before the ESOP transaction derived from the 8(a) and WOSB Programs. Additionally, the Debtor's **entire** business revolved around federal contracting. Thus, Paredes had every reason to investigate and vet, and should have investigated and vetted, the Debtor's Set-Aside Contracts and its eligibility for SBA's contracting programs.

**ANSWER: Defendant admits that Debtor generated revenue from government Set-Aside-Contracts, and that his diligence investigation, with the assistance of his professional advisors, included the Debtor's revenues attributable to federal contracting. Further responding, Defendant states that his diligence investigation was undertaken and completed with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent trustee acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and therefore denies any allegations to the contrary. Defendant denies all other allegations in paragraph 166.**

167.    Instead, Paredes and his advisers (including Stout and Benesch) ignored significant red flags regarding the business and qualifications for these government programs.

**ANSWER: Defendant denies the allegations in paragraph 167.**

168.    For example, only Kyle Berg had construction experience and Connie Berg's experience was in apparel and retail sales. Yet Connie Berg was the Debtor's sole owner, sole director, and president, and Kyle Berg was just an employee and/or consultant for the business. At a minimum, these facts should have prompted Paredes to investigate Connie Berg's involvement in the business and the Debtor's eligibility for the 8(a) and WOSB Programs and small business Set-Aside Contracts.

**ANSWER: Defendant admits that his diligence investigation, with the assistance of his professional advisors, included the Debtor's revenues attributable to federal contracting. Further responding, Defendant states that his diligence investigation was undertaken and completed with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent trustee acting in a like capacity and familiar with such matters**

**would use in the conduct of an enterprise of a like character and with like aims, and therefore denies any allegations to the contrary. Defendant denies all other allegations in paragraph 168.**

169.     Additionally, a Confidential Information Memorandum ("CIM") that the Debtor's financial advisor prepared for the ESOP transaction disclosed that "[h]istorically, Connie's role at the Company has been *de minimis*." (Emphasis added.) On the other hand, the CIM described Kyle Berg as being "involved with all significant operating decisions" and "represent[ing] the Company in major negotiations and large bids." Paredes and his advisors (including Stout and Benesch) received the CIM during the due diligence process for the ESOP transaction and, thus, knew that Connie Berg's historical involvement in the Debtor's business was "de minimis." At minimum, these disclosures should have prompted Paredes to investigate Connie Berg's involvement in the business and the Debtor's eligibility for the 8(a) and WOSB Programs and small business Set-Aside Contracts.

**ANSWER: Responding to the allegations in paragraph 169, Defendant states that his diligence investigation was undertaken and completed with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent trustee acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and therefore denies any allegations to the contrary. Further responding, Defendant admits that the quoted language appears in the CIM, but refers to the CIM for its exclusive terms and for context, and denies all allegations in paragraph 169 that are inconsistent with it. Defendant denies all other allegations in paragraph 169.**

170.     Additionally, Connie Berg had little or no involvement in the ESOP negotiations and due diligence, despite purportedly being the Debtor's sole owner, sole director, and president. She did not participate in diligence calls and was not copied on diligence emails. Instead, Kyle Berg was the main point of contact for all aspects of the ESOP transaction, including due diligence. Additionally, when Connie Berg was copied on ESOP-related emails, she used a personal Hotmail email address, not one associated with the Debtor. At a minimum, these facts should have

prompted Paredes to investigate Connie Berg's involvement in the business and the Debtor's

eligibility for the 8(a) and WOSB Programs and small business Set-Aside Contracts.

**ANSWER:  Defendant admits that Connie Berg did not participate in due diligence meetings that he attended, and that negotiations were communicated by the parties' attorneys (but the Bergs were copied on those communications, including Connie Berg at "berg_connie@hotmail.com"). Further responding, Defendant states that his diligence investigation was undertaken and completed with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent trustee acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and therefore denies any allegations to the contrary. Defendant denies the other allegations in paragraph 170.**

171.    Additionally, the proposed ESOP transaction structure contemplated that Connie

Berg would have no ongoing involvement in the Debtor's business post-closing, while Kyle Berg

would remain heavily involved as a consultant through his entity, Fed Serve. At a minimum,

Connie Berg's exit and Kyle Berg's ongoing involvement should have prompted Paredes to

investigate Connie Berg's role in the business and the Debtor's eligibility for the 8(a) and WOSB

Programs and small business Set-Aside Contracts.

**ANSWER:  Defendant states that his diligence investigation was undertaken and completed with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent trustee acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and therefore denies any allegations to the contrary. Defendant denies the other allegations in paragraph 171.**

172.    Additionally, within the federal contracting industry, it was widely known that the

federal government was concerned about fraud and abuse within the 8(a) and WOSB Programs.

In June 2018, for example, SBA issued an audit report finding that the ability of applicants to self-

certify their eligibility "expos[ed] the Program to unnecessary risks of fraud and abuse. A March

2019 report by the U.S. Government Accountability Office made similar findings. The Department

of Justice also prosecuted numerous contractors for fraud relating to the 8(a) and WOSB Programs.

In this context, in light of the significant red flags detailed above, and given the importance of

federal contracting to the Debtor's business, Paredes should have investigated the Debtor's

eligibility for the 8(a) and WOSB Programs and small business Set-Aside Contracts.

**ANSWER: Defendant refers to the reports referenced in paragraph 172 for their exclusive terms, and denies any allegation inconsistent with them. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations as to the federal government's concerns. Further responding, Defendant states that his diligence investigation was undertaken and completed with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent trustee acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and therefore denies any allegations to the contrary. Defendant denies the other allegations in paragraph 172.**

173.    Paredes also did not retain qualified government contractor advisors. Benesch, his

legal counsel, does not have a practice group specializing in federal government contracting (the

Debtor's core business) and does not have an office in Washington, D.C. Paredes should have

retained legal counsel with expertise in federal government contracting, including Set-Aside

Contracts for small businesses and the 8(a) and WOSB Programs.

**ANSWER: Defendant admits he retained Benesch as legal counsel, but denies that Benesch was not a qualified advisor. Further responding, Defendant states that his diligence investigation, with Benesch's support, was undertaken and completed with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent trustee acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and therefore denies any allegations to the contrary. Defendant denies the other allegations in paragraph 173.**

174.    Paredes' financial advisor, Stout, also failed to conduct proper diligence in

connection with its valuation opinion. Among other things, Stout ignored the red flags outlined

above. And, on information and belief, the Stout employees staffed on the deal did not have

sufficient federal government contracting experience and expertise to understand the significance

of the red flags to the Debtor's past and future operations.

**ANSWER: Defendant admits he retained Stout as his financial advisor, but denies that Stout was not a qualified advisor. Further responding, Defendant states that his diligence investigation, with Stout's support, was undertaken and completed with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent trustee**

acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and therefore denies any allegations to the contrary. Defendant denies the other allegations in paragraph 174.

175.    On information and belief, Paredes and his advisors did not conduct meaningful due diligence into the Debtor's eligibility for 8(a) Program, WOSB Program, and small business Set-Aside Contracts, in breach of industry norms. Due diligence checklists circulated among the parties did not even include sections on these issues.

**ANSWER: Defendant denies the allegations in paragraph 175.**

176.    Paredes had complete access to the Debtor and its employees for purposes of his due diligence work. Under Paredes' Engagement Letter, the Debtor agreed to "make any of its officers, employees, or affiliates reasonably available to [Paredes] upon request."

**ANSWER: Defendant admits that the quoted language is in the Engagement Letter. Defendant refers to the Engagement Letter for its exclusive terms, and denies any allegations inconsistent with it. Further responding, Defendant states that his diligence investigation, was undertaken and completed with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent trustee acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and therefore denies any allegations to the contrary. Defendant denies the other allegations in paragraph 176.**

177.    With just basic diligence, including meeting the Debtor's employees, reviewing the CIM, reviewing the Debtor's financials and contracts, requesting appropriate diligence information, and reviewing the Debtor's submissions and certifications to the federal government, Paredes would have discovered that Connie Berg did not actually operate or control the Debtor, that Kyle Berg ran the Debtor's day-to-day operations, and that the Debtor had substantial affiliations with numerous entities controlled by Kyle Berg, rendering it ineligible for the Set-Aside Contracts.

**ANSWER:  Defendant denies the allegations in paragraph 177.**

178.    Had Paredes conducted basic, industry standard due diligence and retained appropriate advisors, he would have discovered that the Debtor defrauded SBA over many years and had substantial undisclosed liabilities. He also would have discovered that the $31,559,000 valuation was grossly over-inflated, and that the ESOP Plan and ESOP Trust paid substantially more than adequate consideration for the Debtor's capital stock.

**ANSWER:  Defendant denies the allegations in paragraph 178.**

179.    Instead, because of Paredes' deficient due diligence and investigation, the ESOP Plan, the ESOP Trust, and its participants have suffered substantial losses from the ESOP transaction.

**ANSWER:  Defendant denies the allegations in paragraph 179.**

**O.    Chad DuBois Knowingly Facilitated and Consented to the Bergs' Fraud**

180.    Chad DuBois also breached his duties in connection with the ESOP transaction.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 180.**

181.    The Debtor hired DuBois in June 2018 as its controller. In July 2019, he was promoted to Vice President, and he served in that role until the ESOP transaction closed.

**ANSWER:  Defendant admits the allegations in paragraph 181.**

182.    During his time as the Debtor's Vice President, DuBois was intimately involved in the Debtor's bids for Set-Aside Contracts. On his LinkedIn profile, DuBois touts that he "[o]versaw" the Debtor's "highly successful bidding processes." Thus, he understood the bidding process and the importance of the government contracting to the Debtor's business.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 182.**

183.    Given his role as the Debtor's Vice President, DuBois knew that the Debtor was enrolled in the WOSB Program, had been enrolled in the 8(a) Program, designated itself as a small business, and had applied for and received Set-Aside Contracts on those bases.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 183.**

184.    DuBois also knew that the Debtor did not actually qualify for the WOSB and 8(a) Programs, was not a small business due to its various affiliations, and was not entitled to the associated Set-Aside Contracts.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 184.**

185.    First, DuBois had extensive experience with and knowledge of SBA's socio-economic programs and Set-Aside Contracts, including eligibility requirements. From 1996 to 2017, DuBois was the owner and president of CS DuBois Construction, Inc. ("CS DuBois"), where he employed Kyle Berg for over a decade. Like the Debtor, CS DuBois was enrolled in SBA's 8(a) Program, graduating in 2007.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 185.**

186.    Second, DuBois knew that Kyle Berg—not Connie Berg—controlled and managed the Debtor. In his role as Vice President, DuBois necessarily witnessed first-hand that Connie Berg had no involvement in the business and that Kyle Berg was in charge. Indeed, DuBois and Kyle Berg exchanged thousands of emails regarding the Debtor, while DuBois never emailed with Connie Berg regarding the Debtor except on two occasions.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 186.**

187.    Third, DuBois knew that Kyle Berg had a practice of wrongfully circumventing eligibility requirements. As detailed above, in September 2020, DuBois' 21-year-old, college-enrolled daughter began "working" at Fed Serve as a pretext so the company could maintain eligibility for SBA's HUBZone program. On September 9, 2020, DuBois emailed Kyle Berg a copy of his daughter's residential lease, writing: "This is Paiges lease. Let me know if it works." Kyle Berg replied: "Yep – dead center of the HUBZone."

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 187.**

188.    Fourth, at the Debtor's 341 meeting, DuBois acknowledged that he knew the Bergs had been applying for government contracts on the basis of the Debtor being woman owned/controlled and that it was general knowledge within the company.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 188.**

189.    Although DuBois knew that the Bergs had fraudulently enrolled the Debtor in the WOSB and 8(a) Programs and was not a small business, he never disclosed these facts to the ESOP Trust or Paredes, and took no action to stop the ESOP transaction (including the equity distribution to Connie Berg immediately before closing and the Debtor's share redemption). Instead, he affirmatively concealed the Bergs' fraudulent activities.

**ANSWER:  Defendant admits Dubois did not disclose the information about the Berg's alleged fraud or any facts from which such a fraud could be reasonably inferred. Mr. Paredes lacks knowledge or information sufficient to form a belief about the truth of the other allegations in Paragraph 189.**

190.    On August 31, 2020, in connection with the closing of the ESOP transaction, DuBois delivered a "Statement of Representation" to Stout, which included various misrepresentations regarding the Debtor.

**ANSWER: Defendant admits that DuBois conveyed a "Statement of Representation" to Stout. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the other allegations in Paragraph 190.**

191.    DuBois certified that the information contained in his Statement of Representation was "true and correct" and he acknowledged that Stout would be relying on such information "to render a fairness opinion" to Paredes regarding the ESOP transaction. However, DuBois' Statement of Representation contained numerous material misrepresentations, falsehoods, and omissions.

**ANSWER: Defendant admits that DuBois certified that the information in the "Statement of Representation" he gave to Stout was true and correct with knowledge and intention that Stout and Defendant would reasonably rely on it. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the other allegations in Paragraph 191.**

192.    DuBois represented that "[a]ll operating, competitive, historical financial, and other factual information disclosed to you by us is complete and accurate in all material respects, and represents the expectations of management about the operations, prospects, competitive position, and financial results of the Company."

**ANSWER: Defendant admits the allegations in paragraph 192.**

193.    These representations were false. DuBois' disclosures were incomplete and inaccurate because he did not disclose that the Debtor had fraudulently enrolled in the WOSB and 8(a) Programs and was not a qualifying small business.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 193.**

194.    DuBois represented that "the historical financial statements for the Company for the fiscal years ended December 31, 2015 through the fiscal year ended December 31, 2019, as well as the interim financials for the six month period ended June 30, 2019, the six month period ended June 30, 2019, June 30, 2020, and the seven month period ended July 31, 2020 (the "Interim

Statements", attached herein as Appendix A), provided to you are fairly presented in accordance with U.S. GAAP and fairly present, in all material respects, the financial condition and results of operations of the Company as of the dates and for the periods indicated therein, and we know of nothing material that has occurred since the date of the most recent financial statements listed that would lead us to believe that such information is misleading or inaccurate or that require consideration as adjustments to or disclosures in the financial statements."

**ANSWER: Defendant admits that the quoted language sets out representations DuBois made to Defendant and his advisors. Defendant refers to the referenced documents for their exclusive terms, and denies any allegation in paragraph 194 that is inconsistent with them.**

195.    These representations were false. DuBois knew that a material amount of the Debtor's revenue was attributable to fraudulently obtained Set-Aside Contracts and, therefore, the historical financial statements did not fairly present the Debtor's financial position and results, contained untrue statements of material fact, omitted material facts, and required adjustments and additional disclosures.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 195.**

196.    DuBois represented that "[t]he projected financial results of the Company provided to you by us (attached herein as Appendix B) were prepared in good faith and represent, to the best of our knowledge and belief, reasonable estimations of future financial performance for the periods indicated based upon assumptions that are reasonable and appropriate."

**ANSWER: Defendant admits that the quoted language sets out representations DuBois made to Defendant and his advisors. Defendant refers to the referenced documents for their exclusive terms, and denies any allegation in paragraph 196 that is inconsistent with them.**

197.    These representations were false. DuBois knew that the Debtor's financial projections, among other things, (a) were inflated, (b) were based on fraudulent revenues that the Debtor could not legally maintain, and (c) did not account for the significant legal risks and

liabilities the Debtor would face when the government contracting fraud was inevitably discovered.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 197.**

198.    DuBois represented that "[w]e have disclosed to you all material information regarding the Company and the proposed Transaction necessary to assist you in rendering your Opinion and we have not omitted any information that would render any other information we have provided to you misleading, or withheld information that, in our view, could reasonably be expected to affect your analysis or the outcome of your Opinion."

**ANSWER:  Defendant admits that the quoted language sets out representations DuBois made to Defendant and his advisors. Defendant refers to the referenced documents for their exclusive terms, and denies any allegation in paragraph 198 that is inconsistent with them.**

199.    These representations were false. DuBois omitted material information that was directly relevant to the ESOP transaction, including that the Debtor had fraudulently enrolled in the WOSB and 8(a) Programs and designated itself as a small business.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 199.**

200.    Had DuBois truthfully disclosed to Stout, Paredes, the ESOP Trust, and the ESOP Plan that Debtor's business was predicated on more than a decade of fraud by the Bergs, the ESOP transaction and share redemption never would have closed, let alone at a $31.5 million valuation. Through his conduct, DuBois committed a fraud on the Debtor and consented to the Bergs' fraud on the Debtor.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 200 as to what would have occurred under the referenced hypothetical scenario. Further responding, Defendant states that his diligence investigation was undertaken and completed with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent trustee acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and**

with like aims, and therefore denies any allegations to the contrary. **Defendant lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 200.**

201.   [INTENTIONALLY OMITTED].

202.   [INTENTIONALLY OMITTED].

203.   [INTENTIONALLY OMITTED].

204.   [INTENTIONALLY OMITTED].

205.   [INTENTIONALLY OMITTED].

206.   [INTENTIONALLY OMITTED].

207.   [INTENTIONALLY OMITTED].

208.   [INTENTIONALLY OMITTED].

209.    [INTENTIONALLY OMITTED].

210.   [INTENTIONALLY OMITTED].

211.   [INTENTIONALLY OMITTED].

**P.      After the ESOP Transaction Closes, the Debtor Pays Millions More to Connie Berg**

212.   On August 31, 2020, immediately after the ESOP transaction closed, Chad DuBois was promoted to the Debtor's President and director.

**ANSWER:  Defendant admits the allegations in paragraph 212.**

213.   With DuBois in control, the Debtor made millions of dollars of principal and interest payments to Connie Berg under the Redemption Note (the "Redemption Note Payments") and the A&R Seller Note (the "A&R Seller Note Payments"), as well as a closing adjustment payment to her under the ESOP Purchase Agreement. These payments—totaling $9,542,602.39— are detailed below:

| Agreement | Type | Date (approx.) | Amount | Notes |
|---|---|---|---|---|
| Redemption Note | Interest | January 8, 2021 | $161,253.32 | Check # 60246 |

| A&R Seller Note | Interest | January 8, 2021 | $146,476.72 | Check # 60246 |
|---|---|---|---|---|
| ESOP Purchase Agreement | Closing Adjustment | February 8, 2021 | $68,599.86 | Check # 60388 |
| Redemption Note | Interest | March 26, 2021 | $120,939.99 | Check # 60583 |
| A&R Seller Note | Interest | March 26, 2021 | $109,857.57 | Check # 60583 |
| Redemption Note | Interest | June 29, 2021 | $120,939.99 | Check # 60994 |
| A&R Seller Note | Interest | June 29, 2021 | $109,857.57 | Check # 60994 |
| Redemption Note | Interest | September 30, 2021 | $120,939.99 | Check # 61468 |
| A&R Seller Note | Interest | September 30, 2021 | $109,857.57 | Check # 61468 |
| Redemption Note | Interest | December 27, 2021 | $120,939.99 | Check # 61771 |
| A&R Seller Note | Interest | December 27, 2021 | $109,857.57 | Check # 61771 |
| Redemption Note & A&R Seller Note | Principal | December 31, 2021 | $6,093,216.88 | Loan proceeds from CCU |
| Redemption Note & A&R Seller Note | Principal | December 31, 2021 | $2,000,000.00 | Wire transfer |
| Redemption Note & A&R Seller Note | Interest | April 27, 2022 | $149,865.37 | Check # 61996 |
| | | | **$9,542,602.39** | |

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 213.**

214.    The Debtor funded the $6,093,216.88 principal payment to Connie Berg on December 31, 2021, with loan proceeds from Capital Credit Union ("CCU"). The Debtor obtained the CCU loan to refinance the Bankers Trust Loan. However, instead of borrowing only the amount necessary to pay off the Bankers Trust Loan, the Debtor borrowed an additional $6,093,216.88 to make an unscheduled prepayment of principal to Connie Berg.

**ANSWER: Defendant admits that CCU refinanced the Bankers Trust debt, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations paragraph 214.**

215.    DuBois authorized the $9,542,602.39 of payments to Connie Berg, even though he knew about her misconduct and misrepresentations in connection with the ESOP transaction and share redemption. Such authorizations constituted a fraud on the Debtor. Additionally, by authorizing the payments, DuBois consented to the Bergs' fraud on the Debtor.

**ANSWER: Defendant lacks knowledge or information sufficient to for a belief as to the truth of the allegations in paragraph 215.**

216.    On information and belief, Connie Berg deposited the post-closing payments, totaling $9,542,602.39, into the UBS Berg Account.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in paragraph 216.**

217.    The Debtor only stopped making payments to Connie Berg when the FBI raided its headquarters in March 2022, as detailed below.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 217.**

**Q.    The FBI Raids the Debtor's Headquarters, and the Debtor and the Federal Government Enter into a Non-Prosecution Agreement**

218.    In September 2018—two years before the ESOP transaction closed—the federal government began secretly investigating whether the Debtor had fraudulently enrolled in the 8(a) and WOSB Programs. The investigation was prompted by the government's discovery that both the Debtor and OK2—two seemingly unaffiliated entities—were updating their company information in the government's contract procurement portal from the same computer in Fargo, North Dakota.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 218.**

219.    On November 4, 2020, the United States District Court for the District of North Dakota issued a search warrant ordering Microsoft to provide access to various email accounts associated with the Debtor, Fed Serve, and OK2, including Kyle Berg, Chad DuBois, Mandy Grant, Kenneth Kruk, and Osvaldo Cruz.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 219.**

220.    The government's investigation became public in March 2022. On March 1, 2022, the FBI obtained multiple search warrants from the United States District Court for the District of North Dakota relating to Kyle Berg, the Debtor, Chad DuBois, Razor, Fed Serve, MDM, OK2, and others. A true and correct copy of the search warrant relating to Kyle Berg is **Exhibit C** and is incorporated by reference into this Complaint.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 220.**

221.    Also in or around March 2022, the federal government obtained a grand jury subpoena directed at the Debtor relating to the Bergs' fraudulent scheme.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 221.**

222.    On March 3, 2022, FBI agents raided the Debtor's and MDM's offices and seized records and information covered by the search warrant.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 222.**

223.    About one year later, on February 27, 2023, the affidavits in support of the search warrants were unsealed, and several local news outlets ran stories about their contents. *See, e.g.*, https://www.kvrr.com/2023/02/28/documents-reveal-why-fbi-raided-west-fargo-businesses-last-march/.

**ANSWER:  Defendant admits that there is a news story about the Debtor in the referenced link, but otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 223.**

224.    Ultimately, on October 26, 2023, the Debtor entered into a Non-Prosecution Agreement with the United States Department of Justice's Antitrust Division and the United States Attorney's Office for the District of North Dakota (the "Non-Prosecution Agreement"). A true and

correct copy of the Non-Prosecution Agreement is attached as **Exhibit D** and incorporated by reference into this Complaint.

**ANSWER: Defendant admits that Exhibit D is what plaintiff purports it to be, refers to it as the exclusive source of its terms, and denies any allegations in paragraph 224 that are inconsistent with it. Defendant lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 224.**

225.    The Debtor's independent board members, Mark Kragnes and Jack Carroll, approved the Non-Prosecution Agreement.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 225.**

226.    Under the Non-Prosecution Agreement, the Debtor stipulated that it had violated federal criminal law—including 18 U.S.C. § 371 (Conspiracy to Commit Offense or to Defraud United States)—by fraudulently enrolling in the 8(a) and WOSB Programs and applying for associated Set-Aside Contracts.

**ANSWER: Defendant refers to the Non-Prosecution Agreement as the exclusive source of its terms, and denies any allegations inconsistent with it. Defendant lacks knowledge or information sufficient to form a belief about the truth of any other allegations in paragraph 226.**

227.    The Debtor further agreed to pay a $949,000 criminal penalty to the federal government. This amount represented the Debtor's 8(a) and WOSB profits *after* the ESOP transaction closed on August 31, 2020.

**ANSWER: Defendant admits that Exhibit D to the SAC indicates Debtor agreed to pay a penalty of $949,000. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 227.**

228.    As part of the Non-Prosecution Agreement, the Debtor stipulated and admitted to the following incriminating facts:

a.    "[T]he Company misrepresent[ed] its status and eligibility for certain government contracting programs set aside for socially or economically disadvantaged

individuals and/or women, amounting to approximately $70 million in federal contracts awarded to the Company from 2008 to 2020. This conduct occurred at the direction of [Kyle Berg and Connie Berg] who originally managed and owned the Company."

b.   "From 2008 through 2020 Pro-Mark, along with [Kyle Berg] and [Connie Berg] voluntarily and intentionally reached an agreement to defraud the United States, including through interfering with and obstructing in one of the United States' lawful government functions through false and fraudulent pretenses to obtain 8(a) and WOSB contracts to which they were not entitled, including by falsely claiming [Connie Berg] controlled Pro-Mark and therefore that Pro-Mark was qualified for such contracts, when Pro-Mark was not eligible to receive such contracts because it was controlled by [Kyle Berg]. Pro-Mark, through false representations made or directed by [Kyle Berg and Connie Berg] between 2008 and 2020, misrepresented its status and eligibility for those programs and set-aside contracts to the SBA and to the government agencies administering the relevant contracts."

c.   "Between 2008 and 2020, [Connie Berg] was held out as the President of Pro-Mark who ran and controlled the business, when in reality she did not control or manage Pro-Mark. She was not the decision-maker at Pro-Mark with regard to federal construction projects or one of its key officers or employees. She did not manage or work 40 hours per week for Pro-Mark. In sum, [Connie Berg] did not exercise strategic or day-to-day control over Pro-Mark and had no role in making operational decisions for the Company pertaining to its federal construction business. For example, she had no role in selecting, estimating, or structuring the

bids that Pro-Mark submitted for federal construction contracts, engaging in substantive discussions with the contracting officers responsible for awarding, evaluating, or overseeing bids or subsequent contracts, or in hiring or directing Company employees or subcontractors."

d.    "During that same period, [Kyle Berg], who is a non-disadvantaged man, was the individual in control of Pro-Mark who made or delegated all the strategic and day-to-day decisions concerning Pro-Mark and its federal construction business. From 2008 through 2020, Pro-Mark was not eligible for either the 8(a) or WOSB Programs because [Kyle Berg], not [Connie Berg], controlled and managed Pro-Mark. [Kyle Berg] selected which set- aside contracts Pro-Mark would bid on (including 8(a) and WOSB contracts), and he was extensively involved in structuring those bids, estimating their costs, and routinely directed the hiring of, activity, and work of Pro-Mark employees, subcontractors, and suppliers. Finally, he managed the Company's financials, including its bank accounts."

e.    "In August 2020, [Connie Berg] sold her entire ownership interest in Pro- Mark to Pro-Mark's employees via an ESOP for approximately $32 million. While [Connie Berg] was the sole owner of Pro-Mark on paper, [Kyle Berg] was the primary point of contact for all aspects of the ESOP transaction."

**ANSWER: Defendant admits that the quoted language is taken from stipulated facts within the Non-Prosecution Agreement. Defendant refers to the Non-Prosecution Agreement as the exclusive source of its terms, and denies any allegations inconsistent with it. Defendant lacks knowledge or information sufficient to form a belief about the truth of any other allegations in paragraph 228.**

229.    The Debtor and the federal government entered into the Non-Prosecution Agreement, in part, to help the Debtor preserve its business for the benefit of the ESOP Plan, the

ESOP Trust, and the Debtor's employees—who were innocent victims of the Bergs' fraud. The

Non-Prosecution Agreement provides, in pertinent part, as follows:

> "[A]t least in part because of circumstances arising from the Office's investigation, Pro-Mark was unable to continue to secure bonding, which is critical to performing federal construction contracts. A conviction or a deferred prosecution agreement likely would result in the Company's continued inability to secure bonding as well as potential suspension and debarment from federal contracting, which would likely result in substantial consequences to the Company's employees and customers. This Agreement may allow the Company to preserve its financial viability, remain a viable competitor in the federal construction market, and allow employees to access their retirement benefits which have not yet vested pursuant to the ESOP . . . ."

**ANSWER:  Defendant admits that the quoted language is taken from stipulated facts within the Non-Prosecution Agreement. Defendant refers to the Non-Prosecution Agreement as the exclusive source of its terms, and denies any allegations inconsistent with it. Defendant lacks knowledge or information sufficient to form a belief about the truth of any other allegations in paragraph 229.**

230.    Also in 2023, the SBA determined that the Debtor was not a qualifying small business. The Debtor appealed the size determination to SBA's Office of Hearing and Appeals ("OHA"), but OHA affirmed the decision. A true and correct copy of OHA's decision is attached as **Exhibit E** and incorporated by reference into this Complaint.

**ANSWER:  Defendant admits that Exhibit E is what plaintiff purports it to be, refers to it as the exclusive source of its terms, and denies any allegations in paragraph 230 that are inconsistent with it. Defendant lacks knowledge or information sufficient to form a belief about the truth of any other allegations in paragraph 230.**

R.    **The Debtor Files for Bankruptcy in April 2024**

231.    The public revelation of the Bergs' fraud from and after March 2022 had catastrophic impacts on the Debtor's business and the ESOP. These impacts were the natural,

foreseeable, and likely consequences of the Bergs' fraud, which they disregarded to benefit and enrich themselves.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 231.**

232.    The Debtor incurred millions of dollars in legal fees, professional fees, and other costs responding to the search warrant and grand jury subpoena, defending itself in connection with the federal investigation, seeking insurance coverage, negotiating the Non-Prosecution Agreement, paying the criminal fine, and implementing remedial measures.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 232.**

233.    After the public revelation, several key employees resigned, impairing the Debtor's ability to operate. The Debtor also had trouble hiring new and qualified employees.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 233.**

234.    After the public revelation, the Debtor lost its ability to secure bonding for its construction projects. Bonding is critical to performing federal construction contracts, and the Debtor's bonding company, Hartford Insurance, was unwilling to do business with the Debtor due to the federal investigation and fraud allegations. The Debtor also could not find a replacement bonding company. Without bonding, the Debtor lost millions of dollars of revenue and could not bid on many new projects.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 234.**

235.    Due to the loss of bonding, the Debtor also defaulted on several of its existing government contracts. These defaults impaired the Debtor's ability to obtain new government contracts because the Debtor had to disclose such defaults when it submitted new bids.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 235.**

236.    The public revelation also severely harmed the Debtor's reputation, including with the federal government, subcontractors, vendors, and other entities it conducted business with.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 236.**

237.    The Debtor also could not maintain its pre-ESOP revenue due to its ineligibility for the 8(a) and WOSB Programs, and the loss of its "small business" certification.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 237.**

238.    The Debtor was also encumbered with substantial debt obligations that it could never repay, including the CCU loan, obligations to the ESOP, and obligations to Connie Berg. The obligations to Connie Berg, in particular, impaired the Debtor's ability to obtain new bonding and financing. Bonding companies did not want to do business with the Debtor given that it owed millions of dollars to an individual, Connie Berg, who defrauded the federal government.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 238.**

239.    The value of the Debtor's stock plummeted, directly harming the ESOP and its participants.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 239.**

240.    Ultimately, the Debtor filed for bankruptcy in April 2024, reporting just $4.4 million in assets and more than $33.3 million in liabilities.

**ANSWER:  Defendant admits the allegations in paragraph 240.**

241.    The Debtor's insolvency and bankruptcy filing were foreseeable and inevitable consequences of the fraud and breaches of duty committed by the Defendants.

**ANSWER:  Defendant denies the allegations in paragraph 241 insofar as they are directed at him. Further responding, Defendant states that his conduct as ESOP trustee was undertaken with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent trustee acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and therefore denies any allegations to the contrary in paragraph 241. Defendant lacks knowledge or information sufficient to form a belief about the remaining allegations in paragraph 241 as they apply to defendants and individuals other than him.**

**COUNT 1**
**Breach of Fiduciary Duties (State Law)**
**Plaintiff: Erik A. Ahlgren, as Chapter 7 Trustee**
**Defendant: Connie Berg**

242.    All paragraphs in this Complaint are incorporated by reference.

**ANSWER:  Defendant incorporates by reference his responses to the preceding paragraphs.**

243.    Connie Berg, as the Debtor's president and director, owed fiduciary duties of care, loyalty, and good faith to the Debtor.

**ANSWER:   Defendant admits that when Connie Berg held officer and/or director positions with Pro-Mark, she owed certain duties to the company and its shareholder(s).**

244.    Connie Berg breached these fiduciary duties by, without limitation, (a) causing the Debtor to fraudulently enroll in the 8(a) and WOSB Programs; (b) causing the Debtor to fraudulently obtain Set-Aside Contracts to which the Debtor was not entitled; (c) conspiring with Kyle Berg other entities controlled by Kyle Berg to defraud the federal government, including Razor, Fed Serve, MDM, OK2, and the Tunheim entities; (d) in her capacity as officer, failing to inform the Debtor and the ESOP of the impropriety of the ESOP transaction and the Debtor's $6,272,060 equity distribution to herself and take action to protect the Debtor's interests; (e) causing the Debtor to enter into the ESOP transaction at an inflated valuation for above-market consideration; (f) causing the Debtor to redeem 37,683 shares of her stock in the Debtor at an inflated valuation; (g) causing the Debtor to incur about $11.9 million of secured debt to Bankers Trust to fund the ESOP consideration payable to herself; (h) concealing and failing to disclose in

connection with the ESOP transaction that a material amount of the Debtor's revenue was attributable to fraudulently obtained Set-Aside Contracts; and (i) personally participating in the ESOP transaction to enrich herself and Kyle Berg.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 244.**

245.    As a direct and proximate cause of Connie Berg's breaches of fiduciary duties, the Debtor has suffered damages in an amount to be determined at trial.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 245.**

246.    Additionally, Connie Berg's breaches of fiduciary duties were oppressive, fraudulent, and done with actual malice to enrich herself and Kyle Berg at the expense of the Debtor, its creditors, and its employees. Accordingly, pursuant to N.D. Cent. Code § 32-03.211(1), Plaintiff is entitled to recover exemplary damages from Connie Berg.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 246.**

## COUNT 2
### Breach of Fiduciary Duties (State Law)
### Plaintiff: Erik A. Ahlgren, as Chapter 7 Trustee
### Defendant: Kyle Berg

247.    All paragraphs in this Complaint are incorporated by reference.

**ANSWER:  Defendant incorporates by reference his responses to the preceding paragraphs.**

248.    At all relevant times, Kyle Berg exercised actual control over the Debtor, including over its operations, management, and finances. Kyle Berg exercised the principal functions of a corporate president.

**ANSWER:   Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 248.**

72

249.   By virtue of such control, Kyle Berg owed fiduciary duties of care, loyalty, and good faith to the Debtor pursuant to N.D. Cent. Code § 10-19.1-60.

**ANSWER:   Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 249.**

250.   Kyle Berg breached these fiduciary duties by, without limitation, (a) causing the Debtor to fraudulently enroll in the 8(a) and WOSB Programs; (b) causing the Debtor to fraudulently obtain Set-Aside Contracts to which the Debtor was not entitled; (c) conspiring with Connie Berg and other entities he controlled to defraud the federal government, including Razor, Fed Serve, MDM, OK2, and the Tunheim entities; (d) failing to inform the Debtor and the ESOP of the impropriety of the ESOP transaction and the Debtor's $6,272,060 equity distribution to Connie Berg and take action to protect the Debtor's interests; (e) causing the Debtor to enter into the ESOP transaction at an inflated valuation for above-market consideration; (f) causing the Debtor to redeem 37,683 shares of Connie Berg's stock in the Debtor at an inflated valuation; (g) causing the Debtor to incur about $11.9 million of secured debt to Bankers Trust to fund the ESOP consideration payable to Connie Berg; (h) concealing and failing to disclose in connection with the ESOP transaction that a material amount of the Debtor's revenue was attributable to fraudulently obtained Set-Aside Contracts; and (i) personally participating in the ESOP transaction with Connie Berg to enrich themselves.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 250.**

251.   As a direct and proximate cause of Kyle Berg's breaches of fiduciary duties, the Debtor has suffered damages in an amount to be determined at trial.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 251.**

252.     Additionally, Kyle Berg's breaches of fiduciary duties were oppressive, fraudulent, and done with actual malice to enrich himself and Connie Berg at the expense of the Debtor, its creditors, and its employees. Accordingly, pursuant to N.D. Cent. Code § 32-03.2-11(1), Plaintiff is entitled to recover exemplary damages from Kyle Berg.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 252.**

### COUNT 3
### Aiding and Abetting Breach of Fiduciary Duties (State Law)
### Plaintiff: Erik A. Ahlgren, as Chapter 7 Trustee
### Defendant: Kyle Berg

253.     All paragraphs in this Complaint are incorporated by reference.

**ANSWER:  Defendant incorporates by reference his responses to the preceding paragraphs.**

254.     As detailed in Count 2 above, Kyle Berg owed fiduciary duties of care, loyalty, and good faith to the Debtor, and he breached these duties.

**ANSWER:   Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 254.**

255.     Alternatively, if and to the extent that Kyle Berg is found not to have owed fiduciary duties to the Debtor, he is nonetheless liable for having aided and abetted Connie Berg's breaches of fiduciary duties as detailed in Count 1 above.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 255.**

256.     Kyle Berg had actual knowledge of the facts and circumstances alleged in support of Count 1 above and rendered substantial assistances to Connie Berg, thereby aiding and abetting her breaches of fiduciary duties to the Debtor.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 256.**

257.    As a direct and proximate cause of Kyle Berg aiding and abetting Connie Berg's

breaches of fiduciary duties, the Debtor has suffered damages in an amount to be determined at

trial.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 257.**

258.    Additionally, Kyle Berg's conduct was oppressive, fraudulent, and done with actual

malice to enrich himself and Connie Berg at the expense of the Debtor, its creditors, and its

employees. Accordingly, pursuant to N.D. Cent. Code § 32-03.2-11(1), Plaintiff is entitled to

recover exemplary damages from Kyle Berg.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 258.**

### COUNT 4
### Breach of Fiduciary Duties (State Law)
### Plaintiff: Erik A. Ahlgren, as Chapter 7 Trustee
### Defendant: Chad DuBois

259.    All paragraphs in this Complaint are incorporated by reference.

**ANSWER:  Defendant incorporates by reference his responses to the preceding paragraphs.**

260.    Chad DuBois, as the Debtor's Vice President and later President and director, owed

fiduciary duties of care, loyalty, and good faith to the Debtor.

**ANSWER:  Defendant admits that if and when Chad DuBois held officer and/or director positions with Pro-Mark, he owed certain duties to the company and its shareholder(s).**

261.    DuBois breached his fiduciary duties of care, loyalty, good faith by, without

limitation, (a) concealing and failing to disclose in connection with the ESOP transaction that a

material amount of the Debtor's revenue was attributable to fraudulently obtained Set-Aside

Contracts, (b) making false statements and material omissions in the Statement of Representation,

(c) permitting, causing, or allowing the Debtor to make the pre-closing equity distribution to

Connie Berg, (d) permitting, causing, or allowing the ESOP transaction and share redemption to

close; (e) permitting, causing, or allowing the Debtor to make the Redemption Note Payments and

Seller Note Payments (each as defined above) to Connie Berg, and (d) causing the Debtor to incur

the CCU loan and using proceeds to make Redemption Note Payments and Seller Note Payments

to Connie Berg.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 261.**

262.     As a direct and proximate cause of DuBois' breaches of fiduciary duties, the Debtor

has suffered damages in an amount to be determined at trial.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 262.**

## COUNT 5
## [INTENTIONALLY OMITTED]


## COUNT 6
## Breach of Contract
## Plaintiff: Erik A. Ahlgren, as Chapter 7 Trustee
## Defendant: Connie Berg

263.     On August 31, 2020, the Debtor, Connie Berg, and the ESOP Trust entered into the

ESOP Purchase Agreement, which was and is a binding and enforceable contract.

**ANSWER: Defendant states that no answer is required because the Court dismissed Count 6 with prejudice on May 1, 2025. (Doc. # 111 at 36-37.) To the extent paragraph 263 is deemed to contain allegations, Defendant admits that the ESOP Transaction closed on August 31, 2020, refers to the ESOP Purchase Agreement for its exclusive terms, and denies any allegations in paragraph 263 that are inconsistent with it.**

264.     In Section 3.2(g) of the ESOP Purchase Agreement, Connie Berg, in her individual

capacity as "Seller," made the following representation and warranty to the Debtor: [As of August

31, 2020, t]here is no claim, legal action, suit, arbitration, governmental investigation or other legal

76

or administrative proceeding, nor any order, decree or judgment, in progress, pending, in effect, or to the Knowledge of the Seller, threatened relating to this Agreement or the transactions contemplated by this Agreement, and the Seller does not know of any reason for, nor have any reason to be aware of, any basis for the same.

**ANSWER:  Defendant states that no answer is required because the Court dismissed Count 6 with prejudice on May 1, 2025. (Doc. # 111 at 36-37.) To the extent paragraph 264 is deemed to contain allegations, Defendant refers to the ESOP Purchase Agreement for its exclusive terms, and denies any allegations in paragraph 264 that are inconsistent with it.**

265.    This representation was false and, therefore, Connie Berg breached Section 3.2(g) of the ESOP Purchase Agreement. Specifically, a material amount of the Debtor's revenue was attributable to fraudulently obtained Set-Aside Contracts and the ESOP valuation was, therefore, inflated. These facts were a "basis" for various claims, legal actions, suits, arbitrations, government investigations, or other legal or administrative proceedings relating to the Debtor and the ESOP transaction, including breach of fiduciary duty claims, ERISA claims, investigations by the FBI, DOJ, and Department or Labor, and related claims and legal proceedings. By order dated May 1, 2025 [ECF No. 111], the Court dismissed Count 6. Plaintiff retains Count 6 in the Second Amended Complaint solely to preserve the issue for appeal.

**ANSWER:  Defendant states that no answer is required because the Court dismissed Count 6 with prejudice on May 1, 2025. (Doc. # 111 at 36-37.) To the extent paragraph 265 is deemed to contain allegations, they are denied.**

266.    Pursuant to N.D. Cent. Code § 10-19.1-01.2(7), the relevant knowledge or Connie Berg, Kyle Berg, and Chad DuBois is not imputed to the Debtor because each of them committed a fraud on the Debtor and/or consented to the commission of a fraud on the Debtor.

**ANSWER:  Defendant states that no answer is required because the Court dismissed Count 6 with prejudice on May 1, 2025. (Doc. # 111 at 36-37.) To the extent paragraph 266 is deemed to contain allegations, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 266.**

267.    But for Connie Berg's breach of Section 3.2(g) of the ESOP Purchase Agreement,

the Debtor would not have entered into and consummated the ESOP transaction.

**ANSWER:  Defendant states that no answer is required because the Court dismissed Count 6 with prejudice on May 1, 2025. (Doc. # 111 at 36-37.) To the extent Paragraph 267 is deemed to contain allegations, Defendant lacks knowledge or information sufficient to form a belief as to the truth about what would have occurred under the referenced hypothetical scenario.**

268.    As a direct and proximate result of Connie Berg's breach of contract, the Debtor

has suffered damages in amount to be proven at trial.

**ANSWER:  Defendant states that no answer is required because the Court dismissed Count 6 with prejudice on May 1, 2025. (Doc. # 111 at 36-37.) To the extent Paragraph 268 is deemed to contain allegations, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 268.**

269.    Additionally, pursuant to Section 8.1 of the ESOP Purchase Agreement, Plaintiff is

entitled to recover its costs and reasonable attorneys' fees.

**ANSWER:  Defendant states that no answer is required because the Court dismissed Count 6 with prejudice on May 1, 2025. (Doc. # 111 at 36-37.) To the extent Paragraph 269 is deemed to contain allegations, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 269.**

### COUNT 7
### Breach of Contract
### Plaintiff: Erik A. Ahlgren, as Chapter 7 Trustee
### Defendant: Connie Berg

270.    All paragraphs in this Complaint are incorporated by reference.

**ANSWER:  Defendant incorporates by reference his responses to the preceding paragraphs.**

271.    On August 31, 2020, the Debtor, Connie Berg, and the ESOP Trust entered into the

ESOP Modification Agreement, which was and is a binding and enforceable contract.

**ANSWER:   Defendant admits the allegations in paragraph 271.**

272.    In Section 6 of the ESOP Modification Agreement, Connie Berg, in her individual

capacity as "Lender," represented and warranted to the Debtor as follows: "[A]s of time of the

delivery to the Company of [Connie Berg's] Initial Seller/ESOP Loan Documents, . . . no default

or defaults have occurred with respect to the Initial Seller/ESOP Note[ or] the Initial Seller/ESOP

Loan Agreement . . . ."

**ANSWER:  Defendant admits that the quoted language is from section 6 of the ESOP Modification Agreement. Defendant refers to the ESOP Modification Agreement as the exclusive source of its terms, and denies any allegations inconsistent with it. Defendant lacks knowledge or information sufficient to form a belief about the truth of any other allegations in paragraph 272.**

273.    This representation was false because defaults had occurred with respect to the

Initial Seller/ESOP Loan Agreement. Therefore, Connie Berg breached Section 6 of the ESOP

Modification Agreement.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 273.**

274.    In Section 5.3(c) of the Initial Seller/ESOP Loan Agreement, Connie Berg made

the following representation and warranty to the ESOP Trust and Paredes, as trustee: "The

execution, delivery, and performance of this Agreement by the Seller does not and will not . . .

violate any law, regulation, judgment, or order applicable to the Seller."

**ANSWER:  Defendant admits that the quoted language is from section 5.3(c) of the Initial Seller/ESOP Loan Agreement. Defendant refers to the Initial Seller/ESOP Loan Agreement as the exclusive source of its terms, and denies any allegations inconsistent with it. Defendant lacks knowledge or information sufficient to form a belief about the truth of any other allegation in paragraph 274.**

275.    This representation and warranty was false because Connie Berg's execution,

delivery, and performance of the Initial Seller/ESOP Loan Agreement breached her fiduciary

duties under state law and ERISA, and the ESOP transaction was a prohibited transaction under

29 U.S.C. § 1106(a)(1)(A).

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 275.**

276.    Thus, a default had occurred under Section 5.3(c) of the Initial Seller/ESOP Loan

Agreement, which in turn constituted a breach of Connie Berg's representation in Section 6 of the

ESOP Modification Agreement.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 276.**

277.    Pursuant to N.D. Cent. Code § 10-19.1-01.2(7), the relevant knowledge of Connie

Berg, Kyle Berg, and Chad DuBois is not imputed to the Debtor because each of them committed

a fraud on the Debtor and/or consented to the commission of a fraud on the Debtor.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 277.**

278.    But for Connie Berg's false representation in Section 6 of the ESOP Modification

Agreement, the Debtor would not have entered into and consummated the ESOP transaction.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 278 as to what would have occurred under the referenced hypothetical scenario.**

279.    As a direct and proximate result of Connie Berg's breach of contract, the Debtor

has suffered damages in amount to be proven at trial.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 279.**

280.    Additionally, pursuant to Section 8 of the ESOP Modification Agreement, Plaintiff

is entitled to recover its costs and reasonable attorneys' fees.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 280.**

**COUNT 8**
**Actual Fraud**
**Plaintiff: Erik A. Ahlgren, as Chapter 7 Trustee**
**Defendant: Connie Berg**

281.    All paragraphs in this Complaint are incorporated by reference.

**ANSWER:  Defendant incorporates by reference his responses to the preceding paragraphs.**

282.    On August 31, 2020, the Debtor, Connie Berg, and the ESOP Trust entered into the ESOP Purchase Agreement and the ESOP Modification Agreement.

**ANSWER:   Defendant admits the allegations in paragraph 282.**

283.    In Section 3.2(g) of the ESOP Purchase Agreement, Connie Berg, in her individual capacity as "Seller," made the following representation and warranty to the Debtor:

> [As of August 31, 2020, t]here is no claim, legal action, suit, arbitration, governmental investigation or other legal or administrative proceeding, nor any order, decree or judgment, in progress, pending, in effect, or to the Knowledge of the Seller, threatened relating to this Agreement or the transactions contemplated by this Agreement, and the Seller does not know of any reason for, nor have any reason to be aware of, any basis for the same.

**ANSWER:   Defendant admits that the quoted language is from section 3.2(g) of the ESOP Purchase Agreement. Defendant refers to the ESOP Purchase Agreement as the exclusive source of its terms, and denies any allegations inconsistent with it. Defendant lacks knowledge or information sufficient to form a belief about the truth of any other allegation in paragraph 283.**

284.    In Section 6 of the ESOP Modification Agreement, Connie Berg, in her individual capacity as "Lender," made the following representation and warranty to the Debtor: "[A]s of time of the delivery to the Company of [Connie Berg's] Initial Seller/ESOP Loan Documents, . . . no default or defaults have occurred with respect to the Initial Seller/ESOP Note[ or] the Initial Seller/ESOP Loan Agreement . . . ."

81

**ANSWER:  Defendant admits that the quoted language is from section 6 of the ESOP Modification Agreement. Defendant refers to the ESOP Modification Agreement as the exclusive source of its terms, and denies any allegations inconsistent with it. Defendant lacks knowledge or information sufficient to form a belief about the truth of any other allegation in paragraph 284.**

285.    Connie Berg's representations to the Debtor were knowingly false and she omitted and suppressed material information.

**ANSWER:   Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 285.**

286.    In contravention of her representation in Section 3.2(g) of the ESOP Purchase Agreement, Connie Berg knew of numerous undisclosed facts that were a basis for claims, legal actions, suits, arbitrations, government investigations, and other legal or administrative proceedings relating to the Debtor and the ESOP transaction, including breach of fiduciary duty claims, ERISA claims, fraud claims, investigations by the FBI, DOJ, and Department or Labor, and related claims and legal proceedings. Without limitation, Connie Berg knew that a material amount of the Debtor's revenue was attributable to fraudulently obtained Set-Aside Contracts, the ESOP valuation was inflated, the Debtor was undisclosed criminal and civil liability, and the ESOP transaction was a prohibited transaction under ERISA.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 286.**

287.    In contravention of her representation in Section 6 of the ESOP Modification Agreement, Connie Berg knew that defaults had occurred with respect to the Initial Seller/ESOP Loan Agreement. Specifically, in Section 5.3(c) of the Initial Seller/ESOP Loan Agreement, Connie Berg made the following representation and warranty to the ESOP Trust and Paredes, as trustee: "The execution, delivery, and performance of this Agreement by the Seller does not and will not . . . violate any law, regulation, judgment, or order applicable to the Seller."

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 287.**

288.    But, as Connie Berg knew, this representation and warranty was false. Connie Berg's execution, delivery, and performance of the Initial Seller/ESOP Loan Agreement breached her fiduciary duties under state law and ERISA, and the ESOP transaction was a prohibited transaction under 29 U.S.C. § 1106(a)(1)(A). Thus, as Connie Berg knew, a default had occurred under Section 5.3(c) of the Initial Seller/ESOP Loan Agreement.

**ANSWER:  Defendant denies the allegations in paragraph 288 that the ESOP Transaction, or any aspect of it, was a prohibited transaction under ERISA section 406, 29 U.S.C. section 1106, and denies any allegations that he violated ERISA or otherwise committed any wrongdoing. Defendant lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 288.**

289.    In addition, in connection with the ESOP Purchase Agreement, the ESOP Modification Agreement, and other ESOP contracts between Connie Berg and the Debtor, and the negotiation thereof, Connie Berg omitted and failed to disclose to the Debtor the government contracting fraud, fraudulent revenue, and material undisclosed liabilities and legal risks related thereto.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 289.**

290.    Connie Berg made these false representations and material omissions to deceive and induce the Debtor to enter into the ESOP transaction, so she could monetize her equity interest at an inflated valuation and siphon millions of dollars to herself.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 290.**

291.    Pursuant to N.D. Cent. Code § 10-19.1-01.2(7), the relevant knowledge of Connie

Berg, Kyle Berg, and Chad DuBois is not imputed to the Debtor because each of them committed

a fraud on the Debtor and/or consented to the commission of a fraud on the Debtor.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 291.**

292.    The Debtor reasonably relied on Connie Berg's representations and omissions in

agreeing to and consummating the ESOP transaction.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 292.**

293.    Connie Berg's false representations and omissions amount to actual fraud, as

defined by N.D. Cent. Code § 9-03-08.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 293.**

294.    As a result of Connie Berg's actual fraud, the Debtor has suffered damages in

amount to be proven at trial.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 294.**

295.    Additionally, Connie Berg's actual fraud was oppressive, fraudulent, and done with

actual malice to enrich herself and Kyle Berg at the expense of the Debtor, its creditors, and its

employees. Accordingly, pursuant to N.D. Cent. Code § 32-03.2-11(1), Plaintiff is also entitled to

recover exemplary damages from Connie Berg.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 295.**

## COUNT 9
### Fraudulent Transfer (Actual Fraud)
### 11 U.S.C. § 544(b) and N.D. Cent. Code § 13-02.1-04(1)(a)
### Plaintiff: Erik A. Ahlgren, as Chapter 7 Trustee
### Defendants: Connie Berg, Kyle Berg, Connie Berg Trust, Kyle Berg Trust

296.    All paragraphs in this Complaint are incorporated by reference.

**ANSWER:  Defendant incorporates by reference responses to the preceding paragraphs.**

297.    On August 27, 2020, the Debtor made an equity distribution of $6,272,060 to

Connie Berg, paid in cash.

**ANSWER:  Defendant admits that Schedule 3.3(g)(v) of the Disclosure Schedules to the Stock Purchase Agreement state that the "Company made a distribution to the Seller on August 27, 2020 in the amount of $6,272,060, which is estimated to be an amount equal to the accumulative adjustment account of the Seller."**

298.    The Debtor made this equity distribution with actual intent to hinder, delay, or

defraud creditors. The transfer was an immediate precursor to, and part of, the ESOP transaction,

which the Bergs orchestrated to monetize Connie Berg's equity interest in the Debtor at a

knowingly inflated valuation. The Bergs acted to enrich themselves, while placing all risk on the

Debtor's creditors. By the time the federal government discovered their scheme to defraud SBA—

which was the natural outcome of their actions—the Bergs would have already depleted the Debtor

of substantial cash via the equity distribution and ESOP transaction. Creditors, meanwhile, would

be left holding the bag—which is exactly what happened.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 298.**

299.    The equity distribution had numerous badges of fraud. First, the transfer was or for

the benefit of insiders, Connie Berg and Kyle Berg. Second, the Bergs concealed material

information regarding the Debtor's assets, liabilities, and enterprise value. Third, the Debtor did

not receive reasonable equivalent value from Connie Berg. The transfer was simply a dividend on

account of Connie Berg's equity interest in the Debtor, and the Bergs' scheme to defraud the federal government and ESOP Trust negate any value she provided to the Debtor as its "owner." Fourth, the Debtor incurred substantial debt immediately after the transfer, including the secured debt to Bankers Trust, seller financing from Connie Berg, and the obligations to the ESOP Trust. Fifth, the transfer left the Debtor insolvent, unable to pay its debts when due, and/or with unreasonably small capital.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 299.**

300.    Connie Berg was the initial transferee of the equity distribution.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 300.**

301.    Kyle Berg, as Connie Berg's husband and the Debtor's *de facto* owner and true control person, was an intended beneficiary of the equity distribution. Additionally, on information and belief, Kyle Berg was an immediate transferee of some or all of the equity distribution from Connie Berg, and was not a good faith transferee for value.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 301.**

302.    On information and belief, the Connie Berg Trust and/or the Kyle Berg Trust were immediate or mediate transferees of some or all the equity distribution from Connie Berg and/or Kyle Berg, and were not good faith transferees for value.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 302.**

303.    As required by 11 U.S.C. § 544(b), the Debtor has creditors with allowed unsecured claims that arose before and/or after the Debtor made the equity distribution to Connie

Berg that could avoid such transfer, including, without limitation: Firelake Construction, Inc.

(Claim No. 1); M & K Porta Potties (Claim No. 2); Right Choice Electric Inc. (Claim No. 5);

LaCreek Development Corporation (Claim No. 14); and Steptoe LLP (Claim No. 16).

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 303.**

304.     Based on the foregoing, the Debtor's $6,272,060 equity distribution to Connie Berg

is avoidable under 11 U.S.C. § 544(b) and N.D. Cent. Code § 13-02.1-04(1)(a). Plaintiff may avoid

and recover the equity distribution from Connie Berg, Kyle Berg, the Connie Berg Trust, and/or

the Kyle Berg Trust.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 304.**

**COUNT 10**
**Fraudulent Transfer (Constructive Fraud)**
**11 U.S.C. § 544(b) and N.D. Cent. Code § 13-02.1-04(1)(b)**
**Plaintiff: Erik A. Ahlgren, as Chapter 7 Trustee**
**Defendants: Connie Berg, Kyle Berg, Connie Berg Trust, Kyle Berg Trust**

305.     All paragraphs in this Complaint are incorporated by reference.

**ANSWER:  Defendant incorporates by reference responses to the preceding Paragraphs.**

306.     On August 27, 2020, the Debtor made an equity distribution of $6,272,060 to

Connie Berg, paid in cash.

**ANSWER:  Defendant admits that Schedule 3.3(g)(v) of the Disclosure Schedules to the Stock Purchase Agreement state that the "Company made a distribution to the Seller on August 27, 2020 in the amount of $6,272,060, which is estimated to be an amount equal to the accumulative adjustment account of the Seller."**

307.     The Debtor did not receive reasonably equivalent value from Connie Berg. The

transfer was simply a dividend on account of her equity interest in the Debtor, and her scheme to

defraud the federal government and ESOP Trust negate any value she provided to the Debtor as its "owner."

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 307.**

308.    When the Debtor made the transfer, (a) it was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction or the debtor intended to incur and/or (b) believed or reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due. The transfer depleted the Debtor of substantial cash just four days before it incurred $11.9 million of secured debt to Banker Trust, millions of dollars of seller financing obligations to Connie Berg, and obligations to the ESOP Trust. As a result of the Bergs' fraudulent scheme, the Debtor also faced substantial undisclosed criminal and civil liability to the federal government and other liabilities and expenses.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 308.**

309.    Connie Berg was the initial transferee of the equity distribution.

**ANSWER:   Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 309.**

310.    Kyle Berg, as Connie Berg's husband and the Debtor's *de facto* owner and true control person, was an intended beneficiary of the equity distribution. Additionally, on information and belief, Kyle Berg was an immediate transferee of some or all of the equity distribution from Connie Berg.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 310.**

311.    On information and belief, the Connie Berg Trust and/or the Kyle Berg Trust were immediate or mediate transferees of some or all the equity distribution from Connie Berg and/or Kyle Berg, and were not good faith transferees for value.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 311.**

312.    As required by 11 U.S.C. § 544(b), the Debtor has creditors with allowed unsecured claims that arose before and/or after the Debtor made the equity distribution to Connie Berg that could avoid such transfer, including, without limitation: Firelake Construction, Inc. (Claim No. 1); M & K Porta Potties (Claim No. 2); Right Choice Electric Inc. (Claim No. 5); LaCreek Development Corporation (Claim No. 14); and Steptoe LLP (Claim No. 16).

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 312.**

313.    Based on the foregoing, the Debtor's $6,272,060 equity distribution to Connie Berg is avoidable under 11 U.S.C. § 544(b) and N.D. Cent. Code § 13-02.1-04(1)(b). Plaintiff may avoid and recover the equity distribution from Connie Berg, Kyle Berg, the Connie Berg Trust, and/or the Kyle Berg Trust.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 313.**

**COUNT 11**
**Fraudulent Transfer (Actual Fraud)**
**11 U.S.C. § 544(b) and N.D. Cent. Code § 13-02.1-04(1)(a)**
**Plaintiff: Erik A. Ahlgren, as Chapter 7 Trustee**
**Defendants: Connie Berg, Kyle Berg, Connie Berg Trust, Kyle Berg Trust**

314.    All paragraphs in this Complaint are incorporated by reference.

**ANSWER:  Defendant incorporates by reference his responses to the preceding paragraphs.**

315.    On August 31, 2020, the Debtor transferred $335,000 to the ESOP Trust as a plan contribution for the fiscal year ending 2019. The ESOP Trust then immediately transferred the $335,000 to Connie Berg as partial payment for her 62,317 shares of the Debtor's stock.

**ANSWER:   Defendant admits the allegations in paragraph 315.**

316.    The Debtor transferred $335,000 to the ESOP Trust with actual intent to hinder, delay, or defraud its creditors. The sole purpose of the transfer was to fund the ESOP Trust's acquisition of the Debtor's stock from Connie Berg, and the transfer amount was based on the Debtor's purported valuation of about $31.5 million. However, in authorizing and causing the transfer, the Bergs knew that the valuation was inflated because a material amount of the Debtor's revenue was attributable to fraudulently obtained Set-Aside Contracts. The Bergs orchestrated the transfer to enrich themselves, while placing all risk on the Debtor's creditors. By the time the federal government discovered their scheme to defraud SBA—which was the natural outcome of their actions—the Bergs would have already depleted the Debtor of cash via the equity distribution and the ESOP transaction. Creditors, meanwhile, would be left holding the bag—which is exactly what happened.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 316.**

317.    The transfer had numerous badges of fraud. First, the transfer was for the benefit of insiders, the Bergs. Second, the Bergs concealed material information regarding the Debtor's assets, liabilities, and enterprise value. Third, the Debtor did not receive reasonably equivalent value. Fourth, the Debtor incurred substantial debt immediately before and after the transfer, including the secured debt to Bankers Trust, seller financing from Connie Berg, and the obligations

to the ESOP Trust. Fifth, the transfer left the Debtor insolvent, unable to pay its debts when due, and/or with unreasonably small capital.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 317.**

318.   The ESOP Trust was the initial transferee of the transfer.

**ANSWER:   Defendant admits the allegations in paragraph 318.**

319.   Connie Berg was the immediate transferee from the ESOP Trust, and she was not a good faith transferee for value.

**ANSWER:   Defendant admits that Connie Berg received funds from the ESOP Trust pursuant to the ESOP Trust's obligation arising from the ESOP Transaction, as reflected in the transaction documents and flow of funds, denies that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 319.**

320.   On information and belief, Kyle Berg was an immediate transferee of some or all of the $335,000 transfer from Connie Berg, and he was not a good faith transferee for value.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 320.**

321.   On information and belief, the Connie Berg Trust and/or the Kyle Berg Trust were immediate or mediate transferees of some or all of the $335,000 transfer from Connie Berg and/or Kyle Berg, and were not good faith transferees for value.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 321.**

322.   As required by 11 U.S.C. § 544(b), the Debtor has creditors with allowed unsecured claims that arose before and/or after the Debtor made the transfer to the ESOP Trust that could avoid such transfer, including, without limitation: Firelake Construction, Inc. (Claim No. 1); M &

K Porta Potties (Claim No. 2); Right Choice Electric Inc. (Claim No. 5); LaCreek Development

Corporation (Claim No. 14); and Steptoe LLP (Claim No. 16).

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 322.**

323.     Based on the foregoing, the Debtor's $335,000 transfer to the ESOP Trust is

avoidable under 11 U.S.C. § 544(b) and N.D. Cent. Code § 13-02.1-04(1)(a). Plaintiff may avoid

the transfer and, pursuant to N.D. Cent. Code § 13-02.1-08(a)(2), recover it from Connie Berg,

Kyle Berg, the Connie Berg Trust, and/or the Kyle Berg Trust.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 323.**

**COUNT 12**
**Fraudulent Transfer (Actual Fraud)**
**11 U.S.C. § 544(b) and N.D. Cent. Code § 13-02.1-04(1)(a)**
**Plaintiff: Erik A. Ahlgren, as Chapter 7 Trustee**
**Defendants: Connie Berg, Kyle Berg, Connie Berg Trust, Kyle Berg Trust**

324.     All paragraphs in this Complaint are incorporated by reference.

**ANSWER:  Defendant incorporates by reference his responses to the preceding paragraphs.**

325.      On August 31, 2020, the Debtor transferred $200,000 to the ESOP Trust as a plan

contribution for the fiscal year ending 2020. The ESOP Trust then immediately transferred the

$200,000 to Connie Berg as partial payment for her 62,317 shares of the Debtor's stock.

**ANSWER:  Defendant admits the allegations in Paragraph 325.**

326.     The Debtor transferred $200,000 to the ESOP Trust with actual intent to hinder,

delay, or defraud its creditors. The sole purpose of the transfer was to fund the ESOP Trust's

acquisition of the Debtor's stock from Connie Berg, and the transfer amount was based on the

Debtor's purported valuation of about $31.5 million. However, in authorizing and causing the

transfer, the Bergs knew that the valuation was inflated because a material amount of the Debtor's

92

revenue was attributable to fraudulently obtained Set-Aside Contracts. The Bergs orchestrated the transfer to enrich themselves, while placing all risk on the Debtor's creditors. By the time the federal government discovered their scheme to defraud SBA—which was the natural outcome of their actions—the Bergs would have already cashed out Connie Berg's equity interest via the ESOP transaction. Creditors, meanwhile, would be left holding the bag—which is exactly what happened.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 326.**

327.     The transfer had numerous badges of fraud. First, the transfer was for the benefit of insiders, the Bergs. Second, the Bergs concealed material information regarding the Debtor's assets, liabilities, and enterprise value. Third, the Debtor did not receive reasonably equivalent value. Fourth, the Debtor incurred substantial debt immediately before and after the transfer, including the secured debt to Bankers Trust, seller financing from Connie Berg, and the obligations to the ESOP Trust. Fifth, the transfer left the Debtor insolvent, unable to pay its debts when due, and/or with unreasonably small capital.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient for form a belief as to the truth of the remaining allegations in paragraph 327.**

328.     The ESOP Trust was the initial transferee of the transfer.

**ANSWER:   Defendant admits the allegations in paragraph 328.**

329.     Connie Berg was the immediate transferee from the ESOP Trust, and she was not a good faith transferee for value.

**ANSWER: Defendant admits that Connie Berg received funds from the ESOP Trust pursuant to the ESOP Trust's obligation arising from the ESOP Transaction, as reflected in the transaction documents and flow of funds, denies any allegations that he violated ERISA**

or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 329.

330. On information and belief, Kyle Berg was an immediate transferee of some or all of the $200,000 transfer from Connie Berg. Further, he was not a good faith transferee for value.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 330.**

331. On information and belief, the Connie Berg Trust and/or the Kyle Berg Trust were immediate or mediate transferees of some or all of the $200,000 transfer from Connie Berg and/or Kyle Berg, and were not good faith transferees for value.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 331.**

332. As required by 11 U.S.C. § 544(b), the Debtor has creditors with allowed unsecured claims that arose before and/or after the Debtor made the transfer to the ESOP Trust that could avoid such transfer, including, without limitation: Firelake Construction, Inc. (Claim No. 1); M & K Porta Potties (Claim No. 2); Right Choice Electric Inc. (Claim No. 5); LaCreek Development Corporation (Claim No. 14); and Steptoe LLP (Claim No. 16).

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information as to the truth of the remaining allegations in paragraph 332.**

333. Based on the foregoing, the Debtor's $200,000 transfer to the ESOP Trust is avoidable under 11 U.S.C. § 544(b) and N.D. Cent. Code § 13-02.1-04(1)(a). Plaintiff may avoid the transfer and, pursuant to N.D. Cent. Code § 13-02.1-08(a)(2), recover it from Connie Berg, Kyle Berg, the Connie Berg Trust, and the Kyle Berg Trust.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information regarding the truth of the remaining allegations in paragraph 333.**

**COUNT 13**
**Fraudulent Transfer/Obligation (Actual Fraud)**
**11 U.S.C. § 544(b) and N.D. Cent. Code § 13-02.1-04(1)(a)**
**Plaintiff: Erik A. Ahlgren, as Chapter 7 Trustee**
**Defendants: Connie Berg, Kyle Berg, Connie Berg Trust, Kyle Berg Trust**

334.    All paragraphs in this Complaint are incorporated by reference.

**ANSWER:  Defendant incorporates by reference his responses to the preceding paragraphs.**

335.    On August 31, 2020, the Debtor "loaned" $8,479,246 to the ESOP Trust pursuant to the terms of the ESOP Purchase Agreement, the Initial Company/ESOP Loan Agreement, the Initial Company/ESOP, and the A&R Seller Note (collectively, the "Loan Documents"). The ESOP Trust then immediately transferred the $8,479,246 in cash to Connie Berg as partial payment for her 62,317 shares of the Debtor's stock.

**ANSWER:   Defendant admits that the Debtor loaned funds to the ESOP Trust pursuant to obligations arising from the ESOP Transaction, which was used to purchase shares of Debtor's stock from Connie Berg. Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 335.**

336.    The Debtor incurred the obligation to loan $8,479,246 to the ESOP Trust under the Loan Documents, and then transferred $8,479,246 to the ESOP Trust, with actual intent to hinder, delay, or defraud its creditors. The sole purpose for incurring the obligation and making the transfer was to fund the ESOP Trust's acquisition of the Debtor's stock from Connie Berg. The transfer amount was based on the Debtor's purported valuation of about $31.5 million. However, in authorizing and causing the Debtor to incur the obligation and make the transfer, the Bergs knew that this valuation was inflated because a material amount of the Debtor's revenue was attributable to fraudulently obtained Set-Aside Contracts. The Bergs orchestrated the obligation and transfer to enrich themselves, while placing all risk on the Debtor's creditors. By the time the federal government discovered their scheme to defraud SBA—which was the natural outcome of their actions—the Bergs would have already cashed out Connie Berg's equity interest via the ESOP

transaction. Creditors, meanwhile, would be left holding the bag—which is exactly what happened.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 336.**

337.    The obligation and transfer had numerous badges of fraud. First, they were for the benefit of insiders, Connie Berg and Kyle Berg. Second, the Bergs concealed material information regarding the Debtor's assets, liabilities, and enterprise value. Third, the Debtor did not receive reasonably equivalent value. Fourth, the Debtor incurred substantial debt immediately before and after incurring the obligation and making the transfer, including the secured debt to Bankers Trust, seller financing from Connie Berg, and the obligations to the ESOP Trust. Fifth, obligation and transfer left the Debtor insolvent, unable to pay its debts when due, and/or with unreasonably small capital.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 337.**

338.    The ESOP Trust was the initial obligee and transferee.

**ANSWER:  Defendant admits that pursuant to contractual obligations arising from the ESOP Transaction, the ESOP Trust received funds from the Debtor. Defendant denies the other allegations in paragraph 338.**

339.    Connie Berg was the immediate transferee of $8,479,246 from the ESOP Trust, and she was not a good faith transferee for value.

**ANSWER:  Defendant admits that Connie Berg received funds from the ESOP Trust pursuant to the ESOP Trust's obligation arising from the ESOP Transaction, as reflected in the transaction documents and flow of funds, denies that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 339.**

340.    On information and belief, Kyle Berg was an immediate transferee of some or all of the $8,479,249 transfer from Connie Berg, and he was not a good faith transferee for value.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 340.**

341.    On information and belief, the Connie Berg Trust and/or the Kyle Berg Trust were immediate or mediate transferees of some or all of the $8,479,246 transfer from Connie Berg and/or Kyle Berg, and were not good faith transferees for value.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 341.**

342.    As required by 11 U.S.C. § 544(b), the Debtor has creditors with allowed unsecured claims that arose before and/or after the Debtor incurred the obligation and made the transfer that could avoid them, including, without limitation: Firelake Construction, Inc. (Claim No. 1); M & K Porta Potties (Claim No. 2); Right Choice Electric Inc. (Claim No. 5); LaCreek Development Corporation (Claim No. 14); and Steptoe LLP (Claim No. 16).

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 342.**

343.    Based on the foregoing, the Debtor's obligation under the Loan Documents to transfer $8,479,246 to the ESOP Trust, and its subsequent transfer of $8,479,246 to the ESOP Trust, are avoidable under 11 U.S.C. § 544(b) and N.D. Cent. Code § 13-02.1-04(1)(a). Plaintiff may avoid such obligation and transfer and, pursuant to N.D. Cent. Code § 13-02.1-08(a)(2), recover the transfer from Connie Berg, Kyle Berg, the Connie Berg Trust, and/or the Kyle Berg Trust.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 343.**

### COUNT 14
**Fraudulent Transfers/Obligation (Actual Fraud)**
**11 U.S.C. § 544(b) and N.D. Cent. Code § 13-02.1-04(1)(a)**
**Plaintiff: Erik A. Ahlgren, as Chapter 7 Trustee**
**Defendants: Connie Berg, Kyle Berg, Connie Berg Trust, Kyle Berg Trust**

344.    All paragraphs in this Complaint are incorporated by reference.

**ANSWER:  Defendant incorporates by reference his responses to the preceding paragraphs.**

345.    On August 31, 2020, the Debtor executed the Redemption Note (as amended) and other related agreements and instruments in favor of Connie Berg and incurred an obligation thereunder to pay her $12,094,000 plus interest (the "Redemption Note Obligations"). From and after August 31, 2020, the Debtor then made periodic Redemption Note Payments (as defined above) to Connie Berg, as detailed in paragraph 213 above. The Debtor incurred the Redemption Note Obligations, and then made the Redemption Note Payments, with actual intent to hinder, delay, or defraud its creditors.

**ANSWER:   Defendant refers to the Redemption Note for its exclusive terms and denies any allegations in paragraph 345 inconsistent with it. Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 345.**

346.    The Debtor incurred the Redemption Note Obligations to purchase and redeem 37,683 shares of the Debtor's stock from Connie Berg as part of the ESOP transaction. However, the obligation amount was based on the Debtor's purported valuation of about $31.5 million, which Connie Berg knew was inflated because a material amount of the Debtor's revenue was attributable to fraudulently obtained Set-Aside Contracts. Connie Berg, with assistance from Kyle Berg, orchestrated the Redemption Note Obligations, and subsequent Redemption Note Payments, to enrich herself, while placing all risk on the Debtor's creditors. By the time the federal government

discovered their scheme to defraud SBA—which was the natural outcome of their actions—the Bergs would have already cashed out Connie Berg's equity interest via the ESOP transaction and received the Redemption Note Payments. Creditors, meanwhile, would be left holding the bag—which is exactly what happened.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 346.**

347.    The Redemption Note Obligations and Redemption Note Payments had numerous badges of fraud. First, they were to or for the benefit of insiders, Connie Berg and Kyle Berg. Second, the Bergs concealed material information regarding the Debtor's assets, liabilities, and enterprise value in connection with the Debtor's incurrence of the Redemption Note Obligations. Third, the Debtor did not receive reasonably equivalent value. The shares were worth materially less than $12,094,000. Fourth, the Debtor incurred substantial debt immediately before and after incurring the Redemption Note Obligations, including the secured debt to Bankers Trust, other seller financing from Connie Berg, and the obligations to the ESOP Trust. Fifth, Redemption Note Obligations and the Redemption Note Payments left the Debtor insolvent, unable to pay its debts when due, and/or with unreasonably small capital.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 347.**

348.    Connie Berg was the obligee of the Redemption Note Obligations and the initial transferee of the Redemption Note Payments.

**ANSWER: Defendant refers to the Redemption Note for its exclusive terms and denies any allegations in paragraph 348 inconsistent with it. Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 348.**

349.     On information and belief, Kyle Berg was an immediate transferee of some or all the Redemption Note Payments from Connie Berg, and he was not a good faith transferee for value.

**ANSWER:  Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 349.**

350.     On information and belief, the Connie Berg Trust and/or the Kyle Berg Trust were immediate or mediate transferees of some or all of the Redemption Note Payments from Connie Berg and/or Kyle Berg, and were not good faith transferees for value.

**ANSWER:  Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 350.**

351.     As required by 11 U.S.C. § 544(b), the Debtor has creditors with allowed unsecured claims that arose before and/or after the Debtor incurred the Redemption Note Obligations and made the Redemption Note Payments to Connie Berg that could avoid them, including, without limitation: Firelake Construction, Inc. (Claim No. 1); M & K Porta Potties (Claim No. 2); Right Choice Electric Inc. (Claim No. 5); LaCreek Development Corporation (Claim No. 14); and Steptoe LLP (Claim No. 16).

**ANSWER:  Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 351.**

352.     Based on the foregoing, the Redemption Note Obligations and each of the Redemption Note Payments are avoidable under 11 U.S.C. § 544(b) and N.D. Cent. Code § 13-02.1-04(1)(a). Plaintiff may avoid the Redemption Note Obligations and Redemption Note Payments and, pursuant to N.D. Cent. Code § 13-02.1-08(a)(2), recover the Redemption Note Payments from Connie Berg, Kyle Berg, the Connie Berg Trust, and/or the Kyle Berg Trust.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 352.**

## COUNT 15
### Fraudulent Transfers/Obligation (Actual Fraud)
### 11 U.S.C. § 544(b) and N.D. Cent. Code § 13-02.1-04(1)(a)
### Plaintiff: Erik A. Ahlgren, as Chapter 7 Trustee
### Defendants: Connie Berg, Kyle Berg, Connie Berg Trust, Kyle Berg Trust

353.    All paragraphs in this Complaint are incorporated by reference.

**ANSWER:  Defendant incorporates by reference his responses to the preceding paragraphs.**

354.    On August 31, 2020, the Debtor executed the A&R Seller Note (as amended) and other related agreements and instruments in favor of Connie Berg and incurred an obligation thereunder to pay her $10,985,754 plus interest (the "Seller Note Obligations"). From and after August 31, 2020, the Debtor then made periodic Seller Note Payments (as defined above) to Connie Berg, as detailed in paragraph 213 above. The Debtor incurred the Seller Note Obligations, and then made the Seller Note Payments, with actual intent to hinder, delay, or defraud its creditors.

**ANSWER:   Defendant refers to the A&R Seller Note for its exclusive terms and denies any allegations in paragraph 354 inconsistent with it. Defendant admits that certain payments were made pursuant to the A&R Seller Note. Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 354.**

355.    The Debtor incurred the Seller Note Obligations as part of the ESOP transaction. However, the obligation amount was based on the Debtor's purported valuation of about $31.5 million, which Connie Berg knew was inflated because a material amount of the Debtor's revenue was attributable to fraudulently obtained Set-Aside Contracts. Connie Berg, with assistance from Kyle Berg, orchestrated the Seller Note Obligations, and subsequent Seller Note Payments, to enrich herself, while placing all risk on the Debtor's creditors. By the time the federal government discovered their scheme to defraud SBA—which was the natural outcome of their actions—the

Bergs would have already cashed out Connie Berg's equity interest and received the Seller Note

Payments. Creditors, meanwhile, would be left holding the bag—which is exactly what happened.

**ANSWER:  Defendant admits that the Seller Note Obligations arose in the context of the ESOP Transaction. Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 355.**

356.    The Seller Note Obligations and Seller Note Payments had numerous badges of

fraud. First, they were to or for the benefit of insiders, Connie Berg and Kyle Berg. Second, the

Bergs concealed material information regarding the Debtor's assets, liabilities, and enterprise

value in connection with the Debtor's incurrence of the Seller Note Obligations. Third, the Debtor

did not receive reasonably equivalent value. Fourth, the Debtor incurred substantial debt

immediately before and after incurring the Seller Note Obligations, including the secured debt to

Bankers Trust, other seller financing from Connie Berg, and the obligations to the ESOP Trust.

Fifth, the Seller Note Obligations and the Seller Note Payments left the Debtor insolvent, unable

to pay its debts when due, and/or with unreasonably small capital.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 356.**

357.    Connie Berg was the obligee of the Seller Note Obligations and the initial transferee

of the Seller Note Payments.

**ANSWER:  Defendant refers to the A&R Seller Note for its exclusive terms and denies any allegations in paragraph 357 inconsistent with it. Defendant admits that certain payments were made pursuant to the A&R Seller Note. Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 357.**

358.    On information and belief, Kyle Berg was an immediate transferee of some or all

the Seller Note Payments from Connie Berg, and he was not a good faith transferee for value.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 358.**

359.    On information and belief, the Connie Berg Trust and/or the Kyle Berg Trust were immediate or mediate transferees of some or all of the Seller Note Payments from Connie Berg and/or Kyle Berg, and were not good faith transferees for value.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 359.**

360.    As required by 11 U.S.C. § 544(b), the Debtor has creditors with allowed unsecured claims that arose before and/or after the Debtor incurred the Seller Note Obligations and made the Seller Note Payments to Connie Berg that could avoid them, including, without limitation: Firelake Construction, Inc. (Claim No. 1); M & K Porta Potties (Claim No. 2); Right Choice Electric Inc. (Claim No. 5); LaCreek Development Corporation (Claim No. 14); and Steptoe LLP (Claim No. 16).

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 360.**

361.    Based on the foregoing, the Seller Note Obligations and each of the Seller Note Payments are avoidable under 11 U.S.C. § 544(b) and N.D. Cent. Code § 13-02.1-04(1)(a). Plaintiff may avoid the Seller Note Obligations and Seller Note Payments and, pursuant to N.D. Cent. Code § 13-02.1-08(a)(2), recover the Seller Note Payments from Connie Berg, Kyle Berg, the Connie Berg Trust, and the Kyle Berg Trust.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 361.**

**COUNT 16**
**Fraudulent Transfer (Constructive Fraud)**

**11 U.S.C. § 544(b) and N.D. Cent. Code § 13-02.1-04(1)(b)**
**Plaintiff: Erik A. Ahlgren, as Chapter 7 Trustee**
**Defendants: Connie Berg, Kyle Berg, Connie Berg Trust, Kyle Berg Trust**

362.    All paragraphs in this Complaint are incorporated by reference.

**ANSWER:  Defendant incorporates by reference his responses to the preceding paragraphs.**

363.    On August 31, 2020, the Debtor transferred $335,000 to the ESOP Trust as a plan contribution for the fiscal year ending 2019. The ESOP Trust then immediately transferred the $335,000 to Connie Berg as partial payment for her 62,317 shares of the Debtor's stock.

**ANSWER:   Defendant admits the allegations in paragraph 363.**

364.    The Debtor did not receive reasonably equivalent value from the ESOP Trust.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 364.**

365.    When the Debtor made the transfer, (a) it was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction or the debtor intended to incur and/or (b) believed or reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due. The transfer depleted the Debtor of cash at the same time that the Debtor transferred millions of dollars to the ESOP Trust to pay Connie Berg for stock in the Debtor, made a $6.2 million equity distribution to Connie Berg, incurred $11.9 million of secured debt to Banker Trust, incurred millions of dollars of seller financing obligations to Connie Berg, and incurred other obligations to the ESOP Trust. As a result of the Bergs' fraudulent scheme, the Debtor also faced substantial undisclosed criminal and civil liability to the federal government and other liabilities and expenses.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 365.**

366.    The ESOP Trust was the initial transferee of the transfer.

**ANSWER:  Defendant admits the allegations in paragraph 366.**

367.    Connie Berg was the immediate transferee from the ESOP Trust, and she was not a good faith transferee for value.

**ANSWER:  Defendant admits that Connie Berg received funds from the ESOP Trust pursuant to the ESOP Trust's obligation arising from the ESOP Transaction, as reflected in the transaction documents and flow of funds, denies that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 367.**

368.    On information and belief, Kyle Berg was an immediate transferee of some or all of the $335,000 transfer from Connie Berg. Further, he was not a good faith transferee for value.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 368.**

369.    On information and belief, the Connie Berg Trust and/or the Kyle Berg Trust were immediate or mediate transferees of some or all of the $335,000 transfer from Connie Berg and/or Kyle Berg, and were not good faith transferees for value.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 369.**

370.    As required by 11 U.S.C. § 544(b), the Debtor has creditors with allowed unsecured claims that arose before and/or after the Debtor made the transfer to the ESOP Trust that could avoid such transfer, including, without limitation: Firelake Construction, Inc. (Claim No. 1); M & K Porta Potties (Claim No. 2); Right Choice Electric Inc. (Claim No. 5); LaCreek Development Corporation (Claim No. 14); and Steptoe LLP (Claim No. 16).

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 370.**

371.    Based on the foregoing, the Debtor's $335,000 transfer to the ESOP Trust is avoidable under 11 U.S.C. § 544(b) and N.D. Cent. Code § 13-02.1-04(1)(b). Plaintiff may avoid the transfer and, pursuant to N.D. Cent. Code § 13-02.1-08(a)(2), recover it from Connie Berg, Kyle Berg, the Connie Berg Trust, and the Kyle Berg Trust.

**ANSWER:  Defendant denies the allegations in paragraph 371.**

**COUNT 17**
**Fraudulent Transfer (Constructive Fraud)**
**11 U.S.C. § 544(b) and N.D. Cent. Code § 13-02.1-04(1)(b)**
**Plaintiff: Erik A. Ahlgren, as Chapter 7 Trustee**
**Defendants: Connie Berg, Kyle Berg, Connie Berg Trust, Kyle Berg Trust**

372.    All paragraphs in this Complaint are incorporated by reference.

**ANSWER:  Defendant incorporates by reference his responses to the preceding paragraphs.**

373.    On August 31, 2020, the Debtor transferred $200,000 to the ESOP Trust as a plan contribution for the fiscal year ending 2020. The ESOP Trust then immediately transferred the $200,000 to Connie Berg as partial payment for her 62,317 shares of the Debtor's stock.

**ANSWER:  Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing. Defendant admits that the Debtor transferred $200,000 to the Trust to use to purchase some of Connie Berg's shares in the Debtor. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 373.**

374.    The Debtor did not receive reasonably equivalent value from the ESOP Trust.

**ANSWER:  Defendant denies the allegations in paragraph 374.**

375.    When the Debtor made the transfer, (a) it was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction or the debtor intended to incur and/or (b) believed or reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due. The transfer depleted the Debtor of cash at the same time that the Debtor transferred millions of dollars to the ESOP Trust to pay Connie Berg for her stock in the Debtor,

made a $6.2 million equity distribution to Connie Berg, incurred $11.9 million of secured debt to

Banker Trust, incurred millions of dollars of seller financing obligations to Connie Berg, and

incurred other obligations to the ESOP Trust. As a result of the Bergs' fraudulent scheme, the

Debtor also faced substantial undisclosed criminal and civil liability to the federal government and

other liabilities and expenses.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 375.**

376.    The ESOP Trust was the initial transferee of the transfer.

**ANSWER:  Defendant admits the allegations in paragraph 376.**

377.    Connie Berg was the immediate transferee from the ESOP Trust, and she was not

a good faith transferee for value.

**ANSWER:  Defendant admits that Connie Berg received funds from the ESOP Trust pursuant to the ESOP Trust's obligation arising from the ESOP Transaction, as reflected in the transaction documents and flow of funds, denies that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 377.**

378.    On information and belief, Kyle Berg was an immediate transferee of some or all

of the $200,000 transfer from Connie Berg. Further, he was not a good faith transferee for value.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 378.**

379.    On information and belief, the Connie Berg Trust and/or the Kyle Berg Trust were

immediate or mediate transferees or some or all of the $200,000 transfer from Connie Berg and/or

Kyle Berg, and were not good faith transferees for value.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 379.**

380.    As required by 11 U.S.C. § 544(b), the Debtor has creditors with allowed unsecured claims that arose before and/or after the Debtor made the transfer to the ESOP Trust that could avoid such transfer, including, without limitation: Firelake Construction, Inc. (Claim No. 1); M & K Porta Potties (Claim No. 2); Right Choice Electric Inc. (Claim No. 5); LaCreek Development Corporation (Claim No. 14); and Steptoe LLP (Claim No. 16).

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 380.**

381.    Based on the foregoing, the Debtor's $200,000 transfer to the ESOP Trust is avoidable under 11 U.S.C. § 544(b) and N.D. Cent. Code § 13-02.1-04(1)(b). Plaintiff may avoid the transfer and, pursuant to N.D. Cent. Code § 13-02.1-08(a)(2), recover it from Connie Berg, Kyle Berg, the Connie Berg Trust, and the Kyle Berg Trust.

**ANSWER:   Defendant denies the allegations in paragraph 381.**

### COUNT 18
### Fraudulent Transfer/Obligation (Constructive Fraud)
### 11 U.S.C. § 544(b) and N.D. Cent. Code § 13-02.1-04(1)(b)
### Plaintiff: Erik A. Ahlgren, as Chapter 7 Trustee
### Defendants: Connie Berg, Kyle Berg, Connie Berg Trust, Kyle Berg Trust

382.    All paragraphs in this Complaint are incorporated by reference.

**ANSWER:  Defendant incorporates by reference his responses to the preceding paragraphs.**

383.    On August 31, 2020, the Debtor "loaned" $8,479,246 to the ESOP Trust pursuant to the terms of the ESOP Purchase Agreement, the Initial Company/ESOP Loan Agreement, the Initial Company/ESOP, and the A&R Seller Note (collectively, the "Loan Documents"). The ESOP Trust then immediately transferred the $8,479,246 in cash to Connie Berg as partial payment for her 62,317 shares of the Debtor's stock.

**ANSWER:   Defendant refers to the documents and instruments referenced in paragraph 383 for their exclusive terms and denies any allegations in paragraph 383 inconsistent with them.**

384. The Debtor incurred the obligation to loan $8,479,246 to the ESOP Trust under the Loan Documents, and then transferred $8,479,246 to the ESOP Trust, but did not receive reasonably equivalent value in return from the ESOP Trust.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing. Defendant denies the other allegations in paragraph 384.**

385. When the Debtor incurred the obligation and made the transfer, (a) it was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction or the debtor intended to incur and/or (b) believed or reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due. The transfer depleted the Debtor of cash at the same time that the Debtor transferred substantial funds to the ESOP Trust to pay Connie Berg for her stock in the Debtor, made a $6.2 million equity distribution to Connie Berg, incurred $11.9 million of secured debt to Banker Trust, incurred millions of dollars of seller financing obligations to Connie Berg, and incurred other obligations to the ESOP Trust. As a result of the Bergs' fraudulent scheme, the Debtor also faced substantial undisclosed criminal and civil liability to the federal government and other liabilities and expenses.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 385.**

386. The ESOP Trust was the initial obligee and transferee.

**ANSWER: Defendant admits that pursuant to contractual obligations arising from the ESOP Transaction, the ESOP Trust received funds from the Debtor, denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 386.**

387. Connie Berg was the immediate transferee of $8,479,246 from the ESOP Trust, and she was not a good faith transferee for value.

**ANSWER: Defendant admits that Connie Berg received funds from the ESOP Trust pursuant to the ESOP Trust's obligation arising from the ESOP Transaction, as reflected in the transaction documents and flow of funds, denies that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 387.**

388.    On information and belief, Kyle Berg was an immediate transferee of some or all of the $8,479,246 transfer from Connie Berg, and he was not a good faith transferee for value.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 388.**

389.    On information and belief, the Connie Berg Trust and/or the Kyle Berg Trust were immediate or mediate transferees of some or all of the $8,479,246 transfer from Connie Berg and/or Kyle Berg, and were not good faith transferees for value.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 389.**

390.    As required by 11 U.S.C. § 544(b), the Debtor has creditors with allowed unsecured claims that arose before and/or after the Debtor incurred the obligation and made the transfer that could avoid them, including, without limitation: Firelake Construction, Inc. (Claim No. 1); M & K Porta Potties (Claim No. 2); Right Choice Electric Inc. (Claim No. 5); LaCreek Development Corporation (Claim No. 14); and Steptoe LLP (Claim No. 16).

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 390.**

391.    Based on the foregoing, the Debtor's obligation under the Loan Documents to transfer $8,479,246 to the ESOP Trust, and its subsequent transfer of $8,479,246 to the ESOP Trust, are avoidable under 11 U.S.C. § 544(b) and N.D. Cent. Code § 13-02.1-04(1)(b). Plaintiff may avoid such obligation and transfer and, pursuant to N.D. Cent. Code § 13-02.1-08(a)(2),

recover the transfer from Connie Berg, Kyle Berg, the Connie Berg Trust, and/or the Kyle Berg Trust.

**ANSWER:   Defendant denies the allegations in paragraph 391.**

### COUNT 19
**Fraudulent Transfers/Obligation (Constructive Fraud)**
**11 U.S.C. § 544(b) and N.D. Cent. Code § 13-02.1-04(1)(b)**
**Plaintiff: Erik A. Ahlgren, as Chapter 7 Trustee**
**Defendants: Connie Berg, Kyle Berg, Connie Berg Trust, Kyle Berg Trust**

392.    All paragraphs in this Complaint are incorporated by reference.

**ANSWER:  Defendant incorporates by reference his responses to the preceding paragraphs.**

393.    On August 31, 2020, the Debtor incurred the Redemption Note Obligations (as defined above) in favor of Connie Berg. From and after August 31, 2020, the Debtor then made periodic Redemption Note Payments (as defined above) to Connie Berg, as detailed in paragraph 213 above.

**ANSWER:   Defendant admits that the Debtor transferred funds to Connie Berg pursuant to the Redemption Note, refers to the Redemption Note for its exclusive terms and denies any allegations in paragraph 393 inconsistent with it, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 393.**

394.    The Debtor incurred the Redemption Note Obligations, and then made each of the Redemption Note Payments, but did not receive reasonably equivalent value from Connie Berg. The Debtor incurred the Redemption Note Obligations and made the Redemption Note Payments to purchase and redeem 37,683 shares of the Debtor's stock from Connie Berg. But the shares were worth a fraction of that amount. The share valuation was inflated because a material amount of the Debtor's revenue was attributable to fraudulently obtained Set-Aside Contracts.

**ANSWER:   Defendant refers to the Redemption Note for its exclusive terms, and denies all allegations inconsistent with them, denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 394.**

395.    When the Debtor incurred the Redemption Note Obligations and then made each of the Redemption Note Payments, (a) it was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction or the debtor intended to incur and/or (b) believed or reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due. The Debtor incurred the obligations at the same time that it transferred substantial funds to the ESOP Trust to pay Connie Berg for her remaining stock in the Debtor, made a $6.2 million equity distribution to Connie Berg, incurred $11.9 million of secured debt to Banker Trust, incurred millions of dollars of other seller financing obligations to Connie Berg, and incurred other obligations to the ESOP Trust. As a result of the Bergs' fraudulent scheme, the Debtor also faced substantial undisclosed criminal and civil liability to the federal government and other liabilities and expenses.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 395.**

396.    Connie Berg is the obligee of the Redemption Note Obligations and the initial transferee of the Redemption Note Payments.

**ANSWER: Defendant admits that Connie Berg received payments pursuant to the Redemption Note, and lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 396.**

397.    On information and belief, Kyle Berg was an immediate transferee of some or all the Redemption Note Payments from Connie Berg, and he was not a good faith transferee for value.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 397.**

398.    On information and belief, the Connie Berg Trust and/or the Kyle Berg Trust were immediate or mediate transferees of some or all of the Redemption Note Payments from Connie Berg and/or Kyle Berg, and were not good faith transferees for value.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 398.**

399.    As required by 11 U.S.C. § 544(b), the Debtor has creditors with allowed unsecured claims that arose before and/or after the Debtor incurred the Redemption Note Obligations and made the Redemption Note Payments to Connie Berg that could avoid them, including, without limitation: Firelake Construction, Inc. (Claim No. 1); M & K Porta Potties (Claim No. 2); Right Choice Electric Inc. (Claim No. 5); LaCreek Development Corporation (Claim No. 14); and Steptoe LLP (Claim No. 16).

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 399.**

400.    Based on the foregoing, the Redemption Note Obligations and each of the Redemption Note Payments are avoidable under 11 U.S.C. § 544(b) and N.D. Cent. Code § 13-02.1-04(1)(b). Plaintiff may avoid the Redemption Note Obligations and Redemption Note Obligation Payments and, pursuant to N.D. Cent. Code § 13-02.1-08(a)(2), recover the Redemption Note Payments from Connie Berg, Kyle Berg, the Connie Berg Trust, and/or the Kyle Berg Trust.

**ANSWER:   Defendant denies the allegations in paragraph 400.**

**COUNT 20**
**Fraudulent Transfers/Obligation (Constructive Fraud)**
**11 U.S.C. § 544(b) and N.D. Cent. Code § 13-02.1-04(1)(b)**
**Plaintiff: Erik A. Ahlgren, as Chapter 7 Trustee**
**Defendants: Connie Berg, Kyle Berg, Connie Berg Trust, Kyle Berg Trust**

401.    All paragraphs in this Complaint are incorporated by reference.

**ANSWER:  Defendant incorporates by reference his responses to the preceding paragraphs.**

402.    On August 31, 2020, the Debtor incurred the Seller Note Obligations (as defined above) in favor of Connie Berg. From and after August 31, 2020, the Debtor then made periodic Seller Note Payments (as defined above) to Connie Berg, as detailed in paragraph 213 above.

**ANSWER:  Defendant refers to the Seller Note for its exclusive terms and denies any allegations in paragraph 402 inconsistent with it, and incorporates his response to paragraph 213, admits that the Debtor made payments pursuant to the Seller Note, and lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 402.**

403.    The Debtor incurred the Seller Note Obligations, and then made each of the Seller Note Payments, but did not receive reasonably equivalent value from Connie Berg. The Debtor incurred the Seller Note Obligations and made the Seller Note Payments in connection with the ESOP Trust's purchase of 62,317 shares of the Debtor's stock from Connie Berg. But the shares were worth a fraction of that amount. The share valuation was inflated because a material amount of the Debtor's revenue was attributable to fraudulently obtained Set-Aside Contracts.

**ANSWER:  Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 403.**

404.    When the Debtor incurred the Seller Note Obligations and then made each of the Seller Note Payments, (a) it was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction or the debtor intended to incur and/or (b) believed or reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due. The Debtor incurred the obligations at the same time that it transferred substantial funds to the ESOP Trust to pay Connie Berg for her remaining stock in the Debtor, made a $6.2 million equity distribution to Connie Berg, incurred $11.9 million of secured debt to Banker Trust, incurred

millions of dollars of other seller financing obligations to Connie Berg, and incurred other

obligations to the ESOP Trust. As a result of the Bergs' fraudulent scheme, the Debtor also faced

substantial undisclosed criminal and civil liability to the federal government and other liabilities

and expenses.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 404.**

405.    Connie Berg was the obligee of the Seller Note Obligations and the initial transferee

of the Seller Note Payments.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and admits the remaining allegations in paragraph 405.**

406.    On information and belief, Kyle Berg was an immediate transferee of some or all

the Seller Note Payments from Connie Berg, and he was not a good faith transferee for value.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 406.**

407.    On information and belief, the Connie Berg Trust and/or the Kyle Berg Trust were

immediate or mediate transferees of some or all of the Seller Note Payments from Connie Berg

and/or Kyle Berg, and were not good faith transferees for value.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 407.**

408.    As required by 11 U.S.C. § 544(b), the Debtor has creditors with allowed unsecured

claims that arose before and/or after the Debtor incurred the Seller Note Obligations and made the

Seller Note Payments to Connie Berg that could avoid them, including, without limitation: Firelake

Construction, Inc. (Claim No. 1); M & K Porta Potties (Claim No. 2); Right Choice Electric Inc.

(Claim No. 5); LaCreek Development Corporation (Claim No. 14); and Steptoe LLP (Claim No.

16).

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 408.**

409.    Based on the foregoing, the Seller Note Obligation and each of the Seller Note

Payments are avoidable under 11 U.S.C. § 544(b) and N.D. Cent. Code § 13-02.1-04(1)(b).

Plaintiff may avoid the Seller Note Obligations and Seller Note Payments and, pursuant to N.D.

Cent. Code § 13-02.1-08(a)(2), recover the Seller Note Payments from Connie Berg, Kyle Berg,

the Connie Berg Trust, and/or the Kyle Berg Trust.

**ANSWER:   Defendant denies the allegations in paragraph 409.**

### COUNT 21
### Breach of Fiduciary Duty (ERISA)
### 11 U.S.C. § 704(a)(11) and 29 U.S.C. §§ 1104, 1106, 1109, 1132
### Plaintiff: Erik A. Ahlgren, as ESOP Plan Administrator and as ESOP Trustee
### Defendant: Miguel Paredes

410.    All paragraphs in this Complaint are incorporated by reference, except the

paragraphs comprising Counts 25-28.

**ANSWER:   Defendant incorporates by reference his responses to the preceding paragraphs.**

411.    Plaintiff is the Administrator of the ESOP Plan and ESOP Trustee of the ESOP

Trust. As a plan fiduciary, Plaintiff has statutory standing to bring this civil action pursuant to 11

U.S.C. § 704(a)(11) and 29 U.S.C. § 1132(a)(2), (3).

**ANSWER:   Defendant lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's alleged capacity to bring suit under ERISA, and denies the remaining allegations in paragraph 411.**

412.    Under 29 U.S.C. § 1104(a)(1)(B), a fiduciary of an ERISA plan must discharge his

or her duties "with the care, skill, prudence, and diligence under the circumstances then prevailing

that a prudent man acting in a like capacity and familiar with such matters would use in the conduct

of an enterprise of a like character and with like aims."

**ANSWER:  Defendant admits that paragraph 412 purports to quote ERISA section 404, 29 U.S.C. section 1104. Defendant refers to ERISA section 404, 29 U.S.C. section 1104, for its exclusive terms and denies any allegations in paragraph 412 inconsistent with it.**

413.    Under 29 U.S.C. §§ 1106(a)(1)(A), (D) and 1108(b)(17)(A), "[a] fiduciary with

respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know

that such transaction constitutes a direct or indirect . . . (A) sale or exchange, or leasing, of any

property between the plan and a party in interest [or] . . . (D) transfer to, or use by or for the benefit

of a party in interest, of any assets of the plan," unless "in connection with such transaction the

plan receives no less, nor pays no more, than adequate consideration." "Adequate consideration"

is defined as "the fair market value of the asset as determined in good faith by the trustee or named

fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the

Secretary." 11 U.S.C. § 1002(18).

**ANSWER:  Defendant admits that paragraph 413 purports to quote ERISA section 406, 29 U.S.C. section 1106. Defendant refers to ERISA section 406, 29 U.S.C. section 1106, for its exclusive terms and denies any allegations in paragraph 413 inconsistent with it.**

414.    At all relevant times, Paredes was trustee of the ESOP Trust and, therefore, a plan

fiduciary.

**ANSWER:  Defendant admits that he was the ESOP Trustee from about May 21, 2020 to on or about January 18, 2022 and an ERISA fiduciary during that time period. Defendant denies any other allegations in paragraph 414.**

415.    Paredes breached his duties under 29 U.S.C. §§ 1104(a)(1)(B) and 1106(a)(1)(A),

(D) by causing the ESOP Trust to enter into a prohibited transaction with Connie Berg.

**ANSWER: Defendant denies the allegations in paragraph 415. Further responding, Defendant states that no response is required to the allegations concerning ERISA section 406(a)(1)(D) because the Court dismissed that claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Doc. 103; *see also* Second Amended Complaint at 84, n.2.)**

416.    First, Connie Berg was a party in interest with respect to the ESOP Plan and ESOP Trust because she owned more than 10% of the Debtor and was an employee, officer, and director of the Debtor. *See* 29 U.S.C. § 1002(14)(A), (H).

**ANSWER:  Defendant refers to 29 U.S.C. section 1002 for its exclusive terms and denies any allegations in paragraph 416 inconsistent with it. Defendant denies the other allegations in paragraph 416.**

417.    Second, Paredes caused the ESOP Plan and ESOP Trust to enter into a transaction with Connie Berg covered by 29 U.S.C. § 1106(a)(1)(A) and (D). Specifically, the ESOP Trust purchased the Debtor's stock from Connie Berg.

**ANSWER:  Defendant denies the allegations in paragraph 417.**

418.    Third, the ESOP Plan and ESOP Trust paid more than "adequate consideration" to Connie Berg in exchange for the Debtor's stock. The shares were substantially overvalued because a material amount of the Debtor's revenue was attributable to fraudulently obtained Set-Aside Contracts, and the Debtor faced substantial undisclosed liabilities relating to the fraud.

**ANSWER:  Defendant denies the allegations in paragraph 418.**

419.    Fourth, Paredes did not determine the fair market value of the Debtor's stock in good faith and a hypothetical prudent fiduciary would not have closed the ESOP transaction on the same terms, if at all. The Debtor's business substantially involved bidding on government contracts and there were significant red flags regarding the Debtor's qualifications for those government contracts. Had Paredes conducted even basic due diligence and retained appropriate advisors, he would have discovered that it did not actually qualify for the 8(a) and WOSB Programs, was not a small business, received thousands of Set-Aside Contracts to which it was not entitled, could not sustain its revenue, and faced substantial undisclosed liabilities relating to the Bergs' fraud. As a result, the ESOP paid substantially more than Debtor's stock was actually worth.

**ANSWER:  Defendant denies the allegations in paragraph 419.**

420.    As a result of the Paredes' breaches of fiduciary duties—including, without limitation, causing or permitting the ESOP Plan and ESOP Trust to enter into a prohibited transaction—Plaintiff is entitled to recover damages, restitution, disgorgement, and other relief in accordance with 29 U.S.C. § 1109(a), in amount(s) to be determined at trial.

**ANSWER:  Defendant denies the allegations in paragraph 420.**

421.    Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff is also entitled to recover reasonable attorneys' fees and costs.

**ANSWER:  Defendant denies the allegations in paragraph 421.**

**COUNT 22**
**Breach of Fiduciary Duty (ERISA)**
**11 U.S.C. § 704(a)(11) and 29 U.S.C. §§ 1104, 1106, 1109, 1132**
**Plaintiff: Erik A. Ahlgren, as ESOP Plan Administrator and as ESOP Trustee**
**Defendants: Connie Berg and Kyle Berg**

422.    All paragraphs in this Complaint are incorporated by reference.

**ANSWER:  Defendant incorporates by reference his responses to the preceding paragraphs.**

423.    Plaintiff is the Administrator of the ESOP Plan and ESOP Trustee of the ESOP Trust. As a plan fiduciary, Plaintiff has standing to bring this civil action pursuant to 11 U.S.C. § 704(a)(11) and 29 U.S.C. § 1132(a)(2), (3).

**ANSWER:   Defendant lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's alleged capacity to bring suit under ERISA, and denies the remaining allegations in paragraph 423.**

424.    Under 29 U.S.C. § 1104(a)(1)(B), a fiduciary of an ERISA plan must discharge his or her duties "solely in the interest if the participants and beneficiaries" and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

**ANSWER:  Defendant refers to ERISA section 404, 29 U.S.C. section 1104, for its exclusive terms and denies any allegations in paragraph 424 inconsistent with it. Defendant admits that paragraph 412 purports to quote ERISA section 404, 29 U.S.C. section 1104. Defendant denies all other allegations in paragraph 424.**

425.    Additionally, an ERISA fiduciary has a duty to ensure that the plan does not engage in a prohibited transaction under 29 U.S.C. § 1106.

**ANSWER:  Defendant refers to ERISA section 406, 29 U.S.C. section 1106, for its exclusive terms and denies any allegations in paragraph 425 inconsistent with it. Defendant admits that paragraph 425 purports to quote ERISA section 406, 29 U.S.C. section 1106. Defendant denies all other allegations in paragraph 425.**

426.    Additionally, those who appoint ERISA plan fiduciaries have an ongoing fiduciary duty under ERISA to monitor the activities of their appointees.

**ANSWER:  Defendant admits that ERISA imposes a duty to monitor an appointed fiduciary under certain situations. Defendant denies all other allegations in paragraph 426.**

427.    At all relevant times, Connie Berg was a fiduciary of the ESOP Plan and ESOP Trust because she exercised authority and/or control over the management of the ESOP Plan ESOP Trust and over the management and disposition of the ESOP Plan's and ESOP Trust's assets. The Debtor served as the plan administrator, and she was the Debtor's sole shareholder, director, and president. Together with Kyle Berg, she also proposed the ESOP transaction and its structure, and appointed Paredes as trustee of the ESOP Trust.

**ANSWER:  Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 427.**

428.    At all relevant times, Kyle Berg was also a fiduciary of the ESOP Plan and ESOP Trust because he likewise exercised authority and/or control over the management of the ESOP Plan and ESOP Trust and over the management and disposition of the ESOP Plan's and ESOP Trust's assets. Although Connie Berg was the Debtor's sole shareholder, director, and president on paper, Kyle Berg actually managed and controlled the Debtor, which served as the plan

administrator. Together with Connie Berg, he proposed the ESOP transaction and its structure, and orchestrated the appointment of Paredes as trustee of the ESOP Trust.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 428.**

429.    Connie Berg and Kyle Berg breached their fiduciary duties of loyalty, care, skill, prudence, diligence, and monitoring to the ESOP Plan and ESOP Trust by allowing the ESOP transaction to close, even though they knew that (a) the Debtor's shares were substantially overvalued, (b) the ESOP paid more than adequate consideration in the transaction, and (c) the ESOP transaction was a prohibited transaction under 29 U.S.C. § 1106. The Bergs never disclosed during the ESOP negotiations that a material portion of the Debtor's revenue was attributable to fraudulently obtained Set-Aside Contracts. The Bergs also failed to adequately monitor Paredes. The Bergs could have stopped the ESOP transaction or ensured that the ESOP paid no more than adequate consideration but concealed the truth to enrich themselves.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 429.**

430.    Because the Bergs breached their fiduciary duties of loyalty, care, skill, prudence, diligence, and monitoring, Plaintiff is entitled to recover damages, restitution, disgorgement, and other relief in accordance with 29 U.S.C. § 1109(a), in amount(s) to be determined at trial.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 430.**

431.    Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff is also entitled to recover reasonable attorneys' fees and costs.

**ANSWER:  Defendant denies the allegations in paragraph 431.**

**COUNT 23**
**Breach of Fiduciary Duty (ERISA)**
**11 U.S.C. § 704(a)(11) and 29 U.S.C. §§ 1105, 1109, 1132**
**Plaintiff: Erik A. Ahlgren, as ESOP Plan Administrator and ESOP Trustee**
**Defendants: Connie Berg and Kyle Berg**

432.    All paragraphs in this Complaint are incorporated by reference.

**ANSWER:  Defendant incorporates by reference his responses to the preceding paragraphs.**

433.    Plaintiff is the Administrator of the ESOP Plan and ESOP Trustee of the ESOP Trust. As a plan fiduciary, Plaintiff has standing to bring this civil action pursuant to 11 U.S.C. § 704(a)(11) and 29 U.S.C. § 1132(a)(2), (3).

**ANSWER:   Defendant lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's alleged capacity to bring suit under ERISA, and denies the remaining allegations in paragraph 433.**

434.    As detailed above in Count 21, Paredes breached his fiduciary duties under ERISA by causing the ESOP Trust to enter into a prohibited transaction in violation of 29 U.S.C. § 1106.

**ANSWER:  Defendant incorporates his responses to the allegations in Count 21. Defendant denies the allegations in paragraph 434.**

435.    Under 29 U.S.C. § 1105(a), "a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

**ANSWER:   Defendant refers to ERISA section 405, 29 U.S.C. section 1105, for its exclusive terms and denies any allegations in paragraph 435 inconsistent with it. Defendant admits that paragraph 435 purports to quote ERISA section 405, 29 U.S.C. section 1105. Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and**

**lacks knowledge or information sufficient to form a belief as to the truth of the other allegations in paragraph 435.**

436.    At all relevant times, Connie Berg was a fiduciary of the ESOP Plan and ESOP Trust because she exercised authority and/or control over the management of the ESOP Plan and ESOP Trust and over the management and disposition of the ESOP Plan's and ESOP Trust's assets. The Debtor served as the plan administrator, and she was the Debtor's sole shareholder, director, and president. Together with Kyle Berg, she also proposed the ESOP transaction and its structure, and appointed Paredes as trustee of the ESOP Trust.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 436.**

437.    At all relevant times, Kyle Berg was also a fiduciary of the ESOP Plan and ESOP Trust because he likewise exercised authority and/or control over the management of the ESOP Plan and ESOP Trust and over the management and disposition of the ESOP Plan's and ESOP Trust's assets. Although Connie Berg was the Debtor's sole shareholder, director, and president on paper, Kyle Berg actually managed and controlled the Debtor, which served as the plan administrator. Together with Connie Berg, he proposed the ESOP transaction and its structure, and orchestrated the appointment of Paredes as trustee of the ESOP Trust.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 437.**

438.    Pursuant to 29 U.S.C. § 1105(a), Connie Berg and Kyle Berg, each as a co-fiduciary of Paredes, are liable for Paredes' breaches of fiduciary duties.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief as to the truth of the other allegations in paragraph 438.**

439.    First, the Bergs knowingly participated in and concealed the fact that Paredes caused the ESOP Trust to enter into a prohibited transaction. The Bergs knew, but concealed, that the ESOP transaction price was inflated and that the ESOP Trust did not receive adequate consideration.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief as to the truth of the other allegations in paragraph 439.**

440.    Second, the Bergs breached their duties of loyalty and monitoring, and those breaches enabled Paredes to breach his own fiduciary duties. The Bergs could have stopped the ESOP transaction or ensured that the ESOP Trust received adequate consideration, but concealed the truth and failed to monitor Paredes to enrich themselves.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief as to the truth of the other allegations in paragraph 440.**

441.    Third, the Bergs had actual knowledge that Paredes was breaching his fiduciary duties by causing the ESOP Trust to enter into a prohibited transaction, but did nothing to remedy the breach. Instead, they permitted and concealed the breach.

**ANSWER:   Defendant denies the allegations in paragraph 441.**

442.    Based on the foregoing, Plaintiff is entitled to recover from the Bergs damages, restitution, disgorgement, and other relief in accordance with 29 U.S.C. § 1109(a), in amount(s) to be determined at trial.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 442.**

443.    Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff is also entitled to recover reasonable attorneys' fees and costs.

**ANSWER:  Defendant denies the allegations in paragraph 443.**

## COUNT 24
### Prohibited Transaction / Non-Fiduciary (ERISA)
### 11 U.S.C. § 704(a)(11) and 29 U.S.C. §§ 1106, 1132
### Plaintiff: Erik A. Ahlgren, as ESOP Plan Administrator and as ESOP Trustee
### Defendants: Connie Berg and Kyle Berg

444.    All paragraphs in this Complaint are incorporated by reference.

**ANSWER:  Defendant incorporates by reference his responses to the preceding paragraphs.**

445.    Plaintiff is the Administrator of the ESOP Plan and ESOP Trustee of the ESOP
Trust. As a plan fiduciary, Plaintiff has standing to bring this civil action pursuant to 11 U.S.C. §
704(a)(11) and 29 U.S.C. § 1132(a)(3).

**ANSWER:   Defendant lacks knowledge or information sufficient to form a belief as to the
truth of Plaintiff's alleged capacity to bring suit under ERISA, and denies the remaining
allegations in paragraph 445.**

446.    As detailed above in Counts 22 and 23, the Bergs were plan fiduciaries, they are
liable for their own breaches of fiduciary duties under ERISA, and they are liable for Paredes'
breaches of fiduciary duties under ERISA as his co-fiduciaries.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise
committed any wrongdoing, and lacks knowledge or information sufficient to form a belief
about the truth of the remaining allegations in paragraph 446.**

447.    Alternatively, if and to the extent that the Bergs were not plan fiduciaries, they are
liable for restitution and disgorgement for knowingly participating in Paredes' breaches of
fiduciary duties under ERISA.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise
committed any wrongdoing, and lacks knowledge or information sufficient to form a belief
about the truth of the remaining allegations in paragraph 447.**

448.    As detailed above in Count 21, Paredes breached his fiduciary duties under ERISA
by causing the ESOP Trust to enter into a prohibited transaction in violation of 29 U.S.C. § 1106.

**ANSWER: Defendant incorporates his responses to the allegations in Count 21. Further responding, Defendant denies the allegations in paragraph 448.**

449.    Under 29 U.S.C. § 1132(a)(5), Plaintiff may seek restitution and disgorgement from a non-fiduciary who knowingly participates in a fiduciary's breach of fiduciary responsibility. *See Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000).

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 449.**

450.    The Bergs, if and to the extent they were not plan fiduciaries, knowingly participated in Paredes' breaches of fiduciary duties. The Bergs knew that the ESOP transaction price was inflated, that the ESOP Trust did not receive adequate consideration, and that the transaction was prohibited. But they concealed these facts to enrich themselves. From the ESOP transaction, the Bergs received a windfall, including a $6,272,060 equity distribution from the Debtor, $9,014,246 in cash from the ESOP Trust when the ESOP transaction closed, the Seller Note Payments, the Reimbursement Note Payments, and additional consideration.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 450.**

451.    Based on the foregoing, all funds received by the Bergs in connection with their knowing participation is subject to a constructive trust and Plaintiff is entitled to restitution and disgorgement. As detailed above, or on information and belief, all such funds were deposited into Connie Berg's UBS Berg Account.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 450.**

452.    Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff is also entitled to recover reasonable attorneys' fees and costs.

**ANSWER:  Defendant denies the allegations in paragraph 452.**

## COUNT 25
### Actual Fraud
### Plaintiff: Erik A. Ahlgren, as ESOP Plan Administrator and as ESOP Trustee
### Defendant: Connie Berg

453.    All paragraphs in this Complaint are incorporated by reference, except paragraphs 164-179 and the paragraphs comprising Count 21.

**ANSWER:  Defendant incorporates by reference his responses to the preceding paragraphs.**

454.    Plaintiff, in his capacities as Administrator of the ESOP Plan and ESOP Trustee of the ESOP Trust, has standing to bring this claim on behalf of the ESOP Plan and ESOP Trust.

**ANSWER:   Defendant lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's alleged capacity to bring suit under ERISA, and denies the remaining allegations in paragraph 454.**

455.    As detailed above, Connie Berg's representations to the ESOP Trust in Sections 3.2(g), 3.3(g)(i), 3.3(g)(ii), 3.3(g)(iii), 3.3(g)(v), 3.3(h), 3.3(j), 3.3(m), 3.3(o) of ESOP Purchase Agreement, Section 5.3(c) of the Initial Seller/ESOP Loan Agreement, and Section 6(d) of the ESOP Modification Agreement were knowingly false and she omitted and suppressed material information.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 455.**

456.    In addition, in connection with the ESOP Purchase Agreement, the ESOP Modification Agreement, and other ESOP contracts, and the negotiation thereof, Connie Berg omitted and failed to disclose to the ESOP Trust and the ESOP Plan the Debtor's government contracting fraud, fraudulent revenue, and material undisclosed liabilities and legal risks related thereto.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 456.**

457.    Connie Berg made these false representations and omissions to deceive and induce the ESOP Trust and the ESOP Plan to enter into the ESOP transaction, so she could monetize her equity interest in the Debtor at an inflated valuation and siphon millions of dollars to herself.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 457.**

458.    The ESOP Plan and ESOP Trust reasonably relied on Connie Berg's representations in agreeing to and consummating the ESOP transaction.

**ANSWER:  Defendant admits the allegations in paragraph 458.**

459.    Connie Berg's false representations and omissions amount to actual fraud, as defined by N.D. Cent. Code § 9-03-08.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 459.**

460.    As a result of Connie Berg's actual fraud, the ESOP Plan and ESOP Trust have suffered damages in amount to be proven at trial.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 460.**

461.    Additionally, Connie Berg's actual fraud was oppressive, fraudulent, and done with actual malice to enrich herself and Kyle Berg at the expense of the ESOP and its beneficiaries. Accordingly, pursuant to N.D. Cent. Code § 32-03.2-11(1), the ESOP Plan and ESOP Trust are also entitled to recover exemplary damages from Connie Berg.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 461.**

## COUNT 26
### Aiding and Abetting Actual Fraud
### Plaintiff: Erik A. Ahlgren, as ESOP Plan Administrator and as ESOP Trustee
### Defendant: Kyle Berg

462.    All paragraphs in this Complaint are incorporated by reference, except paragraphs 164-179 and the paragraphs comprising Count 21.

**ANSWER:  Defendant incorporates by reference his responses to the preceding paragraphs.**

463.    Plaintiff, in his capacities as Administrator of the ESOP Plan and ESOP Trustee of the ESOP Trust, has standing to bring this claim on behalf of the ESOP Plan and ESOP Trust.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's alleged capacity to bring suit under ERISA, and denies the remaining allegations in paragraph 463.**

464.    As detailed above in Count 25, Connie Berg committed and is liable to the ESOP Trust and ESOP Plan for actual fraud.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 464.**

465.    Kyle Berg aided and abetted Connie Berg's actual fraud because he had knowledge of it and provided substantial assistance. Without limitation, Kyle Berg (a) controlled and managed all aspects of the Debtor's business; (b) orchestrated the scheme to defraud SBA; (c) proposed and orchestrated the ESOP transaction and its structure to enrich himself and Connie Berg; (d) directed the appointment of Paredes as trustee of the ESOP Trust; (e) served as primary point of contact for all aspects of the ESOP transaction, including due diligence; (f) negotiated the relevant ESOP contracts, including the ESOP Purchase Agreement, the Initial Seller/ESOP Loan Agreement, and the ESOP Modification Agreement, and (g) conspired with Connie Berg to make

misrepresentations to the ESOP Trust and the ESOP Plan and omit material information in the

relevant contracts and during negotiations.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 465.**

466.    As a result of Kyle Berg aiding and abetting Connie Berg's actual fraud, the ESOP

Trust and ESOP Plan have suffered damages in amount to be proven at trial.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 466.**

467.    Additionally, Kyle Berg's conduct was oppressive, fraudulent, and done with

actual malice to enrich himself and Connie Berg at the expense of the ESOP and its beneficiaries.

Accordingly, pursuant to N.D. Cent. Code § 32-03.2-11(1), Plaintiff is entitled to recover

exemplary damages from Kyle Berg.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 467.**

**COUNT 27**
**Deceit**
**Plaintiff: Erik A. Ahlgren, as ESOP Plan Administrator and ESOP Trustee**
**Defendant: Chad DuBois**

468.    All paragraphs in this Complaint are incorporated by reference, except paragraphs

164-179 and the paragraphs comprising Count 21.

**ANSWER:  Defendant incorporates by reference his responses to the preceding paragraphs.**

469.    Plaintiff, in his capacities as Administrator of the ESOP Plan and ESOP Trustee of

the ESOP Trust, has standing to bring this claim on behalf of the ESOP Plan and ESOP Trust.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's alleged capacity to bring suit under ERISA, and denies the remaining allegations in paragraph 469.**

470.    As detailed above, Chad DuBois' representations in the Statement of Representation were knowingly false and he omitted and suppressed material information.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 470.**

471.    DuBois made these false representations and omissions to deceive and induce the ESOP Trust to enter into the ESOP transaction. He knew that Stout would be relying on his representations to render an opinion that the ESOP transaction was for adequate consideration, which Paredes, as trustee, and the ESOP Trust would, in turn, rely on to approve and consummate the ESOP transaction.

**ANSWER:  Defendant admits that Mr. Dubois knew that both he and Stout would be relying on his representations, and that such reliance was reasonable. Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 471.**

472.    Stout, Paredes, the ESOP Trust, and the ESOP Plan reasonably relied on Chad DuBois' misrepresentations and omissions.

**ANSWER: Defendant admits that he, Stout, the ESOP Trust, and the ESOP Plan all reasonably relied on Mr. Dubois' representations, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 472.**

473.    Chad DuBois's false representations and omissions amount to deceit, as defined within N.D. Cent. Code, Ch. 9-10.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 473.**

474.    As a result of Chad DuBois' deceit, the ESOP Plan and ESOP Trust have suffered damages in amount to be proven at trial.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 474.**

### COUNT 28
### North Dakota Securities Fraud
### N.D. Cent. Code §§ 10-04-15, 10-04-17
### Plaintiff: Erik A. Ahlgren, as Chapter 7 Trustee,
### as ESOP Plan Administrator, and as ESOP Trustee
### Defendants: Connie Berg, Kyle Berg, and Chad DuBois

475.    All paragraphs in this Complaint are incorporated by reference, except paragraphs 164-179 and the paragraphs comprising Count 21.

**ANSWER: Defendant incorporates by reference his responses to the preceding paragraphs, including his responses to paragraphs 164-179 and Count 21.**

476.    Plaintiff, in his capacities as Administrator of the ESOP Plan and ESOP Trustee of the ESOP Trust, has standing to bring this claim on behalf of the ESOP Plan and ESOP Trust. Additionally, Plaintiff, in his capacity as Trustee, has standing to bring this claim on behalf of the Debtor.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's alleged capacity to bring suit under ERISA, and denies the remaining allegations in paragraph 476.**

477.    N.D. Cent. Code § 10-04-15(2) provides as follows: It shall be a fraudulent practice and it shall be unlawful: . . .For any person, in connection with the offer, sale, or purchase of any security, directly or indirectly, to: Employ any device, scheme, or artifice to defraud; Make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading; or Engage in any act, practice, or course of business which operates or would operate as a fraud or deception upon purchasers or the public.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 477.**

478.     Connie Berg breached N.D. Cent. Code § 10-04-15(2) in connection with her sales

of (a) 62,317 shares of the Debtor's stock to the ESOP Trust and ESOP Plan and (b) 37,683 shares

of the Debtor's stock back to the Debtor for redemption.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 478.**

479.     Acting in concert with Kyle Berg, Connie Berg made numerous untrue statements

of material fact to the Debtor, the ESOP Plan, and the ESOP Trust, or omitted to state numerous

material facts necessary to make her statements not misleading. Among other things, Connie Berg

and Kyle Berg never disclosed or affirmatively concealed that (a) millions of dollars of the

Debtor's historical revenue and profits were attributable to their fraud on the federal government;

(b) the Debtor had fraudulently enrolled in the 8(a) and WOSB Programs and was not a qualifying

small business; (c) the Debtor had been fraudulently awarded thousands of Set-Aside Contracts,

totaling millions of dollars; (d) the Debtor received fraudulent revenue from Razor, Fed Serve,

MDM, OK2, and other entities affiliated with or controlled by Kyle Berg; (e) the Debtor could not

sustain its revenue; (f) the Debtor faced substantial undisclosed civil and criminal liability due to

the Bergs' fraud on SBA; and (g) the Debtor's $31,559,000 valuation for the ESOP transaction was

materially inflated.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 479.**

480.     Additionally, Connie Berg's representations to the ESOP Trust and/or the Debtor

in Sections 3.2(g), 3.3(g)(i), 3.3(g)(ii), 3.3(g)(iii), 3.3(g)(v), 3.3(h), 3.3(j), 3.3(m), 3.3(o) of ESOP

Purchase Agreement, Section 5.3(c) of the Initial Seller/ESOP Loan Agreement, and Section 6(d)

of the ESOP Modification Agreement were knowingly false, misleading, and/or omitted material

information.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 480.**

481.    Connie Berg and Kyle Berg defrauded and deceived the ESOP Trust, ESOP Plan,

and the Debtor in connection with her sales of the Debtor's stock. They employed a scheme to

defraud the ESOP Trust, ESOP Plan, and the Debtor in order to enrich themselves.

**ANSWER: Defendant denies any allegations that he violated ERISA or otherwise committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 481.**

482.    Pursuant to N.D. Cent. Code § 10-19.1-01.2(7), the relevant knowledge of Connie

Berg, Kyle Berg, and Chad DuBois is not imputed to the Debtor because each of them committed

a fraud on the Debtor and/or consented to the commission of a fraud on the Debtor.

**ANSWER: Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 482.**

483.    Pursuant to N.D. Cent. Code § 10-04-17(1), Plaintiff, in his capacities as Trustee,

Administrator, and ESOP Trustee, hereby tenders to Connie Berg 100,000 shares of the Debtor's

stock.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's alleged capacity to take action as Administrator and ESOP Trustee. Defendant admits Plaintiff alleges he purports to tender to Connie Berg 100,000 shares of the Debtor's stock.**

484.    Based on Connie Berg's breaches of N.D. Cent. Code § 10-04-15(2) and the

foregoing tender offer, Plaintiff is entitled to recover from Connie Berg the full amount that the

ESOP Trust, the ESOP Plan, and the Debtor paid to her for 100,000 shares of the Debtor's stock,

together with all taxable court costs, interest as provided in N.D. Cent. Code § 10-04-17(1)(b), and reasonable attorney's fees.

**ANSWER: Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 484.**

485.    Pursuant to N.D. Cent. Code § 10-04-17(1) and (6)(b), Kyle Berg and Chad DuBois are jointly and severally liable with and to the same effect as Connie Berg. Kyle Berg was an agent for Connie Berg and participated or aided her in making the stock sales to the ESOP Trust, the ESOP Plan, and the Debtor. Additionally, Kyle Berg was associated with Connie Berg and materially aided her in her conduct giving rise to the liability. Finally, DuBois was and is associated with Connie Berg and Kyle Berg, and materially aided one or both of them in their conduct giving rise to the liability.

**ANSWER: Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 485.**

486.    Based on the foregoing, Plaintiff, in his capacities as Trustee, Administrator, and ESOP Trustee, is entitled to joint and several monetary judgments against Connie Berg, Kyle Berg, and Chad DuBois for the full amount that the ESOP Trust, the ESOP Plan, and the Debtor paid to Connie Berg for the 100,000 shares of the Debtor's stock, together with all taxable court costs, interest as provided in N.D. Cent. Code § 10-04-17(1)(b), and reasonable attorney's fees.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about whether Plaintiff has standing, or serves in any capacity, under ERISA and/or on the ESOP's behalf. Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and lacks knowledge or information sufficient to form a belief as to the truth of other allegations in paragraph 486.**

487.    Additionally, the conduct of Connie Berg and Kyle Berg was oppressive, fraudulent, and done with actual malice to enrich themselves at the expense of the Debtor, its

creditors, and its employees, and the ESOP and its beneficiaries. Accordingly, pursuant to N.D.

Cent. Code § 32-03.2-11(1), Plaintiff is entitled to recover exemplary damages from Connie Berg

and Kyle Berg.

**ANSWER: Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 487.**

### COUNT 29
### Acting in Concert (State Law)
### Plaintiff: Erik A. Ahlgren, as Chapter 7 Trustee
### Defendant: Kyle Berg

488.    All paragraphs in this Complaint are incorporated by reference.

**ANSWER:  Defendant incorporates by reference his responses to the preceding paragraphs.**

489.    As detailed in Count 2 above, Kyle Berg owed fiduciary duties of care, loyalty, and

good faith to the Debtor, and he breached these duties.

**ANSWER:  Defendant incorporates his responses to the allegations contained in Count 2. Further responding, Defendant lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 489.**

490.    Alternatively, if and to the extent that Kyle Berg is found not to have owed fiduciary

duties to the Debtor, he is nonetheless liable for acting in concert with Connie Berg in connection

with her breaches of fiduciary duties to the Debtor as detailed in Count 1 above.

**ANSWER:  Defendant incorporates by reference his responses to the allegations in Count 1. Defendant admits that Connie Berg owed state law fiduciary duties to the Debtor and its shareholder(s), but lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 490.**

491.    North Dakota recognizes "acting in concert" liability. *See Ward v. Bullis*, 748

N.W.2d 397, 407-08 (N.D. 2008); *Hurt v. Freeland*, 589 N.W.2d 551, 557-59 (N.D. 1999).

**ANSWER:  Defendant refers to the cited authorities for their exclusive terms and denies any allegations in paragraph 491 inconsistent with it. Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the other allegations in paragraph 491.**

492.    Kyle Berg knew that Connie Berg's conduct detailed in Count 1 above breached her fiduciary duties to the Debtor, and he gave substantial assistance and/or encouragement to her.

**ANSWER:  Defendant incorporates by reference his responses to the allegations in Count 1. Further responding, Defendant admits that Connie Berg owed state law fiduciary duties to the Debtor and its shareholder(s), but Defendant lacks knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 492.**

493.    Further, Connie Berg and Kyle Berg had a common plan to breach Connie Berg's fiduciary duties to Debtor. They each had knowledge of such plan and its purpose, which was to enrich themselves at the expense of the Debtor, its employees, and its creditors. In addition, Kyle Berg took affirmative steps to encourage the achievement of the result.

**ANSWER:  Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 493.**

494.    Without limitation, Kyle Berg, acting in concert with Connie Berg, (a) caused the Debtor to fraudulently enroll in the Debtor in the 8(a) and WOSB Programs; (b) caused the Debtor to fraudulently obtain Set-Aside Contracts to which the Debtor was not entitled; (c) defrauded the federal government through various entities, including the Debtor, Razor, Fed Serve, MDM, OK2, and the Tunheim entities; (d) orchestrated the ESOP transaction and its structure to enrich himself and Connie Berg; (e) caused the Debtor to enter into the ESOP transaction at an inflated valuation for above-market consideration; (f) failing to inform the Debtor and the ESOP of the impropriety of the ESOP transaction and the Debtor's $6,272,060 equity distribution to Connie Berg and take action to protect the Debtor's interests; (g) caused the Debtor to redeem 37,683 shares of Connie Berg's stock in the Debtor at an inflated valuation; (h) caused the Debtor to incur about $11.9 million of secured debt to Bankers Trust to fund the ESOP consideration payable to Connie Berg; (i) concealed and failed to disclose in connection with the ESOP transaction that a material amount of the Debtor's revenue was attributable to fraudulently obtained Set-Aside Contracts; (j)

personally participated in the ESOP transaction with Connie Berg; and (k) served as the primary

point of contact for all aspects of the ESOP transaction, including due diligence and negotiation

of the relevant contracts.

**ANSWER: Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 494.**

495.    As a direct and proximate cause of Kyle Berg's concerted action with Connie Berg,

the Debtor has suffered damages in an amount to be determined at trial.

**ANSWER: Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 495.**

496.    Additionally, Kyle Berg's conduct was oppressive, fraudulent, and done with actual

malice to enrich himself and Connie Berg at the expense of the Debtor, its creditors, and its

employees. Accordingly, pursuant to N.D. Cent. Code § 32-03.2-11(1), Plaintiff is entitled to

recover exemplary damages from Kyle Berg.

**ANSWER: Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 496.**

## COUNT 30
### Acting in Concert (State Law)
### Plaintiff: Erik A. Ahlgren, as ESOP Plan Administrator and as ESOP Trustee
### Defendant: Kyle Berg

497.    All paragraphs in this Complaint are incorporated by reference, except paragraphs

164-179 and the paragraphs comprising Count 21.

**ANSWER:  Defendant incorporates by reference his responses to the preceding paragraphs, including his responses to paragraphs 164-179 and Count 21.**

498.    Plaintiff, in his capacities as Administrator of the ESOP Plan and ESOP Trustee of

the ESOP Trust, has standing to bring this claim on behalf of the ESOP Plan and ESOP Trust.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's alleged capacity to bring suit under ERISA, and denies the remaining allegations in paragraph 498.**

499.   As detailed above in Count 25, Connie Berg committed and is liable to the ESOP

Trust and ESOP Plan for actual fraud.

**ANSWER: Defendant incorporates by reference his responses to the allegations in Count 25. Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 499.**

500.   Kyle Berg is liable for acting in concert with Connie Berg in connection with her

actual fraud on the ESOP Trust and ESOP Plan.

**ANSWER: Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 500.**

501.   North Dakota recognizes "acting in concert" liability. *See Ward v. Bullis*, 748

N.W.2d 397, 407-08 (N.D. 2008); *Hurt v. Freeland*, 589 N.W.2d 551, 557-59 (N.D. 1999).

**ANSWER: Defendant refers to the cited authorities for their exclusive terms and denies any allegations in paragraph 501 inconsistent with it. Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 501.**

502.   Kyle Berg knew that Connie Berg's conduct detailed in Count 25 above constituted

actual fraud on the ESOP Trust and ESOP Plan, and he gave substantial assistance and/or

encouragement to her.

**ANSWER: Defendant incorporates by reference his responses to the allegations in Count 25. Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 502.**

503.   Further, Connie Berg and Kyle Berg had a common plan to defraud the ESOP Trust

and ESOP Plan. They each had knowledge of such plan and its purpose, which was to enrich

themselves at the expense of the ESOP Trust and ESOP Plan. In addition, Kyle Berg took affirmative steps to encourage the achievement of the result.

**ANSWER: Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 503.**

504.    Without limitation, Kyle Berg, acting in concert with Connie Berg, (a) controlled and manage all aspects of the Debtor's business, (b) orchestrated the scheme to defraud SBA, (c) proposed and orchestrated the ESOP transaction and its structure to enrich himself and Connie Berg, (d) directed the appointment of Paredes as trustee of the ESOP Trust, (e) served as primary point of contact for all aspects of the ESOP transaction, including due diligence, (f) negotiated the relevant ESOP contracts, including the ESOP Purchase Agreement, the Initial Seller/ESOP Loan Agreement, and the ESOP Modification Agreement, and (g) conspired with Connie Berg to make misrepresentations to the ESOP Trust and the ESOP Plan and omit material information in the relevant contracts and during negotiations regarding the government contracting fraud.

**ANSWER: Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 504.**

505.    As a result of Kyle Berg's concerted action with Connie Berg, the Debtor has suffered damages in an amount to be determined at trial.

**ANSWER: Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 505.**

506.    Additionally, Kyle Berg's conduct was oppressive, fraudulent, and done with actual malice to enrich himself and Connie Berg at the expense of the ESOP and its beneficiaries. Accordingly, pursuant to N.D. Cent. Code § 32-03.2-11(1), Plaintiff is entitled to recover exemplary damages from Kyle Berg.

**ANSWER: Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 506.**

**COUNT 31**
**Aiding and Abetting Actual Fraud**
**Plaintiff: Erik A. Ahlgren, as Chapter 7 Trustee**
**Defendant: Connie Berg**

507.    All paragraphs in this Complaint are incorporated by reference.

**ANSWER:  Defendant incorporates by reference his responses to the preceding paragraphs.**

508.    As detailed above in Count 8, Connie Berg committed and is liable to the Debtor for actual fraud.

**ANSWER:  Defendant incorporates by reference his responses to the allegations in Count 8. Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 508.**

509.    Kyle Berg aided and abetted Connie Berg's actual fraud because he had knowledge of it and provided substantial assistance. Without limitation, Kyle Berg (a) controlled and managed all aspects of the Debtor's business, (b) orchestrated the scheme to defraud SBA, (c) proposed and orchestrated the ESOP transaction and its structure to enrich himself and Connie Berg, (d) directed the appointment of Paredes as trustee of the ESOP Trust, (e) served as primary point of contact for all aspects of the ESOP transaction, including due diligence, (f) negotiated the relevant ESOP contracts on behalf of Connie Berg, including the ESOP Purchase Agreement, the ESOP Modification Agreement, and the Initial Seller/ESOP Loan Agreement, and (g) conspired with Connie Berg to make misrepresentations to the Debtor and omit material information in the relevant contracts and during negotiations regarding the government contracting fraud.

**ANSWER: Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 509.**

510.     As a result of Kyle Berg aiding and abetting Connie Berg's actual fraud, the Debtor has suffered damages in an amount to be proven at trial.

**ANSWER: Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 510.**

511.     Additionally, Kyle Berg's conduct was oppressive, fraudulent, and done with actual malice to enrich himself and Connie Berg at the expense of the Debtor, its creditors, and its employees. Accordingly, pursuant to N.D. Cent. Code § 32-03.2-11(1), Plaintiff is entitled to recover exemplary damages from Kyle Berg.

**ANSWER: Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 511.**

**COUNT 32**
**Acting in Concert (State Law)**
**Plaintiff: Erik A. Ahlgren, as Chapter 7 Trustee**
**Defendant: Kyle Berg**

512.     All paragraphs in this Complaint are incorporated by reference.

**ANSWER:  Defendant incorporates by reference his responses to the preceding paragraphs.**

513.     As detailed above in Count 8, Connie Berg committed and is liable to the Debtor for actual fraud.

**ANSWER:  Defendant incorporates by reference his responses to the allegations in Count 8. Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 513.**

514.     Kyle Berg is liable for acting in concert with Connie Berg in connection with her actual fraud on the Debtor.

**ANSWER: Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 514.**

515.    North Dakota recognizes "acting in concert" liability. *See Ward v. Bullis*, 748 N.W.2d 397, 407-08 (N.D. 2008); *Hurt v. Freeland*, 589 N.W.2d 551, 557-59 (N.D. 1999).

**ANSWER:  Defendant refers to the cited authorities for their exclusive terms and denies any allegations in paragraph 515 inconsistent with them. Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 515.**

516.    Kyle Berg knew that Connie Berg's conduct detailed in Count 8 above constituted actual fraud on the Debtor, and he gave substantial assistance and/or encouragement to her.

**ANSWER: Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 516.**

517.    Further, Connie Berg and Kyle Berg had a common plan to defraud the Debtor. They each had knowledge of such plan and its purpose, which was to enrich themselves at the expense of the Debtor. In addition, Kyle Berg took affirmative steps to encourage the achievement of the result.

**ANSWER: Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 517.**

518.    Without limitation, Kyle Berg, acting in concert with Connie Berg, (a) controlled and managed all aspects of the Debtor's business, (b) orchestrated the scheme to defraud SBA, (c) proposed and orchestrated the ESOP transaction and its structure to enrich himself and Connie Berg, (d) directed the appointment of Paredes as trustee of the ESOP Trust, (e) served as primary point of contact for all aspects of the ESOP transaction, including due diligence, (f) negotiated the relevant ESOP contracts on behalf of Connie Berg, including the ESOP Purchase Agreement, the ESOP Modification Agreement, and the Initial Seller/ESOP Loan Agreement, and (g) conspired with Connie Berg to make misrepresentations to the Debtor and omit material information in the relevant contracts and during negotiations regarding the government contracting fraud.

**ANSWER: Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 518.**

519.    As a result of Kyle Berg's concerted action with Connie Berg, the Debtor has suffered damages in an amount to be determined at trial.

**ANSWER: Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 519.**

520.    Additionally, Kyle Berg's conduct was oppressive, fraudulent, and done with actual malice to enrich himself and Connie Berg at the expense of the Debtor, its creditors, and its employees. Accordingly, pursuant to N.D. Cent. Code § 32-03.2-11(1), Plaintiff is entitled to recover exemplary damages from Kyle Berg.

**ANSWER: Defendant denies any allegations that he violated ERISA or committed any wrongdoing, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 520.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

A.    Enter judgment in Plaintiff's favor against each Defendant;

B.    On Counts 1-8 and 25-32, award Plaintiff monetary damages in amounts to be determined at trial;

C.    On Counts 1-3, 8, 25-26, and 28-32, award Plaintiff exemplary damages pursuant to N.D. Cent. Code § 32-03.2-11(1);

D.    On Counts 9-20, avoid the fraudulent transfers and obligations alleged therein, and grant the recovery of all avoided transfers from the applicable Defendants, in amounts to be determined at trial;

E.    On Counts 21-24, award Plaintiff monetary damages, restitution, and/or disgorgement, in amounts to be determined at trial;

F.　　On Count 24, impose a constructive trust on the funds received by Defendants Connie Berg and Kyle Berg, and award Plaintiff restitution and/or disgorgement of such funds;

G.　　On Count 28, award Plaintiff the full amount that the ESOP Trust, the ESOP Plan, and the Debtor paid to Connie Berg for the 100,000 shares of the Debtor's stock, together with all taxable court costs, interest as provided in N.D. Cent. Code § 10-04-17(1)(b), and reasonable attorney's fees;

H.　　Award Plaintiff his fees, costs, disbursements, and expenses, including reasonable attorneys' fees;

I.　　Award Plaintiff pre- and post-judgment interest to the greatest extent allowed by law; and

J.　　Grant any other relief, including equitable relief, that may be just, proper, and equitable.

**ANSWER: Defendant denies that Plaintiff is entitled to any of the relief requested in the Prayer for Relief and throughout the Second Amended Complaint.**

## <u>AFFIRMATIVE DEFENSES</u>

Defendant sets forth the following affirmative defenses. Defendant reserves the right to assert any additional affirmative defenses that may be discovered or disclosed during the course of further investigation and discovery.

### FIRST AFFIRMATIVE DEFENSE
### <u>ERISA Section 408 Defenses</u>

Pursuant to ERISA section 408(e), ERISA section 406(a)(1)(A) does not apply to the ESOP Transaction because the amount the ESOP paid for Debtor's securities was adequate consideration (i.e., fair market value), as determined by Defendant in good faith following a prudent investigation prior to approving, causing or allowing the ESOP Transaction. In addition, Plaintiff's section 406(a)(1)(D) claim is barred by the Court's prior order dismissing that claim. (*See* Doc.

103; *see also* Second Amended Complaint at 84, n.2.)

## SECOND AFFIRMATIVE DEFENSE
### No Subjective Intent to Benefit

If the Court permits Plaintiff to put on proofs regarding his former ERISA section 406(a)(1)(D) claim despite the Court's Order dismissing that cause of action for failure to state a claim, the claim fails because ERISA § 406(a)(1)(D), requires a "subjective intent to benefit" a party in interest. Plaintiff has not alleged and cannot establish that Defendant had a "subjective intent to benefit" a party in interest.

## THIRD AFFIRMATIVE DEFENSE
### Lack of Standing and/or Subject Matter Jurisdiction

Plaintiff lacks standing to bring claims against Defendant because he is not a fiduciary or other party with standing under ERISA section 502. Plaintiff's claims against Defendant are also independently barred because Plaintiff has not suffered an injury in fact. Absent an injury in fact, Plaintiff lacks standing to sue for harm to the Plan, and the Court lacks subject matter jurisdiction.

## FOURTH AFFIRMATIVE DEFENSE
### Failure to State a Claim

Plaintiff's claims against Defendant fail in whole or in part for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## COUNTERCLAIM

## PARTIES

Defendant/Counterclaim-Plaintiff Miguel Paredes, for his counterclaim against Plaintiff/Counterclaim-Defendant Erik Ahlgren, states as follows. In asserting the following counterclaim, Mr. Paredes does not admit any allegations not previously admitted in his Answer to the Second Amended Complaint.

1.      Mr. Paredes is a natural person domiciled in California.

2.      The Debtor is a North Dakota corporation with its principal place of business located in Fargo, North Dakota.

3.      Mr. Ahlgren is a natural person domiciled in Minnesota. He is also trustee of the Debtor's bankruptcy estate.

4.      From on or about May 21, 2020 to on or about January 18, 2022, Mr. Paredes served as the trustee for the ESOP Trust.

## JURISDICTION & VENUE

5.      This action arises in or relates to a case under Title 11 of the United States Code.

6.      This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. sections 157, 1331, and 1334.

7.      Venue is proper in this District under 28 U.S.C. sections 1391(b) and 1409.

8.      This Counterclaim is proper under Federal Rule of Bankruptcy Procedure 7013, which incorporates Federal Rule of Civil Procedure 13 into adversary proceedings.

9.      Mr. Paredes consents to the Bankruptcy Court's entry of final orders and judgments.

## FACTUAL BACKGROUND

10.     Mr. Ahlgren initiated this action alleging that Mr. Paredes breached fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") in connection with the ESOP Transaction.[1]

11.     In connection with the ESOP Transaction, Debtor entered into the Engagement Agreement with Mr. Paredes dated May 21, 2020, under which Mr. Paredes was retained to serve as the ESOP's independent trustee. The Engagement Agreement is attached as **Exhibit 1**.

---

[1] Capitalized terms have the same meaning as those in the Second Amended Complaint unless otherwise noted.

12.     The parties negotiated the Engagement Agreement at arm's length.

13.     The Engagement Agreement includes an express indemnification provision obligating Debtor to indemnify and hold harmless Mr. Paredes from and against any and all liabilities, losses, claims, damages, and expenses (including reasonable attorney's fees and related costs) sustained in discharging his duties and responsibilities under the Engagement Agreement. This indemnification obligation is found in the Engagement Agreement at paragraph 8 (the "Indemnification Obligation")

14.     In performing his duties, Mr. Paredes adhered to applicable fiduciary standards under ERISA, including reliance on independent valuation and legal advisors, and documentation of fiduciary decision-making in ESOP transactions, and any applicable DOL and Internal Revenue Service regulations.

15.     Specifically, among other things, Mr. Paredes (i) conducted a prudent and thorough review of the ESOP Transaction, (ii) relied on independent valuation and law firms with relevant expertise, (iii) ensured that his professional advisors had access to all material information, (iv) engaged in active and arm's length negotiations on the ESOP's behalf, and (v) carefully documented the process by which he evaluated and approved the ESOP Transaction.

16.     Mr. Ahlgren filed this lawsuit asserting claims that arise directly from the services Mr. Paredes rendered to the ESOP under the Engagement Agreement.

17.     As a result, Mr. Paredes has incurred and continues to incur reasonable attorney's fees and costs to defend himself against claims that fall within the scope of the Indemnification Obligation.

18.     Additionally, because this is an action brought under ERISA, Mr. Ahlgren is personally liable to Mr. Paredes for payment of Mr. Paredes reasonable attorneys' fees and costs in defending against Mr. Ahlgren's baseless claims asserted in the SAC. 29 U.S.C. § 1132(g)(1).

## COUNT ONE
### Contractual Indemnification
### Against the Debtor's Estate

19.     Mr. Paredes incorporates by reference all preceding paragraphs of this Counterclaim.

20.     Mr. Paredes and Debtor entered into the Engagement Agreement on or about May 21, 2020. Debtor retained Mr. Paredes to act as ESOP trustee in connection with the ESOP Transaction.

21.     Pursuant to the Indemnification Obligation, Debtor agreed to indemnify Mr. Paredes and hold him harmless from and against any and all claims, liabilities, losses, damages, and expenses (including reasonable attorney's fees and related costs) arising out of or in connection with the services provided under the Engagement Agreement.

22.     Mr. Ahlgren filed this lawsuit against Mr. Paredes asserting claims arising out of or in connection with services provided under the Engagement Agreement.

23.     Mr. Paredes complied with all of his obligations under the Engagement Agreement and all of his obligations under ERISA and other relevant authorities.

24.     Accordingly, under the terms of the Engagement Agreement, Debtor is obligated to indemnify Mr. Paredes for the costs and expenses of defending against the claims asserted in the SAC, including reasonable attorney's fees and costs.

### PRAYER FOR RELIEF

WHEREFORE, Defendant/Counterclaim-Plaintiff Paredes prays for judgment as follows:

1.      Against the Debtor for full indemnification of all reasonable attorneys' fees, costs, and expenses incurred in this action based on the Engagement Agreement;

2.      Against the Debtor for any additional amounts to which Mr. Paredes is entitled under the Engagement Agreement;

3.      Against the Debtor for appropriate interest;

4.      Against Mr. Ahlgren personally for reasonable attorneys' fees and costs incurred in this action under 29 U.S.C. section 1132(g)(1);

5.      Against Mr. Ahlgren personally for pre- and post-judgment interest; and

6.      Such other relief as the Court deems just and proper.

Dated: August 15, 2025                    Respectfully submitted,

_/s/ Michael L. Scheier_
Michael L. Scheier (*pro hac vice*)
Jacob D. Rhode (*pro hac vice*)
Samuel B. Weaver (*pro hac vice*)
KEATING MUETHING & KLEKAMP, PLL
One East Fourth Street, Suite 1400
Cincinnati, OH 45202
Tel: (513) 579-6952
Fax: (513) 579-6457
mscheier@kmklaw.com
jrhode@kmklaw.com
sweaver@kmklaw.com

*and*

Michael Gust (ND #06468)
ABST LAW, P.C.
4132 30th Ave. SW, Suite 100
P.O. Box 10247
Fargo, ND 58106-0247
Tel: (701) 235-3300
Fax: (701) 237-3154
mgust@abstlaw.net

*Attorneys for Defendant Miguel Paredes*