UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: | Bky. Case No. 24-30167 |
| Pro-Mark Services, Inc., | Chapter 7 |
| Debtor. | |

---

Erik A. Ahlgren, as Chapter 7 Trustee of the
Bankruptcy Estate of Pro-Mark Services, Inc.,
as Administrator of the Pro-Mark Services,
Inc. Employee Stock Ownership Plan, and as
Trustee of the Pro-Mark Services, Inc.
Employee Stock Ownership Trust,

         Plaintiff,

v.                                           Adversary No. 24-07014

Connie Berg, Kyle Berg, Connie Berg
Revocable Living Trust, Kyle R. Berg
Revocable Living Trust, Chad DuBois, and
Miguel Paredes,

         Defendants.

---

## AFFIDAVIT OF PETER D. KIESELBACH

---

I, Peter D. Kieselbach, hereby declare, under penalty of perjury, as follows:

1.     I represent Plaintiff in the above-captioned adversary proceeding, and I have personal knowledge of the matters set forth herein.

2.     I submit this declaration in support of the Reply in Support of Plaintiff's Motion to Strike Or, Alternatively, Dismiss in Part filed concurrently with this declaration.

3.     Attached hereto are true and correct copies of documents obtained from the Public Access to Court Electronic Records (PACER) system, which are part of the official docket in

*Trustees of the Eighth District Electrical Pension Fund v. Wasatch Front Electric & Construction, LLC*, Case No. 2:09-cv-00632-CW, in the United States District Court for the District of Utah.

4.    The documents are as follows:

a.   **Exhibit A**:  Defendants' Memorandum in Support of Motion for Attorney Fees and Costs

b.   **Exhibit B**:  Defendants' Reply Memorandum in Support of Motion for Attorney Fees and Costs

c.   **Exhibit C**:  Transcript of Hearing on Defendants' Motion for Attorney Fees and Costs

5.  These documents were downloaded directly from PACER and reflect filings and proceedings in the referenced case.  They are maintained by the federal judiciary and are presumed to be accurate and authentic as official court records.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: October 10, 2025                    /s/ Peter D. Kieselbach
                                                         Peter D. Kieselbach

# **Exhibit A**

Barry N. Johnson (Utah Bar No. 6255)
Daniel K. Brough (Utah Bar No. 10283)
BENNETT TUELLER JOHNSON & DEERE
3165 E. Millrock Drive, Suite 500
Salt Lake City, Utah 84121
Telephone: (801) 438-2000
Facsimile:  (801) 438-2050
Email: bjohnson@btjd.com, dbrough@btjd.com
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \* \*

|  |  |
|---|---|
| TRUSTEES OF THE EIGHTH DISTRICT ELECTRICAL PENSION FUND; and INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 354,<br><br>     Plaintiffs,<br><br>v.<br><br>WASATCH FRONT ELECTRIC AND CONSTRUCTION, LLC; LARSEN ELECTRIC, LLC; SCOTT R. LARSEN, individually; and LARSEN ELECTRIC OF NEVADA, LLC,<br><br>     Defendants. | **MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY FEES AND COSTS**<br><br>Case No. 2:09-cv-00632<br><br>Judge Clark Waddoups<br><br>Magistrate Judge Brooke Wells |

\* \* \* \* \* \* \* \*

Defendants Wasatch Front Electric and Construction, LLC ("WF Electric"), Larsen

Electric, LLC ("Larsen Electric"), Scott R. Larsen ("Larsen"), and Larsen Electric of Nevada,

LLC ("Larsen Nevada" and, collectively with WF Electric, Larsen Electric, and Larsen,

"Defendants"), by and through counsel, submit this Memorandum in Support of Motion for Attorney Fees and Costs.

## <u>INTRODUCTION</u>

At the close of evidence at trial, and at closing argument, Defendants reserved the issue of costs and attorney fees. *See* Tr. at 505:23–506:6.[1]  Plaintiffs Trustees of the Eighth District Electrical Pension Fund and International Brotherhood of Electrical Workers, Local 354 (collectively, "Plaintiffs") stipulated to reserve the issue of attorney fees. *See id.* at 506:7–10. On June 8, 2012, the Court issued findings of fact and conclusions of law and dismissed three of Plaintiffs' four claims against Defendants with prejudice, including Plaintiffs' claim pursuant to 29 U.S.C. § 1381 *et seq.*  The Court also vacated its prior entry of summary judgment against WF Electric on Plaintiffs' claim against it pursuant to § 1381 *et seq.*  The Court further ordered Plaintiffs to show cause why their remaining claim, for fraudulent conveyance, should not also be dismissed with prejudice.  Plaintiffs did not show cause, and the Court dismissed that claim as well.  Defendants have prevailed upon every claim Plaintiffs asserted against them, and they are entitled to recover costs and attorney fees.  All that remains for the Court to do is to enter judgment.

Defendants, as the prevailing parties, are entitled to recover all of their costs pursuant to Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1132(g), incurred in connection with Plaintiffs' claim under 28 U.S.C. § 1381 *et seq.* for withdrawal liability.  Those costs total $2,008.90.  Defendants are also entitled to an award of attorney fees incurred in connection with

Plaintiffs' withdrawal liability claim in the amount of $126,835.00.[2]  The Court should award

those amounts to Defendants.

## **ARGUMENT**

## I.     **THE COURT SHOULD AWARD DEFENDANTS ALL COSTS INCURRED IN THIS LAWSUIT.**

"Unless a federal statute, [the Federal Rules of Civil Procedure], or a court order

provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing

party."  *See* Fed. R. Civ. P. 54(d).  29 U.S.C. § 1132(g) provides as follows:

> In any action under this title (other than an action described in paragraph 2) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney fee and costs of action to either party.

*See* 29 U.S.C. § 1132(g)(1).  Paragraph 2 of § 1132(g) encompasses actions "by a fiduciary for or

on behalf of a plan to enforce" 29 U.S.C. § 1145, which addresses delinquent contributions

claims.  *See id.* § 1132(g)(2).  However, "§ 1132(g)(1) does not plainly 'provide otherwise' than

Rule 54(d)(1) for the award of costs to a prevailing party."  *See Quan v. Computer Sciences

Corp.*, 623 F.3d 870, 888 (9th Cir. 2010) (cited with approval in *Marx v. General Revenue Corp.*,

668 F.3d 1174, 1181 (10th Cir. 2011) (noting, in a different context, *Quan*'s ruling that § 1132(g)

does not displace Rule 54(d)).  Defendants may therefore recover costs under the broader Rule

54(d) rubric without regard to whether the costs were incurred in connection with Plaintiffs'

withdrawal liability claim, or some other claim.

---

[1] A true and correct copy of pertinent portions of the trial transcript is attached hereto as Exhibit A.
[2] Defendants reserve the right to augment these fees and costs as additional briefing and argument regarding this motion transpires.

In an ERISA case, available costs are defined at 28 U.S.C. § 1920. *See Holland v. Valhi Inc.*, 22 F.3d 968, 979 (10th Cir. 1994) ("[A]bsent a specific statutory provision, an award of expert fees must be based on 28 U.S.C. §§ 1821 and 1920. . . .").[3] Section 1920 authorizes reimbursement for the following costs:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

*See* 28 U.S.C. § 1920.

As the attached declaration demonstrates, Defendants have incurred $2,008.90 in total costs in defending against Plaintiffs' claims. *See* Dec. Attorney Fees & Costs, ¶¶ 4, 8, attached hereto as Exhibit B. Specifically, Defendants seek to recover costs arising from the production of "printed or electronically recorded transcripts necessarily obtained for use in the case," in the form of copies of deposition and trial transcripts. *See id.*; *see also* 29 U.S.C. § 1920(2). Defendants used those transcripts in the preparation of their defense against Plaintiffs' withdrawal liability claim. Section 1932(g) does not require an analysis of the reasonableness of costs. *See Agredano v. Mutual of Omaha Cos.*, 75 F.3d 541, 543 (9th Cir. 1996) ("It's thus fairly clear, as a linguistic matter, that "reasonable" in section 502(g)(1) modifies only 'attorney's fee,'

---

[3] 28 U.S.C. § 1821 deals with witness fees, which are not at issue here.

and not also 'costs of action.'").  The fact that Defendants incurred these costs, and that those

costs are encompassed by § 1920, is sufficient.

The Court should therefore award Defendants $2,008.90 in costs.

## II.     THE COURT SHOULD AWARD WF ELECTRIC, LARSEN ELECTRIC, AND LARSEN THEIR ATTORNEY FEES INCURRED IN DEFENDING AGAINST PLAINTIFFS' WITHDRAWAL LIABILITY CLAIM.

### A.     Defendants Are Entitled to an Award of Attorney Fees.

As explained above, 29 U.S.C. § 1132(g) provides as follows:

> In any action under this title (other than an action described in paragraph 2) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney fee and costs of action to either party.

*See* 29 U.S.C. § 1132(g)(1).  The Tenth Circuit has held that district courts should consider the

following five factors when determining whether to award attorney fees pursuant to § 1132(g)(1):

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to personally satisfy an award of attorney fees; (3) whether an award of attorney's fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*See Gordon v. U.S. Steel Corp.*, 724 F.2d 106, 109 (10th Cir. 1983).  This Court possesses

discretion to award fees pursuant to §1132(g).  *See id.* at 108.  Each of the applicable[4] *Gordon*

factors weighs in favor of entering an award of attorney fees in Defendants' favor.

---

[4] Defendants do not argue that Plaintiffs are "culpable" or exercised bad faith in litigating their claims.  That is a factor that does not cut either way in this analysis.

1.     The Relative Merits of the Parties' Positions Demonstrate that Defendants
       Are Entitled to an Award of Fees.

At the outset, there can be no dispute that Defendants' legal position in this case was

significantly more meritorious than Plaintiffs' position.  Over a year ago, Defendants successfully

obtained summary judgment on Plaintiffs' claim for breach of fiduciary duty.  *See* Doc. No. 129,

Order entered Dec. 22, 2010, at 1–2 (on file with the Court).  At trial, the Court not only found

and concluded that neither Larsen Electric nor Larsen could be held liable for any withdrawal

liability that WF Electric possessed, but it also summarily, and *sua sponte*, reversed its prior

grant of summary judgment against WF Electric on that claim, on the ground that that claim was

subject to the doctrine of claim preclusion.  *See* Doc. No. 260, Findings & Conclusions entered

June 8, 2012, at 17 (on file with the Court).  The Court went on to conclude that Plaintiffs'

§ 1145 claim was also precluded by the outcome of Plaintiffs' prior litigation.  *See id.*  Following

the Court's entry of its findings and conclusions, Plaintiffs' conceded that their sole remaining

claim (for fraudulent transfer, involving Larsen Nevada) should also be dismissed with prejudice.

 *See* Doc. No. 261, Response filed June 26, 2012 (on file with the Court).  In other words,

Plaintiffs either lost their claims on summary judgment or in the face of claim preclusion—they

never even made it to an analysis of the evidence underlying Plaintiffs' claims.

Even the substance of Plaintiffs' claims was weak.  At the close of Plaintiffs' case,

Defendants moved for dismissal on claim preclusion grounds, as well as on the ground that

Plaintiffs had failed to meet their evidentiary burden.  With all of Plaintiffs' evidence on their

case-in-chief on the table, the Court informed the parties that although Plaintiffs had presented

enough evidence to survive a motion to dismiss, the Court considered Plaintiffs' evidence "very weak." *See* Exhibit A, Tr. at 505:14–16. Even if the Court had reached the substance of Plaintiffs' claims—which turned on a theory of alter ego—that substance would likely not have carried the day for Plaintiffs, either.

       2.    <u>There Is No Indication that Plaintiffs Are Unable to Satisfy An Award of Fees</u>.

Plaintiffs are comprised of a local union and a trust fund, which litigated this matter completely, with an extensive and aggressive motion practice, through trial. There is no indication that Plaintiffs would be unable to satisfy an award of attorney fees in Defendants' favor.

       3.    <u>Defendants Sought to Resolve Significant Legal Questions Involving ERISA</u>.

In the context of this lawsuit, the Court interpreted and ruled upon issues arising from definitions of "employer," "brother-sister group of trades or businesses under common control," and "common control, as found at 26 C.F.R. §§ 1.414(c)-1, 1.414(c)-2(c), and 1.414(c)-2(b)(ii)(2). *See* Order & Mem. Dec. entered Aug. 23, 2011, at 1–3 (on file with the Court). Specifically, the Court defined which individuals in a "brother-sister group of trades or businesses" count toward the "common control" requirement. *See id.* This is apparently the first time a court within the Tenth Circuit or this District has ruled upon that issue. This issue is therefore "significant," contributes to the body of ERISA law, and warrants an award of attorney fees incurred in its litigation.

This lawsuit also gave rise to other important ERISA issues.  Specifically, but without limitation, the Court ruled upon the impact of claim preclusion upon a union's efforts to bifurcate its litigation.  It is now established law that a union cannot take two attempts at recovery by adding a trust fund as a plaintiff in a second, subsequent lawsuit aimed at resolving the same issues, on the same facts, as a prior lawsuit.  That ruling adds to the body of ERISA law and warrants an award of attorney fees.

        4.      <u>An Award of Attorney Fees Would Deter Similarly-Situated Parties from Re-Litigating Issues Already Decided by a Court</u>.

If Plaintiffs were required to pay Defendants' attorney fees, other similarly situated union-trust fund plaintiffs would be deterred from abrogating the salutary policies underlying the claim preclusion doctrine.  *See Plotner v. AT&T Corp.*, 224 F.3d 1161, 1168 (10th Cir. 2000) ("The fundamental policies underlying the doctrine of res judicata . . . are finality, judicial economy, preventing repetitive litigation and forum-shopping, and the interest in bringing litigation to an end." (internal quotation marks omitted)).  Knowing that attorney fees may be imposed against them, plaintiff unions and trust funds would surely endeavor to litigate all disputes in one lawsuit, rather than piecemeal, and to avoid attempting to re-open closed, dismissed litigation by re-filing the same claims with an additional plaintiff.  Resources of courts and parties would be conserved.  Litigation would have a definite conclusion.  These policies are important and justify enforcement as a deterrent to future violations.

**B.    Defendants Are Entitled to Recover Their Complete Attorney Fees Incurred in Connection with This Case.**

"The proper procedure for determining a reasonable attorneys' fee is to arrive at a lodestar figure by multiplying the hours plaintiff's counsel reasonably spent on the litigation by a reasonable hourly rate." *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005). "Once an applicant for a fee has carried the burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be a reasonable fee . . . ." *See Cooper v. Utah*, 894 F.2d 1169, 1171 (10th Cir. 1990). The lodestar figure may be adjusted downward (or upward) based on factors within the Court's discretion, including "the result obtained," which in turn invokes considerations of "(1) whether the claims on which the [party] did not prevail were related to those on which she did prevail; and (2) whether the [party] achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *See Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1493 (10th Cir. 1994) (internal quotation marks omitted). The Court must also consider the following factors:

> [T]he time and labor required, the novelty and difficulty of the question presented by the case, the skill requisite to perform the legal service properly, the preclusion of other employment by the attorneys due to acceptance of the case, the customary fee, whether the fee is fixed or contingent, any time limitations imposed by the client or the circumstances, the amount involved and the result obtained, the experience, reputation and ability of the attorneys, the undesirability of the case, the nature and length of the professional relationship with the client, and awards in similar cases.

*See Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 n.3 (10th Cir. 1995) (internal quotation marks omitted).

9

Defendants' attorney fees total $126,835.00. *See* Exhibit B, Dec. Attorney Fees & Costs ¶¶ 4, 7. That is based upon reasonable hours and a reasonable hourly rate—not a contingent fee arrangement. *See id.* ¶ 5. That amount is the lodestar, guiding any further calculation of a reasonable attorney fee.

That amount should not be adjusted. At the outset, although only Plaintiffs' withdrawal liability claim gives rise to attorney fees, the Court should not reduce Defendants' attorney fees proportionally. In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court recognized cases in which attorney fees should be apportioned by claim, but also recognized other cases where apportionment is not appropriate:

> In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, *making it difficult to divide the hours expended on a claim-by-claim basis*. Such a lawsuit cannot be viewed as a series of discrete claims. *Instead the district court should focus on the significance of the overall relief obtained by the [prevailing party] in relation to the hours reasonably expended on the litigation*.

*See id.* at 435 (emphasis added). The Tenth Circuit adhered to *Hensley* in *Smith v. Northwest Financial Acceptance, Inc.*, 129 F.3d 1408 (10th Cir. 1997), specifically relying upon *Hensley*'s statement that "where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *See id.* at 1418 (quoting *Hensley*, 461 U.S. at 440). This Court also adhered to *Hensley* in *DeFrietas v. Horizon Investment & Management Corp.*, Case No. 2:06-cv-926, 2010 U.S. Dist. LEXIS 74089, *5–6 (D. Utah July 22, 2010) (unpublished disposition) (referencing *Hensley* and other Tenth Circuit decisions). The primary inquiry is the result:

"[w]here a [party] has obtained excellent results, his attorney should recover a fully compensatory fee. . . . The result is what matters." *See Hensley*, 461 U.S. at 434.[5]

Here, as noted above, Defendants prevailed upon all of Plaintiffs' claims. And all of Plaintiffs' claims arose from the same set of operative facts: WF Electric's withdrawal from Local 354. Even Plaintiffs' § 1145 claim arose from WF Electric's withdrawal, as Plaintiffs' claim (particularly as it was fleshed out at trial) was that WF Electric did not properly withdraw, continued operations as Larsen Electric, and therefore owed unpaid contributions to Plaintiffs. The Court resolved all of these claims in the same way: by finding and concluding that Plaintiffs' claims were all barred by the doctrine of claim preclusion. Not only did Plaintiffs' claims arise from the same origin, but they were resolved by virtue of a single affirmative defense applicable to all claims. Defendants had to work to develop that defense—that *prevailing* defense—for each claim. The Court should not apportion Defendants' fees based on the type of claim; Defendants' work applied to all claims.

The remainder of the *Rosenbaum* factors also favor affording Defendants a complete recovery of their attorney fees. Plaintiffs sought a multi-million dollar recovery from three entities and an individual; the amount at issue was high, and it was perfectly reasonable for Defendants to spend the fees they did to defend themselves. The case was complex: in addition to mastering all of the facts incident to the prior litigation that formed the basis of the Court's claim preclusion ruling, counsel was required to master all facts related to the business and

---

[5] *Hensley*, *Smith*, and *DeFreitas* all dealt with cases in which a party did not prevail on all claims asserted, rather than a situation—like this one—where the party prevailed on all claims, but not all claims give rise to an attorney fee

windup of WF Electric and Larsen Electric, as well as Larsen's involvement in it. ERISA's complex statutory schemes (particularly, statutes involving withdrawal and the calculation of withdrawal liability) were also in play. And the case itself (both phases of litigation) commenced in 2005; Defendants' counsel served as counsel throughout. Additionally, Defendants' counsel has represented Defendants for many years and has a longstanding relationship with Defendants, and has served as longtime counsel to Scott Larsen. *See* Exhibit B, Dec. Attorney Fees & Costs ¶ 3.

Moreover, as noted above, the result Defendants' counsel obtained speaks for itself: Defendants prevailed on all claims Plaintiffs asserted, and they did so following what amounted to nearly five years worth of litigation.[6] Defendants' counsel lived with this case for a long time, and navigating the fact-intensive landscape, as well as ERISA's complex laws, in the face of numerous motions (including numerous motions for summary judgment) required skill. Indeed, a review of the docket, as well as Defendants' attorney fee declaration, reveals that it was Plaintiffs' extremely engaged motion practice, as well as their difficulty in properly disclosing their expert report, that consumed much of the litigation in this case and resulted in the bulk of Defendants' attorney fees.

In fine, all applicable factors reveal that Defendants' lodestar amount should not be reduced. The Court should award Defendants $2,008.90 in costs and $126,835.00 in attorney fees.

---

award to the prevailing party. That distinction is immaterial. Practically, the two scenarios are the same.

## **CONCLUSION**

Defendants are entitled to an award of costs in the amount of $2,008.90, and an award of attorney fees in the amount of $126,835.00. The Court should enter an order and judgment awarding those amounts. Defendants reserve the right to supplement their declaration of costs and attorney fees upon the conclusion of briefing and oral argument of this motion.

DATED this 6th day of July, 2012.

BENNETT TUELLER JOHNSON & DEERE

*/s/ Daniel K. Brough*
_____

Barry N. Johnson
Daniel K. Brough
*Attorneys for Defendants*

---

[6] To be clear, Defendants seek attorney fees only in this case, not the prior litigation.

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of July, 2012, I electronically filed the foregoing

**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY FEES AND COSTS**

with the Clerk of Court using the CM/ECF system, which sent notification of such filing to the

following:

> Kenneth B. Grimes
> KENNETH B. GRIMES, P.C.
> 448 East 400 South, Suite 302
> Salt Lake City, Utah 84111
> kglawyer@yahoo.com
> *Attorneys for Plaintiffs*

> */s/ Daniel K. Brough*
> _____

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TRUSTEES OF THE EIGHTH DISTRICT | ) | |
| ELECTRICAL PENSION FUND, | ) | |
| INTERNATIONAL BROTHERHOOD OF | ) | |
| ELECTRICAL WORKERS, LOCAL 354, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:09-CV-632CW |
| | ) | |
| WASATCH FRONT ELECTRICAL AND | ) | |
| CONSTRUCTION, LLC, LARSEN | ) | |
| ELECTRIC, LLC, LARSEN ELECTRIC | ) | |
| OF NEVADA, LLC, SCOTT R. LARSEN, | ) | |
| and DOES 1 THROUGH 10, | ) | |
| | ) | |
| Defendants. | ) | |

Transcript of Bench Trial

BEFORE THE HONORABLE CLARK WADDOUPS

January 27, 2012

Karen Murakami, CSR, RPR
144 U.S. Courthouse
350 South Main Street
Salt Lake City, Utah 84101
Telephone: 801-328-4800

460

APPEARANCES OF COUNSEL:


For the Plaintiffs: KENNETH B. GRIMES
                    Attorney at Law
                    Suite 302
                    448 East 400 South
                    Salt Lake City, Utah 84111



For the Defendants: BENNETT TUELLER JOHNSON & DEERE PC
                    By Barry N. Johnson
                       Daniel K. Brough
                       Attorneys at Law
                    Fifth Floor
                    3165 East Millrock Drive
                    Salt Lake City, Utah 84121

461

```
 1   individuals behind them in order to find either Larsen

 2   Electric or, particularly, Mr. Larsen liable for

 3   whatever that, if any, is owed to WF Electric.  And for

 4   these reasons we ask the court to dismiss the alter ego

 5   claim against both Larsen Electric and Mr. Larsen.

 6            THE COURT:  Let's take about a 10-minute

 7   recess and then I will issue my ruling.  We'll be in

 8   recess.

 9            (Recess.)

10            THE CLERK:  Court resumes session.

11            THE COURT:  We are back in session in the

12   Eighth District Pension Trust Fund v. Larsen Electric.

13   Counsel and parties are present.  Having reviewed the

14   arguments and thought about the evidence, I've reached

15   the conclusion that although the evidence is, in my

16   judgment, at this point very weak, there is sufficient

17   evidence before the court to allow the case to proceed,

18   and so I'm going to deny the motion and ask that the

19   defendants put on additional evidence, and we'll then

20   decide whether or not, based on credibility of the

21   witnesses and the overall evidence, the plaintiff has

22   met its burden.  So the defense may proceed.

23            MR. JOHNSON:  Your Honor, the only issue on

24   which we would put on evidence at this juncture is

25   evidence of attorney's fees and for the reservation of
```

505

```
 1    the right to seek those under the relevant agreement.
 2              THE COURT:  I'm happy to have you reserve
 3    that issue until I've ruled, if that's the only issue.
 4              MR. JOHNSON:  We would appreciate that, and
 5    if the court would reserve that issue, the defendants
 6    would rest.
 7              THE COURT:  I assume that plaintiffs will
 8    agree that the issue of attorney's fees, to the extent
 9    it becomes an issue, can be reserved by stipulation.
10              MR. GRIMES:  Yes, Your Honor.
11              THE COURT:  Have you discussed how you want
12    to proceed in terms of findings of fact?  I'll tell you
13    my judgment, and you can -- it's your decision, but I'll
14    tell you my judgment on this.  It seems to me that the
15    evidence is straightforward enough, my notes are pretty
16    good, I have careful notes, and I would be happy to have
17    you submit the proposed findings of fact and conclusions
18    of law based on the record without the transcript, and
19    then make closing argument.  But if you want the benefit
20    of the transcript, which will add to the time for the
21    decision and the expense, I will leave that in your
22    hands.
23              MR. GRIMES:  Your Honor, the parties have
24    not discussed this issue.  I did discuss it with my
25    client.  The plaintiffs would prefer to order the
```

Barry N. Johnson (Utah Bar No. 6255)
Daniel K. Brough (Utah Bar No. 10283)
BENNETT TUELLER JOHNSON & DEERE
3165 E. Millrock Drive, Suite 500
Salt Lake City, Utah 84121
Telephone: (801) 438-2000
Facsimile: (801) 438-2050
Email: bjohnson@btjd.com, dbrough@btjd.com
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \* \*

| | |
|---|---|
| TRUSTEES OF THE EIGHTH DISTRICT ELECTRICAL PENSION FUND; and INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 354, | **DECLARATION OF ATTORNEY FEES AND COSTS** |
| Plaintiffs, | Case No. 2:09-cv-00632 |
| | Judge Clark Waddoups |
| v. | Magistrate Judge Brooke Wells |
| WASATCH FRONT ELECTRIC AND CONSTRUCTION, LLC; LARSEN ELECTRIC, LLC; LARSEN ELECTRIC OF NEVADA, LLC; and SCOTT R. LARSEN, individually; | |
| Defendants. | |

\* \* \* \* \* \* \* \*

I, Daniel K. Brough, of the law firm of Bennett Tueller Johnson & Deere, hereby declare

under penalty of perjury as follows:

    1.    I am a member of the law firm of Bennett Tueller Johnson & Deere.

    2.    My firm represents Defendants Wasatch Front Electric and Construction, LLC,

Larsen Electric, LLC, Larsen Electric of Nevada, LLC, and Scott Larsen (collectively,
"Defendants") in the above-captioned lawsuit.  I am over the age of eighteen and I have personal
knowledge of the matters set forth in this Declaration.

3.    My firm represented Defendants throughout the above-captioned lawsuit, as well
as throughout a prior, related lawsuit, Case No. 2:05-cv-00955.  Furthermore, my firm has
represented various of the Defendants in numerous other matters.  Scott Larsen is a longtime
client of our firm.

4.    The following is a detailed description of the attorney fees and costs incurred by
Defendants in connection with their defense against the claims of Plaintiffs International
Brotherhood of Electrical Workers, Local 354, and Trustees of the Eighth District Electrical
Pension Fund (collectively, "Plaintiffs"):

### Description of Services Rendered

|  |  |  | **Hours** | **Fee** |
|---|---|---|---|---|
| 7/17/2009 | JRM | Review new lawsuit; communicate with B. Johnson regarding same. | 0.25 | $66.25 |
| 7/18/2009 | RKR | Communications with B. Johnson regarding possible new case; attempt to locate copy of Complaint. | 0.50 | $100.00 |
| 7/20/2009 | RKR | Communications with S. Larsen regarding new case; review Complaint. | 0.50 | $100.00 |
| 7/28/2009 | RKR | Communications with S. Larsen; review various statutes relevant to the claims. | 0.75 | $150.00 |
| 7/28/2009 | JRM | Review and analyze Complaint. | 0.50 | $132.50 |
| 7/29/2009 | RKR | Review complaint and exhibits; meeting with S. Larsen to discuss options and case strategy. | 1.75 | $350.00 |

| 7/30/2009 | RKR | Communications with opposing counsel; calendar deadline for filing Answer. | 0.25 | $50.00 |
|-----------|-----|-----|------|--------|
| 8/7/2009 | DA | Call to Ken Grimes to get 2 week extension. | 0.25 | NO CHARGE |
| 8/10/2009 | DA | Call Ken Grimes to get an extension; draft and send letter to Ken confirming extension of one week. | 0.50 | $50.00 |
| 8/10/2009 | RKR | Communications with opposing counsel regarding extension to file Answer. | 0.25 | $50.00 |
| 8/13/2009 | RKR | Research Affirmative Defenses; review and analyze various documents referenced in the Complaint for purposes of drafting Answer and Affirmative Defenses; begin drafting Answer, Affirmative Defenses and Jury Demand. | 2.25 | $450.00 |
| 8/14/2009 | RKR | Draft of Answer, Affirmative Defenses and Jury Demand; research regarding affirmative defenses; draft e-mail correspondence to S. Larsen regarding the same. | 2.50 | $500.00 |
| 8/17/2009 | RKR | Finalize Answer and Affirmative Defenses; file Answer electronically with Federal Court; forward information onto S. Larsen. | 1.50 | $300.00 |
| 8/25/2009 | RKR | Communications with opposing counsel regarding discovery plan; draft e-mail correspondence to S. Larsen regarding same. | 0.25 | $50.00 |
| 8/27/2009 | RKR | Communications with S. Larsen. | 0.25 | $50.00 |
| 9/8/2009 | RKR | Draft e-mail correspondence to opposing counsel requesting revisions to the Attorneys' Planning Meeting Report. | 0.25 | $50.00 |
| 9/9/2009 | RKR | Communications with opposing counsel regarding Attorney Planning Meeting Report; communications with B. Bennett. | 0.50 | $100.00 |
| 9/11/2009 | RKR | Review Notice of Alternative Dispute Resolution received from the Court and filed Attorneys Planning Meeting Report and Scheduling Order. | 0.25 | $50.00 |

| 9/15/2009 | RKR | Review signed Scheduling Order entered by the Court. | 0.25 | $50.00 |
| 9/24/2009 | RKR | Review balance sheets and tax return information. | 0.50 | $100.00 |
| 10/2/2009 | RKR | Draft Initial Disclosures and Certificate of Service of Initial Disclosures; file Certificate of Service with the Federal Court. | 1.00 | $200.00 |
| 10/12/2009 | RKR | Conference call with B. Bennett. | 0.75 | $150.00 |
| 10/12/2009 | RKR | Review Plaintiffs' Initial Disclosures; draft correspondence to opposing counsel; forward Initial Disclosures to client. | 0.75 | $150.00 |
| 10/13/2009 | RKR | Review Subpoena served on Mary Woodhead. | 0.25 | $50.00 |
| 10/14/2009 | RKR | Conference with C. Roothoff regarding Subpoena to M. Woodhead and protective order entered in previous case. | 0.25 | $50.00 |
| 10/14/2009 | CGB | Draft protective order; draft letters to Mary Woodhead and Ken Grimes regarding protective order. | 2.25 | $303.75 |
| 10/15/2009 | RKR | Revise correspondence to M. Woodhead regarding subpoena served on her to remind her of Protective Order entered in the case; revise correspondence to K. Grimes regarding same; review correspondence from K. Grimes; phone call from K. Grimes. | 1.25 | $250.00 |
| 10/16/2009 | CGB | Revise letters to Mary Woodhead and Ken Grimes regarding protective order; draft letter to Arthur Sandack regarding protective order. | 1.00 | $135.00 |
| 11/2/2009 | RKR | Communications with D. Anderson regarding preparation of Stipulated Motion for Entry of Protective Order and Stipulated Order; review Court Docket to confirm that Initial Scheduling Conference has been vacated. | 0.50 | $100.00 |
| 11/2/2009 | DA | Draft stipulated protective order. | 1.50 | $150.00 |

| 11/3/2009 | RKR | Revise Stipulation and proposed Stipulated Protective Order; draft e-mail correspondence to opposing counsel. | 0.75 | $150.00 |
|---|---|---|---|---|
| 11/4/2009 | RKR | Review financial statements and tax returns; finalize Stipulation and Protective Order; email correspondence with opposing counsel. | 1.00 | $200.00 |
| 11/4/2009 | DA | Revise stipulated protective order. | 0.25 | $25.00 |
| 11/17/2009 | RKR | Conference call with K. Grimes regarding Stipulated Protective Order; work on revisions to protective order. | 0.25 | $50.00 |
| 11/20/2009 | RKR | Communications with opposing counsel regarding revisions to proposed Stipulated Protective Order. | 0.25 | $50.00 |
| 11/24/2009 | RKR | Communications with opposing counsel; revise Stipulated Protective Order. | 1.25 | $250.00 |
| 11/25/2009 | RKR | Review Motion for Leave to Amend and Memorandum in Support. | 0.50 | $100.00 |
| 11/30/2009 | RKR | Review correspondence from opposing counsel; draft email correspondence to him along with copy of proposed Stipulated Protective Order; review Motion for Leave to Amend | 1.00 | $200.00 |
| 12/1/2009 | RKR | Communications with opposing counsel regarding Stipulated Protective Order. | 0.25 | $50.00 |
| 12/15/2009 | RKR | Review opposing counsel's revisions to proposed Protective Order; phone call to opposing counsel to discuss. | 0.50 | $100.00 |
| 12/18/2009 | RKR | Review and respond to email correspondence from S. Larsen regarding case. | 0.25 | $50.00 |
| 12/21/2009 | RKR | Review email correspondence from S. Larsen. | 0.25 | NO CHARGE |
| 12/28/2009 | RKR | Review Amended Complaint; calendar deadline for answering; draft email correspondence to S. Larsen regarding same. | 0.50 | $100.00 |
| 1/5/2010 | RKR | Communications with S. Larsen regarding filing Answer to Amended Complaint and finalizing Protective Order; revise and | 2.00 | $450.00 |

| | | finalize Answer and Affirmative Defenses; draft email to S. Larsen with copy of filed Answer. | | |
|---|---|---|---|---|
| 1/5/2010 | DA | Review Amended Complaint for changes; Draft Amended Answer. | 1.75 | NO CHARGE |
| 1/11/2010 | RKR | Phone call to opposing counsel regarding protective order. | 0.25 | $56.25 |
| 1/14/2010 | RKR | Finalize Stipulated Protective Order and Motion; file both with the Court; draft email correspondence to Judge Wells with proposed Order attached. | 0.75 | $168.75 |
| 1/19/2010 | RKR | Conference with C. Bentley regarding status of case. | 0.25 | NO CHARGE |
| 1/29/2010 | RKR | Communications with S. Larsen and J. Chindlund. | 0.25 | NO CHARGE |
| 2/17/2010 | RKR | Review correspondence from M. Woodhead; draft Undertaking for Ken Grimes' signature; draft email correspondence to M. Woodhead and K. Grimes. | 0.50 | $112.50 |
| 2/18/2010 | RKR | Communications with client. | 0.25 | $56.25 |
| 2/19/2010 | RKR | Review signed Undertaking received from Ken Grimes related to documents subpoenaed from Local 354'scounsel, Mary Woodhead. | 0.25 | $56.25 |
| 3/4/2010 | RKR | Review emails from Federal Court. | 0.25 | $56.25 |
| 3/5/2010 | RKR | Review Motion for Summary Judgment, Memorandum in Support and Affidavit of Joanne Knight; phone call and email to S. Larsen. | 0.75 | $168.75 |
| 3/9/2010 | RKR | Review Motion for Summary Judgment and exhibits; conference with C. Bentley regarding same. | 0.25 | $56.25 |
| 3/15/2010 | RKR | Research arguments in opposition to MSJ; conference; phone call to opposing counsel; review rules for purposes of calculating deadline to | 1.00 | $225.00 |

| | | | | |
|---|---|---|---|---|
| | | respond to MSJ; draft email correspondence to opposing counsel. | | |
| 3/16/2010 | RKR | Review research into defenses to pension funds' motion for summary judgment; draft email to S. Larsen regarding same. | 1.75 | $393.75 |
| 3/24/2010 | RKR | Draft Stipulation and Order extending deadline for opposing Plaintiffs' Motion for Partial Summary Judgment; draft email correspondence to opposing counsel; file documents electronically; draft email to Magistrate Wells(cc opposing counsel) with proposed Order attached. | 1.00 | $225.00 |
| 4/2/2010 | RKR | Review Motion for Summary Judgment filed by IBEW; forward copies to S. Larsen regarding same. | 0.50 | NO CHARGE |
| 4/6/2010 | RKR | Communications with opposing counsel regarding Amended Scheduling Order. | 0.25 | $56.25 |
| 4/9/2010 | RKR | Review and respond to email communications from opposing counsel regarding scheduling order; conference call with opposing counsel. | 0.50 | $112.50 |
| 5/3/2010 | BNJ | Review discovery request submitted by opposing counsel and conference with D. Brough regarding strategy for responding to same. | 1.00 | $300.00 |
| 5/10/2010 | DKB | Draft and revise memorandum in opposition to motion for partial summary judgment (withdrawal liability), and in support of motion for partial summary judgment. | 4.75 | $950.00 |
| 5/11/2010 | DKB | Draft and revise memorandum in opposition to motion for partial summary judgment (withdrawal liability), and in support of motion for partial summary judgment. | 3.25 | $650.00 |

| 5/13/2010 | BNJ | Attention to issues relating to motion for summary judgment filed by opposing counsel (withdrawal liability) and conference with D. Brough regarding same. | 0.75 | $225.00 |
|-----------|-----|-----|------|---------|
| 5/13/2010 | DKB | Draft, revise, and finalize memorandum in opposition to motion and exhibits (withdrawal liability). | 5.75 | $1,150.00 |
| 5/13/2010 | BNJ | Conference with D. Brough regarding status of memorandum in opposition to motion for summary judgment and related issues (withdrawal liability). | 0.50 | $150.00 |
| 5/14/2010 | DKB | Draft, revise, finalize, and file memorandum in opposition to motion for partial summary judgment, notice of filing under seal, and stipulated motion to extend response deadline. | 2.25 | $450.00 |
| 5/14/2010 | BNJ | Review and revise memorandum in opposition to motion for summary judgment and conference with D. Brough regarding same. | 1.50 | $450.00 |
| 5/18/2010 | DKB | Draft and revise memorandum in opposition to motion for partial summary judgment (audit liability). | 8.25 | $1,650.00 |
| 5/19/2010 | DKB | Draft, revise, finalize, and file memorandum in opposition to motion for summary judgment, Rule 56(f) motion, memorandum in support, and declaration. | 5.50 | $1,100.00 |
| 5/20/2010 | DKB | Review reply memorandum in support of motion for partial summary judgment; interoffice correspondence regarding same. | 0.25 | NO CHARGE |
| 5/20/2010 | BNJ | Review reply memorandum filed by plaintiff's counsel in support of motion for summary judgment and conference with D. Brough regarding same. | 0.50 | $150.00 |
| 5/21/2010 | DKB | Written correspondence to client regarding written discovery responses. | 0.25 | NO CHARGE |
| 5/21/2010 | BNJ | Review and revise memorandum in opposition to motion for summary judgment (audit liability) and conference | 1.50 | $450.00 |

| | | with D. Brough regarding same. | | |
|---|---|---|---|---|
| 5/24/2010 | DKB | Written response to client inquiry regarding discovery and settlement. | 0.50 | NO CHARGE |
| 5/25/2010 | BNJ | Conference with D. Brough regarding settlement proposal and terms for same. | 0.25 | $75.00 |
| 5/25/2010 | DKB | Written correspondence to opposing counsel conveying settlement offer. | 0.50 | $100.00 |
| 6/4/2010 | DKB | Draft written correspondence to opposing counsel regarding discovery, depositions, and settlement. | 0.25 | $50.00 |
| 6/4/2010 | DKB | Review reply memorandum in support of motion for summary judgment and opposition to Rule 56(f) motion; attempted contact with opposing counsel; telephone conference with client regarding depositions. | 0.50 | $100.00 |
| 6/8/2010 | DKB | Draft reply memorandum in support of Rule 56(f) motion. | 1.00 | $200.00 |
| 6/14/2010 | DKB | Telephone conference with client and opposing counsel regarding depositions, scheduling, and discovery. | 0.75 | $150.00 |
| 6/15/2010 | DKB | Draft first set of discovery requests to both plaintiffs; review complaint and scheduling order; strategy development. | 2.75 | $550.00 |
| 6/15/2010 | BNJ | Attention to various discovery-related issues, issues relating Scott Larsen individual liability and document production issues; conference with D. Brough regarding same. | 1.00 | NO CHARGE |
| 6/16/2010 | DKB | Finalize and serve first set of discovery responses; draft reply memorandum in support of Rule 56(f) motion. | 0.75 | $150.00 |
| 6/18/2010 | DKB | Revise, finalize, and file reply memorandum in support of Rule 56(f) motion. | 3.75 | $750.00 |
| 6/19/2010 | DKB | Draft responses to first set of interrogatories issued by Plaintiffs. | 1.75 | $350.00 |

| 6/21/2010 | JCD | Research ERISA statute; research fiduciary duty claim against Larsen for D. Brough. | 1.25 | NO CHARGE |
|-----------|-----|------|------|------|
| 6/21/2010 | BNJ | Review and revise discovery responses and conference with D. Brough regarding same. | 1.25 | NO CHARGE |
| 6/21/2010 | JLL | Draft motion to exclude expert report and for summary judgment. | 2.25 | $405.00 |
| 6/21/2010 | DKB | Draft and revise discovery responses; research regarding viability of breach of fiduciary duty claim; attention to motion for partial summary judgment; correspondence with client; attention to settlement offer. | 5.50 | $1,100.00 |
| 6/22/2010 | DKB | Draft and revise written discovery responses; meeting with client regarding same; written summary to client of documents to be produced; written correspondence to opposing counsel regarding depositions. | 5.00 | $1,000.00 |
| 6/22/2010 | JLL | Draft motion to exclude expert testimony; communications with D. Brough regarding same. | 2.75 | $495.00 |
| 6/23/2010 | DKB | Draft and revise memorandum in support of motion to exclude expert testimony; office conference with B. Johnson regarding case strategy. | 1.25 | $250.00 |
| 6/24/2010 | BNJ | Attention to discovery-related matters, including document production; conference with D. Brough regarding same. | 1.25 | NO CHARGE |
| 6/25/2010 | JCD | Receive assignment from D. Brough to look into what constitutes a "discrete subpart" for the interrogatory limit; research whether corporations have an "affirmative duty" to offer names for depositions without a 30(b)(6)subpoena. | 2.00 | NO CHARGE |
| 6/25/2010 | DKB | Draft and revise discovery responses; research regarding issues as to responses; review and compile documents. | 3.25 | $650.00 |

| 6/29/2010 | DN | Conference with D. Brough regarding document production. | 0.25 | NO CHARGE |
|---|---|---|---|---|
| 6/29/2010 | DKB | Finalize and serve interrogatory responses. | 3.75 | $750.00 |
| 6/29/2010 | BNJ | Review correspondence threatening amendment to complaint to include fraudulent causes of action and conference with D. Brough regarding same. | 1.00 | NO CHARGE |
| 6/30/2010 | DN | Work on document production and scanning of documents. | 2.75 | $398.75 |
| 6/30/2010 | DKB | Office conference with B. Johnson regarding strategy. | 0.25 | NO CHARGE |
| 6/30/2010 | BNJ | Conference with D. Brough regarding strategy; consider production of documents-related issues. | 1.25 | $375.00 |
| 7/1/2010 | DN | Bates number additional documents for production; prepare documents for production to opposing counsel. | 1.00 | $145.00 |
| 7/6/2010 | DKB | Telephone conference with client regarding deposition planning and other matters. | 0.25 | NO CHARGE |
| 7/9/2010 | DKB | Prepare for and participate in meeting with client regarding deposition preparation; written follow-up to client regarding same. | 1.50 | $300.00 |
| 7/13/2010 | DKB | Telephone conference with client and opposing counsel regarding deposition rescheduling. | 0.25 | NO CHARGE |
| 7/14/2010 | DKB | Review deposition transcript of client in prior matter in preparation for deposition; written correspondence to opposing counsel regarding discovery. | 2.50 | $500.00 |
| 7/15/2010 | DKB | Prepare for, travel to and from, and attend deposition of Scott Larsen. | 4.25 | $850.00 |
| 7/16/2010 | BNJ | Conference with D. Brough regarding Larsen deposition and strategy regarding response to Motion to Amend Complaint; review Motion to Amend Complaint. | 0.75 | $225.00 |
| 7/19/2010 | JCD | Meeting with D. Brough to receive assignment to research whether a "fraudulent transfer" is subject to | 1.00 | NO CHARGE |

| | | heightened pleading requirements. | | |
|---|---|---|---|---|
| 7/19/2010 | DKB | Review and calendar opposition to motions to amend complaint and to amend scheduling order; draft memorandum in opposition to motion to amend complaint. | 1.75 | $350.00 |
| 7/20/2010 | JCD | Finish researching fraudulent transfers; print the most relevant case; meet with D. Brough to discuss results. | 0.50 | $50.00 |
| 7/22/2010 | DKB | Written correspondence with opposing counsel regarding extension; draft, revise, finalize and file stipulated motion permitting extension to oppose motion to amend complaint. | 0.50 | $100.00 |
| 7/27/2010 | DKB | Draft memorandum in opposition to motion to amend complaint as well as declaration of Scott Larsen. | 4.75 | $950.00 |
| 7/28/2010 | DKB | Revise, finalize, and file opposition to motion to amend complaint. | 2.25 | $450.00 |
| 7/28/2010 | BNJ | Review Motion for Summary Judgment filed by plaintiff pertaining to fiduciary duty claim; conference with D. Brough regarding response to same; review and revise Memorandum Opposing Motion to Amend Complaint to Add Additional Claims and Additional Parties. | 1.25 | $375.00 |
| 7/29/2010 | DKB | Draft, revise, finalize, and file memorandum in opposition to motion to amend scheduling order. | 1.25 | $250.00 |
| 8/3/2010 | JCD | Meeting with D. Brough to review assignment and truncated time-table; review and supplement research on the ERISA claims; begin drafting argument section. | 4.00 | NO CHARGE |
| 8/3/2010 | DKB | Attention to opposition/cross motion for summary judgment on fiduciary duty claim; review discovery responses and memorandum filed by opposing counsel; attention to motion for summary judgment on damages. | 2.25 | $450.00 |

| 8/4/2010 | JCD | Continue drafting argument section; review deposition testimony and filed pleadings to respond to statements off act; draft responses to statements of fact. | 5.75 | $575.00 |
|----------|-----|---|------|---------|
| 8/5/2010 | DKB | Draft and revise memoranda in support/opposition of pending motions for summary judgment; office conferences with J. Dunkelberger regarding same. | 3.50 | NO CHARGE |
| 8/6/2010 | DN | Coordinate and prepare exhibits and CDs for production and filing under seal. | 0.50 | $72.50 |
| 8/6/2010 | DKB | Draft, revise, finalize, and file motions and memoranda for and against summary judgment on issue of fiduciary duty claim and damages; travel to and from and participate in deposition of Brent Daines. | 6.50 | $1,300.00 |
| 8/19/2010 | DKB | Written correspondence with opposing counsel regarding deposition of Scott Larsen; strategy regarding same. | 0.75 | $150.00 |
| 8/20/2010 | DKB | Correspondence with opposing counsel regarding deposition of Scott Larsen; strategy regarding same. | 0.25 | NO CHARGE |
| 8/23/2010 | DKB | Draft motion for protective order; review filings. | 1.75 | $350.00 |
| 8/24/2010 | DKB | Draft, revise, finalize, and file motion for protective order, supporting memorandum, and notice. | 2.50 | $500.00 |
| 8/24/2010 | BNJ | Attention to deposition demand made for deposition of Scott Larsen; review and revise Memorandum Supporting Motion for Protective Order; conference with D. Brough regarding same and other related issues. | 1.25 | $375.00 |
| 9/1/2010 | JCD | Finish drafting reply memorandum; briefly discuss draft, feedback revisions and research with D. Brough. | 4.25 | NO CHARGE |
| 9/2/2010 | DKB | Prepare and draft reply memorandum in support of motion for summary judgment, and to exclude expert. | 0.50 | $100.00 |

| 9/3/2010 | DKB | Revise reply memorandum in support of motion to strike and motion for partial summary judgment; office conference with J. Dunkelberger regarding same. | 0.50 | $100.00 |
|---|---|---|---|---|
| 9/4/2010 | DKB | Revise reply memorandum in support of motion to strike and motion for partial summary judgment. | 3.00 | $600.00 |
| 9/6/2010 | BNJ | Review settlement proposal; conference with D. Brough regarding strategy for responding to same. | 0.25 | $75.00 |
| 9/6/2010 | DKB | Draft and revise reply memorandum in support of motion for partial summary judgment, and to exclude declaration and audit. | 1.75 | $350.00 |
| 9/7/2010 | DKB | Draft, revise, finalize, and file reply memorandum in support of motion to exclude expert testimony and for partial summary judgment; review settlement correspondence and forward to client. | 4.25 | $850.00 |
| 9/13/2010 | DKB | Draft, revise, finalize, and file reply memorandum in support of motion for protective order. | 2.25 | $450.00 |
| 9/14/2010 | BNJ | Attention to issues relating to protective order and strategy conference with D. Brough regarding same. | 0.75 | $225.00 |
| 9/14/2010 | DKB | Review and prepare response to correspondence from opposing counsel; revise reply memorandum in support of motion for protective order to prepare corrected version for filing; office conference with B. Johnson. | 1.50 | $300.00 |
| 9/16/2010 | DKB | Research preparatory to drafting reply memorandum in support of cross-motion for partial summary judgment on fiduciary duty claim. | 2.00 | $400.00 |
| 9/17/2010 | BNJ | Review and revise reply memorandum in support of motion for protective order; conference with D. Brough regarding same and related issues. | 1.00 | $300.00 |

| 9/17/2010 | DKB | Research regarding reply memorandum in support of motion for partial summary judgment on fiduciary duty claim; draft same. | 3.00 | $600.00 |
|-----------|-----|------|------|---------|
| 9/21/2010 | DKB | Draft, revise, finalize, and file reply memorandum in support of cross motion for partial summary judgment, as well as declaration of client regarding same. | 3.75 | $750.00 |
| 9/21/2010 | BNJ | Review and revise reply memorandum in support of motion for summary judgment on fiduciary duty claim; conference with D. Brough regarding same. | 1.00 | $300.00 |
| 9/22/2010 | DKB | Review order granting and denying pending discovery and scheduling motions; written update to client regarding same; office conference with B. Johnson regarding same. | 0.50 | NO CHARGE |
| 9/22/2010 | BNJ | Review court rulings; consider amending request for protective order; strategy on pending motions and alter ego claim; conference with D. Brough regarding same. | 1.25 | $375.00 |
| 10/1/2010 | DKB | Draft memorandum in opposition to motion to strike declaration of client and portions of reply memorandum. | 1.50 | $300.00 |
| 10/6/2010 | DKB | Review objection to magistrate judge decision; office conference with S. Keppner regarding same. | 0.25 | $50.00 |
| 10/8/2010 | DKB | Draft and revise memorandum in opposition to motion to strike; office conference with J. Dunkelberger regarding objection; research regarding same. | 1.50 | $300.00 |
| 10/8/2010 | JCD | Research whether the motion for leave to amend was disposition under the Federal and Local Rules of Civil Procedure; evaluate opposing side's arguments that judge applied the wrong standard; report results to D. Brough. | 3.00 | $300.00 |
| 10/12/2010 | DKB | Draft and revise memorandum in opposition to motion to strike. | 3.25 | $650.00 |

| 10/20/2010 | DKB | Draft, revise, and finalize order denying objection to magistrate judge decision. | 0.50 | $100.00 |
|---|---|---|---|---|
| 10/25/2010 | DKB | Draft and revise response to objection. | 2.75 | $550.00 |
| 11/5/2010 | DKB | Review memorandum filed by opposing counsel in connection with objection. | 0.25 | $50.00 |
| 11/23/2010 | DKB | Draft pretrial disclosures; interoffice correspondence with B. Johnson regarding same. | 0.50 | $100.00 |
| 11/29/2010 | DKB | Draft pretrial disclosures. | 0.50 | $100.00 |
| 11/30/2010 | DKB | Review documents produced in preparation for pretrial disclosures. | 0.50 | $100.00 |
| 12/1/2010 | DKB | Draft pretrial disclosures. | 1.75 | $350.00 |
| 12/2/2010 | DKB | Draft and finalize pretrial disclosures. | 2.00 | $400.00 |
| 12/16/2010 | DKB | Prepare for hearing on motion for summary judgment and other outstanding motions. | 1.00 | $200.00 |
| 12/18/2010 | DKB | Prepare for motion for summary judgment hearing. | 1.25 | $250.00 |
| 12/20/2010 | BNJ | Conference with D. Brough in preparation for oral argument on pending motions; strategy regarding issues surrounding expert disclosure and reports. | 1.00 | $300.00 |
| 12/21/2010 | BNJ | Conference with D. Brough in preparation for oral argument on pending motions. | 0.50 | $150.00 |
| 12/21/2010 | DKB | Prepare for motion for summary judgment hearing. | 5.50 | $1,100.00 |
| 12/22/2010 | DKB | Prepare for, travel to and from, and participate in motion for summary judgment hearing; office conference and update to B. Johnson. | 4.25 | $850.00 |
| 12/22/2010 | BNJ | Conference with D. Brough regarding results of oral argument; attention to expert report issues; attention to issues surrounding judge's comments on Amended Complaint. | 0.75 | $225.00 |
| 1/3/2011 | BNJ | Conference with D. Brough regarding issues relating to final pretrial and related issues. | 0.50 | $155.00 |
| 1/4/2011 | DKB | Office conference with B. Johnson regarding strategy as to expert disclosure | 0.25 | $53.75 |

| | | vis-a-vis trial date. | | |
|---|---|---|---|---|
| 1/7/2011 | DKB | Written correspondence with opposing counsel regarding rescheduling of trial date. | 0.25 | NO CHARGE |
| 1/10/2011 | DKB | Review expert report produced by opposing counsel; research regarding motion to strike. | 0.50 | $107.50 |
| 1/10/2011 | JLL | Research grounds to strike expert report. | 1.50 | $285.00 |
| 1/11/2011 | DKB | Office conference with B. Johnson regarding scheduling, motion to strike expert report, and other matters. | 0.25 | NO CHARGE |
| 1/11/2011 | BNJ | Attention to expert report and review of plaintiff's proposed expert report; conference with D. Brough regarding same. | 1.00 | $310.00 |
| 1/17/2011 | DKB | Research preparatory to drafting motion to continue trial date; draft memorandum in support of motion. | 0.50 | NO CHARGE |
| 1/27/2011 | BNJ | Telephone conference with Ken Grimes regarding multiple pretrial issues and regarding discovery relating to expert report and expert disclosures; conference with D. Brough regarding same. | 0.50 | $155.00 |
| 1/31/2011 | DKB | Draft, revise, finalize, and file motion to continue trial date, supporting memorandum, and declaration of B. Johnson. | 2.25 | NO CHARGE |
| 1/31/2011 | BNJ | Attention to various pretrial issues and conference with D. Brough regarding same. | 0.50 | $155.00 |
| 2/3/2011 | DKB | Research regarding subpoena procedure in federal court; review opposition to motion to continue trial; draft opposition. | 0.50 | NO CHARGE |
| 2/4/2011 | DKB | Draft, revise, finalize, and file reply memorandum in support of motion to continue trial, as well as request to submit; draft, revise, and send correspondence to court conveying courtesy copies; call to chambers. | 2.50 | NO CHARGE |

| 2/9/2011 | DKB | Draft memorandum in support of motion to strike expert report; consideration of proposed trial dates. | 2.50 | $537.50 |
|---|---|---|---|---|
| 2/12/2011 | DKB | Draft memorandum in support of motion to strike expert report. | 0.50 | $107.50 |
| 2/14/2011 | DKB | Correspondence with court, and calendar clearance, regarding trial date. | 0.25 | NO CHARGE |
| 3/8/2011 | DKB | Office conference with B. Johnson regarding motion to strike expert report. | 0.25 | NO CHARGE |
| 3/10/2011 | DKB | Draft memorandum in support of motion to strike expert report. | 1.25 | $268.75 |
| 3/11/2011 | DKB | Draft memorandum in support of motion to strike expert report. | 2.25 | $483.75 |
| 3/14/2011 | DKB | Draft, revise, finalize, and file motion to strike expert report, to expedite briefing, and to amend scheduling order, as well as supporting memorandum and proposed order. | 2.75 | $591.25 |
| 3/14/2011 | BNJ | Attention to motion to strike expert report; review and revise same; conference with D. Brough regarding same. | 1.00 | $310.00 |
| 3/15/2011 | DKB | Draft, revise, finalize, and send cover letter conveying courtesy copies of motion to strike expert report and proposed order. | 0.50 | $107.50 |
| 3/29/2011 | BNJ | Attention to issues surrounding motion in limine relating to plaintiff's expert report and conference with D. Brough regarding same. | 0.50 | $155.00 |
| 3/30/2011 | DKB | Review and research regarding motion to strike motion to strike expert report. | 0.50 | $107.50 |
| 3/31/2011 | DKB | Draft memorandum in opposition to motion to strike motion to strike expert report. | 3.25 | $698.75 |
| 3/31/2011 | BNJ | Conference with D. Brough regarding opposition to motion to strike motion for exclusion of expert report and strategy regarding same. | 0.50 | $155.00 |
| 4/4/2011 | DKB | Review memorandum in opposition to motion to strike. | 0.50 | $107.50 |

| 4/5/2011 | DKB | Draft reply memorandum in support of motion to strike. | 1.00 | $215.00 |
|---|---|---|---|---|
| 4/14/2011 | DKB | Research pertaining to opposition to motion in limine; commence drafting memorandum in opposition. | 1.25 | $268.75 |
| 4/15/2011 | DKB | Draft, revise, finalize, and file memorandum in opposition to motion in limine. | 1.75 | $376.25 |
| 4/18/2011 | DKB | Draft, revise, finalize, and file reply memorandum in support of motion to strike expert report. | 1.75 | $376.25 |
| 5/4/2011 | DKB | Correspondence with clerk regarding trial date and outstanding motions. | 0.25 | NO CHARGE |
| 5/6/2011 | BNJ | Review Plaintiffs' pretrial disclosures; attention to trial strategy issues; conference with D. Brough regarding same. | 0.50 | $155.00 |
| 5/9/2011 | DKB | Office conference with B. Johnson regarding trial preparation; review pleadings and motions to determine strategy | 1.00 | $215.00 |
| 5/9/2011 | BNJ | Attention to various trial-related issues; review exhibits to be disclosed; conference with D. Brough regarding strategy and consenting to judgments against former entities. | 0.75 | $232.50 |
| 5/16/2011 | BNJ | Consider offer of judgment in trial preparation strategy; attention to issues asserted against Larsen Electric and WF Electric; attention to motions in limine and conference with D. Brough regarding same. | 0.50 | $155.00 |
| 5/17/2011 | DKB | Review and consider court order striking trial date; office conference with B. Johnson regarding same. | 0.25 | NO CHARGE |
| 5/17/2011 | BNJ | Attention to trial preparation issues; review court's ruling on motions to strike; review notice postponing trial due to judge's schedule. | 0.50 | $155.00 |
| 5/20/2011 | DKB | Written update to client regarding case status. | 0.25 | NO CHARGE |

| 6/21/2011 | DKB | Compilation of filings in preparation for hearing on pending motions. | 0.25 | $53.75 |
|---|---|---|---|---|
| 6/27/2011 | BNJ | Conference with D. Brough in preparation of oral argument on pending motions; attend and participate in oral argument related to expert report and motion in limine. | 2.25 | $697.50 |
| 6/27/2011 | DKB | Prepare for, travel to and from, and participate in hearing on pending motions. | 5.50 | $1,182.50 |
| 7/5/2011 | DKB | Written update to client regarding case status and next steps. | 0.25 | NO CHARGE |
| 7/27/2011 | DKB | Review motion for leave to file expert report and proposed expert report; email correspondence to client regarding retention of expert. | 0.75 | $161.25 |
| 7/27/2011 | BNJ | Review new and amended expert report submitted by plaintiff and conference with D. Brough regarding response to same. | 0.50 | $ 155.00 |
| 8/8/2011 | DKB | Obtain extension for filing opposition to motion to amend; conference with potential expert consultant; consultation with client. | 1.00 | $ 215.00 |
| 8/9/2011 | DKB | Draft, revise, finalize, and file motion to extend briefing schedule. | 0.75 | NO CHARGE |
| 8/10/2011 | DKB | Email proposed order regarding briefing schedule; telephone conference with Kent Goates regarding expert report sufficiency; office conference with B. Johnson regarding same. | 0.50 | $ 107.50 |
| 8/16/2011 | DKB | Draft, revise, finalize, and file memorandum in opposition to motion to amend scheduling order and for leave to file amended expert report. | 2.25 | $483.75 |
| 8/23/2011 | DKB | Review order denying motion for summary judgment; update to client. | 0.25 | NO CHARGE |
| 8/26/2011 | DKB | Review reply memorandum in support of motion for leave to file expert report and scheduling order. | 0.25 | $53.75 |
| 8/31/2011 | DKB | Prepare for, travel to and from, and attend and participate in hearing on motion for | 2.50 | $537.50 |

| | | leave to file expert report. | | |
|---|---|---|---|---|
| 8/31/2011 | BNJ | Conference with D. Brough in preparation for oral argument on striking expert report; conference with D. Brough regarding results of hearing. | 0.50 | $155.00 |
| 9/7/2011 | DKB | Research preparatory to drafting memorandum in opposition to motion for leave. | 0.50 | $107.50 |
| 9/9/2011 | DKB | Draft memorandum in opposition to motion to amend complaint. | 1.25 | $268.75 |
| 9/12/2011 | DKB | Draft, revise, finalize, and file memorandum in opposition to motion for leave to amend complaint. | 4.50 | $967.50 |
| 9/15/2011 | DKB | Email update to client regarding trial dates, expert retention, and other matters. | 0.50 | NO CHARGE |
| 9/16/2011 | DKB | Email correspondence with client regarding expert issues and other matters. | 0.25 | NO CHARGE |
| 9/27/2011 | DKB | Draft email correspondence to opposing counsel regarding trial dates; review filings as to extension of time. | 0.25 | NO CHARGE |
| 9/28/2011 | DKB | Correspondence with opposing counsel regarding trial scheduling. | 0.25 | NO CHARGE |
| 10/6/2011 | DKB | Telephone conference with opposing counsel and court regarding trial date; review reply memorandum in support of motion to amend. | 0.50 | $107.50 |
| 10/11/2011 | DKB | Email correspondence with court and opposing counsel setting trial dates. | 0.25 | $53.75 |
| 10/18/2011 | DKB | Email and telephone correspondence with client regarding trial; office conference with R. Rawson regarding corporate documentation. | 0.50 | $107.50 |
| 10/20/2011 | DKB | Email correspondence with client. | 0.25 | NO CHARGE |
| 10/21/2011 | RR | Office conference with D. Brough regarding litigation and structure of entities. | 0.25 | $53.75 |
| 10/25/2011 | DKB | Review motion in limine and supporting documents; office conference with J. | 0.25 | $53.75 |

| | | | | |
|---|---|---|---|---|
| | | Dunkelberger regarding same. | | |
| 11/1/2011 | DKB | Review order granting motion for leave to amend complaint; office conference with B. Johnson regarding same; correspondence with client regarding same. | 0.25 | $53.75 |
| 11/2/2011 | JCD | Review motion, memorandum in support and certain other documents in file; draft opposition memorandum; research into Rule 408 and standing issue; research third party beneficiary rules under ERISA for D. Brough. | 5.25 | $525.00 |
| 11/3/2011 | BNJ | Review Motion for Permission to Serve Subpoenas and conference with D. Brough regarding strategy for responding to same. | 0.50 | $155.00 |
| 11/3/2011 | DKB | Revise orders issued by court. | 0.25 | $53.75 |
| 11/4/2011 | BNJ | Attention to Amended Complaint and conference with D. Brough regarding fraudulent conveyance claim asserted by trust; strategy regarding same and regarding claims | 0.75 | $232.50 |
| 11/7/2011 | DKB | Revise memorandum in opposition to motion in limine/cross-motion in limine. | 1.50 | $322.50 |
| 11/7/2011 | BNJ | Conference with D. Brough regarding various trial preparation tasks and strategies; attention to new claims against Larsen Nevada and strategy regarding same. | 1.25 | $387.50 |
| 11/8/2011 | JCD | Research effect of dismissal with prejudice pursuant to a stipulation. | 0.75 | $75.00 |
| 11/8/2011 | DKB | Revise, finalize, and file memorandum in opposition to motion in limine/memorandum in support of cross-motion. | 3.50 | $752.50 |
| 11/9/2011 | DKB | Office conference with J. Dunkelberger regarding research; assess potential motion for summary judgment. | 0.75 | $161.25 |

| 11/10/2011 | DKB | Research and review cases regarding dismissal with prejudice and res judicata; office conference with J. Dunkelberger regarding same; research preparatory to motions for summary judgment. | 2.75 | $591.25 |
|---|---|---|---|---|
| 11/10/2011 | JCD | Continue researching effect of dismissal with prejudice pursuant to settlement or stipulation for D. Brough. | 0.50 | $50.00 |
| 11/11/2011 | DKB | Written update correspondence with client. | 0.25 | NO CHARGE |
| 11/14/2011 | DKB | Office conference with B. Johnson regarding case status and next steps. | 0.25 | NO CHARGE |
| 11/19/2011 | DKB | Revise answer to amended complaint. | 0.50 | $107.50 |
| 11/22/2011 | JCD | Read and highlight cases regarding privity of contract and preclusion for D. Brough; research whether a third party beneficiary is in privity with the contracting party. | 0.50 | $50.00 |
| 11/22/2011 | DKB | Review cases; office conference with J. Dunkelberger regarding same. | 0.50 | $107.50 |
| 11/25/2011 | DKB | Draft memorandum in opposition to motion to amend scheduling order. | 2.25 | $483.75 |
| 11/26/2011 | DKB | Draft memorandum in support of motion to amend scheduling order. | 1.00 | $ 215.00 |
| 11/28/2011 | DKB | Draft, revise, finalize, and file answer to amended complaint and memorandum in opposition to motion to amend scheduling order; research preparatory to motion for summary judgment; review memorandum regarding motion in limine; prepare reply to same. | 5.25 | $1,128.75 |
| 11/28/2011 | BNJ | Review and revise memorandum opposing motion for extension to discovery; strategy regarding same and conference with D. Brough regarding trial preparation issues. | 1.25 | $387.50 |
| 11/30/2011 | DKB | Finalize and file exhibits to memorandum in opposition to motion to amend scheduling order, filed under seal. | 0.25 | $53.75 |
| 12/5/2011 | DKB | Attention to drafting Reply Memorandum in Support of Cross-motion in Limine. | 0.25 | $53.75 |

| 12/6/2011 | DKB | Research regarding potential motion for summary judgment; attention to drafting of Reply Memorandum in Support of Cross-motion in Limine. | 0.50 | $107.50 |
|---|---|---|---|---|
| 12/9/2011 | DKB | Draft, revise, finalize, and file Reply Memorandum in Support of Cross-motion in Limine. | 2.75 | $591.25 |
| 12/12/2011 | DKB | Coordination of continuation of hearing; draft, revise, finalize, and file response to Motion to Continue. | 0.75 | $161.25 |
| 12/12/2011 | BNJ | Attention to hearing on Motion to Amend Complaint and Extend Discovery; review response and conference with D. Brough regarding same. | 0.75 | $232.50 |
| 12/27/2011 | DKB | Draft, revise, finalize and file Answer to Amended Complaint on behalf of Larsen Electric of Nevada. | 2.00 | $430.00 |
| 12/31/2011 | DKB | Review Motion for Summary Judgment, regarding damages, filed by opposing parties. | 0.25 | $53.75 |
| 1/10/2012 | DKB | Telephone conference with court; office conference with B. Johnson regarding scheduling. | 0.75 | $172.50 |
| 1/10/2012 | BNJ | Conference with D. Brough to develop trial-related strategies and other related matters. | 0.75 | $247.50 |
| 1/11/2012 | DKB | Draft Memorandum in Opposition to Motion for Summary Judgment. | 4.00 | $920.00 |
| 1/11/2012 | BNJ | Telephone conference with Court Clerk regarding schedule for Judge Waddoups to rule on pending summary judgment motion and other trial-related issues; strategy for getting trial back on track and proceeding with trial date as currently scheduled; communicate insistence to Court Clerk regarding same. | 1.50 | $495.00 |
| 1/12/2012 | DKB | Draft, revise, finalize, and file Opposition to Motion for Summary Judgment. | 5.25 | $1,207.50 |
| 1/12/2012 | DKB | Draft request for judicial notice; research regarding same. | 0.50 | $115.00 |

| 1/12/2012 | BNJ | Conference with D. Brough regarding trial strategy and trial-related issues; analyze issues related to pending Motion for Summary Judgment and Motion in Limine. | 1.25 | $412.50 |
|---|---|---|---|---|
| 1/14/2012 | BNJ | Conference with D. Brough regarding Jury Instructions and preparation of same; consider waiving jury in light of remaining claims and potential upside for having judge act as trier of fact on alter ego claims. | 1.50 | $495.00 |
| 1/16/2012 | BNJ | Review Plaintiff's Reply Memorandum Supporting Motion for Summary Judgment; conference with D. Brough regarding trial preparation, jury instructions and other trial-related matters. | 1.00 | $330.00 |
| 1/16/2012 | DKB | Preparation for motion hearing and pretrial conference; trial preparation. | 2.00 | $430.00 |
| 1/17/2012 | DKB | Preparation for motion hearing and pretrial conference; trial preparation. | 5.50 | $1,265.00 |
| 1/17/2012 | BNJ | Trial preparation and strategy. | 3.00 | $990.00 |
| 1/18/2012 | BNJ | Attend pretrial conference and participate in argument on summary judgment motion and motions in limine; continue trial preparation. | 3.50 | $1,155.00 |
| 1/18/2012 | DKB | Prepare for, travel to and from, and attend pretrial hearing and motion hearing. | 8.00 | $1,840.00 |
| 1/19/2012 | BNJ | Attention to expert report and preparation for cross-examination of expert witness; conference with S. McNeill regarding same; attention to deposition of B. Daynes in preparation for direct examination and cross-examination of B. Daynes. | 3.25 | $1,072.50 |
| 1/19/2012 | DKB | Prepare for trial; draft trial brief; review depositions; correspondence with client; interoffice correspondence. | 6.25 | $1,437.50 |
| 1/19/2012 | JLL | Research issues pertaining to res judicata; office conference with D. Brough regarding same. | 1.75 | $358.75 |

| 1/19/2012 | SJM | Confer with B. Johnson regarding trial preparation; begin review of expert report; confer with trial team regarding general strategy issues; begin analysis of expert calculation and calculation prepared by Larsen Electric; multiple conferences with D. Brough and B. Johnson regarding same; legal research regarding same; telephone calls with B. Bennett regarding same. | 5.00 | $1,100.00 |
| --- | --- | --- | --- | --- |
| 1/19/2012 | DKB | Draft request for judicial notice. | 1.75 | $402.50 |
| 1/19/2012 | DKB | Trial preparation. | 7.00 | $1,610.00 |
| 1/20/2012 | CM | Create witness binder for Brent Daines; contact CitiCourt to obtain exhibits; phone call to Brent Daines regarding subpoena and set up meeting with B. Johnson; prepare Exhibit A from expert witness report for S. McNeill; pull designated numbered documents for D. Brough. | 4.00 | $400.00 |
| 1/20/2012 | SJM | Continue reviewing expert report and calculations to prepare for trial; telephone calls with B. Bennett regarding same; confer with D. Brough and B. Johnson regarding status and strategy; multiple emails with B. Bennett; prepare spreadsheets and legal research. | 6.50 | $1,430.00 |
| 1/20/2012 | BNJ | Trial preparation, including preparation of cross-examination of Plaintiff's witnesses; attention to relevant documents and expert report. | 4.50 | $1,485.00 |
| 1/20/2012 | JLL | Communications with B. Johnson and D. Brough regarding res judicata research. | 1.25 | $256.25 |
| 1/21/2012 | BNJ | Trial preparation. | 3.50 | $1,155.00 |
| 1/22/2012 | BNJ | Trial preparation; conference with D. Brough regarding trial brief and issues included in same. | 2.50 | $825.00 |
| 1/23/2012 | RR | Office conferences regarding (i) "active" status of entities and (ii) capital | 0.50 | $115.00 |

| | | contribution of $300,000 and its affect on capital accounts and capital percentages. | | |
|---|---|---|---|---|
| 1/23/2012 | MG | Research issues regarding assignments of membership interests; review deposition testimony and K-1s regarding changes in allocation of profits and losses. | 1.25 | $225.00 |
| 1/23/2012 | BNJ | Trial preparation; conference with Brent Daines regarding expected testimony; review tax returns; review documents relating to collective bargaining agreement; prepare for expert cross-examination and other issues. | 12.00 | $3,960.00 |
| 1/23/2012 | SJM | Confer with D. Brough; prepare for interview of B. Bennett and S. Larsen; participate in interview with both at client's office; multiple emails with B. Bennett regarding additional information for cross-examination outline; legal research; prepare relevant trial exhibits; prepare cross-examination outline; multiple conferences and telephone calls with B. Johnson regarding trial preparation. | 9.50 | $2,090.00 |
| 1/23/2012 | DKB | Trial preparation; draft, revise, finalize, and file request for judicial notice. | 10.00 | $2,300.00 |
| 1/23/2012 | CM | Pull designated numbered documents for D. Brough; organize and prepare to copy exhibits; prepare multiple binders for use at trial. | 7.00 | $700.00 |
| 1/24/2012 | JLL | Research issues pertaining to judicial notice and alter ego doctrine. | 2.50 | $512.50 |
| 1/24/2012 | DKB | Trial; conferences with client; preparation for same. | 10.50 | $2,415.00 |
| 1/24/2012 | BNJ | Prepare for and conduct first day of trial; prepare for second day of trial. | 12.00 | $3,960.00 |
| 1/24/2012 | CM | Prepare additional exhibit for trial binders. | 0.75 | $75.00 |
| 1/24/2012 | SJM | Continue preparations with B. Johnson for cross-examination; legal research regarding same; prepare trial | 2.00 | $440.00 |

|  |  | memorandum/outlines and email to B. Johnson; trial preparation; confer with B. Johnson regarding results of first day of trial and general strategy. |  |  |
| --- | --- | --- | --- | --- |
| 1/25/2012 | DKB | Trial; conferences with client; preparation for same. | 10.75 | $2,472.50 |
| 1/25/2012 | BNJ | Prepare for and conduct second day of trial; prepare for third day of trial. | 10.50 | $3,465.00 |
| 1/26/2012 | DKB | Trial; preparation for same. | 7.00 | $1,610.00 |
| 1/26/2012 | BNJ | Participate in third day of trial and prepare for fourth day of trial. | 2.75 | $907.50 |
| 1/27/2012 | DKB | Trial; preparation for same. | 4.25 | $977.50 |
| 1/27/2012 | BNJ | Participate in fourth day of trial and strategy for preparing Findings of Fact and Conclusions of Law; attention to argument for recovery of attorneys' fees. | 4.25 | $1,402.50 |
| 1/30/2012 | CM | Compare Court's exhibit list with our exhibit list to determine which exhibits had been admitted into evidence. | 0.25 | $25.00 |
| 3/1/2012 | DKB | Email correspondence with opposing counsel regarding furnishing of trial transcripts. | 0.25 | NO CHARGE |
| 3/7/2012 | DKB | Review trial transcript in preparation for preparing proposed Findings and Conclusions. | 2.50 | $575.00 |
| 3/7/2012 | DKB | Review trial transcript in preparation for preparing proposed Findings and Conclusions. | 2.25 | $517.50 |
| 3/8/2012 | DKB | Review trial transcript in preparation for preparing proposed Findings and Conclusions. | 2.00 | $460.00 |
| 3/12/2012 | DKB | Review transcripts from trial in preparation for drafting Findings and Conclusions. | 1.25 | $287.50 |
| 3/13/2012 | DKB | Review transcripts from trial in preparation for drafting Findings and Conclusions. | 2.25 | $517.50 |

| 3/20/2012 | DKB | Draft Findings of Fact and Conclusions of law. | 2.00 | $460.00 |
|---|---|---|---|---|
| 3/20/2012 | BNJ | Review and revise Findings of Fact and Conclusions of Law; conference with D. Brough regarding same. | 1.25 | $412.50 |
| 3/21/2012 | DKB | Draft Findings of Fact and Conclusions of Law; file same. | 6.75 | $1,552.50 |
| 3/21/2012 | BNJ | Review Union's proposed Findings of Fact and Conclusions of Law; review and revise Larsen's Findings of Fact and Conclusions of Law; conference with D. Brough regarding same. | 1.50 | $495.00 |
| 3/22/2012 | BNJ | Review Union's Findings of Fact and Conclusions of Law; conference with D. Brough in preparation for closing argument. | 1.25 | $412.50 |
| 3/28/2012 | DKB | Prepare for closing argument. | 4.75 | $1,092.50 |
| 3/28/2012 | JCD | Research whether Utah reciprocal attorney's fees statute would be applicable in federal court. | 1.25 | $193.75 |
| 3/29/2012 | DKB | Prepare for, travel to and from, and participate in closing argument. | 5.00 | $1,150.00 |
| 3/29/2012 | BNJ | Conference with D. Brough in preparation of closing argument; attend closing argument. | 2.50 | $825.00 |
| 4/4/2012 | DKB | Draft Amended Findings and Conclusions. | 1.00 | $230.00 |
| 4/5/2012 | DKB | Draft Amended Findings and Conclusions; file same. | 4.00 | $920.00 |
| 4/5/2012 | BNJ | Conference with D. Brough regarding amended proposed findings of fact and conclusions of law; review same. | 1.25 | $412.50 |
| 6/8/2012 | DKB | Review court decision; office conference with B. Johnson; telephone conference with client. | 0.50 | $115.00 |
| 6/20/2012 | DKB | Draft memorandum in support of motion for fees and costs. | 1.75 | $402.50 |
| 7/2/2012 | DKB | Draft memorandum in support of motion for fees and costs. | 3.25 | $747.50 |

| 7/3/2012 | DKB | Draft memorandum in support of motion for fees and costs. | 1.25 | $287.50 |
| 7/5/2012 | DKB | Draft memorandum in support of motion for fees and costs. | 2.5 | $575.00 |
| 7/6/2012 | DKB | Draft, revise, and finalize memorandum in support of motion for fees and costs; review and revise supporting declaration. | 3 | $690.00 |
| | | **Total** | 594.75 | $126,835.00 |

### Description of Costs

| 7/22/2010 | Certified Copy of Transcript (Scott R. Larsen) | $422.60 |
| 8/16/2010 | Certified Copy of Transcript (Brent W. Daines) | $197.30 |
| 1/12/2012 | Deposition transcripts: James R. Larsen | $89.70 |
| 1/12/2012 | Deposition transcripts: Wallace R. Larsen | $95.55 |
| 1/12/2012 | Deposition transcripts: Kathleen Lunak | $128.70 |
| 1/12/2012 | Deposition transcripts: Kelly Goodfellow and Greg Cowley | $144.30 |
| 2/29/2012 | Court Reporter | $930.75 |
| | | |
| | **Total** | $2,008.90 |

5.      The services and number of hours described above and the fees for those services are reasonable, necessary and consistent with the rates charged by other practitioners in this legal community.

6.      Defendants are entitled to an award of costs pursuant to Federal Rule of Civil Procedure 54(d) and 29 U.S.C. § 1132(g)(1).  Defendants are entitled to an award of fees pursuant to 29 U.S.C. § 1132(g)(1).

7.      Overall, Defendants have paid $126,835.00 in attorney fees.   Attorneys and paralegals contributing to the bill, at the rates and with the hours set forth in the table above, are:

| Abbreviation | Name | Title |
|:---:|:---:|:---:|
| JRM | J. Ryan Mitchell | Attorney |
| RKR | Robert K. Reynard | Attorney |
| BNJ | Barry N. Johnson | Attorney |
| DKB | Daniel K. Brough | Attorney |
| JCD | James C. Dunkelberger | Attorney/Law Clerk |
| CGB | Curtis G. Bentley | Attorney |
| SJM | Stacy J. McNeil | Attorney |
| RR | Reed Rawson | Attorney |
| JLL | Joshua L. Lee | Attorney |
| MG | Michael Giles | Attorney |
| DA | A. Douglas Anderson | Law Clerk |
| CM | Candice Montoya | Paralegal |

//

//

//

//

//

//

//

8.    Defendants have also paid costs, as specified in the table above, in the amount of $2,008.90.

I declare under criminal penalty of the State of Utah that the foregoing is true and correct. EXECUTED this 6th day of July, 2012.

BENNETT TUELLER JOHNSON & DEERE

Daniel K. Brough
*Attorneys for Defendants*

# **Exhibit B**

Barry N. Johnson (Utah Bar No. 6255)
Daniel K. Brough (Utah Bar No. 10283)
BENNETT TUELLER JOHNSON & DEERE
3165 E. Millrock Drive, Suite 500
Salt Lake City, Utah 84121
Telephone: (801) 438-2000
Facsimile:  (801) 438-2050
Email: bjohnson@btjd.com, dbrough@btjd.com
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * * *

|  |  |
|---|---|
| ) | |
| TRUSTEES OF THE EIGHTH DISTRICT ) | **REPLY MEMORANDUM IN** |
| ELECTRICAL PENSION FUND; and ) | **SUPPORT OF MOTION FOR** |
| INTERNATIONAL BROTHERHOOD OF ) | **ATTORNEY FEES AND COSTS** |
| ELECTRICAL WORKERS, LOCAL 354, ) | |
| ) | Case No. 2:09-cv-00632 |
| Plaintiffs, ) | |
| ) | Judge Clark Waddoups |
| v. ) | |
| ) | Magistrate Judge Brooke Wells |
| WASATCH FRONT ELECTRIC AND ) | |
| CONSTRUCTION, LLC; LARSEN ) | |
| ELECTRIC, LLC; SCOTT R. LARSEN, ) | |
| individually; and LARSEN ELECTRIC ) | |
| OF NEVADA, LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

* * * * * * * *

Defendants Wasatch Front Electric and Construction, LLC ("WF Electric"), Larsen

Electric, LLC ("Larsen Electric"), Scott R. Larsen ("Larsen"), and Larsen Electric of Nevada,

LLC ("Larsen Nevada" and, collectively with WF Electric, Larsen Electric, and Larsen,

"Defendants"), by and through counsel, submit this Reply Memorandum in Support of Motion for Attorney Fees and Costs.

### INTRODUCTION

Plaintiffs Trustees of the Eighth District Electrical Pension Fund (the "Fund") and International Brotherhood of Electrical Workers, Local 354 ("Local 354" and, collectively, "Plaintiffs") claim that Defendants are not entitled to any attorney fees at all, or, if they are, that the Court should somehow determine those portions of Defendants' fees that are attributable to Plaintiffs' withdrawal liability claim, or its claim preclusion defense, and award only that portion, with further reductions. But Plaintiffs' argument is based on an incorrect recitation of the law governing Defendants' request for attorney fees. The Tenth Circuit is not likely to adopt the test that Plaintiffs propose, and the appropriate test tilts strongly in favor of an award of attorney fees for Defendants.

Moreover, apportionment of fees is inappropriate. All of Plaintiffs' claims arose from the same set of facts: WF Electric's termination of its union affiliation and Larsen Electric's subsequent business. Plaintiffs' principal claims—for withdrawal liability, audit liability, and alter ego liability (upon which audit liability turned entirely)—all fell to a single defense: claim preclusion. Plaintiffs' remaining claims—for breach of fiduciary duty and fraudulent transfer— fell quickly and easily to either a swift defense or a stipulation by Defendants. It is well established that courts should not reduce fees where the claims litigated are factually similar and are disposed of, as here, in one fell swoop.

Finally, as noted in Defendants' responses to Plaintiffs' various objections, Defendants are entitled to recover the full amount of their incurred fees and costs, without reduction.

For all of the foregoing reasons, this Court should, in connection with the judgment in Defendants' favor, award Defendants their complete attorney fees and costs. Defendants reserve the right to augment their Declaration of Attorney Fees and Costs at the conclusion of briefing and, if held, oral argument.

## ARGUMENT

## I. DEFENDANTS SHOULD RECOVER ALL OF THEIR ATTORNEY FEES INCURRED IN THIS LAWSUIT.

### A. The Tenth Circuit Would Apply the Five-Factor Test to Determine Defendants' Entitlement to Attorney Fees.

Plaintiffs argue that 29 U.S.C. § 1451(e), not § 1132(g)(1), governs the attorney fee analysis, and that the Court should construe that section as requiring Defendants to prove that Plaintiffs' case was "frivolous, unreasonable or without foundation" in order to obtain an award of attorney fees. Plaintiffs' argument fails for numerous reasons.

First, Defendants' entitlement to attorney fees is governed by both § 1132(g)(1) and § 1451(e). Courts regularly cite both provisions when addressing a request for attorney fees on a withdrawal liability claim. *See, e.g.*, *I.A.M. Nat'l Pension Fund, Plan A, A Benefits v. Clinton Engines Corp.*, 825 F.2d 415, 418 n.7 (D.C. Cir. 1987); *Bridge v. Transpersonnel, Inc.*, Case No. 03 C 2437, 2004 U.S. Dist. LEXIS 18242, *14–15 (N.D. Ill. Sept. 10, 2004) (unpublished disposition); *Trustees of the United Mine Workers of Am. 1974 Pension Plan v. Morrison Knudsen Corp.*, 931 F. Supp. 4, 9 (D.D.C. 1996).

Second, even if § 1451 governs, Defendants' interpretation of it relies upon *Dorn's Transportation, Inc. v. Teamsters Pension Trust Fund*, 799 F.2d 45 (3d Cir. 1986), wherein the Third Circuit likened the position of an employer that successfully defeats a withdrawal liability claim to a defendant that is victorious in a civil rights action, holding that attorney fees are available to a prevailing defendant only if the lawsuit was frivolous. *See id.* at 46. Plaintiffs acknowledge that the *Dorn's* approach is the minority rule, but that does not do justice to the extent to which the *Dorn's* approach is cabined: "*With the exception of the Third Circuit*, the five-factor test originally adopted for fee requests under section 1132(g)(1) has been applied *universally* in situations where employers have requested fees under the MPPAA."[1] *See Anita Foundations, Inc. v. ILGWU Nat'l Retirement Fund*, 902 F.2d 185, 188 (2d Cir. 1990) (emphasis added). The *Dorn's* approach is not just merely the minority rule; the Third Circuit is the only circuit to adopt it.

Third, the *Dorn's* analogy between ERISA and civil rights litigation is flawed. In *Bittner v. Sadoff & Rudoy Industries*, 728 F.2d 820 (7th Cir. 1984), the Seventh Circuit explained why the *Dorn's* analysis is untenable, even before *Dorn's* was decided:

> But unlike [the Civil Rights Attorney's Fees Awards Act], ERISA does not create a presumption in favor of a prevailing plaintiff's request for fees and against a prevailing defendant's. The history of the Civil Rights Attorney's Fees Awards Act indicates as clearly as a legislative history can that the purpose of the statute (despite its neutral wording) was to encourage meritorious civil rights litigation by allowing prevailing plaintiffs to obtain an award of attorney's fees almost as a matter of course but prevailing defendants only if the suit was frivolous. There is nothing comparable in the legislative history of ERISA; nor do pension plan participants and beneficiaries

---

[1] The "MPPAA" is the Multiemployer Pension Plan Amendments Act of 1980, which constitutes an addition or an amendment to ERISA.

> constitute a vulnerable group whose members need special encouragement to exercise their legal rights, like a racial minority. Members of minority groups are not the only or even the most frequent civil rights plaintiffs . . . but they were at the forefront of congressional concern in passing the attorney's fee awards act.

*See id.* at 829 (citations omitted).  In other words, ERISA and the Civil Rights Attorney's Fee Awards Act are not products of similar policy concerns, are not analogous, and do not even seek to benefit the same classes of litigants.

Critically, the *Bittner* court cited to the Tenth Circuit's opinion in *Gordon v. United States Steel Corp.*, 724 F.2d 106 (10th Cir. 1983), as an example of a circuit that "rejects the analogy of the Civil Rights Attorney's Fees Awards Act."  *See Bittner*, 728 F.2d at 829–30.  In *Gordon*, the Tenth Circuit addressed an argument that a prevailing defendant in an ERISA case should not be entitled to recover attorney fees under § 1132(g)(1).  *See Gordon*, 724 F.2d at 108–09.  In rejecting that argument and concluding that the same five-factor balancing test that applies to prevailing plaintiffs' claims under § 1132(g) applies to prevailing defendants, the Tenth Circuit cited with approval the Fifth Circuit's decision in *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255 (5th Cir. 1980), in which the Fifth Circuit "distinguished the award of attorney's fees under ERISA from that provided for under section 204(b) of Title II of the Civil Rights Act of 1964."  *See Gordon*, 724 F.2d at 108.  While *Gordon* does not explicitly address attorney fee awards for successful defendants on withdrawal liability claims, it plainly reflects the Tenth Circuit's negative opinion of the civil rights litigation analogy advocated by *Dorn's* and Plaintiffs.

Fourth, in *Rootberg v. Central States, Southeast & Southwest Areas Pension Fund*, 856 F.2d 796 (7th Cir. 1988), the Seventh Circuit held that the standards under § 1132(g) and § 1451(a) are "the same," and that it "can therefore treat decisions interpreting section 1132(g) as precedents for the interpretation of section 1451(e)."[2] *See id.* at 798. At least one district court in the Tenth Circuit has adopted that analysis and applied the five-factor test to assess attorney fees available to a prevailing defendant on a withdrawal liability claim. *See Jefferson Tile Co. v. Colo. Tile, Marble & Terrazzo Workers Health, Welfare & Pension Funds, Nos. 6 and 85*, 797 F. Supp. 857, 860–61 (D. Colo. 1992). The Tenth Circuit has already adopted a five-factor test for assessing attorney fee awards pursuant to ERISA. If the standards are the same, there is no reason to think the Tenth Circuit would not apply an identical standard to fee awards arising from withdrawal liability claims.

In fine, even if Section § 1451(a) applies to the exclusion of § 1132(g), the governing standard is still the same five-factor test.

**B.     Every Material Factor in the Applicable Balancing Test Militates in Favor of an Award of Attorney Fees.**

As Defendants explained in their initial memorandum, courts consider five factors in determining the availability of an award of attorney fees. *See Gordon*, 724 F.2d at 109 (outlining factors). Plaintiffs do not persuasively argue that those factors tip their way.

---

[2] The Seventh Circuit also noted that because the MPPAA is an amendment to ERISA, which has a similarly-worded provision regarding attorney fees in § 1132(g)(1), the MPPAA should not be read to create a standard for attorney fees that differs from § 1132(g)(1). *See Rootberg*, 856 F.2d at 798.

1.    Plaintiffs' Culpability or Bad Faith

In their initial memorandum, Defendants stated that they "do not argue that Plaintiffs are 'culpable' or exercised bad faith in litigating their claims," and that "[t]hat is a factor that does not cut either way in this analysis."  Plaintiffs attempt to convert that statement into a stipulation, by Defendants, that Plaintiffs exercised good faith in litigating their claims, and that this is a factor that the Court should deem favors Plaintiffs.

The Court should reject Plaintiffs' creative reading of Defendants' perhaps overly charitable statement, which plainly was *not* a stipulation that Plaintiffs acted in good faith—only a statement that this particular factor is immaterial to the analysis.  Declining to contend that Plaintiffs brought this lawsuit in bad faith—for example, that the lawsuit does not meet the criteria of Federal Rule of Civil Procedure 11—is a far cry from admitting, as Plaintiffs suggest, that Plaintiffs' case was backed with solid factual and legal support, and that they lost a close call that could have gone either way.  Indeed, after hearing all of Plaintiffs' evidence, the Court characterized it as "very weak."  *See* Hrg. Tr. at 505:14–16 (attached to Defendants' initial memorandum as Exhibit A).  And the Court went on to hold, essentially, that Plaintiffs never should have brought their case to begin with, as the majority of the claims were previously litigated to a dismissal with prejudice and therefore barred by the doctrine of claim preclusion. *See* Doc. No. 260, Findings & Conclusions entered June 8, 2012 (on file with the Court).

The Court disposed of Plaintiffs' sole remaining claim,[3] for breach of fiduciary duty, on summary judgment as a matter of law. *See* Doc. No. 129, Order entered Dec. 22, 2010, at 1–2 (on file with the Court). The law governing that claim was clear at the outset, and Plaintiffs should have known it: "an employer cannot become an ERISA fiduciary merely because it breaches its contractual obligations to a fund." *See Holdeman v. Devine*, 474 F.3d 770, 777 (10th Cir. 2007); *see also McDonald v. Beko Assocs., Inc.*, Case No. 2:08-cv-328 TS, 2008 U.S. Dist. LEXIS 56891, *6–9 (D. Utah July 28, 2008) (unpublished disposition) (dismissing, pursuant to *Holdeman*, a breach of fiduciary duty claim asserted by a series of union plaintiffs, represented by Plaintiffs' counsel, against an employer pursuant to Rule 12(b)(6)).

The indicia of strength upon which Plaintiffs rely as evidence of their good faith simply are not present. Although Plaintiffs' case may or may not sink to the level of "bad faith," it assuredly does not rise to the level of "good faith," and Defendants certainly did not stipulate that it does.

### 2.     Plaintiffs' Ability to Satisfy an Attorney Fee Award

Plaintiffs admit that they "could technically pay a fee award," but argue that they should not have to because "[a]ny award of attorney fees to Defendants would directly reduce the funds that are available to provide pensions for the Plan participants." That argument fails for at least three reasons.

---

[3] Plaintiffs also asserted a claim for fraudulent transfer, which they admitted rose and fell with the success of Plaintiffs' claims for audit liability and alter ego.

First, and perhaps most obviously, the Fund is not the only plaintiff; Local 354 is the other. Plaintiffs' concerns do not extend to Local 354, which does not, in and of itself, provide pensions to plan participants.[4]

Second, as explained above, nothing in ERISA's legislative history indicates a need, or even an intent, to protect plans or participants as protected classes or to encourage them to exercise legal rights, as with civil rights litigation. *Cf. Bittner*, 728 F.2d at 829 (noting that "pension plan participants and beneficiaries [do not] constitute a vulnerable group whose members need special encouragement to exercise their legal rights, like a racial minority"). If, in this case, the plan fiduciaries' decision to pursue unsuccessful litigation results in an attorney fee award against the plan, and that award reduces the funds available to pay benefits and pensions, the fiduciaries will have to account to the plan beneficiaries for that. The only pertinent consideration for this motion is whether Plaintiffs can afford to pay the award, and they admit they can.

Third, Plaintiffs submit no evidence that Defendants' requested attorney fee award would actually prevent them from paying owed benefits and pensions. No doubt the award would reduce the funds in Plaintiffs' coffers, but that does not mean that plan members will be adversely affected as a result.

---

[4] The Court's findings and conclusions state that the Fund is the "collection agent" for a number of funds, whereas Local 354 is merely a labor organization that "represents union members in collective bargaining agreements with union electrical contractors operating and working within the State of Utah." *See* Doc. No. 260, Findings & Conclusions at 2–3.

### 3. Whether an Attorney Fee Award Would Deter Future Conduct

Plaintiffs note that "[t]here is no public policy of discouraging withdrawal liability claims," and that "ERISA trustees have a fiduciary duty to pursue such claims *where they are viable*." (Emphasis added.) But that is not the issue. Here, Plaintiffs chose to litigate claims that were *not* viable, as Plaintiffs litigated the majority of those claims to a dismissal with prejudice years ago and could have, and should have, brought the remaining claims in that lawsuit. If Plaintiffs have duties to pursue viable claims, they also have a corresponding duty to refrain from pursuing claims that are not viable, whatever the reason. There should be a consequence to improperly attempting to take a second bite at the apple, and an attorney fee award would defer others from trying to spread out litigation over years by litigating their claims either piecemeal or repeatedly, in an attempt to grind down employers and individuals. That outcome is precisely what the claim preclusion doctrine is designed to avoid. *See Plotner v. AT&T Corp.*, 224 F.3d 1161, 1168 (10th Cir. 2000) ("The fundamental policies underlying the doctrine of res judicata . . . . are finality, judicial economy, preventing repetitive litigation and forum-shopping, and the interest in bringing litigation to an end." (internal quotation marks omitted)). An attorney fee award in this case is necessary to put other unions on notice that they must litigate all claims at once.

### 4. Whether Defendants Sought to Resolve a Significant Legal Question Regarding ERISA

Plaintiffs argue that their lawsuit "sought to benefit all participants and beneficiaries of an ERISA plan." That is questionable, given that the prosecution of unsuccessful claims exposes

Plaintiffs, as a matter of law, to an award of attorney fees. Moreover, Plaintiffs are not the "parties requesting fees"—Defendants are—and that articulation of this factor therefore does not apply to Plaintiffs. *See Gordon*, 724 F.2d at 109.

This factor alternatively requires the Court—ostensibly in situations like this, where the defendant, who obviously did not seek to benefit all plan participants by defending against claims, prevails—to consider whether the lawsuit "resolve[s] a significant legal question regarding ERISA." *See id.* As explained in Defendants' initial memorandum, this litigation resulted in the first definition, in this circuit, of which individuals in a "brother-sister group of trades or business" count toward the "common control" requirement. *See* 26 C.F.R. §§ 1.414(c)-1, 1.414(c)-2(c), 1.414(c)-2(b)(ii)(2); *see also* Order & Mem. Dec. entered Aug. 23, 2011, at 1–3 (on file with the Court). This Court's statements regarding the applicability of claim preclusion principles will also influence, positively, how unions handle internal grievances relative to the assertion of claims. This factor goes in Defendants' favor.

### 5. The Relative Merits of the Parties' Positions

Plaintiffs concede that "this factor weighs in favor of the Defendants," but argue that its weight would be greater had Defendants "prevailed on the substantive merits of Plaintiffs' claims." That is not true. The Court characterized the evidence on the substance of Plaintiffs' claims as "very weak." *See* Hrg. Tr. at 505:14–16 (attached to Defendants' initial memorandum as Exhibit A). In any event, although the Court did not address the substance of the claims in its ruling, its decision to dismiss Plaintiffs' claims based on the doctrine of claim preclusion *is* a ruling on the merits.

## II.     THE COURT SHOULD NOT ATTEMPT TO APPORTION FEES.

Plaintiffs claim that the Court should limit Defendants' recoverable fees to those incurred in connection with Defendants' claim preclusion defense.  Plaintiffs offer no persuasive authority for that proposition.  Although Defendants' claim preclusion defense is, as Plaintiffs note, "factually and legally distinct from all of the other issues in the lawsuit," that is the very nature of an affirmative defense.  *See* Fed. R. Civ. P. 8(c)(1) (including res judicata in list of affirmative defenses); *see also United States v. Portillo-Madrid*, 292 Fed. Appx. 746, 747 n.1 (10th Cir. 2008) (defining an affirmative defense as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true" (internal quotation marks omitted)).  Defendants' claim preclusion defense resulted in the dismissal of all but one of Plaintiffs' claims, the other one having been resolved on summary judgment a year prior.  That defense permeated Defendants' victory and is inseparable from the Plaintiffs' various claims.

Although apportionment may be appropriate in some cases, this is not one of them.  This lawsuit "cannot be viewed as a series of discrete claims," as a single defense defeated most of those claims.  *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).  The Court "should focus on the significance of the overall relief obtained by [Defendants] in relation to the hours reasonably expended on the litigation."  *See id.*  The Court should not reduce Defendants' attorney fees simply because the Court "did not adopt each contention raised" by Defendants, or because not all claims were subject to § 1132(g)(1).  *See Smith v. Northwest Fin. Acceptance, Inc.*, 129 F.3d

1408, 1418 (10th Cir. 1997) (internal quotation marks omitted).  "The result is what matters."
*See Hensley*, 461 U.S. at 434.

Plaintiffs incorrectly argue that if claim preclusion applied, Defendants should have

asserted it on summary judgment earlier.  That argument ignores the reality that the Court's own

findings and conclusions repeatedly cite to evidence and testimony presented at trial.  *See* Doc.

No. 260, Findings & Conclusions at 3, 11, 14.  Although Plaintiffs' claims were weak,

Defendant's claim preclusion defense likely carried with it issues of fact, however minor, that

would have made summary judgment inappropriate.  Claim preclusion was a trial issue, and

Plaintiffs cannot fault Defendants for not defeating their claims sooner, or for focusing on issues

other than claim preclusion when forced to do so by Plaintiffs' numerous motions.[5]

Plaintiffs' claims all arise from the same set of facts.  It does not matter that the Court did

not reach the substance of Plaintiffs' claims—all of those claims but one fell to a single defense,

which had to be raised at trial.  This case has always been about claim preclusion.  The fact that

that issue did not come to the fore in the years of litigation preceding trial is irrelevant; it was

always on the table, awaiting trial.  That unifying principle militates against apportionment of

fees.

## III.    AS NOTED IN DEFENDANTS' RESPONSES TO PLAINTIFFS' OBJECTIONS, THE COURT SHOULD AWARD DEFENDANTS ALL OF THE ATTORNEY FEES AND COSTS THEY INCURRED IN THIS LAWSUIT.

Defendants respond separately to Plaintiffs' objections to the amount of fees and costs to

---

[5] Ironically, Plaintiffs simultaneously argue that their claims were meritorious and strong, despite the result of trial, and that Defendants should have somehow defeated those claims more quickly than they did.

be awarded. As explained in those responses, the Court should overrule those objections and
award Defendants all of their claimed attorney fees and costs.

## **CONCLUSION**

Plaintiffs suffered a complete defeat in this case. This Court should apply the
universally-accepted five-factor test to conclude that an award of attorney fees pursuant to 29
U.S.C. § 1132(g)(1) is appropriate. It should also award the full complement of fees and costs
Defendants incurred. Because Plaintiffs have requested oral argument in connection with this
motion (a request to which Defendants do not object), Defendants reserve the right to supplement
their initial declaration of attorney fees and costs upon completion of oral argument. In the event
the Court declines to hold oral argument, Defendants reserve the right to submit a supplemental
declaration of attorney fees incurred in connection with further briefing of this motion.

DATED this 15th day of August, 2012.

BENNETT TUELLER JOHNSON & DEERE

*/s/ Daniel K. Brough*

_____

Barry N. Johnson
Daniel K. Brough
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of August, 2012, I electronically filed the foregoing

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY FEES AND**

**COSTS** with the Clerk of Court using the CM/ECF system, which sent notification of such filing

to the following:

> Kenneth B. Grimes
> KENNETH B. GRIMES, P.C.
> 448 East 400 South, Suite 302
> Salt Lake City, Utah 84111
> kglawyer@yahoo.com
> *Attorneys for Plaintiffs*

> */s/ Daniel K. Brough*
> _____

# **Exhibit C**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| TRUSTEES OF THE EIGHTH DISTRICT | ) | |
| ELECTRICAL PENSION FUND; and | ) | |
| INTERNATIONAL BROTHERHOOD OF | ) | |
| ELECTRICAL WORKERS, LOCAL 354, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:09-CV-632CW |
| | ) | |
| WASATCH FRONT ELECTRIC AND | ) | |
| CONSTRUCTION, LLC; LARSEN | ) | |
| ELECTRIC, LLC; LARSEN ELECTRIC | ) | |
| OF NEVADA, LLC; and SCOTT R. | ) | |
| LARSEN, individually, | ) | |
| | ) | |
| Defendants. | ) | |

Transcript of Hearing on Motion for
Attorneys Fees and Costs

BEFORE THE HONORABLE CLARK WADDOUPS

May 21, 2013

Karen Murakami, CSR, RPR
144 U.S. Courthouse
350 South Main Street
Salt Lake City, Utah 84101
Telephone: 801-328-4800

1

APPEARANCES OF COUNSEL:


For the Plaintiffs:  KENNETH B. GRIMES
                     Attorney at Law
                     Suite 302
                     448 East 400 South
                     Salt Lake City, Utah 84111


For the Defendants:  BENNETT TUELLER JOHNSON & DEERE PC
                     By Daniel K. Brough
                       Attorney at Law
                     Fifth Floor
                     3165 East Millrock Drive
                     Salt Lake City, Utah 84121

2

```
 1          Salt Lake City, Utah, Tuesday, May 21, 2013

 2                          *   *   *

 3               THE COURT:  We are here in the matter

 4  of -- I've got wrong notebook, Jeff.  Could you go

 5  switch it for me?

 6               THE CLERK:  Yes.

 7               THE COURT:  We are here in the matter of the

 8  Trustees of the Eighth District Electrical Pension Fund

 9  and others v. Wasatch Front Electric and Construction,

10  case 2:09-cv-632.  Will counsel please state their

11  appearance.

12               MR. GRIMES:  Kenneth Grimes for plaintiffs,

13  Your Honor.  Also with me at counsel table is my

14  associate Shari Throop, who has recently been admitted

15  to the bar.

16               THE COURT:  Thank you.

17               MR. BROUGH:  Daniel Brough from Bennett,

18  Tueller, Johnson & Deere on behalf of the defendants.

19               THE COURT:  We're here for the defendants'

20  motion for attorney's fees and costs.  I've reviewed the

21  memorandum in support of the motion, the declaration as

22  submitted in support, and the objections thereto.

23               Mr. Brough, do you wish to add additional

24  argument?

25               MR. BROUGH:  Yes, Your Honor, if it pleases
```

1    the court.  I take the court's articulation of its

2    question as the court's very familiar, and if we have

3    any ability to answer questions that the court has, we

4    would be happy to do so at this time.

5          THE COURT:  Let me ask you to start with the

6    Gordon factors.

7          MR. BROUGH:  Very good.

8          THE COURT:  And you basically start with the

9    first one, which is the degree of the opposing party's

10    culpability or bad faith and say you believe that's not

11    a factor one way or the other.

12          MR. BROUGH:  That's correct.

13          THE COURT:  Tell me how you think the court

14    should deal with that particular element of the Gordon

15    factors.

16          MR. BROUGH:  I think that the court should

17    consider that element a nullity or eliminate it from its

18    balancing in this case.  We didn't make an argument that

19    plaintiffs proceeded in bad faith.  We do resist the

20    argument brought forth in the opposition that the

21    plaintiffs acted in good faith and that that should

22    somehow be counted in their favor in militating against

23    an award of attorney's fees and costs in this case, and

24    here's the reason why:  Whether a lawsuit is subject to

25    Rule 11 and that it's meritless factually or legally is

1 a far cry from admitting that the case itself lacks

2 solid factual and legal support.  At the conclusion of

3 the bench trial, the court reviewed the evidence that

4 had been brought before the court during the course of

5 trial and characterized the evidence as, quote, "very

6 weak."  Nevertheless, the court's analysis and ultimate

7 resolution of the case didn't even make it to the

8 substance of the facts brought before the court, at

9 least on the merits of the claims themselves.  The court

10 essentially concluded that those claims shouldn't have

11 even been brought to begin with because they were

12 precluded by the prior litigation.  That was the

13 resolution of four out of the five claims was based on

14 that ruling alone.  So even procedurally the plaintiffs

15 lost, and then substantively, although the court didn't

16 reach this in a formal ruling, following the defendants'

17 motion to dismiss at the close of the plaintiffs'

18 evidence, the court characterized the evidence as it

19 did.  We think that there is just not much there.

20   We also would like to note that the only

21 remaining claim that wasn't disposed of in connection

22 with the trial was the breach of fiduciary duty claim.

23 The law on that case, or on that claim, from the

24 Holdeman decision from the Tenth Circuit is clear, it

25 says that, quote, "An employer cannot become an ERISA

1    fiduciary merely because it breaches its contractual

2    obligations to a fund."  That was a 2008 case.  I

3    apologize, it was actually a different date.  But I

4    would note that the McDonald case, which was cited in

5    our briefing, recognized that same rule, reached the

6    same conclusion, and it was litigated by plaintiffs'

7    counsel.  So the rule was there from the beginning on

8    that claim.

9            The point of all of this, Your Honor, is

10   simply to emphasize that we're not making any type of

11   claim that this case was subject to Rule 11 or otherwise

12   brought to harass or that it was completely lacking in

13   merit, but that we don't think that it was, you know,

14   such a close call that the plaintiffs can argue that,

15   no, it was in good faith and the stipulation was

16   brought.  So we think that factor should be nil.

17           THE COURT:  Would you next address the

18   inadequacies that the plaintiff argues are evident in

19   the declaration in support.

20           MR. BROUGH:  Certainly.  Would the court

21   prefer that I begin with the costs or with attorney's

22   fees?

23           THE COURT:  With attorney's fees.

24           MR. BROUGH:  Very well.  Regarding

25   attorney's fees, we think that those objections are not

6

1    well taken.  First, the plaintiffs claim that there are

2    fees charged for stipulations or extensions in

3    responding to things.  It's our position, Your Honor, as

4    supported by the local rules, that those stipulations

5    are required and are a component of any litigation, and

6    since they're required by rule, all counsel have to

7    comply and do them.  Plaintiffs and defendants each

8    submitted them on their own.  There's no reason that

9    those should be excluded from the attorney fee

10   calculous.  They're required, they're a part of the

11   litigation before this court.

12           Second, there's an objection regarding fees

13   for two attorneys appearing at trial.  And there is no

14   argument as to why that's unreasonable or why those two

15   attorneys shouldn't be permitted to charge the full

16   complement of their fees.  We would remind the court

17   that the issues in this case amounted to approximately

18   $2 million worth of potential liability for the

19   defendants.  This litigation, in some form or another,

20   has been going on since 2005.  This was scheduled for a

21   four to five-day bench trial with oral argument to

22   follow, there were experts involved, there were numerous

23   issues.  We think that it's perfectly reasonable for two

24   attorneys to have tried this case, and that they should

25   be able to recover the full complement of their fees as

7

1   both of them contributed to the trial itself.

2          Third, there is an objection regarding

3   attorneys not appearing in the case itself.  And as the

4   court I'm sure is well aware, often times in cases of

5   this duration and of this size attorneys that don't

6   appear in cases often contribute valuable work to the

7   outcome of the case.  We had attorneys involved in trial

8   preparation, involved in other briefing.  We used

9   cheaper attorneys, I might add, in many cases for the

10  briefing in order to keep the rate down.  I just don't

11  think that it's a fair objection to say that there are

12  attorneys working on the case that didn't appear.

13  Appearance isn't the be all end all of whether their

14  fees should be recoverable, it's the value and merit and

15  reasonableness of the services and fees associated with

16  their work.

17          Fourth, there's an objection regarding the

18  omission of a paralegal.  That paralegal is denominated

19  as D.N. in the declaration.  As we've explained in our

20  responses, that's Dina Newton, who is a paralegal at our

21  firm.  She contributed exactly in accordance with what's

22  stated on the declaration, and the only omission there

23  is that she wasn't listed on the chart of attorneys and

24  paralegals contributing to the case.

25          Fourth, there appears to be an evidentiary

1    foundational objection regarding the declaration itself,

2    specifically that one attorney lacks foundation to opine

3    or to declare as to what other attorneys in the firm

4    billed or performed in the course of the case.  However,

5    if I might, the declaration itself, which is executed by

6    myself, says I'm a member of the law firm of Bennett,

7    Tueller, Johnson & Deere which represents the

8    defendants.

9         Paragraph 2 says that I have personal

10   knowledge of the matters set forth in this declaration.

11   There's no argument or authority set forth by the

12   plaintiffs standing for the proposition or even

13   suggesting that if one attorney working on a case can't

14   review the files of his own firm and represent his own

15   firm in making an attorney fee declaration for the folks

16   that work in his firm.

17        THE COURT:  Let me ask you a question.  As I

18   recall, you were the lead attorney both at trial and in

19   the motions, did you supervise the work of the other

20   attorneys who worked on the case?

21        MR. BROUGH:  Your Honor, Barry Johnson, who

22   is sitting in the gallery, was the lead attorney on the

23   case.  But I did do a substantial amount of the work on

24   the case.  Mr. Johnson and I worked together on numerous

25   aspects.  And for each younger attorney that worked on

9

1    this case I did directly supervise their work, yes.

2            THE COURT:  Did you or Mr. Johnson review

3    all of the work that was submitted that was prepared by

4    other younger attorneys?

5            MR. BROUGH:  One or the other of us did

6    absolutely.  If I prepared it, Mr. Johnson reviewed it,

7    if a younger attorney prepared it, I reviewed it.

8            The next objection that's made, Your Honor,

9    is that there is no hourly billing rate set forth in the

10   declaration.  We think that the court is perfectly

11   capable of taking the number of hours and multiplying by

12   the total cost for each task and then determining that

13   particular person's billing rate, which fluctuated over

14   the course of the several years that this litigation

15   lasted.  We actually considered that to be a more

16   precise rate to report the hourly billing rate than

17   taking an average or extrapolating it over a period of

18   years.

19           Finally, there's an objection regarding

20   protective orders.  There's fees associated with a

21   protective order.  As we reviewed the docket, Your

22   Honor, there's only one protective order that's been

23   entered in this case, it governed the entire case, and

24   we're unaware of any authority, and none's been cited by

25   the plaintiffs saying that a protective order isn't a

```
 1   necessary component of litigation and shouldn't be

 2   compensable in attorney's fees.

 3           Those are all of the objections, as I

 4   understand them, Your Honor, and that would be our

 5   responses to it.  Does the court have any additional

 6   questions regarding that?

 7           THE COURT:  No.  Let's hear from Mr. Grimes.

 8   I'll give you a chance to respond.

 9           MR. BROUGH:  Very good.

10           MR. GRIMES:  Thank you, Your Honor.  I would

11   like to address the two issues that the court just had

12   counsel address I suppose in order in order to proceed

13   in an orderly fashion.  These issues have been briefed

14   fully to the court.  The court, I'm sure, is aware of

15   the conflict between the circuit courts of appeal with

16   respect to the proper standard that is to be applied

17   under 29 USC Section 1451, which is the fee-shifting

18   statute relating to withdrawal liability claims.  Under

19   ERISA the Third Circuit has taken the position of the

20   Dorn's Transportation case that the fees can be assessed

21   against pension funds only where their action's

22   frivolous, unreasonable, or without foundation.

23           THE COURT:  Isn't that the only circuit that

24   has found that?

25           MR. GRIMES:  It is, Your Honor, it is.
```

```
 1              The other approach, which I'll describe as

 2    the majority position, was that taken by the Anita

 3    Foundations court, the Second Circuit Court of Appeals.

 4    That court applied the five-factor test which has been

 5    recognized in the Tenth Circuit under attorney's fees

 6    disputes under a different portion of ERISA, a different

 7    fee-shifting statute in the Gordon case.  Although, to

 8    be fair, there are not a lot of cases on this issue

 9    period, and, in fact, the Anita Foundations case itself

10    I think goes to some effort to harmonize its decision

11    with the Dorn's Transportation case.  I noted at the end

12    of the Anita Foundations case that case notes an

13    important factual distinction, which I think is also

14    important for the court's consideration in the present

15    case.  The Anita Foundations case states at paragraph

16    41, Unlike Dorn's in which it could not be said that the

17    underlying claim was frivolous, unreasonable, or without

18    foundation, the claim asserted by the fund here

19    disregarded settlement agreements and was premised on an

20    incorrect and convoluted application of the Mistake of

21    Law Doctrine.  So the Anita Foundations court itself

22    found that the case before it was premised on incorrect

23    and convoluted application of the Mistake of Law

24    Doctrine, and so at least implied that there's an

25    element of bad faith, or at least an absence of good
```

```
 1    faith in that case.

 2              As the plaintiffs argued in our brief it may

 3    not matter which approach, if there is a difference

 4    between these two approaches, that the court takes in

 5    the present case because we believe the defendants are

 6    not entitled to an award of attorney's fees under

 7    section 1451, under either the Dorn's or the Anita

 8    Foundations approach.  Anita Foundations focuses on the

 9    first and fourth elements of the Gordon factors, the

10    five-factor Gordon test.  By the way, the courts don't

11    consistently number these factors.  I notice that the

12    fourth and fifth factors vary between Dorn's and

13    Gordon -- I'm sorry, between Anita Foundations and

14    Gordon.  But they tend to focus on the first element,

15    which is good faith, or the absence of good faith, and

16    the second -- the fourth element, or fifth under Gordon,

17    which is the relative merits of the parties' positions.

18    And the courts that have directly addressed these

19    questions as to the availability of an attorney's fees

20    award under section 1451 to a prevailing defendant

21    employer all of them have found -- have focused on this

22    element of good faith and, with the exception of Anita

23    Foundations, they have all ruled in favor of the trust

24    funds.  Those cases, one of which was cited by the

25    defendants in their brief, the Cuyamaca Meats case,
```

1   which is located at 827 F.2d 491, held that the employer

2   in that case was not entitled to an award of attorney's

3   fees due to the good faith of the trust funds.

4           In addition to that, I've located two

5   additional cases, Circuit Court of Appeals cases, which

6   have held likewise.  Those are the decisions in Central

7   States v. 888 Corp., which is a Sixth Circuit decision

8   1987, located at 813 F.2d 760.  By the way I point out

9   that I did provide copies of these cases to counsel

10  before the hearing today.  And then also another Ninth

11  Circuit case in Trustees v. Mill Cabinet Pension Fund,

12  located at 877 F.2d 769, Ninth Circuit 1989.  Each of

13  these cases ruled that the defendant was not entitled to

14  an award of attorney's fees under section 1451 due to

15  the good faith of the pension funds in pursuing their

16  claim.

17          THE COURT:  Would the same argument apply to

18  the union?

19          MR. GRIMES:  I'm sorry, what was that?

20          THE COURT:  Would the same argument apply to

21  the union should the court award attorney's fees against

22  the union and not against the trust fund?

23          MR. GRIMES:  Your Honor, that raises a

24  different issue.  The union, of course, has no claim for

25  withdrawal liability.  Withdrawal liability claims under

1    the MPPAA can only been asserted by pension funds.  So

2    the union is not a party to that claim and, therefore, I

3    do not believe it would be proper to award attorney's

4    fees against the union under section 1451.  But, again,

5    I'm not -- each of these cases is factually distinct,

6    and as is the present case, so I'm not saying that

7    there's a hard and fast rule here.  But I do want to

8    point out that these cases have all expressed a similar

9    reluctance to award attorney's fees against pension

10    funds under section 1451 under the Gordon five-factor

11    test, and they mostly have focused on good faith of the

12    pension funds where there's not some indication of bad

13    faith or overbearing conduct on the part of the pension

14    fund, they just have not held that the pension fund was

15    liable for attorney's fees.  The only case that has held

16    that way was Anita Foundations, and did express quite

17    clearly its reasoning for doing that.

18            I think one of the reasons -- well, applying

19    that to the facts of the present case, the defendants

20    have admitted that the plaintiffs in the present case

21    have not acted in bad faith.  Now, whether there's some

22    distinction between a middle ground between bad faith

23    and good faith, that may well be, but -- and the

24    defendants have not conceded that the plaintiffs acted

25    in good faith.  But they've also not presented any

```
 1    evidence or argument that the plaintiffs acted in any
 2    way other than in good faith in this case.  And I would
 3    point out that the plaintiffs did initially prevail on
 4    their motion for summary judgment against one of their
 5    claims, and that after three days of trial, the court
 6    did deny the defendants' Rule 50 motion on the merits of
 7    the ERISA claim and withdrawal liability claims.  I
 8    think that this is consistent with the finding that the
 9    plaintiffs acted in good faith.
10            I also believe another factor which has
11    weighed heavily on the courts in reaching these
12    decisions is actually the fifth factor, which is whether
13    the action sought to confer a common benefit on a group
14    of pension plan participants.  And I think that -- I
15    mean it's always the case under withdrawal liability
16    claims, the withdrawal liability statute is intended to
17    protect the financial soundness of pension funds and the
18    retirement benefits that they provide for employees.
19    The pension fund itself is a nonprofit organization.
20    The trustees who serve on the board of trustees do so
21    without compensation.  The sole purpose of collecting
22    withdrawal liability is to protect the financial
23    integrity of pension funds.  For that reason I think the
24    fifth element, although it's not -- it is usually
25    discussed, but not necessarily emphasized, I think has
```

1  been an important factor for the courts in deciding

2  that.

3         There are some other cases that have been

4  cited in the briefs which I think are distinguishable,

5  the Rootberg case out of the Seventh Circuit, the

6  Jefferson Tile case, District of Colorado District Court

7  case.  These in fact involve prevailing trust funds.  So

8  that's a different situation.

9         The only cases, there's very few of them,

10  which have directly addressed this issue, and those are

11  Dorn's Transportation, Anita Foundations, then these

12  three cases which I just cited to the court.  So we have

13  a rather relatively small universe of precedent to rely

14  upon here.

15         Turning to the plaintiffs' objections to the

16  declarations, I think that the primary objection that

17  the plaintiffs raise really has to do with what

18  Mr. Brough referred to as the evidentiary issue.  Our

19  position is that the court's rules, Rule 54(d)(F).

20         THE COURT:  Let me kind of cut through the

21  procedural argument.  The trust fund doesn't appear to

22  make any substantive argument that the information

23  provided in the declaration is not true.

24         MR. GRIMES:  I agree with that, Your Honor.

25  I mean --

```
 1              THE COURT:  So if there is a problem with

 2    the declaration, it could be corrected.

 3              MR. GRIMES:  I think that it could be

 4    corrected if -- I believe that the court's rule requires

 5    that a declaration or affidavit, a sworn statement be

 6    provided to the court for each attorney that is claiming

 7    attorney's fees.

 8              THE COURT:  You know, I have never seen

 9    anyone follow that practice.  I've done this for awhile

10    and I've never seen anybody submit ten affidavits to

11    support applications that ten people worked on the case.

12              MR. GRIMES:  Hum.  Well, Your Honor would

13    know much better than I do.  I'm sure you see many more

14    attorney's fees affidavits than I do.

15              THE COURT:  Nor is there any language in the

16    rule that I see requires this.  I mean all that is

17    required is that the attorney have personal knowledge of

18    the facts that are set forth in the declaration.  Now,

19    conceded a simple statement that I have personal

20    knowledge is not adequate to lay foundation.  But is

21    there any serious question that Mr. Brough has personal

22    knowledge?  He stood at the court, represented that he

23    had either reviewed or Mr. Johnson had reviewed every

24    submission that was made to the court by the other

25    attorneys.  And I guess if it would make you feel
```

18

1   better, we could ask them to submit a declaration to

2   that effect.  But it seems to me that that's just really

3   kind of going through procedure that doesn't accomplish

4   much.

5          MR. GRIMES:  Your Honor, obviously I have a

6   different interpretation of the rule and --

7          THE COURT:  Tell me the language that you

8   think requires that.

9          MR. GRIMES:  Well, Rule 54(d)(F) requires a

10  motion for attorney's fees be, quote, "accompanied by an

11  affidavit of counsel setting forth the scope of the

12  effort, the number of hours expended, the hourly rates

13  claimed, and any other pertinent supporting information.

14  And in addition to that --

15         THE COURT:  And what of that list do you

16  think is missing from this declaration?

17         MR. GRIMES:  Well, I think first off let me

18  mention, I believe there are other requirements imposed

19  by the court, as we cited in our brief, the Rosenbaum

20  case, a Tenth Circuit decision, requires that the

21  evidence include the experience, reputation, and ability

22  of the attorney, customary fee, whether the

23  representation precluded other employment by the

24  attorney, etcetera.  It's just hard for me to

25  envision -- I'm sure that neither Mr. Johnson nor

1    Mr. Brough stood over the shoulders of each of these

2    attorneys and watched the number of hours that they

3    spent working on the case.

4         THE COURT:  Nor I suspect do you of those

5    that are working in association with you.  I mean that's

6    just not the way law is practiced, as we all know.

7         MR. GRIMES:  In the few instances that I've

8    had I have submitted declarations by all attorneys who

9    performed work.

10        THE COURT:  Okay.

11        MR. GRIMES:  But like I say, Your Honor,

12   that's my interpretation.  Apparently that's

13   inconsistent with that of the court, and that's fine.

14   That is our position.

15        There is one other issue which the court has

16   not asked us to address yet, but I do believe it is

17   important.  I don't know if this would be a good time to

18   address that.

19        THE COURT:  Go right ahead.

20        MR. GRIMES:  The other issue is, even if the

21   court should decide that the defendants are entitled to

22   an award of attorney's fees under section 1451, the

23   plaintiffs' position is that those fees should be

24   limited to the time and effort that was spent in

25   relation to the res judicata defense.  And there's

1    basically two independent parts to this argument, one of

2    which raised in our brief is based upon the U.S. Supreme

3    Court's decision in the Hensley case.  I'm sure the

4    court is familiar with this.  In looking at paragraph 38

5    and 39 of the Hensley case and what it's saying is

6    essentially -- well, it states, In some cases the

7    plaintiff may present in one lawsuit distinctly

8    different claims for relief that are based on different

9    facts and legal theories.  In such a suit, even where

10   the claims are brought against the same defendants,

11   counsel's work on one claim would be unrelated to his

12   work on the other claim.  Accordingly, work on an

13   unsuccessful claim cannot be deemed to have been

14   expended in pursuit of the ultimate result achieved.  I

15   think that the essential term here is the term

16   "unrelated."

17         THE COURT:  The Hensley court also said,

18   Where a lawsuit consists of related claims, the

19   plaintiff who has won substantial relief should not have

20   his attorney's fees reduced simply because the district

21   court did not adopt each contention raised.

22         MR. GRIMES:  That's true, Your Honor.

23         THE COURT:  Doesn't that inform a contrary

24   result to what you're arguing?

25         MR. GRIMES:  Well, I don't believe so.  I

1   think that the key is to what degree of relatedness.

2   And the reason why we take this position in the present

3   case is because the res judicata defense is factually

4   and legally totally disconnected with the other issues

5   that were raised in the lawsuit.  There were relatively

6   few facts involved in the res judicata defense, they

7   were undisputed, they required no discovery, they

8   required no motion practice, they were raised for the

9   first time on the eve of trial.  Had they been raised

10   early in the case they may have saved the court and the

11   parties all the time that we spent litigating all these

12   other issues.  But they are simply totally unrelated.

13   And it would seem to me both unfair and improper to

14   award the defendants attorney's fees based on all the

15   issues in the case, when the issue that they prevailed

16   upon was so limited in terms of the facts and the legal

17   arguments that are involved.  I grant that they've won

18   essentially total dismissal of the plaintiffs' claims

19   based upon that one defense, and that is a factor I

20   think the court should consider.  But based upon the

21   relatedness of the facts and the law relating to these

22   issues, I believe that is really the case of the tail

23   wagging the dog here, a very small tail at that.

24          The second basis we have for requesting an

25   apportionment of attorney's fees is that the claim for

1    attorney's fees asserted by the defendants is asserted

2    solely under section 1451, which is the withdrawal

3    liability fee-shifting statute, and it only relates to

4    withdrawal liability claims.  Now, much or -- of the --

5    most of the litigation that occurred in this case was

6    related not to the withdrawal liability claim, but the

7    claim for delinquent contributions and alter ego

8    liability that was asserted under 29 USC Section 1145.

9    However, attorney's fees awards under section 1145 are

10    specifically governed by 29 USC Section 1132(g)(2), let

11    me say that again because I think I garbled it, 29 USC

12    Section 1132(g)(2), which contains very detailed

13    provisions relating to the award of attorney's fees in

14    claims to collect delinquent contributions and which

15    simply does not provide for an award of attorney's fees

16    to a prevailing employer.  There's a big difference

17    between section 1132(g)(2) and section 1132(g)(1).  And

18    section 1132(g)(2) simply does not allow an award of

19    attorney's fees to a prevailing employer in the absence

20    of a finding of a Rule 11 violation of a frivolous

21    lawsuit.

22          Now, the defendants probably are recognizing

23    that they would not be entitled to an award of

24    attorney's fees --

25          THE COURT:  Isn't that the standard, the

```
1    section that the Gordon court was applying?

2              MR. GRIMES:  No, Your Honor, and the Gordon

3    court was applying 1132(g)(1).

4              THE COURT:  Okay.

5              MR. GRIMES:  Which allows --

6              THE COURT:  Yours is 1132(g)(2).

7              MR. GRIMES:  (2), which is a much narrower

8    and stricter standard and under which we submit the

9    defendants would clearly not be entitled to an award of

10   attorney's fees.  We believe what the defendants have

11   done in this case is to creatively attempt to circumvent

12   the limitations of 1132(g)(2) by claiming all of their

13   attorney's fees under section 1451.

14             THE COURT:  What does 1132(g)(2) say?

15             MR. GRIMES:  Section 1132(g)(2) is part of a

16   lengthy section.  1132 is the civil enforcement section

17   for most of the types of claims that can be asserted

18   under ERISA, although it does not mention withdrawal

19   liability.  But section 1132(g)(2) says that In an

20   action under this subchapter by a fiduciary for or on

21   behalf of a plan to enforce Section 1145.  And 1145 is

22   the statute that provides for collection actions for

23   trust funds to collect delinquent employee benefit

24   contributions.  That's section 1145.  And it says that

25   In an action under this subchapter by a fiduciary for or
```

 1   on behalf of a plan to enforce section 1145 of this

 2   title in which a judgment in favor of the plan is

 3   awarded, the court shall award the plan -- and it goes

 4   through a list, it's a fairly lengthy list of various

 5   remedies.  Subparagraph (d) is reasonable attorney's

 6   fees and costs of the action to be paid by the

 7   defendant.  That's section 1132(g).  And juxtapose that

 8   with section 1132(g)(1) which states that In any action

 9   under this subchapter, other than an action described in

10   paragraph 2, by a participant, beneficiary, or fiduciary

11   the court in its discretion may allow a reasonable

12   attorney fees and costs of action to either party.  The

13   distinction there is clear under 1132(g)(1), which was

14   the statute at issue in Gordon and some of these other

15   cases that have been cited to the court, attorney's fees

16   can be awarded essentially to the prevailing party, but

17   under section 1132(g)(2) only attorney's fees in favor

18   of the plan that obtain judgments are authorized.  And

19   that has been litigated rarely because I believe the

20   statute is clear.

21           I do have a fairly recently the U.S. Supreme

22   Court in Hardt, and that's H-a-r-d-t, v. Reliance

23   Standard Life Insurance Company, it's located at 130

24   Supreme Court Reporter 2149, a 2010 decision, noted that

25   under section 1132(g), and I'm looking at what's -- it's

```
 1   paragraph II, Roman Numeral II, as referenced in the

 2   court opinion.  It states that language -- it's

 3   referring -- this case involved Section 1132(g)(1) where

 4   it states, That language, 1132(g)(1), contrasts sharply

 5   with section 1132(g)(2), which governs the availability

 6   of attorney's fees in ERISA actions under section 1145

 7   (actions to recover delinquent employer contributions to

 8   a multi-employer plan).  In such cases, only plaintiffs

 9   who obtain a judgment in favor of the plan may seek

10   attorney's fees under the statute.  That's dictum in

11   this case, but that's probably as clear and recent

12   articulation of that particular standard as I'm aware

13   of.  It's usually not controverted much because of the

14   clarity of the statute I believe.

15           So for those two reasons, Your Honor, we

16   believe that any award of attorney's fees to the

17   defendants in this case should be limited to those which

18   are related to the withdrawal liability defense.

19           THE COURT:  Thank you.

20           Mr. Brough.

21           MR. GRIMES:  Thank you, Your Honor.

22           THE COURT:  Do you want to start with

23   responding to his argument that 1132(g)(2) precludes

24   awarding fees to the prevailing defendant employer?

25           MR. BROUGH:  Certainly.  As I understand
```

```
 1    plaintiffs' counsel's argument, and if might note, we

 2    were furnished with not only the three cases mentioned

 3    earlier, but this U.S. Supreme Court case just before

 4    the hearing, in fact now, so I can't claim to have

 5    reviewed the Supreme Court case in any great detail.  It

 6    wasn't cited.

 7              I do think that plaintiffs' argument not

 8    only misstates (g)(1) and (g)(2), but also misstates

 9    what it means to apportion fees.  As we stated in our

10    briefing, and which I think is quite clear, subsection

11    (g)(1) says, In any action under this title, other than

12    an action described in paragraph (2) by a participant,

13    beneficiary, or fiduciary, the court in its discretion

14    may allow a reasonable attorney fee and costs of action

15    to either party.  If the court looks just down to

16    paragraph (2), what I think plaintiff's counsel is

17    saying is that paragraph (2) encompasses actions, quote,

18    "by a fiduciary for or on behalf of a plan to enforce 29

19    USC section 1145."  Therefore, actions brought under

20    section 1145 are carved out of the attorney's fees

21    provision of 1132(g)(1).  And we get that, but that's

22    not our argument.

23              Our argument is there were a number of

24    claims presented in this case that succumbed to one

25    defense, not only did they succumb to one defense, but
```

1 those claims were all entirely inextricably related to

2 each other factually as well as legally. So when you

3 look at why the plaintiffs prevail -- or didn't prevail

4 and why the defendants did prevail, the question that

5 the court has to resolve is how can one apportion a

6 victory on withdrawal liability separate and apart from

7 the totality of the work that was performed in the case

8 to bring to task the claim preclusion defense. That I

9 think is how the court should look at that. And I think

10 that the distinguishing between the subsections (g)(1)

11 and (g)(2) just muddies the issue of what apportionment

12 really is and what the court will have to decide as it

13 resolves this motion.

14    If I might address a few other points that

15 plaintiffs' counsel raises. First, the governing of the

16 Dorn's case, plaintiffs argue that it's in fact not

17 1132(g) at all, but 1451(e) that requires -- or that

18 provides for an award of fees and that the standard

19 should be fees are only available if the claim was

20 frivolous, unreasonable, or without foundation.

21 Plaintiffs' counsel concedes that the Dorn's decision

22 from the Third Circuit is the minority decision, but

23 that doesn't even bespeak the fact that it's the only

24 circuit that has held that. The reasoning underneath

25 it, and as I listened to the recitation of why these

```
 1   other Court of Appeals cases that were presented to us

 2   today are relevant, I just disagree that that's the

 3   case.

 4               If I might refer the court to the Bittner v.

 5   Sadoff & Rudoy Industries case from the Seventh Circuit

 6   1984, the Seventh Circuit explained why the Dorn's

 7   analysis is untenable, even before Dorn's was decided

 8   and it said this:  Unlike the Civil Rights Attorney's

 9   Fees Award Act, ERISA does not create a presumption in

10   favor of a prevailing plaintiff's request for fees and

11   against a prevailing defendant's.  The history of the

12   Civil Rights Attorney's Fees Awards Act indicates as

13   clearly as a legislative history can that the purpose of

14   the statute was to encourage meritorious civil rights

15   litigation by allowing plaintiffs to obtain an award of

16   fees almost as a matter of course but prevailing

17   defendants only if the suit was frivolous.  There is

18   nothing comparable in the legislative history of ERISA;

19   nor do pension plan participants and beneficiaries

20   constitute a vulnerable group whose members need special

21   encouragement to exercise their legal rights.

22               In other words, Your Honor, this Seventh

23   Circuit case takes the foundation upon which the Dorn's

24   case was based, specifically that ERISA claims in this

25   context are like civil rights cases and says, not true,
```

    1   completely different things, apples and oranges.

    2   Critically, the Bittner court cited to this court's

    3   decision in Gordon as an example of the circuit that,

    4   quote, "rejects the analogy of the Civil Rights

    5   Attorney's Fees Award Act."  Gordon itself cites a Fifth

    6   Circuit decision that noted the same thing.  So I think

    7   that plaintiffs' argument that it presented with this

    8   question in this context for withdrawal liability the

    9   Tenth Circuit would adopt the Dorn's test I think is

   10   highly remote.  I think that it's as close to

   11   established in the Tenth Circuit as it can possibly be

   12   without actually being established in a withdrawal

   13   liability case that it's the five Gordon factors that

   14   govern.

   15           Now, if I might speak to the Gordon factors

   16   themselves.

   17           THE COURT:  Before you move to the Gordon

   18   factors, let me get one thing clear in my mind.

   19   Is it your argument that section 1132(g)(1) governs or

   20   is it that 11 -- or 1451(e) governs?

   21           MR. BROUGH:  1132(g)(1).

   22           THE COURT:  And tell me why you believe that

   23   one governs rather than 1451(e).

   24           MR. BROUGH:  For two reasons, Your Honor.

   25   One, the plain language of subsection (g)(1) covers the

                                                          30

1   withdrawal liability claim, and I don't think there's a

2   lot of dispute there.

3           Second, as noted in our briefing, as courts

4   refer to attorney's fees availability for a withdrawal

5   liability claim, they actually speak to both, but the

6   test appears to be a conglomeration of the two, with the

7   Gordon factors determining it.

8           THE COURT:  Now you can go to the Gordon

9   factors.

10          MR. BROUGH:  Thank you, Your Honor.  I've

11  already discussed the notion of good faith versus bad

12  faith.  Plaintiffs' counsel made the argument that there

13  hadn't been an argument that it wasn't in good faith.

14  We're probably getting a little bit into semantics as

15  to, you know, where does good faith start and bad faith

16  begin.  I would note, though, that we have made an

17  argument regarding that, which I noted initially, and

18  that is this, there was a complete victory at trial, and

19  not just a complete victory, but a statement from the

20  court after hearing all of the evidence that the

21  evidence itself was weak, and that even beyond that, the

22  claims were precluded.  Even on the fiduciary duty

23  claim, Your Honor, that the law that the court applied

24  in resolving that case was not only established Tenth

25  Circuit precedent, but it was also established precedent

Case 2:04-cv-00432-DCN   Document 174   Filed 10/24/25   Entered 06/10/10/25   Page 104 of 116   Page ID #:...

Document #5   Page 103 of 116

1    based on a case that plaintiffs' counsel himself had

2    already litigated.  I just don't think the court should

3    move into a finding of good faith on behalf of the

4    plaintiffs.  If anything, that factor is a nullity.

5              One thing, and as plaintiffs' counsel

6    correctly said, these are fact-specific inquiries, and

7    there are a number of other facts that militate in favor

8    of an award of attorney's fees in this case.  First,

9    another of the Gordon factors is the ability of the

10   opposing party to satisfy an award of fees.  Plaintiffs

11   admit, quote, "they could technically pay a fee award,"

12   and their argument is essentially that they don't want

13   to simply because it would skew the fund's actuarial

14   reports and perhaps prevent the fund from satisfying

15   other debts.  The problem though is, just as the Seventh

16   Circuit in Bittner said, the pension plan participants

17   and beneficiaries don't constitute a vulnerable group.

18   And there's no evidence before the court that this award

19   of attorney's fees that defendants are seeking would

20   actually prevent the plan from paying anything.  We have

21   no idea what's in the plan's coffers or reserves or

22   whether paying this award would harm it in the least.

23             Second, whether an award of fees would deter

24   others from acting under similar circumstances.

25   Plaintiffs argue that there is no public policy of

                                                      32

1    discouraging withdrawal liability claims, and while

2    that's true as far as it goes, there is a public policy

3    prohibiting and discouraging the re-litigation of claims

4    a second time.  That's the existence of the claim

5    preclusion doctrine.  We think that there would be a

6    definite salutary effect if the court were to award

7    attorney's fees to defendants as that would make clear

8    that plans and their collection agents, or the unions,

9    should bring all of their claims in one action rather

10   than litigating piecemeal, virtually dragging employers

11   through the mire for years and years when they can't

12   easily withdraw from the union based on the contract

13   that they were forced to sign to join to begin with.

14   That's the reason from a policy perspective why an

15   attorney's fee award makes sense in this case.

16             Third, whether the parties requesting fees

17   sought to benefit all participants or to resolve a

18   significant legal question regarding ERISA.  Plaintiffs

19   argue that they brought their claims to benefit all

20   participants and beneficiaries, and so this fact tilts

21   in their favor, but that's not what the Gordon test

22   says.  The Gordon test says that the parties requesting

23   fees sought to benefit all participants and

24   beneficiaries.  And the plaintiffs in this case are not

25   requesting fees, the defendants are.  Therefore, the

```
 1    test as it applies to defendants, and as Gordon
 2    implicitly recognizes that defendants employers can get
 3    attorney fee awards against plaintiffs, the test is
 4    whether the defendants resolved a significant legal
 5    question regarding ERISA.  And that occurred here in two
 6    instances.  First, with respect to motions for summary
 7    judgment on the withdrawal liability claim, the court in
 8    fact resolved questions regarding what it means to have
 9    a brother-sister group of trades or businesses for
10    purposes of the common control requirement.  And as we
11    can discern in this circuit, Your Honor, this would be
12    the first court to have done that.  That's a significant
13    contribution to the body of ERISA law in this circuit.
14            Second, at trial, this court also handled
15    for the first time we're aware of in this circuit how
16    claim preclusion applies to a plan and/or collection
17    agent bifurcating its collection efforts, first seeking
18    to determine whether withdrawal occurred, and then
19    seeking to litigate whether withdrawal liability
20    occurred.  Those are significant contributions to the
21    body of ERISA law in this circuit, Your Honor, and that
22    factor tilts in favor of the defendants.
23            Finally, the court's asked to consider the
24    relative merits of the respective case.  And we've
25    articulated this already, this was a complete victory,
```

1    the court has articulated that the evidence presented on

2    its substance was very weak, claim preclusion took care

3    of everything else that the fiduciary duty summary

4    judgment didn't.

5           Speaking now, if I might, we've handled the

6    objections to the attorney's fees declaration already,

7    unless the court has any other questions on that.

8           Let me speak, if I might, to the notion of

9    apportionment.  I think it's of importance for the court

10   to note how factually related all of the claims brought

11   by the plaintiffs are.  With the withdrawal liability

12   claim in fact had a statutory alter ego component to it.

13   It was WF Electric that had withdrawn.  The plaintiffs

14   sought withdrawal liability against Larsen Electric and

15   Mr. Larsen on the withdrawal liability statutes, for

16   lack of a better word, alter ego regime.  In order to

17   prevail on that claim, plaintiffs had to present proof

18   of facts such as control by Mr. Larsen and also

19   ownership as between WF Electric and Larsen Electric, as

20   well as the various transitions in ownership of the two

21   entities as they involved Mr. Cowley.  Those same facts

22   arose in the context of the common law alter ego claim

23   that plaintiffs also asserted.  The common law alter ego

24   claim supported completely the audit liability claim

25   under section 1145.  Without the alter ego claim, as

1    Mr. Mortenson, the expert, testified, there would be no

2    audit liability, there would be an assumption underlying

3    that claim with alter ego liability.  And the fraudulent

4    transfer claim turned on liability for all of those.

5    Even the fiduciary duty claim, although it was resolved

6    on a separate legal ground, still turned on Mr. Larsen's

7    control of WF Electric and Larsen Electric.  So all of

8    these claims, Your Honor, arise from the same set of

9    facts.

10            Moreover, all of these claims, particularly

11   withdrawal and audit liability, turned on what happened

12   in the prior litigation beginning in 2005.  That was

13   something that was a dynamic that informed much of the

14   discussion among the parties.  The court doesn't need to

15   look any further than the plaintiffs' own summary

16   judgment motion to see the impact those prior cases had

17   on the claims currently pending before the court.

18            Now, following trial four of those five

19   claims were defeated by the defense's claim preclusion.

20   One defense took out all of the four remaining claims,

21   and it's for that reason, Your Honor, as the court

22   noted, the United States Supreme Court has already held

23   that apportionment is not proper in every case.  In

24   Hensley v. Eckerhart the court said, In other cases the

25   plaintiff's claims for relief will involve a common core

1   of facts or will be based on related legal theories.

2   Much of counsel's time will be devoted generally to the

3   litigation as a whole, making it difficult to divide the

4   hours expended on a claim-by-claim basis.  Such a

5   lawsuit cannot be viewed as a series of discrete

6   claims -- and then this is important -- instead the

7   district court should focus on the significance of the

8   overall relief obtained by the prevailing party in

9   relation to the hours reasonably expended on the

10  litigation.

11           It's our submission and contention, Your

12  Honor, that it's impossible for the court or for the

13  parties to say defendants prevailed on this claim

14  because of claim preclusion but didn't prevail on this

15  claim because of claim preclusion.  That was a notion

16  that underlied and founded the entire defense.  And they

17  were issues that were dealt with if not explicitly then

18  implicitly throughout the course of the litigation.

19  There's just no principal way that we can see to

20  separate this out.

21           Moreover, the defense was completely

22  victorious, and we've heard no argument from the

23  plaintiffs that the amount of time expended on this

24  nearly $2 million case over the course of several years

25  is anything other than completely reasonable.

```
 1              Unless the court has any other questions, I
 2    would like to just summarize, it's the defendants'
 3    contention that the court should award $2,008.90 in
 4    costs, as they arise from the copying and use of
 5    deposition transcripts.  It's also the defendants'
 6    contention that the court should award $126,835 in
 7    attorney's fees, being the complete amount spent, and
 8    the defendants reserve their right to augment that
 9    number in the event the court does award fees to cover
10    post-declaration work, including further briefing and
11    preparation for this hearing.
12              Unless the court has any further questions,
13    we'll submit on that and thank the court for its time in
14    hearing this motion today.
15              THE COURT:  Thank you.  I'm prepared to
16    issue my ruling in this case.  Having reviewed all of
17    the facts that have been presented, both in oral
18    argument and in the briefs, the court is granting the
19    motion to award the attorney's fees.  The appropriate
20    test, as the defendants argue, is under Title 29 United
21    States Code 1132(g)(1).  I believe that the same test,
22    or a conglomerate of that test, to use the defendants'
23    word, is also applicable under Title 29 United States
24    Code 1451(e).  Ultimately, it is my belief that the
25    Tenth Circuit would adopt the Gordon factors in
```

38

 1   determining whether attorney's fees should be awarded in

 2   this case.

 3          To apply those factors the court is given

 4   the following instructions:  First the degree of

 5   opposing party's culpability or bad faith.  Under the

 6   Gordon test it's not that there must be complete bad

 7   faith or complete culpability, it is the degree of

 8   culpability or bad faith.  And in weighing that factor I

 9   believe the court is entitled to take into account more

10   factors than simply the fact that there was an

11   inadequate pleading under Rule 11, or a pleading that

12   would have violated Rule 11.  I believe that in this

13   case the factor weighs in favor of the defendant, not

14   because I believe the union proceeded in violation of

15   Rule 11 or even proceeded in bad faith, but the degree

16   of blameworthiness, if you will, in terms of the action

17   being brought certainly shifted in favor of the union.

18          Based on the court's ruling of preclusion,

19   there is an adequate basis in the facts to conclude that

20   the combined union and trust fund attempted to have two

21   opportunities to pursue the litigation and receive the

22   same result.  That strategy, while not clearly precluded

23   by any cases prior to this time, was a strategy that the

24   union and the trust pursued exposing the employer in

25   this case to substantial expense to defend its position.

1    I think that weighs in favor of the defendant in this

2    particular case.

3              Two, the ability of the opposing party to

4    satisfy, there's not an issue as to that.  With respect

5    to whether or not this should weigh in favor of the

6    trust fund on the ground that it would deprive the

7    beneficiaries of the trust fund of some of their pension

8    money, there's no evidence before the court that paying

9    these fees in any way would expose the trust fund or the

10   beneficiaries of the trust fund to that risk.  Moreover,

11   implicit in the notion that the trust fund can pursue

12   claims on behalf of the beneficiary is that the

13   beneficiary should be held to the consequences having

14   pursued that litigation should the trust fund fail to

15   prevail.

16             Three, is whether an award of attorney's

17   fees against the opposing parties would deter others

18   from acting under similar circumstances.  In this case,

19   as I recall the evidence, there was clear evidence that

20   both the trust fund and the union understood that the

21   prior litigation was resolved with prejudice under a

22   settlement agreement, that the strategy was to pursue

23   that opportunity and then to pursue this second

24   litigation.  I believe that there was sufficient

25   evidence in this case for the court to conclude that

1    this factor weighs in favor of the defendant who should

2    not have been subjected to the exposure of these costs

3    twice.

4             Four, whether the parties requesting fees

5    sought to benefit all participants, I believe

6    defendants' counsel is correct, that does not apply in

7    this case, but the second part does resolve a

8    significant legal question regarding ERISA.  I believe

9    the two factors related by counsel were in play in this

10   case and they were important issues, first addressing

11   the appropriate standards for applying the

12   brother-sister liability; and, second, the role of issue

13   preclusion in this type of circumstances.

14            Finally, with respect to the relative merits

15   of the positions, the defendant has prevailed in this

16   matter and prevailed on all of the claims that were

17   brought, which is strong evidence that the merits

18   favored the defendants' position in this case.

19            There was evidence in this case from which

20   the court could infer that the trust fund's position in

21   this case was as much an attempt to make a point about

22   the ability to withdraw from the union as it was to

23   pursue legitimate fees that were not paid to the union,

24   given the fact, as I recall the evidence, that Wasatch

25   Electric and Mr. Larsen personally paid out of their own

1   pocket substantial fees that were due to the union and

2   were -- and to the trust fund in terms of pension

3   contributions for relative employees.

4          With respect to the objection to the

5   attorney's fees declaration, the court believes that the

6   declaration submitted is adequate.  I would observe that

7   the declaration was not a model of clarity in terms of

8   all of the foundation that could have and probably

9   should have been submitted in terms of the completeness

10  of the work and the supervision of the work that was

11  performed.  I do believe, however, a partner in a law

12  firm who is supervising work or reviewing work has

13  sufficient foundation to testify as to the

14  reasonableness of the work that was provided.  And based

15  on the representations that were made in this argument

16  to the court by an officer of the court, I will accept

17  those representations of being supplementation to the

18  declaration, and that there is adequate foundation to

19  support the reasonableness of the attorney's fees.  The

20  other missing elements in terms of the hourly rate, they

21  are implicit and evident from the attorney's fees

22  information that has been provided.

23          Finally, with respect to the costs, I do not

24  understand the plaintiffs in this case to challenge the

25  reasonableness of any of the costs.  The principal

1    argument was that they were not supported by invoices.

2    In the later submissions that inadequacy was supplied

3    and the invoices were submitted.

4            So for all of those reasons I believe that

5    the attorney's fees should be awarded to the defendant

6    in this case in the amount that has been requested.  We

7    will enter an order to that effect.

8            Anything further?

9            MR. BROUGH:  Your Honor, just to clarify,

10   may we have the court's permission to submit a

11   supplemental declaration of the attorney's fees and

12   costs covering the amounts incurred since the date of

13   the declaration?

14           THE COURT:  Yes, that leave is granted to

15   supplement the declaration, and we will defer entering

16   judgment until that's received.  How long will you need

17   to submit that?

18           MR. BROUGH:  By the end of the week would be

19   fine, Your Honor.

20           THE COURT:  Okay.  Once we have received

21   that we will then enter judgment.

22           MR. BROUGH:  Thank you.

23           THE COURT:  Thank you, counsel.  We will be

24   in recess.

25           (Whereupon, the matter was concluded.)

43

1                              *    *    *

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                     C E R T I F I C A T E

 2

 3

 4   State of Utah

 5   County of Salt Lake

 6

 7          I, Karen Murakami, a Certified Shorthand Reporter

 8   for the State of Utah, do hereby certify that the

 9   foregoing transcript of proceedings was taken before me

10   at the time and place set forth herein and was taken

11   down by me in shorthand and thereafter transcribed into

12   typewriting under my direction and supervision;

13          That the foregoing pages contain a true and

14   correct transcription of my said shorthand notes so

15   taken.

16          IN WITNESS WHEREOF, I have hereunto set my hand

17   this  18th day of June , 2013.

18

19

20                         Karen Murakami

21                         Karen Murakami, CSR, RPR

22

23

24

25
```